```
20    Q   Why not just present them the pages?
21    A   Because I want them to be able to view them and
22   not expect there to be a question after the initial
23   viewing.  I made a judgment call.  Here's what I'm going
24   to show you.  And then I'm going to show them.
25    Q   Is that the way, in fact, that people who
```

Page 126

```
 1   actually travel to the DMV.ORG website are instructed
 2   when they enter the site?
 3    A   No.
 4    Q   Aren't you obligated as a survey expert to
 5   attempt to emulate the real world environment as closely
 6   as possible when conducting a survey when doing a
 7   consumer perception?
 8    A   Yes.  But --
 9    Q   Yes.  Say yes, sir, please?
10    A   Yes, sir.
11    Q   So it is what you attempt to do?
12    A   Yes.
```

**Counter-Designation by Defendants**

**(126:13 -- 127:3)**

Page 126

```
13    Q   This particular instruction is not consistent
14   with the real world that anyone enters the DMV.ORG
15   website in, is it?
16    A   We spoke earlier today about the fact that there
```

```
17   are many ways into the website, that I believe I was told
18   that on average four or five pages of this website are
19   viewed.  I chose to present four pages in this survey.  I
20   chose to alert the respondent that there would be more
21   than one page that they intended to look at before
22   questioning began, and I did that.
23       Q   Okay.
24       A   I replicated the marketplace with respect, as
25   best I could, to the pages they would view and the order
```

Page 127

```
1    in which a rational person could view them.  I also chose
2    as a researcher to alert the respondents in this survey
3    that they would be viewing more than one page before I
```

**Grounds for counter-designation**:

Completeness, Fed. Rule Evid. 106.

### 1.7. Testimony offered by Plaintiffs

(129:4-22)

Page 129

```
4    Q   So the only thing you tested so far in this
5    deposition as I can understand it is that person who
6    navigates through those four consecutive pages; is that
7    correct?
8    A   Actually, I navigated for them.  I presented all
9    respondents with four different pages seriatim.
10   Q   Always presented in the same order, correct?
```

```
11   A    Correct.
12   Q    So would you agree with me that what you solely
13   tested was the perception in your view of someone who
14   navigated through those exact same four pages and then
15   tested them after they had seen all four; is that
16   correct?
17   A    I certainly tested them after they had seen all
18   four.
19   Q    Okay.  And you didn't test their perception of
20   any particular point in that process, just at the end of
21   it, correct?
22   A    Correct.
```

**Counter-Designation by Defendants**

(129:23 -- 130:1)

Page 129

```
23   Q    Why not?
24   A    Because I wished to give them as much or as
25   little time, as much or as little exposure to the DMV.ORG
```

Page 130

```
1    as I deemed appropriate to the issue at hand.
```

**Grounds for counter-designation**:

Completeness, Fed. Rule Evid. 106.

-18-

**1.8.   Testimony offered by Plaintiffs**

(151:3-20)

Page 151

```
 3    Q   Why did you move the viewer to what we are going
 4   to mark as Exhibit 187, which is the next screen?
 5          (Deposition Exhibit 187 was marked for
 6          identification by the court reporter.)
 7    A   It was the fourth stimulus that everybody saw.
 8    Q   So at the time just prior to opening the fourth
 9   stimuli, you don't know what the state of mind of the
10   consuming public was that you tested, do you?
11    A   Correct, I do not.
12    Q   Okay.  And you don't know if this particular
13   image impacted their view one way or the other, caused
14   them to change their mind or differentiate their view, do
15   you?
16    A   That feels like a lot of questions, Counselor.
17    Q   You don't know one way or the other whether this
18   fourth stimuli changed the point of view in any respect
19   in any of respondents; is that correct?
20    A   That is correct.
```

**Counter-Designation by Defendants**

(151:21-23)

Page 151

```
21    Q   Why did you put that on there?
22    A   Because it's the last place you go before
```

W02-WEST:NA6\400522815.1    DEFENDANTS' COUNTER DESIGNATIONS TO
PLAINTIFFS' DEPOSITION DESIGNATIONS FOR
HOLLANDER AND SIMONSON

1  23  spending money.

**Grounds for counter-designation:**

Completeness, Fed. Rule Evid. 106.

**1.9.  Testimony offered by Plaintiffs**

(184:21-25)

Page 184

21  Q  We didn't go over endorsement or sponsorship.

22     Would you agree that you did not test the

23  beliefs of the public as to the ownership, sponsorship or

24  endorsement of the DMV.ORG website?

25  A  That is correct.

**Counter-Designation by Defendants**

(185:1-22)

Page 185

1  Q  No. 2, you separate out endorsement or

2  sponsorship, and I'm still not clear about why those were

3  funneled out or separated out from the affiliation group.

4  You separated No. 2 from No. 1 and didn't let the same

5  people answer both.

6  A  Because they have already told me that there is

7  some kind of connection between entities.

8  Q  Okay.  What does endorsement mean as used in

9  your survey?

10  A  What am I intending to communicate?  Is that

-20-

-21-

11 what you mean by that question?
12    Q    Well, what does endorsed mean as used in the
13 survey question 2 that you designed?
14    A    That one entity has given another some official
15 imprimatur, some cache of their name.
16    Q    Their name?
17    A    Their entity.
18    Q    I see.  What does sponsored by anyone mean as
19 used in your question No. 2?
20    A    Joe's Bar and Grill sponsors the Little League
21 baseball team.  They put money behind it.  They lent
22 their name to it.

**Grounds for counter-designation**:

Completeness, Fed. Rule Evid. 106.

**1.10.  Testimony offered by Plaintiffs**

**(197:10 -- 199:10)**

Page 197
10    Q    Exhibit 194 is a single-sheet document called
11 "Open-end Codes."
12        Is that your code on this project,
13 Mr. Hollander?
14    A    Yes, that is my code.
15    Q    Let's try to look at this together.  I see code
16 No. 1, you've combined DMV, slash, state, slash,
17 government.  So why is it that you combined those into

```
18   three categories as one code instead of separate?
19   A    Because they are all speaking to an affiliation
20   with an official -- with an official governmental entity.
21   Q    Does it presume that the respondent knows what
22   DMV means?
23   A    Well, DMV was on the -- DMV.ORG was on there.
24   Q    You mean it was on the stimuli?
25   A    Right.
Page 198
 1   Q    Does it presume that the respondent understands
 2   DMV to mean Department of Motor Vehicles is a
 3   governmental agency?
 4   A    Yes, I think that presumes.
 5   Q    Is it also possible that people combine DMV, a
 6   nongovernmental agency, with two governmental agencies?
 7        MR. DAUCHER:  Vague.
 8   BY MR. MAKOUS:
 9   Q    Let me repeat the question.
10        You've combined -- you created those three
11   categories, quote, DMV, close quote, quote, government,
12   and, quote, state, together, correct?
13   A    I did.
14   Q    Then you made a judgment call, as survey experts
15   do, in coding as to whether an open-ended response meant,
16   quote, DMV, or whether an open-ended response meant,
17   quote, state, or whether an open-ended response meant,
18   quote, government in regards to the affiliation question,
```

-22-

```
 1    19  correct?
 2    20     A   No.  The respondent would have said one of those
 3    21  three.
 4    22     Q   Right.  But you made a decision when reading the
 5    23  open-ended responses whether they meant DMV or state or
 6    24  government in their response?
 7    25     A   I read it.  If I saw it, I gave it a 1.
 8   Page 199
 9     1     Q   In other words, if someone in their response
10     2  said, who do you think this is affiliated with, they put
11     3  DMV.  Take that as a hypothetical response.  How would
12     4  you have coded that?
13     5     A   One.
14     6     Q   If someone gave the hypothetical response of
15     7  state department, how would you have coded that?
16     8     A   State department might have gotten "other."  If
17     9  somebody said state of California or California or
18    10  Alabama or something, I would have given it a 1.
19
20   AND (200:3 -- 201:10)
21   Page 200
22     3     Q   In code No. 2, it says, "All other."  Code No. 3
23     4  says "Don't know, not sure, guessing."  No. 4 says
24     5  "None."  No. 5 has "GEICO, Progressive, insurance
25     6  company."  No. 6 says "DMV.ORG" and No. 7 says "CAR.ORG."
26     7         When someone answered No. 6, DMV.ORG, do you
27     8  know if they meant state agency or not?
28
```

-23-

```
 9   A   No, sir. If they answered DMV.ORG, they got a
10   6.
11   Q   Okay. Now, why do you separate that out from
12   No. 1?
13   A   Because it's a separate response. It didn't say
14   DMV. It said DMV.ORG.
15   Q   Okay. But that doesn't mean they don't think
16   it's a state agency, does it?
17   A   Sir, I'm not capable of climbing into somebody's
18   mind. I can only deal with the responses in front of me.
19   If the response was DMV, period, I gave it a 1. If it
20   was DMV.ORG, I gave it a 6.
21   Q   Okay. If you went back to your data and took
22   all the DMV.ORGs and combined them with No. 1, would that
23   affect your opinion?
24   A   I wouldn't do that.
25   Q   Would that have affected your opinion?
```

Page 201

```
1   A   I have no idea.
2   Q   It would change the results, though, that you
3   calculated and analyzed, correct?
4   A   I have no idea.
5   Q   DMV.ORG, you don't know when someone answered
6   DMV.ORG, if they believe it to be a state agency or not,
7   do you?
8   A   No. All I know is I'm presented with the
9   answer, quote, DMV.ORG, end quote. I gave it a separate
```

-24-

1      10   code.

**Counter-Designation by Defendants**

   **(201:11-20)**

Page 201

11     Q    But you don't know the state of mind, whether

12   that respondent believed that that answer meant somebody

13   affiliated with a state agency or not; is that correct?

14     A    Well, sir, in a way I certainly do because then

15   we said, "With whom is it affiliated?"  And nobody said

16   the DMV.ORG is affiliated with the DMV.ORG.  Very few

17   people said DMV.ORG is affiliated with DMV, slash, state,

18   slash, government, and some people said DMV, slash,

19   state, slash, government, is affiliated with DMV.ORG.  I

20   am able to capture that and report it.

**Grounds for counter-designation**:

   Completeness, Fed. Rule Evid. 106.

**1.11.  Testimony offered by Plaintiffs**

   **(228:10 -- 229:2)**

Page 228

10     Q    Okay.  Now, if you look at the question 1-A,

11   DMV, slash, state, slash, government.  Look at the

12   results that go across in the six columns.  Would you

13   agree that the results for the non-DMV states indicate a

14   lower affiliation opinion than California?

-25-

```
15    A    I would.
16    Q    Yet you combined those non-DMV states with
17 California to formulate your opinion, didn't you?
18    A    I did.
19    Q    Would you agree that the numbers in the non-DMV
20 states lower the total number of people in the entire
21 test group and control group that found an affiliation?
22    A    They were lower in both the test and control
23 group, true.
24    Q    When you combine them with California, would you
25 agree that the net result was to lower the overall
```
Page 229
```
1 result?
2    A    Yes. I would agree with that.
```

**Counter-Designation by Defendants**

**(229:3-16)**

Page 229
```
3    Q    Now, does it concern you to have so many
4 controls that are in excess in this chart of the test
5 groups? For example, question 1-B, your control of 14.7
6 exceeds 12.6 on the DMV, slash, state, slash, government
7 line, meaning that the control, it's a negative. I mean,
8 we have a control group that's supposedly measuring
9 noise, you're assuming the entire test group and some.
10 What does that mean?
11    A    It means what I've been trying to tell you it
```

```
12   means, sir, that anything that appears on those pages
13   dealing with the subject of traffic schools may, in fact,
14   be thought to have some relationship, affiliations,
15   sponsorship or endorsement with an official governmental
16   agency. I have been saying that consistently.
```

**Grounds for counter-designation**:

Completeness, Fed. Rule Evid. 106.

## 2.   DEPONENT: ITAMAR SIMONSON

### 2.1.   Testimony Offered by Plaintiffs

(179:10 -- 181:15)

Page 179

```
10       Q. Okay. Let's go to question number 2.
11           There is a list of factors on the left side,
12   and the question reads:
13           "Which of the following, if any, would
14           be important in your decision as to which
15           traffic school to use?"
16           And it has "Price", "Recommended by the DMV",
17   "Convenience", "Years in business", "Materials
18   provided", "Offer in-person programs", "Offer online
19   programs", "Referred to by a friend or relative".
20       Do you see that, sir?
21       A. Yes.
22       Q. Okay. Do you have any problem with that
23   question?
24       A. Yes.
```

-27-

25   Q. What?

Page 180

1    A. We talked earlier about the problem with
2    closed-ended questions, especially those without a
3    control, that they really tell us very little.
4       In this case, one of the answers was
5    "Recommended by DMV"; putting this aside, the question
6    of whether the DMV makes any recommendations about
7    specific traffic schools. But you just -- you just put
8    it in there.
9       There was little doubt that, given that it's
10   there, many of the respondents would say "Yes".
11      The obvious solution would have been to ask
12   open-ended questions, and let's see what respondents on
13   their own would have said. It's quite simple.
14   Q. Well, what other factors would you have
15   included that are not included in the question of list
16   number 2?
17   A. I would not have included "Recommended by
18   DMV". This is just a -- something that he put in
19   there. I can see "Price", definitely important.
20   "Convenience", important. I mean --
21   Q. What -- is "Years in business" important?
22   A. Well, you know, evidently it's important for
23   some people.
24   Q. Based on his survey results, right?
25   A. Yes; but the point is that "Recommended by

-28-

Page 181

1  DMV", you know, I don't want to speculate about what
2  would have happened had -- had an open-ended question
3  been used; but if you pressure me, I would say that
4  it's -- probably would have been less than 10 percent,
5  if at all.  If it was mentioned by anyone.
6     Q.  And what are you basing that on, that last
7  statement?
8     A.  Just because I think that people would not
9  think that DMV is in the business of recommending
10 particular traffic schools.
11    Q.  But you've not inquired as to the state of mind
12 of any consuming group in that regard, have you?
13    A.  As I said, I haven't conducted any survey.
14        The bottom line is, as I said, this survey
15 provides no information.

**Defendants' Counter-Designation:**

(181:16 -- 182:1)

Page 181

16    Q.  All right, let me ask you a question, sir:  You
17 see where number 3, it says -- first of all -- withdraw
18 that.
19        In number 2, he says, "Yes, important"; "No,
20 not important"; "Don't know".
21        He gives the survey respondents an -- the
22 opportunity to say, "Absolutely not.  Not important".
23 Correct?

-29-

```
24     A. Yeah; but you put it in front of them, and you
25     make -- you cause them to think about it, that's a
Page 182
 1     leading question 101.
```

**Grounds for Counter-Designation:**

Completeness, Fed. Rule Evid. 106.

Dated: November 12, 2007

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
BRIAN M. DAUCHER
Attorneys for Defendants

-30-