1   DAVID N. MAKOUS (State Bar # 082409)
    makous@lbbslaw.com
2   DANIEL C. DECARLO (State Bar # 160307)
    decarlo@lbbslaw.com
3   MINA I. HAMILTON (State Bar # 213917)
    hamilton@lbbslaw.com
4   LEWIS BRISBOIS BISGAARD & SMITH LLP
    221 North Figueroa Street, Suite 1200
5   Los Angeles, California 90012-2601
    Telephone:  (213) 250-1800
6   Facsimile:   (213) 250-7900

7   Attorneys for Plaintiffs
    TRAFFICSCHOOL.COM, INC. and
8   DRIVERS ED DIRECT, LLC, California companies.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13

14  TRAFFICSCHOOL.COM, INC.,          ) Case No. CV 06-7561 PA (CWx)
    a California corporation; DRIVERS ED )
15  DIRECT, LLC, a California limited   ) The Honorable Percy Anderson
    liability company,                  )
16                                      ) PLAINTIFFS' **DESIGNATION OF**
                 Plaintiffs,            ) **SELECTED DEPOSITION**
17                                      ) **TESTIMONY** OF ITAMAR
         vs.                            ) SIMONSON IN LIEU OF CROSS-
18                                      ) EXAMINATION PURSUANT TO
    EDRIVER, INC., a California         ) COURT ORDER ISSUED FROM
19  corporation; ONLINE GURU, INC.,     ) BENCH ON 11/8/2007
    FIND MY SPECIALIST, INC., and      )
20  SERIOUSNET, INC., California        )
    corporations; RAVI K. LAHOTI, an   ) Trial:    November 6, 2007
21  individual; RAJ LAHOTI, an individual; )
    and DOES 1 through 10,             )
22                                      )
                 Defendants.            )
23  _____)

24

25

26

27

28

4841-3304-6530.1
PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIU
OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/20

Dockets.Justia.com

Plaintiffs' designate the following testimony of Itamar Simonson to impeach particular allegations contained in the trial declaration of Itamar Simonson, signed August 25, 2007.

The parties in this case have met and conferred and agreed that in order to expedite the trial and conserve judicial resources, the parties would, to the extent possible, offer evidence by deposition excerpts under the terms of this Court's minute order dated November 8, 2007.

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| *Itimar Simonson-Volume I* | | |
| Page 85:9-15, Page 86:12-21 | Dr. Simonson does not know the survey respondents time spent conducting the survey. | Declaration of Itamar Simonson, ¶30-35. |
| Page 94:18-25, Page 95:1-16 | Survey No. 1, is acceptable. | Declaration of Itamar Simonson, ¶26-27 |
| Page 96:11-25, Page 97:1-7, Page 100:6-25, Page 101:1-9 | Dr. Simonson did not study the trafficschool market and has no expertise on the demographics of the trafficschool survey respondents. | Declaration of Itamar Simonson, ¶26-35 |
| Page 175:2-22 Page 176:8-25 Page 177:1-11 | Dr. Simonson has no knowledge of online traffic school market and profiles. | Declaration of Itamar Simonson, ¶26-35 |

4841-3304-6530.1

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/20

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 122:25 Page 123:1-25 Page 124:1-18 | Dr. Simonson uncertain of California consumers who take online traffic schools and traffic school composition. | Declaration of Itamar Simonson, ¶26-35 |
| Page 160:24-25 Page 161:1-25 Page 162:1-25 Page 163:1-13 | Dr. Simonson can not articulate reliable basis that Maronick stimuli is not acceptable. | Declaration of Itamar Simonson, ¶36-52 |
| Page 167:12-25 Page 168:1-7 | Maronick correctly instructed a survey response to take as much time as they normally would. | Declaration of Itamar Simonson, ¶36-52 |

4841-3304-6530.1

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIU
OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/20

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 179:10-25 Page 180:1-25 Page 181:1-15 | Dr. Simonson does not know state of mind and what terms are suitable in survey for Maronick. | Declaration of Itamar Simonson, ¶36-52 |
| Page 184:8-15 | Maronick properly rotated the questions in Survey No. 4. | Declaration of Itamar Simonson, ¶53-55 |

DATED: November 8, 2007      LEWIS BRISBOIS BISGAARD & SMITH LLP

By    _____
DAVID N. MAKOUS
DANIEL C. DECARLO
MINA I. HAMILTON
Attorneys for Plaintiffs

4841-3304-6530.1

**PLAINTIFFS' DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/20


25162-1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--------------------------------

TRAFFICSCHOOL.COM, INC.,          )

a California corporation;         )

DRIVERS ED DIRECT, LLC.,          )

a California limited              )

liability company,               )

      Plaintiffs,              )

    vs.                           )   No. CV 06-7561 PA(CWx)

EDRIVER, INC., ONLINE GURU,       )   PAGES 1 - 246

INC., FIND MY SPECIALIST,         )

INC., and SERIOUSNET, INC.,       )

California corporations;          )

RAVI K. LAHOTI, an individual;)

RAJ LAHOTI, an individual;        )

DOES 1 through 10,                )

      Defendants.              )

--------------------------------

**CERTIFIED COPY**

DEPOSITION OF ITAMAR SIMONSON, Ph.D.

WEDNESDAY, AUGUST 29, 2007


**BENHYATT**
Certified Deposition Reporters
17835 Ventura Blvd. Suite 310 Encino, CA 91316
P 888.272.0022 F 818.343.7119
www.benhyatt.com

1    A.  I don't remember.  A few minutes.  I vaguely

2   recall that he might have testified about that, but I

3   don't remember exactly.

4    Q.  Okay.  Have you attempted to determine how long

5   the consumers -- the survey respondents in our case

6   spent on any of the stimuli, observing it?

7    A.  Are you talking about the survey?  What are you

8   asking about?

9    Q.  Have you attempted to determine how long any of

10  the survey respondents in Dr. Maronick's surveys spent

11  looking at any of the stimuli?

12   A.  I did not conduct --

13       MR. DeGROOT:  Objection, vague.

14       THE WITNESS:  Did not conduct a separate

15  investigation of that.

16  BY MR. MAKOUS:

17   Q.  So at the present time, you don't know if they

18  spent a microsecond or five minutes, do you?

19   A.  No, I think it was -- about what, spending on

20  what?  On a particular page, on a particular question,

21  on the entire survey?  What are you asking about?

22   Q.  There was several stimuli presented in

23  Dr. Maronick's survey, correct?

24   A.  Which one?

25   Q.  Well, there was several surveys, correct?

1    A.   Yes.

2    Q.   You're so -- you're so -- so -- it's so -- so

3  difficult for you to answer questions.

4         There were several surveys conducted, right?

5    A.   Yes.

6    Q.   All right, and there were different stimuli

7  offered in each survey, weren't there?

8    A.   I don't remember if survey 1 had --

9    Q.   Okay, we'll agree survey 1 didn't offer

10  stimuli.  But surveys 2, 3, offered stimuli, correct?

11   A.   Two and 3 did, yes.

12   Q.   All right.  And do you remember how long any of

13  the particular respondents looked at the stimuli in

14  surveys 2 and 3?

15   A.   I don't remember.  I'm not sure I received that

16  data.

17   Q.   Would you be interested in knowing that?

18   A.   I've -- not -- not -- I don't -- I didn't think

19  that that was particularly important.  I presumed that

20  that would be similar to other internet surveys that I

21  encountered in the past, using online pools.

22   Q.   But you've never designed a survey and executed

23  it, on an internet forum, have you?

24   A.   That is not true.  I designed and conducted

25  many surveys on the internet; but not in the context of

1      gave to Dr. Maronick's survey.

2              Okay, I'm placing before the witness Exhibit

3      144 A.

4              MR. DeGROOT:  Looks like Exhibit F.

5              MR. MAKOUS:  Well, no, I didn't really put a --

6      pardon me, Counsel.  I didn't really place any specific

7      page in front of him.  No.

8              MR. DeGROOT:  Okay, that's the page that you --

9              MR. MAKOUS:  It's 144 A.

10             Yeah, but I'm just opening it.  We'll get to a

11     page.

12             MR. DeGROOT:  Okay, well, that was the page it

13     was open to.  I'm sorry --

14             MR. MAKOUS:  Okay.

15             MR. DeGROOT:  -- for presuming.

16             MR. MAKOUS:  No problem.

17     BY MR. MAKOUS:

18         Q.  Let's go to question number 2, okay.

19             You have the exhibit numbers, and I don't.

20             It's Exhibit D.

21         A.  Okay.

22         Q.  Let's look at the responses to question number

23     2.

24             And just so we're clear, sir, it says -- and

25     agree -- agree with me, or you could disagree, if you're

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1   on the wrong page, but it says, number 2, quote:

2          "What does it mean?  Please specify."

3          Do you see that, sir?

4     A.   Yes.

5     Q.   Okay.  Do you have any quibble with that

6   question, probing the state of mind of the respondents

7   in this case?

8     A.   No, actually, I think that's -- it will be my

9   expectation that most people know that "DMV" stands for

10  Department of Motor Vehicle.

11    Q.   So you would agree it's widely known and

12  recognized as an acronym for a State agency, wouldn't

13  you?

14    A.   For the Department of Motor Vehicles.  I don't

15  know if people know it's a State agency or not, but I do

16  think people know it's Department of Motor Vehicles.

17    Q.   Okay.  Now let's turn to the next survey, which

18  is -- I guess is Exhibit E, sir, in Exhibit 144.

19         All right.  Now you see that Dr. Maronick went

20  through a number of -- of qualifying questions, and sort

21  of essentially setting this up in an internet

22  environment.

23         Question number 1 or statement number 1 and its

24  following question says:

25         "Assume you had received a traffic

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1    ticket. Would you consider going to

2    traffic school?"

3    Do you have any problem with that question?

4    A. It's the thing I said in my report; it's

5    phrased so broadly that pretty much everyone, I mean,

6    not exactly everyone, but overwhelming majority of

7    people, especially online-pool members who want to earn

8    points or prizes or whatever it is, are likely to say

9    "Yes." Why would you say "No" to the fact that you

10   would consider going to a traffic school?

11   Q. Well, you've studied the traffic-school market,

12   have you not?

13   A. Well, just in the context of this case, I just

14   visited different websites.

15   Q. Okay. What websites did you visit?

16   A. Well, one was --

17   Q. Before you signed your report on August 2nd;

18   not before today. Before you signed your report on

19   August 2nd, what websites did you visit?

20   A. Well, some that appeared on the Google search

21   results; and I do know for a fact that I went to

22   trafficschool.com; that one that I do remember. But I

23   visited some others. I just don't remember.

24   Q. All right. And of course you studied the

25   market for traffic school consumption of services,

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1    didn't you?

2        A.  What do you mean by that?

3        Q.  You looked at the amount of money people spend

4    on traffic school, the -- you evaluated the number of

5    people that go to traffic school, their age range; you

6    studied all those things, didn't you?

7        A.  No.

8        Q.  Okay.  Let's go through your report, on page 11

9    in Exhibit 1001.

10        Yeah.  Thank you, sir.

11        Just so we're referenced, Counsel, it's, quote,

12    did the Maronick survey's respondents represent the

13    relevant consumer universe, question mark.

14        That is a question that you posed, is that

15    correct, Dr. Simonson?

16        A.  Yes.

17        Q.  All right.  Paragraph 27, you are talking

18    about, I believe, the very first survey; and you say,

19    the only thing you say about it, I think, is, quote, I'm

20    looking at paragraph 27:

21            "Since this survey merely tested

22            whether people knew what 'DMV' stands for,

23            it was redundant and provided no new

24            information."

25        What were you referring to there?  Was

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1    A.  -- survey was redundant.

2    Q.  Okay, in other words, it proved what everybody

3  would already understand and agree to?

4    A.  Yes, I think so.  Again, I haven't studied it;

5  but I would think so, yes.

6    Q.  Now you go to number 28, and now you're

7  shifting to the other three surveys.

8         First, you say, quote:

9         "In all three cases, the respondents

10        were members of the Zoomerang internet

11        panel, who answered that A, they would

12        consider taking an online traffic-school

13        course; and B, they would use Google or

14        Yahoo! search engines to find an online

15        traffic school."

16        Now do you have a problem with that particular

17  screening questions, series of screening questions?

18    A.  Yeah, whatever I said in my report.

19    Q.  Well, I'm reading your report.

20    A.  What's that?

21    Q.  I'm reading your report.

22    A.  Okay.

23    Q.  So what's your problem with it?

24    A.  Well, as I said, the first one, namely, "would

25  consider going to traffic school," I thought that was

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1   too broad.

2          And with respect to the fact that they -- which

3   -- to which search engine they would use, when, sometime

4   in the future, they would be looking for online traffic

5   school, seems to me like that's something that would be

6   very hard for people to know; and how would you know

7   which search engine you would use, say, four years from

8   now, when you get a ticket, assuming you will decide

9   to -- to take an online traffic school?

10      Q.  Why is that any different than a mall-intercept

11  survey, where you ask somebody are they going to buy a

12  new car in the next two years?

13      A.  Well, I -- normally, you don't ask about two

14  years, you ask more concretely.

15          In most of the survey that I conduct, we

16  talking about -- I mean, depends; varies from one survey

17  to the next; it would be six months, say.

18      Q.  It's commonly done, somewhere between six

19  months and two years, in your business?

20      A.  I -- I don't think --

21      Q.  I've seen all of it.

22          MR. DeGROOT:  Objection.

23          MR. MAKOUS:  Okay.  Let me just --

24          MR. DeGROOT:  Please ask questions --

25          MR. MAKOUS:  Yeah, I -- I withdraw --

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1   they're experienced; they're supervised, on location.

2      Q.  But you're aware that surveys have been

3   excluded in litigation because of the flawed methodology

4   in the field, are you not?

5      A.  What specifically are you referring to when you

6   say "in the field"?

7      Q.  In the mall, in the case of a mall intercept.

8      A.  You mean like poor behavior of interviewers?

9   I'm not sure what you're asking about.

10     Q.  You're not aware of any laws -- you haven't

11   read the case law in this, then, have you?

12     A.  Some cases I have read.

13     Q.  All right.  Let's go on to number 31.

14         You're talking about panel members quickly

15   learn things.  You're talking about generally, again,

16   your sort of criticism of internet panels; is that

17   basically all you're saying there, 31's a general

18   observation?

19     A.  Yeah, I make the point that's stated here.

20     Q.  Okay.

21     A.  That's what I'm saying.

22     Q.  And you're not specifically referring to any of

23   the internet panelists that were used by Dr. Maronick?

24     A.  That's correct.

25     Q.  All right.  Let's go to 32.

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1           I think we've talked about this a little bit.

2           Yeah, we've talked about that.

3           Let's go to paragraph 33.

4           Paragraph 33 is an interesting paragraph,

5   because at the end of it, you say, quote:

6               "I do not know the exact percentage of

7           all California consumers who have taken

8           online or offline traffic schools, but the

9           percentage of panel members claiming to

10          have attended a traffic school appears

11          high," close quote.

12          That is your statement, right, sir?

13      A.  It is.

14      Q.  And aren't you essentially just contradicting

15  yourself there?  You really don't know what you're

16  talking about when you say that sort of a sentence, are

17  you?

18          MR. DeGROOT:  Objection, argumentative.

19          THE WITNESS:  No.

20  BY MR. MAKOUS:

21      Q.  Okay.  You can't give me --

22      A.  I think it's a very coherent sentence.

23      Q.  Okay.  How can you admit to me that you haven't

24  studied the traffic-school market, and then tell me that

25  the percentage of panel members claiming to have

1    attended traffic school appears high?

2       A.  Okay --

3       MR. DeGROOT:  Objection, argumentative.

4       THE WITNESS:  -- I think that's a matter of

5    fact; and there are probably statistics somewhere about

6    what percentage of all, say, California residents who

7    have attended online traffic school.  I don't have that

8    number.

9    BY MR. MAKOUS:

10       Q.  Okay.  That's good.

11       Next paragraph, 34, you say, quote:

12           "A large percentage of drivers are

13           over 60, and no reason was provided for

14           excluding them from the sample."

15       Let's stay with the first part of that

16    sentence.  "A large percentage of drivers are over 60."

17    In California, what percentage is that?

18       A.  I don't know the exact percentage.

19       MR. MAKOUS:  Okay.  All right.  Now -- you want

20    to take another break?

21       (A recess was taken.)

22    BY MR. MAKOUS:

23       Q.  Placing before the witness Exhibit 148.

24       You can leave your other report open for a

25    minute --

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1     don't really care.

2          Let me just go on to --

3          MR. DeGROOT:  Well, I care about the accuracy

4     of the record; so --

5          MR. MAKOUS:  Well --

6          MR. DeGROOT:  -- if we start talking about

7     things that aren't true, I do want to point that out,

8     so -- and the -- and what you just said wasn't true, so

9     I was --

10         MR. MAKOUS:  No, I --

11         MR. DeGROOT:  -- pointing that out.

12         MR. MAKOUS:  -- didn't say anything that wasn't

13     true.  The witness has testified how he's testified.

14         Let me just start the examination.

15         MR. DeGROOT:  Sure.

16         MR. MAKOUS:  And we're --

17         MR. DeGROOT:  That's fine.

18         MR. MAKOUS:  -- we're losing time.

19   BY MR. MAKOUS:

20     Q.  Dr. Simonson, you reviewed Dr. Maronick's

21     report, and you offered your criticisms in your August

22     2nd expert report; is that correct?

23     A.  I did.

24     Q.  All right.  So the question I asked you was, do

25     you have any objections to the stimuli that's set forth

**Ben Hyatt Certified Deposition Reporters**
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1   in study 3, which is a page of the California traffic

2   schools website from dmv.org?

3       A.  Yes.

4       Q.  And what are your objections?

5       A.  It's just one page.  Respondents were not

6   allowed to view additional pages.

7       Q.  What's the relevance of whether they did or --

8   were or were not allowed to view additional pages on the

9   website?

10      A.  Well, simple; because additional pages would

11  educate them about the company or the outfit whose

12  website this is.

13      Q.  But why would a consumer do that?  If they were

14  looking for a traffic school in California, and they

15  click onto this page, why would they go to any

16  additional pages?

17      A.  Well, they probably will.  Because they need

18  additional information.

19      Q.  If they were just looking for a traffic school,

20  and they clicked on the icon "I drive safely", and that

21  was their purpose, why would they go back to the dmv.org

22  website for any additional information?

23      A.  Typically, consumers examine different web

24  pages.  It seemed highly unlikely that people would just

25  look at one page and say, "Okay, go ahead; let's start

1    traffic school." It just doesn't make sense.

2        Q.  Why not?

3        A.  Because that's an important decision, and

4    people would not base it on just one page.  It's highly

5    unlikely.  That's not the manner in which consumers make

6    such decisions.

7        Q.  What if that was the only purpose for which

8    they went to that page, was to find a traffic school

9    recommended by the DMV?  Wouldn't they have found and

10   solved their issues, and move onto another website, or

11   off the computer altogether?

12       A.  As I said, they will gather additional

13   information from this website, from other websites; in

14   other words, they would click on various pages in order

15   to obtain information needed in order to make that

16   decision.

17       Q.  Okay.  That's what you say.

18           Let's say a consumer clicks on "I drive

19   safely", and goes to the next -- wherever that takes

20   him.

21           Have you studied what that web page looks like

22   where they navigate to when they click the "I drive

23   safely" icon in the dmv.org website?

24       A.  No; there are all kinds of links they could

25   click on, so I -- I didn't study that particular link.

1      Q.  Okay.  You -- so you've offered a fairly --

2   well, whatever.  I won't characterize it, because

3   Mr. DeGroot will get mad at me; but you've offered an

4   opinion about the consumers going to other pages.

5           What other -- what specific other page would a

6   consumer go to after coming to this page, looking for

7   traffic school, and finding this?  What next page would

8   they go to?

9      A.  Whatever they choose.  I mean, that's an

10  empirical question.  Each consumer may choose a

11  different web page.

12          We also don't know how they got to that

13  particular page, which is also important.

14     Q.  Well, they were told by the survey that -- to

15  assume they went to a Google search, were looking for

16  online traffic schools, and were put on this page.

17     A.  Okay, so --

18     Q.  Which is one of the ways, by the way, the

19  defendants' website operates; did you know that?

20     A.  Right, but they should have -- in order to

21  mirror marketplace conditions, they should have started

22  with the search-engine results, then told, "Okay, now

23  assume you click on them," so they have the information

24  that they -- presumably they had been exposed to, on the

25  search results; then they would go, if you told them to

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1    that response.

2            If you see twice --

3            MR. MAKOUS:  Okay.

4            THE WITNESS:  -- it has greater impact than if

5    you see it once; and there is always a possibility that

6    maybe you didn't notice it, in the context of the

7    survey, where you're not really looking for traffic

8    school; you just want to complete the survey quickly; so

9    if you see it twice, is -- if it appears twice, there is

10   a high likelihood that you will notice it.

11   BY MR. MAKOUS:

12       Q.  Well, Dr. Maronick instructs the survey

13   respondents to take as much time as they normally

14   would.  Isn't that a fair instruction to a survey

15   respondent?

16       A.  Right; but with the proper stimuli, that would

17   be good.

18       Q.  Okay.  Are you aware -- you've studied how

19   people work -- you're an expert on how people --

20   consumers view web pages, aren't you?

21       A.  To the extent that there is anyone who is

22   expert in that very narrow area, yes.

23       Q.  Okay.  Are you aware of how long consumers

24   spend on any specific screen, when they're presented

25   with a screen?

1     A.  It really depends.  There are some screens that

2    people spend a great deal of time on, and others where

3    they don't.

4     Q.  All right, and you didn't attempt to measure,

5    on dmv.org's own website, how long people spent on this

6    specific page, did you?

7     A.  I did not conduct any survey.

8     Q.  Okay.  And are you aware that web pages -- that

9    consumers don't scroll all the way down to the bottom,

10   just because you can?

11    A.  Sometimes they do and sometimes they don't.

12    Q.  And nowhere on this page, this is defendants'

13   page, sir, do they invite the consumer to scroll, do

14   they?

15    A.  No.

16     MR. DeGROOT:  Objection; assumes facts not in

17   evidence, misleading.  Argumentative.

18   BY MR. MAKOUS:

19    Q.  Your answer is "No"?  Your answer is "No"?

20    A.  My answer is that you let the consumers do what

21   they wish; in other words, in this case, the survey

22   respondents, if they are not inclined to scroll to the

23   bottom, they'll not do that.

24    Q.  Are you aware that it takes three -- do you

25   know what a page fold is, in an internet concept, do you

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1  getting married.

2      Q.  But you've not studied the factors that people

3  take into consideration when buying an online traffic

4  school, have you, sir?

5      A.  No; I've studied general principles of consumer

6  decision-making.  That's what I do research on; that's

7  what I teach.  That's my expertise.  And on that basis,

8  I can apply or determine whether a particular decision

9  is relatively higher involvement or not.

10     Q.  But you've not studied it, have you, traffic

11 schools?

12     A.  I've not conducted any surveys in this case.

13     Q.  All right, and you've not studied any marketing

14 literature about traffic schools and what's involved in

15 selecting a traffic school, have you, sir?

16     A.  There is no marketing literature on that

17 specific subject.  That's why we learn general

18 principles that would apply across categories.

19     Q.  Did you attempt to locate marketing literature

20 on this and were unable to find it, is that what you're

21 telling me?

22     A.  No.

23     Q.  Or are you telling me, because you say it, it

24 is so?

25         MR. DeGROOT:  Objection, argumentative.

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1   BY MR. MAKOUS:

2      Q.  Please answer that.

3          I'm trying to understand his answer.

4      A.  Well, there is no study.  If you can show me a

5   study focusing on that, I would stand corrected.  I've

6   not encountered any study.  In my work as a teacher and

7   a researcher, I come across many studies.

8      Q.  But you don't know the profile of an average

9   traffic school online taker in the State of California,

10  do you?

11     A.  What do you mean by "profile"?

12     Q.  Demographic profile.

13     A.  I haven't looked at the demographic profile of

14  the average.

15     Q.  Do you have any reason to disagree with

16  Dr. Maronick's demographic profile, as determined by

17  conducting these surveys, and the various questions he's

18  asked?

19     A.  At what -- I didn't know that he determined

20  what the demographics were, aside from asking people,

21  those who were respondents in his survey.

22     Q.  Correct.

23          Do you have any reason to dispute the

24  demographic profile that he created, by asking questions

25  of the survey respondents, as being correct or incorrect

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1    in any way?

2        A.  I haven't looked at the demographics of the

3    people who actually take that school.  I think one issue

4    of those pools is it tends to include more females, and

5    I'm not sure if that's the case here, than the general

6    population.

7        Q.  Okay.  Are you aware that it was almost a 50-50

8    split between men and women, in these various surveys

9    that Dr. Maronick conducted?

10       A.  I don't remember that; but if you tell me, I'll

11   take your word, presentation.

12       Q.  Now let's turn to survey number 4; and survey

13   number 4 is a different kind of survey.

14           I want you to turn to -- again, I'm on Exhibit

15   144.

16           MR. DeGROOT:  Which is now Exhibit G --

17           MR. MAKOUS:  Thank you.

18           MR. DeGROOT:  -- you're going to discuss?

19           MR. MAKOUS:  Yes.

20           Let me make sure I've got it.

21           Pardon me for reaching here.

22           Let's see what that says.

23           Yeah.

24           Witness has in front of him Exhibit G of

25   Dr. Maronick's report.  And it says Traffic School dash

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**PROOF OF SERVICE**
Trafficschool.com, Inc. v. Edriver, Inc. - File No. 25162-14

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is . I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On November 9, 2007, I served the following document(s):

**PLAINTIFFS' DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIEU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/2007

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

Brian M. Daucher, Esq.
Joseph H. Tadros, Esq.
Amy Merlo, Esq.
SHEPPARD MULLIN RICHTER & HAMPTON
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 513-5100
bdaucher@sheppardmullin.com
jtadros@sheppardmullin.com
amerlo@sheppardmullin.com

The documents were served by the following means:

[X] **(BY E-MAIL OR ELECTRONIC TRANSMISSION)** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 9, 2007, at Los Angeles, California.

Edwina G. Martinez

4841-3304-6530.1

-4-

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF ITAMAR SIMONSON IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH ON 11/8/20