ORIGINAL

1 DAVID N. MAKOUS (State Bar # 082409)
  makous@lbbslaw.com
2 DANIEL C. DECARLO (State Bar # 160307)
  decarlo@lbbslaw.com
3 MINA I. HAMILTON (State Bar # 213917)
  hamilton@lbbslaw.com
4 LEWIS BRISBOIS BISGAARD & SMITH LLP
  221 North Figueroa Street, Suite 1200
5 Los Angeles, California 90012-2601
  Telephone: (213) 250-1800
6 Facsimile: (213) 250-7900

7 Attorneys for Plaintiffs
  TRAFFICSCHOOL.COM, INC. and
8 DRIVERS ED DIRECT, LLC, California companies.

9

10                    UNITED STATES DISTRICT COURT

11                   CENTRAL DISTRICT OF CALIFORNIA

12

13 TRAFFICSCHOOL.COM, INC.,           ) Case No. CV 06-7561 PA (CWx)
14 a California corporation; DRIVERS ED )
   DIRECT, LLC, a California limited    ) The Honorable Percy Anderson
15 liability company,                   )
                                        ) PLAINTIFFS' **DESIGNATION OF**
16               Plaintiffs,            ) **SELECTED DEPOSITION**
                                        ) **TESTIMONY** OF KENNETH
17       vs.                           ) HOLLANDER IN LIEU OF CROSS-
                                        ) EXAMINATION PURSUANT TO
18 EDRIVER, INC., a California          ) COURT ORDER ISSUED FROM
   corporation; ONLINE GURU, INC.,      ) BENCH ON 11/8/2007
19 FIND MY SPECIALIST, INC., and        )
   SERIOUSNET, INC., California         )
20 corporations; RAVI K. LAHOTI, an     ) Trial:    November 6, 2007
   individual; RAJ LAHOTI, an individual; )
21 and DOES 1 through 10,                )
                                        )
22               Defendants.           )
                                        )
23 _____ )

24

25       Plaintiffs' designate the following testimony of Kenneth Hollander to impeach

26 particular allegations contained in the trial declaration of Kenneth Hollander, signed

27 August 21, 2007.

28 ///

---

4831-4364-9538.1

The parties in this case have met and conferred and agreed that in order to expedite the trial and conserve judicial resources, the parties would, to the extent possible, offer evidence by deposition excerpts under the terms of this Court's minute order dated November 8, 2007.

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| *Kenneth Hollander-Volume I (August 21, 2007)* | | |
| Page 74:10-14 Page 75:5-7 Page 100:16-21 | Internet surveys are acceptable. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 83:15-25 Page 84:1-6 Page 85:4-14 Page 86:7-15 | The DMV.ORG survey stimuli was artificially set for top page U.S. Map only. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 89:1-13 | Hollander does not attempt to measure the perception of the consumers as to any search results on any Google page. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 90:10-25 Page 91:1-24 Page 93:1-6 | Hollander selected four pages of stimuli to be gathered together on his own without regard to the real consumer choices. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF K. HOLLANDER IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 94:6-25 Page 95:1-13 | Hollander artificially included four states, Alabama, Maryland, Arizona, and New Mexico that do not have DMV's. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 94:6-25 Page 95:1-13 Page 96:24-25 Page 97:1-3 | Hollander did not try to separate out the Non-DMV states with results from the DMV states. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 97:21-25 Page 98:1-5 | Hollander's alleged control group was disproportionate in number to his test group. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 99:21-25 Page 100:1-7 | Hollander doesn't know how many Californians were in the "Test Group" and how many were in the "Control Group". | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 109:4-13 Page 111:5-24 Page 112:19-25 Page 113:1-12 | Hollander did not attempt to measure consumer perception of the domain name DMV.ORG and its sponsorship or ownership. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF K. HOLLANDER IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH

| Page: Line(s) | Brief Summary of Testimony and Associated Exhibit(s) | Topic |
|---|---|---|
| | **Deposition Testimony Index** | |
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 113:22-25 Page 114:1-10 | Hollander's initial question to the public regarding affiliation is confusing. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 115:15-19 | Hollander did not know if the public understood what "entities" means. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 118:19-24 | His definition of "entity" is unusable. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 120:2-20 | The survey is irrelevant because there are many "entities" in the DMV.ORG pages irrelevant to this litigation. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 125:10-25 Page 126:1-12 | Survey experts should emulate real world as best as possible. Hollander did not. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

PLAINTIFFS' **DESIGNATION OF SELECTED DEPOSITION TESTIMONY** OF K. HOLLANDER IN LIU OF CROSS-EXAMINATION PURSUANT TO COURT ORDER ISSUED FROM BENCH

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 129:4-22 | Hollander allegedly tested perception only after respondents had looked at all four pages that were selected. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 131:22-25 Page 132:1-19 | Hollander admits that no one on the actual DMV.ORG website is asked to "scroll" anywhere. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 141:13-22 | Hollander doesn't know what the real DMV agency is in the non-DMV States. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 151:3-20 | Hollander did not test the state of mind at any point during being on actual DMV.ORG webpage, only after all four pages were shown. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 154:22-25 Page 155:1-5 | Demographics Hollander used are same as Maronick's. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

| Deposition Testimony Index | | |
|---|---|---|
| **Page: Line(s)** | **Brief Summary of Testimony and Associated Exhibit(s)** | **Topic** |
| Page 156:17-25 Page 157:1-16 | Hollander used same question about Google and Yahoo search engines as Maronick. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 175:17-25 Page 176:1-10 | Hollander Survey does not determine "state of mind" of respondent when answering question about "affiliation" between "entities" on the four pages shown to the viewer. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 180:16-25 Page 181:1-2 | Use of word "affiliated" is not known to be understood by survey respondents. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 184:21-25 | Hollander does not know what the viewers think of his use of the word "endorse" or "sponsor" in survey. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

| Page: Line(s) | Brief Summary of Testimony and Associated Exhibit(s) | Topic |
|---|---|---|
| Page 197:10-25 Page 198:1-25 Page 199:1-10 Page 200:3-25 Page 201:1-10 | Hollander "coding" of responses of survey does not know if respondent means "DMV" when they answer "DMV.ORG" and did not determine their state of mind. Therefore, coding is inaccurate. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 204:16-25 Page 205:1-18 | Hollander asked "no-opinion" respondents lastly if they "had an opinion as sponsorship and endorsement". | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 207:22-25 Page 208:1-3 | "Affiliation" is broad enough to include "endorsement" or "sponsor". | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |
| Page 228:10-25 Page 229:1-2 | Hollander agrees that no "affiliation findings" in non-DMV States is lower than that in "California", yet he combined them in his results. | Declaration of Kenneth Hollander, ¶11, 13, 17-18, 20-28 |

DATED: November 8, 2007    LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
DAVID N. MAKOUS
DANIEL C. DECARLO
MINA I. HAMILTON
Attorneys for Plaintiffs

4831-4364-9538.1                                    -6-

25/12-14

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

------------------------------------

TRAFFICSCHOOL.COM, INC.,          )

a California corporation; DRIVERS  )

ED DIRECT, LLC, a California       )

limited liability company,         )

            Plaintiffs,            )

       vs.                         )  No. CV 06-7561 PA

EDRIVER, INC., a California        )      (Cwx)

corporation; ONLINE GURU, INC., a  )

California corporation; DOES 1     )

through 10,                        )

            Defendants.            )

------------------------------------

        Deposition of KENNETH HOLLANDER, at

        650 Town Center Drive, Fourth Floor

        Conference Room, Costa Mesa, California

        commencing at 10:26 a.m. Tuesday,

        August 21, 2007 before Rachael L. Hall,

        CSR Certificate No. 11104.

    PAGES 1 - 254

CERTIFIED COPY



BENHYATT
Certified Deposition Reporters
17835 Ventura Blvd. Suite 310 Encino, CA 91316
P 888.272.0022 F 818.343.7119
www.benhyatt.com

Kenneth Hollander - 8/21/2007

1    Maronick report.  He said that he took exception to the

2    procedures undertaken in the Maronick report.  He wanted

3    a neutral nonleading look at the real world, and for me

4    to come back and tell him what it was no matter what the

5    results were.

6         Q    Do you believe you have obtained a real world

7    evaluation of perception by your survey?

8         A    I believe I came as close as I'm capable of

9    coming to.

10        Q    Would you agree that no survey is perfect?

11        A    I couldn't agree more with that.

12        Q    Would you agree that every surveyor can be

13   challenged on his assumptions and his methodologies?

14        A    I would be shocked if that wasn't true.

15        Q    Okay.  Mr. Daucher, it sounds like, told you

16   what he took issue with in those early conversations; is

17   that correct?

18        A    That's incorrect.

19        Q    You mean he left it totally up to you to decide?

20   All he said is we have issues with it but didn't tell you

21   what those issues were?

22        A    That's correct.

23        Q    He never used the words "leading question" in

24   any of those comments?

25        A    He did not.

Page 74

Kenneth Hollander - 8/21/2007

1       Q       Did he ever tell you that he had any issue with

2    the fact that our client had conducted an Internet

3    survey?

4       A       He did not.

5       Q       There's nothing wrong with Internet surveys, is

6    there?

7       A       I certainly hope there is not.

8       Q       Did he tell you that he thought that the stimuli

9    presented were improper stimuli by Dr. Maronick?

10      A       I'm answering all the questions.   I'm giving you

11   a global first response.   He told me nothing about the

12   Maronick report, except he thought it was flawed and he

13   wanted me to conduct a survey that was not flawed.

14      Q       Mr. Daucher told you that he had problems with

15   Dr. Maronick's methodologies, didn't he, in this phone

16   conversation?

17      A       By methodology, do you mean using the Internet?

18   I don't have any idea what you mean.

19      Q       Okay.   Sounded like from your answer earlier

20   that Mr. Daucher told you when he engaged you that he,

21   Mr. Daucher, took issues with Dr. Maronick's

22   methodologies; is that correct?

23      A       You're asking me to recall a conversation of

24   over a month ago.   I'm telling you he said that -- the

25   best of my recollection, that the Maronick survey was

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Kenneth Hollander - 8/21/2007

1     A     That's correct.

2     Q     Would there be an instruction on the screen

3   telling the respondent not to do that?  What would

4   happen?

5     A     What would happen -- getting now to

6   particulars -- Greenfield knows the states that the

7   respondent resides in, so you've got a fail-safe there.

8     Q     So what happens?

9     A     Mechanically, you can't go there.

10    Q     Is there a screen message prompted to this

11  viewer, the respondent, don't do that, go to your state

12  or please select your own state, or is it time-out?  Do

13  you get knocked out?

14    A     Let me take a big step back and rephrase it.

15          Each respondent in all five states is presented

16  with the relevant state material to the state in which

17  they resided.

18    Q     So what was the point of having the US map up

19  there first?

20    A     Because that's the way everybody starts.

21    Q     Is it your belief that all of the traffic to the

22  DMV.ORG website comes through the United States home page

23  with a map?

24    A     No, sir, it is not.

25    Q     When you meant everybody starts that way,

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1  everybody in your survey starts that way, not everybody

2  in the real world, correct?

3      A    Yes, you are right.  And it seemed to me that of

4  the many ways that one could navigate through these

5  various websites, that was not an unreasonable starting

6  place, so I selected it.

7      Q    Did Mr. Daucher or anybody give you information

8  that indicated the actual traffic to that website and how

9  it enters, the reality of that?

10     A    I believe that I was told that there are many

11 ways that people can get into that website and maneuver

12 through it and that there was no one set way.

13     Q    Who told you that?

14     A    I believe Mr. Daucher.  I don't know who else

15 would tell me there are many ways through it.  I selected

16 a -- I selected a series of screens that I thought would

17 be reasonably representative of the issues at hand that

18 would display the litigated issue as a reasonably prudent

19 respondent or consumer may see it when reasonably

20 browsing those websites.  So those are my decisions.  Is

21 that the only way people could have gotten there?  No, it

22 was not the only way that people could have gotten there.

23     Q    In your professional opinion, it's your judgment

24 as to what is reasonable and correct in designing a

25 survey?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1       A    My judgment is that this was a reasonable way to

2   introduce the issue in an unbiased fashion presenting all

3   of the issues that were relevant.

4       Q    Would it have been reasonable if you had been

5   told that only one percent of the traffic comes in

6   through that United States top page?  Would that still be

7   a reasonable assumption on your part?

8       A    Had I been told that, I have no idea what I

9   would have done.  I didn't ask people to make a decision

10  on the first page.  I asked them to make a series of

11  decisions, series of judgments, to express a series of

12  opinions after they had navigated, had been exposed to

13  four separate pages, three of which had DMV.ORG on them,

14  three of which had CAR.ORG on them.

15      Q    Why did you select four pages, not six, not one,

16  not 17?

17      A    It was in my judgment a reasonable compromise

18  between the potential number that could clearly exceed

19  four and I didn't want to fatigue the respondents.  It

20  was certainly more than one.  It was in my judgment, my

21  sole professional judgment, this was a reasonable way to

22  present the issue.

23      Q    You never interviewed the client, did you, the

24  client being DMV.ORG?

25      A    I never spoke with them.

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Kenneth Hollander - 8/21/2007

1    Q    You based this on any information that Mr.

2  Daucher gave you, correct, or is it independent of

3  Mr. Daucher?

4    A    The selection of four screens?

5    Q    Yes.

6    A    That's independent of Mr. Daucher.

7    Q    Then you must have looked at some website,

8  traffic information to determine the reliability of your

9  assumption, correct?

10    A    No, sir, I did not.  To repeat myself, I went

11  where I started.  It was the United States map, then I

12  clicked my way through as a resident of California and

13  these were the screens that came up and they came up in

14  that order and it made sense to me to use these four

15  screens.

16    Q    Do you understand the relationship between

17  search engine results and the DMV.ORG website in any

18  respect?

19    A    I'm not sure.

20    Q    Do you know what a search engine is?

21    A    I do.

22    Q    Do you know what sponsored links are?

23    A    I do.

24    Q    Do you know what a meta data is?

25    A    I know the concept of meta.

Page 86

1    Q   Okay.  Can you tell me today if you did or did

2 not attempt to test the perception of the consumers when

3 they were presented with search results on the Google

4 page relating to DMV.ORG?

5    A   It does not.

6    Q   Why is it you chose not to test that?

7    MR. DAUCHER:  Lacks foundation.

8 BY MR. MAKOUS:

9    Q   Go ahead.

10   A   Because I understand the issue to be, is or is

11 not DMV.ORG confusing, and I thought that the procedure

12 that I selected addressed that issue rather handsomely,

13 so I did it.

14   Q   Okay.  Did counsel tell you not to test or

15 design a survey for the search engine but to focus solely

16 upon the website at DMV.ORG?

17   A   Counsel told me to address the issue -- to

18 address the issue of when respondents see the DMV.ORG web

19 pages, what conclusions, if any, do they draw.

20   Q   Okay.  So you felt your engagement, based on the

21 directive of Mr. Daucher, was to limit it to the DMV.ORG

22 web pages and not anything else?  Would that be correct?

23   A   What would be the "anything else"?

24   Q   Search engine results, for example.  Just answer

25 my question.  Don't worry about anything else.  Just tell

Kenneth Hollander - 8/21/2007

1    me.

2          A       I want to understand your question.

3          Q       Right.  You understood your engagement to be

4    limited by Mr. Daucher to test only the DMV.ORG website

5    and how consumers proceed to the website; is that

6    correct?

7          A       My assignment -- I think the answer to that

8    question is yes.  My assignment was what do consumers

9    take away when they view the DMV.ORG web pages.

10         Q       Okay.  Now, you must have been told by

11   Mr. Daucher to assume that consumers navigate through

12   half a dozen or so of those pages at any one time; is

13   that true?

14         A       Half a dozen of which pages?

15         Q       Of the DMV.ORG web pages.

16         A       I believe that Mr. Daucher says -- told me that

17   consumers navigate through them in many different ways.

18         Q       That was the sum total of his comments on that

19   particular issue to you that you recall?

20         A       Do you mean did he give me a specific number of

21   pages?

22         Q       Yes.

23         A       I think he may have said something like five or

24   six pages.

25         Q       Okay.  Did that affect your survey design in any

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com