# EXHIBIT  D

1 | DAVID N. MAKOUS (State Bar # 082409)
makous@lbbslaw.com
2 | MINA I. HAMILTON (State Bar # 213917)
hamilton@lbbslaw.com
3 | LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
4 | Los Angeles, California 90012-2601
Telephone: (213) 250-1800
5 | Facsimile: (213) 250-7900

6 | Attorneys for Plaintiffs
TRAFFICSCHOOL.COM, INC. and DRIVERS ED DIRECT, LLC,
7 | California companies.

8 |

9 | UNITED STATES DISTRICT COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | TRAFFICSCHOOL.COM, INC.,                  ) Case No. CV 06-7561 PA (Cwx)
a California corporation; DRIVERS ED      ) The Honorable Percy Anderson.
12 | DIRECT, LLC, a California limited        ) The Honorable Carla Woehrle.
liability company,                        )
13 |                                         ) JOINT STIPULATION OF THE
                 Plaintiffs,               ) PARTIES REGARDING
14 |                                        ) PLAINTIFFS' MOTION TO
        vs.                                ) COMPEL THE PRODUCTION OF
15 |                                        ) DOCUMENTS AND FOR
EDRIVER, INC., ONLINE GURU,               ) SHORTENED HEARING OF SAME
16 | INC., FIND MY SPECIALIST, INC.,         )
and SERIOUSNET, INC., California          ) [Filed Concurrently with Declaration of
17 | corporations; RAVI K. LAHOTI, RAJ      ) Mina I. Hamilton in Support of Motion
LAHOTI, individuals,                      ) and Declarations of Brian M. Daucher
18 |                                        ) and Declaration of Steve Moretti in
                 Defendants.               ) Opposition]
19 | _____ )
                                            ) Trial Date:      10/30/2007
20 |                                           Pretrial Date:   10/5/2007
                                              Discovery Cut-Off: 8/20/07
21 |

22 |         The parties hereby submit their joint stipulation pursuant to Local Rule 37-2.1

23 | and hereby jointly request that the motion be heard on a shortened notice schedule

24 | prior to discovery close (or after, if necessary). Although the parties have been

25 | diligent, the short discovery period in this case necessitates this request.[1/]

26 |

27 | _____

28 | [1/]Also, Defendants requested, and Plaintiffs granted, a few days additional time for
Defendants to submit their portion of the stipulation, as counsel for Defendants' had a family
emergency.
4830-7475-2001.1

1  compromises reflected and instead accepted production on those terms. (Daucher

2  Decl., ¶ 12.) But, now Plaintiffs inexplicably put at issue on this joint stipulation

3  requests which were previously compromised.

4       Defendants are still in the process of producing some remaining documents (as

5  are Plaintiffs), including additional emails and financial information. But, to date,

6  Defendants have produced over 4,000 pages of documents in this matter and have

7  made reasonable efforts to ensure that Plaintiffs get what they are entitled to by way of

8  discovery. (Daucher Decl., ¶ 13.)

9       In short, Plaintiffs' standing in this matter is tenuous, their intentions are suspect,

10 and their requests were extremely burdensome. In spite of these facts, Defendants

11 made good faith efforts at compromise - and believed many compromises had been

12 reached. Defendants submit that an objective review of the issues on this motion will

13 show that it is largely without substantive merit.

14 **II.    ISSUES IN DISPUTE**

15 **A.    Documents Related to Defendants' Revenues and Advertising Costs for**

16 **      DMV.ORG From 1999 to the Present [Nos. 11(b), 16, 18, 29]**

17 REQUEST FOR PRODUCTION NO. 11:

18      Since the inception of DMV.ORG, Documents sufficient to identify, for each

19 Referral Company and each Referral Link, any of the following:...

20      (b)    The total revenues generated by You from referral fees or other payment

21             collection (organized by state and by course or vendor type).

22 RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

23      Pursuant to meet and confer, Plaintiffs agreed to limit the definition of Referral

24 Companies and Referral Links to those that relate directly to driver's education or

25 traffic school services.

26      Defendants object to this request on the grounds that it is overbroad,

27 burdensome and oppressive in that it is not reasonably limited in time or scope.

28      Defendants further object to this request on the ground that it is vague and

EXHIBIT D  PAGE 17

1  ambiguous as to the term "other payment collection."

2        Defendants further object to this request on the ground that it is overbroad,

3  burdensome and oppressive in that it seeks documents outside the scope of Plaintiffs'

4  standing pursuant to the Court's orders of January 22, 2007 and March 15, 2007.

5        Defendants further object to this request to the extent that it seeks confidential

6  and proprietary business and financial information.

7        Without waiving the foregoing, Defendants provide the following response:

8  Once an appropriate protective order has been entered, Defendants will produce

9  documents sufficient to identify the number of referrals by state and by month since

10  January 1, 2006, and revenues by state and by month since January 1, 2006 for the

11  states in which Plaintiffs allege they compete with Defendants (i.e., Nevada, New

12  Mexico, Colorado, Idaho, Virginia, Texas, and Oklahoma).  Defendants will further

13  meet and confer with Plaintiffs after production of documents pursuant to request 10 as

14  to any other states in which Plaintiffs assert competition with Defendants.

15  *****

16  REQUEST FOR PRODUCTION NO. 16:

17        Documents sufficient to identify in dollars per annum/per quarter, from the first

18  use of DMV.ORG to the present, your gross receipts from sales, commissions, or any

19  other revenue generated from any of the following:

20        (a)    DMV.ORG;

21        (b)    Online Guru, Inc.;

22        (c)    eDriver, Inc.;

23        (d)    Find My Specialist, Inc.;

24        (e)    Serious Net, Inc.

25  RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

26        Defendants object to this request on the grounds that it is overbroad,

27  burdensome and oppressive in that it is not reasonably limited in time or scope.

28        Defendants further object to this request on the ground that it is overbroad,

4830-7475-2001.1

-7-

EXHIBIT___D___ PAGE 18

1  burdensome and oppressive in that it seeks documents outside the scope of Plaintiffs'

2  standing pursuant to the Court's orders of January 22, 2007 and March 15, 2007.

3      Defendants further object and will not produce documents responsive to this

4  request to the extent that it seeks documents related to non-party, non-respondents

5  Find My Specialist and/or Serious Net.

6      Defendants further object to this request on the grounds that it is burdensome,

7  oppressive and harassing in that it is partially duplicative of request 11.

8      Defendants object to this request on the grounds that it calls for information not

9  relevant to the subject matter of the action nor reasonably calculated to lead to the

10  discovery of admissible evidence.

11      Defendants further object to this request on the ground that it is burdensome and

12  oppressive in that it is not a proper document request but is better suited as an

13  interrogatory.

14      Defendants further object on the grounds that Plaintiffs have no viable legal or

15  equitable claim for damages in this case.  Plaintiffs concede they will not seek their

16  lost profits.  In this light, it would be improper, prior to a liability finding on false

17  advertising to force Defendants to turn over comprehensive financial information.

18      Defendants further object to this request to the extent that it seeks confidential

19  and proprietary business and financial information.

20  *****

21  REQUEST FOR PRODUCTION NO. 18:

22      Balance sheets and detailed Profit and Loss statements from the first use of

23  DMV.ORG to the present, for any of the following:

24      (a)    Online Guru, Inc.;

25      (b)    eDriver, Inc.;

26      (c)    Find My Specialist, Inc.;

27      (d)    Serious Net, Inc.;

28      (e)    DMV.ORG.

EXHIBIT __D__ PAGE __19__

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Defendants object to this request on the grounds that it is overbroad, burdensome and oppressive in that it is not reasonably limited in time or scope. Defendants further object to this request on the ground that it is overbroad, burdensome and oppressive in that it seeks documents outside the scope of Plaintiffs' standing pursuant to the Court's orders of January 22, 2007 and March 15, 2007.

Defendants further object and will not produce documents responsive to this request to the extent that it seeks documents related to non-party, non-respondents Find My Specialist and/or Serious Net.

Defendants further object to this request on the grounds that it is burdensome, oppressive and harassing in that it is duplicative of No. 11.

Defendants object to this request on the grounds that it calls for information not relevant to the subject matter of the action nor reasonably calculated to lead to the discovery of admissible evidence.

Defendants further object to this request on the ground that it is burdensome and oppressive in that it is not a proper document request but is better suited as an interrogatory.

Defendants further object to this request to the extent that it seeks confidential and proprietary business and financial information.

Defendants further object on the grounds that Plaintiffs have no viable legal or equitable claim for damages in this case. Plaintiffs concede they will not seek their lost profits. In this light, it would be improper, prior to a liability finding on false advertising to force Defendants to turn over comprehensive financial information.
*****

REQUEST FOR PRODUCTION NO. 29:

Documents sufficient to identify the dollar cost of advertising of DMV.ORG per annum/per quarter/per month.

RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

EXHIBIT __D__ PAGE __20__

1    Defendants object to this request on the grounds that it is overbroad,

2  burdensome and oppressive in that it is not reasonably limited in time.

3    Defendants object to this request on the grounds that it calls for information not

4  relevant to the subject matter of the action nor reasonably calculated to lead to the

5  discovery of admissible evidence.

6    Defendants further object on the grounds that Plaintiffs have no viable legal or

7  equitable claim for damages in this case.  Plaintiffs concede they will not seek their

8  lost profits.  In this light, it would be improper, prior to a liability finding on false

9  advertising to force Defendants to turn over comprehensive financial information.

10    Defendants further object to this request to the extent that it seeks confidential

11  and proprietary business and financial information.

12  **1.    Plaintiffs' Argument [10]**

13  **(a)    The Limited Extent of Defendants' Production and the Failure to**

14  **Articulate Any Reasonable Justification for Same**

15    Defendants continue to refuse to produce financial information related to the full

16  scope of the fruits of their illegal practices while providing no justification for this

17  failure.  Defendants have produced a litigation prepared summary of limited financial

18  data related to 2006 and 2007 only.  The summary appears related to traffic school and

19  drivers education revenues from a limited number of states.  Defendants have offered

20  no cogent explanation for their unilateral decision to limit even this abbreviated

21  financial discovery to 2006-2007 when DMV.ORG was launched in 1999.  Where is

22  the data from 1999-2005? Moreover, Defendants have failed to produce any data of

23  their advertising costs for DMV.ORG. [Hamilton Decl., ¶3.]

24    Thus, Plaintiffs find it necessary to move to compel the production of documents

25  sufficient for Plaintiffs to know: (a) the gross revenues for DMV.ORG from its

26  inception (1999) to the present, categorized by year [covered by request no. 16 and

27

28    _____

[10]The aforementioned requests relate to information related to Defendants' financial
information and as such the arguments are addressed together.

4830-7475-2001.1                    -10-

JOINT STIPULATION

EXHIBIT D   PAGE 21

1  18]; (b) the advertising costs for DMV.ORG from its inception (1999) to the present,

2  categorized by year [covered by request no. 29]; and (c) the gross revenues for traffic

3  schools and drivers education schools referral fees (organized by state and by course)

4  [covered by request no. 11(b)] . As will be shown next, each of these categories is

5  relevant to Plaintiffs' claims, and thus far has not been produced, even though

6  Plaintiffs agreed to limit the information sought to those categories.

7  **(b)    The Relevance of the Discovery Sought**

8        It is Ninth Circuit law that "[a] plaintiff who successfully establishes a violation

9  of § 43(a) is entitled to recover, "subject to the principles of equity, ... (1) *defendant's*

10  *profits*, (2) any damages sustained by the plaintiff, *and* (3) the costs of the action." 15

11  U.S.C. § 1117(a)... the preferred approach allows the district court in its discretion to

12  fashion relief, including monetary relief, *based on the totality of the circumstances*."

13  [Southland Sod Farms v. Stover Seed Co.;108 F.3d 1134, *1139 (9th Cir. 1997),

14  emphasis added].

15        According, Defendants' profits related to DMV.ORG are relevant in this action.

16  Moreover, Plaintiffs are entitled to discover *all gross profits attributable to the*

17  *misrepresentations of DMV.ORG*, which means all the profits derived from the

18  operation of DMV.ORG, not just Defendants' traffic school and drivers education

19  related revenues. "In assessing profits the plaintiff shall be required to prove

20  defendant's sales only. . ." 15 U.S.C. § 1117(a) .

21        The Defendants' anticipated argument that the issue of standing controls

22  discovery in this case or limits Plaintiffs discovery rights is a red herring, as standing is

23  simply a prerequisite to filing suit. Previously, Defendants asked the Court to dismiss

24  this case because of a lack of standing premised upon the fact that Plaintiff would be

25  unable to establish commercial injury. The Court expressly stated that based upon the

26  allegations pled in the First Amended Complaint (and reasserted in the SAC), Plaintiff

27  had articulated its status as a competitor and properly asserted competitive injury.

28  [See, Ex. E to Hamilton Decl.; ftn. 5 of Plaintiff's Introductory Statement]. While

EXHIBIT  D  PAGE  22

1    there is no evidence to support Defendants' argument of a lack of standing, they will

2    likely appeal again at some point to the Court for dismissal/adjudication based upon a

3    lack of standing defense. That Defendants will likely advance this argument again,

4    however, in no way provides the basis to refuse to produce discovery that is highly

5    relevant as the lawsuit is currently pled.

6        Next, the "totality of circumstances" approach to remedies mandated by the

7    Ninth Circuit encompasses Plaintiffs' demand for Defendants' *advertising costs*

8    related to DMV.ORG. Indeed, the Ninth Circuit has affirmed monetary awards based

9    on the *defendant's costs of advertising*. See, e.g., U-Haul Intern., Inc. v. Jartran, Inc.,

10    793 F.2d 1034, *1042 (9th Cir. 1986)(affirming district court's inclusion of the $6

11    million cost of its advertising campaign as "profits" within the meaning of Lanham Act

12    § 35, noting that "the district court assumed that the financial benefit [to the defendant]

13    was at least equal to the advertising expenditures.").

14        It is axiomatic, therefore, that in order for the Court to fashion relief based on

15    "defendant's profits" (including by measurement of Defendants' advertising costs),

16    Plaintiffs must necessarily be provided in discovery with information related to

17    Defendants' profits and advertising costs for DMV.ORG since its inception to the

18    present. Plaintiffs have no other way to obtain this information other than through

19    discovery by Defendants. Defendants' refusal to produce financial information related

20    to their profits and advertising costs since the inception of their illegal activities

21    effectively precludes Plaintiff from offering evidence that would support a measure of

22    recovery under Section 1117.

23        Finally, in addition to remedies, the information requested specific to the

24    revenues as to traffic schools and drivers education referrals by state and by course

25    type (i.e., traffic school/drivers ed) from the inception of DMV.ORG to the present is

26    also relevant for Plaintiffs in proving standing and liability issues. Plaintiffs allege

27    competitive injury based, in part, on the fact that both Plaintiffs and Defendants obtain

28    traffic school and drivers ed referral revenues, often from referrals to the same third

EXHIBIT D  PAGE 23

1   party.  Defendants should not be allowed to block discovery that will assist Plaintiffs

2   in proving likely or actual injury.

3         Moreover, being able to compare increased revenues in the traffic school and

4   drivers education referrals across years would likely track with the increase in

5   aggressive false advertising tactics engaged in by Defendants which is harming

6   Plaintiffs.  In sum, having the revenue history of Defendants would help establish the

7   injury to Plaintiff (i.e. that consumers bought goods and services through DMV.ORG

8   instead of Plaintiffs' websites).  This is highly relevant and likely why Defendants have

9   refused to produce the information.

10  **2.      Defendants' Argument**

11    **(a)      Plaintiffs' Requests for Defendants' Revenues Is Improper As Plaintiffs**

12            **Have No Theory To Recover Defendants' Profits**

13        Pursuant to 15 U.S.C. Section 1117(a), a remedy for violation of the Lanham

14  Act "shall constitute compensation not a penalty."  An accounting of profits is not

15  automatic and is subject to principles of equity.  <u>Lindy Pen Co., v. Bic Pen Corp.</u>, 982

16  F.2d 1400, 1405 (9th Cir. 1993) (affirming district court's denial of accounting of

17  profits since defendant's trademark infringement was not willful).  Further, a plaintiff is

18  not entitled to a windfall.  <u>Bandag, Inc. v. Al Bolser's Tire Stores</u>, 750 F.2d 903, 918

19  (Fed. Cir. 1984) (affirming district court's decision denying accounting of profits).

20        The case of <u>Highway Cruisers of California, Inc. v. Security Industries, Inc.</u>,

21  374 F.2d 875 (9th Cir. 1967) is particularly instructive as to Plaintiffs' "right" (or lack

22  thereof) to Defendants' profits.  In <u>Highway Cruisers</u> plaintiff, who sought damages for

23  trademark infringement, was awarded nominal damages of one dollar.  <u>Id.</u> at 876.

24  Plaintiff's damages were so limited because (i) plaintiff failed to provide any evidence

25  that it suffered damages as a result of defendants' trademark infringement; and (ii)

26  plaintiff's loss of business would not be fairly measured by defendant's profits.  <u>Id.</u>

27        In affirming the district court's damage award, the Highway Cruisers court noted

28  that plaintiff and defendant only competed in the Northwest and that "an accounting

EXHIBIT D  PAGE 24

1   was bound to be de minimis." Id. Consequently, the court held: "Equity has many

2   reeds.  A characteristic of it is that one may not get all of the reeds.  One may get just

3   enough relief to stop the evil where it is apparent no great damage was done to the

4   complainant." Id. See also National Van Lines v. Dean, 237 F.2d 688, 694 (9th Cir.

5   1956) (accounting of profits denied where (i) plaintiff failed to show loss of substantial

6   business and profits; and (ii) plaintiff's loss of business would not be fairly measured

7   by defendants' profits, nor be revealed by an accounting).

8          Plaintiffs are in a position equivalent to the Highway Cruisers plaintiff.

9   Specifically, Plaintiffs have refused to provide any evidence of damages that they have

10  incurred as a result of Defendants' website. (Daucher Decl.,¶ 11, Exs. 10-11.)  For

11  example, in response to Defendants' requests for production nos. 11-12 and 14-16,

12  calling for documents reflecting Plaintiffs' loss of revenues, damages, and commercial

13  injury as a result of Defendants' conduct, Plaintiffs responded similarly to each request

14  stating that the requests are:

15              "beyond the scope of permissible discovery because

16              Plaintiffs need not prove actual injury for injunction or

17              monetary relief under the Lanham Act, and while Plaintiffs

18              have and will continue to suffer injury based on Defendants'

19              false advertising, Plaintiffs are not pursuing any recovery of

20              monetary relief based on a measure of 'damages sustained by

21              the plaintiff.'"

22  (Exs. 10-11.)

23          Moreover, like the parties in Highway Cruisers, the competition between

24  Plaintiffs and Defendants is de minimis at best.  Plaintiffs' standing is based upon

25  allegations that they compete with Defendants for revenue earned from referrals to

26  third party traffic and drivers education schools and advertising revenue.[11]  Yet

27

28      [11]Compare Complaint, ¶ 15 (injury from lost sales of school services; held insufficient to
    confer standing, Order 1/24/07) with Second Amended Complaint,¶ 20 (injury from additional

EXHIBIT  D  PAGE  25

1  Plaintiffs derive less than one percent (1%) of their current revenue from referrals to
2  other schools; in nominal terms, less than $10,000 a year in gross revenue. (Ex. 1 at
3  pp. 320-323, 326-327, and Exs. 6, 8.) Plaintiff TrafficSchool.com earns less than one
4  percent (1%) of its gross revenue from other advertising and Plaintiff Drivers Ed
5  Direct earns no revenue whatsoever for advertising. (Ex. 1 at pp. 75, 102-103, and
6  Ex. 7) Further, Plaintiffs concede that they capture only ten percent (10%) of the
7  traffic school market in California. (Ex. 1, p. 90.)
8       Thus, given this de minimus competition between the parties, an accounting is
9  unnecessary and Plaintiffs are not entitled to the extensive financial information which
10 they seek.[12]

11 **(b)    Plaintiffs Requests For Such Extensive Financial Information Is**
12 **Premature**

13       Even assuming Plaintiffs may recover Defendants profits, which Defendants do
14 not concede, Plaintiffs' requests at this stage in the litigation are premature. To the
15 extent that the Court finds Plaintiffs entitled to further financial information of
16 Defendants, production should be deferred to post liability phase. See e.g. Lindy Pen
17 Co., Inc., supra, 982 F.2d at 1404 (after determining a likelihood of confusion, the
18 district court permitted the parties to conduct discovery regarding damages and
19 profits). Production of financial information at this stage of the litigation is akin to
20 pre-punitive phase discovery.
21 / / /
22 / / /
23

24 _____

25 sources identified as lost referrals of traffic school/drivers education school services to third parties
   and general website advertising).

26       [12]Moreover, even assuming that Defendants might have caused Plaintiffs injury, which
   Defendants do not concede, such de minimus injury is insufficient to confer standing. Shimkus v.
27 Hickner, 417 F.Supp.2d 884, 905 (E.D. Mich. 2006) (de minimus loss insufficient to confer
   standing; Small v. General Nutrition Companies, Inc., 388 F.Supp.2d 83, 95 (E.D.NY 2005) (De
28 minimus costs incurred by organizational plaintiff insufficient to constitute "injury in fact" necessary
   for Article III standing).

EXHIBIT  D   PAGE 26

# EXHIBIT  E

8/14/2007 Hearing, Motion to Compel

1                          UNITED STATES DISTRICT COURT
2                          CENTRAL DISTRICT OF CALIFORNIA
3             HONORABLE CARLA M. WOEHRLE, U.S. MAGISTRATE JUDGE
4                                    PRESIDING
5

6       TRAFFICSCHOOL.COM, INC.,    )
        A CALIFONIA CORPORATION;    )
7       DRIVERS ED DIRECT, LLC,     )
        A CALIFORNIA LIMITED        )
8       LIABILITY COMPANY,          )
                                    )
9                       PLAINTIFFS, )
                                    ) CASE NO. CV 06-7561 PA(CWX)
10              VS.                  )
                                    )
11      EDRIVER, INC, ONLINE        )
        GURU, INC., FIND MY         )
12      SPECIALIST, INC., AND       )
        SERIOUSNET, INC.,           )
13      CALIFORNIA CORPORATIONS;    )
        RAVI K. LAHOTI,             )
14      RAJ LAHOTI, INDIVIDUALS,    )
                                    )
15                      DEFENDANTS. )
        _____)
16
17          PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS
18                        LOS ANGELES, CALIFORNIA
19                           AUGUST 14, 2007
20      COURT DEPUTY/RECORDER:        DONNA Y. THOMAS
21      TRANSCRIBED BY:               HUNTINGTON COURT REPORTE
                                      & TRANSCRIPTION INC.
22                                    1450 W. COLORADO BOULEVA
                                      SUITE 100
23                                    PASADENA, CALIFORNIA 911
                                      (626) 792-7250
24
25      PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
        TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

EXHIBIT E PAGE 27

```
1                APPEARANCES:

2                ON BEHALF OF THE PLAINTIFF:

3
                        BY:  MINA L. HAMILTON, ATTORNEY AT LAW
4

5

6                ON BEHALF OF THE DEFENDANT:

7                        BY:  BRIAN DAUCHER, ATTORNEY AT LAW
                             ASHLEY E. MERLO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT E PAGE 28

```
 1                    LOS ANGELES, CALIFORNIA, TUESDAY, AUGUST 14, 2007

 2

 3                         THE COURT:  GOOD AFTERNOON.

 4                         MS. HAMILTON:  GOOD AFTERNOON.

 5                         MR. DAUCHER:  AFTERNOON.

 6                         THE COURT:  YOU MAY BE SEATED.

 7                         THE CLERK:  CALLING CASE NUMBER CV06-7561

 8        TRAFFICSCHOOL.COM VERSUS EDRIVER, INC.  COUNSEL, MAKE

 9        YOUR APPEARANCES PLEASE.

10                         MS. HAMILTON:  GOOD AFTERNOON, YOUR HONOR.

11        NAME IS MINA HAMILTON.  I'M COUNSEL FOR PLAINTIFFS

12        TRAFFICSCHOOL.COM, INC. AND DRIVERS ED DIRECT, LLC.

13                         THE COURT:  THANK YOU.

14                         MR. DAUCHER:  GOOD AFTERNOON, YOUR HONOR.

15        BRIAN DAUCHER AND ASHLEY MERLO FOR DEFENDANTS ON THIS

16        MOTION EDRIVER AND ONLINE GURU.  WE ALSO REPRESENT THE

17        ADDITIONAL DEFENDANTS IN THE CASE.

18                         THE COURT:  THANK YOU.  OKAY.  THANKS, AND I

19        APPRECIATE EVERYONE'S BEING ABLE TO CHANGE THIS TO THI

20        AFTERNOON.  I GUESS I WANT TO GO THROUGH THESE

21        CATEGORIES OF REQUESTS.  ON SOME I HAVE PRETTY CLEAR

22        IDEAS OF WHAT -- WHAT I THINK SHOULD BE DONE.  AND SOM

23        OF THEM WE WILL NEED TO TALK ABOUT FURTHER.

24                         LET -- LET'S -- LET'S TALK FIRST ABOUT THE -

25        THE FINANCIAL CATEGORIES.  ON -- ON THIS ONE -- OR
```

EXHIBIT E PAGE 29

1    THE -- THE FIRST TWO SORTS OF CATEGORIES, THE GROSS

2    REVENUE FIGURES AND THE ADVERTISING COSTS, WHAT I WOUL

3    ORDER IS ESSENTIALLY THAT -- THAT BE EXPANDED, THE

4    PRODUCTION BE EXPANDED SO THAT THERE IS DOCUMENTS

5    SUFFICIENT TO SHOW GROSS REVENUE BY YEAR FROM 2002 TO

6    2007.  SO I -- I'M REACHING BACK FIVE -- FIVE YEARS,

7    WHICH SEEMS TO ME TO BE A REASONABLE TIME PERIOD FOR [

8    OREGON ONLINE GURU.  UNLESS LET -- LET ME JUST ASK THI

9    QUESTION:  DOES ONLINE GURU DO ANYTHING OTHER THAN

10   MANAGE DMV, OR DO THEY HAVE ENTIRELY UNRELATED LINES C

11   REVENUE?

12        MR. DAUCHER:  WELL, 95 PERCENT OF ITS BUSINE

13   IS DMV.ORG.

14        THE COURT:  OKAY.  THEN -- THEN -- THEN I'M

15   I'M NOT GOING TO TRY AND SEGREGATE THAT OUT.

16        MR. DAUCHER:  AND --

17        THE COURT:  SO -- GO AHEAD.

18        MR. DAUCHER:  I JUST WANTED TO LET THE COURT

19   KNOW THAT IN THE INTERIM PERIOD, AS WE INDICATED IN OU

20   MOTION, WE HAVE -- WE DID PRODUCE GROSS REVENUE FIGURE

21   ALONG WITH ADVERTISING COSTS BROKEN OUT BY YEAR FROM '

22   TO '07.  SO THERE IS -- THERE WAS SOME ADDITIONAL

23   PRODUCTION IN THE INTERIM, NOT ACCORDING TO WHAT YOU'R

24   THINKING NOW.

25        THE COURT:  YES, BUT I -- I -- I HAD SEEN TH

EXHIBIT E PAGE 30

1    YOU DID THAT, AND I SEE THAT IN A NUMBER OF THESE

2    CATEGORIES THERE WAS INTERIM PRODUCTION.  SO I'M TALKI

3    JUST ABOUT EXPANDING THAT FOR A COUPLE OF YEARS.  IT

4    WOULD -- AND I UNDERSTAND EDRIVER HAS REPRESENTED

5    THERE'S NOTHING TO PRODUCE.  ON THE FIND MY SPECIALIST

6    AND SERIOUSNET, GUESS THE -- THE ISSUE IS THAT THEY WE

7    NOT SERVED, AND IT -- IT'S NOT CLEAR TO ME HOW THEIR

8    REVENUES WOULD BE RELATED.  AND SO AT THIS POINT MY

9    ORDER WOULD BE TO LIMIT IT TO DMV.ORG AND ONLINE GURU,

10   BUT TO EXPAND IT TO 2002 TO 2007.

11            AND, YOU KNOW, THOSE -- THOSE ARE AT LEAST

12   RELEVANT TO DAMAGES THEORIES.  I KNOW THEY'RE ONLY

13   THEORIES, AND THERE'S GOING TO BE ARGUMENT ABOUT WHETH

14   THEY SHOULD APPLY OR NOT APPLY, BUT THOSE ARE RELEVANT

15   TO DAMAGES THEORIES.  AND SO -- SO ON BOTH THOSE

16   CATEGORIES, GROSS REVENUE AND ADVERTISING COSTS BY YEA

17   I WOULD EXPAND IT TO 2002 TO 2007.

18            ON THE -- THE REFERRAL REVENUE, I WOULD EXPA

19   THAT TO THE SAME TIME FRAME.  NOW, HERE'S WHERE I -- I

20   DO HAVE ANOTHER QUESTION HERE.  WHAT'S BEEN PRODUCED

21   THUS FAR ON THE MORE DETAILED REFERRAL REVENUE, HAS TH

22   BEEN BROKEN OUT BY STATE?

23            MR. DAUCHER:  IT HAS NOT.  WE -- THE HONEST

24   TRUTH, YOUR HONOR, IS THAT OUR CLIENT DOES NOT GET THA

25   DATA RECORDED FROM ITS VENDORS.  SO WHAT IT DID TO

EXHIBIT $E$ PAGE 31

8/14/2007  Hearing, Motion to Compel

1        PRODUCE WHAT IT HAS PRODUCED ALREADY WAS TO BREAK OUT

2        VENDOR BY MONTH THE COMBINED TRAFFIC SCHOOL DRIVERS EI

3        REVENUE AND THEN TO PROVIDE A CHART WHICH SHOWS WHICH

4        VENDOR WE REFER TO IN WHICH JURISDICTION IN WHICH STAT

5        IN OTHER WORDS.  AND THAT, IN AND OF ITSELF, WAS A

6        SIGNIFICANT EXERCISE, AND IT IS DATA THAT OUR CLIENT

7        DOES NOT MAINTAIN, BUT WHICH ARE DATA OBTAINED THROUGH

8        INQUIRY TO ITS BUSINESS PARTNERS.

9                WITH RESPECT TO THE REFERRAL REVENUE, AND IF

10       YOU WANT TO -- IF YOU HAD MORE TO COMPLETE, I'D LIKE T

11       BE HEARD ON THE REFERRAL REVENUE PORTION.  I'M OKAY WI

12       THE '02 TO '04 GROSS REVENUE PORTION.

13               THE COURT:  OKAY.  I -- IN -- AND -- WE -- I

14       PROBABLY MAKES SENSE TO ADDRESS THESE AS WE GO.  SO I

15       GUESS I -- I -- SO IT'S BEEN PRODUCED ON A NATIONWIDE

16       BASIS, NOT LIMITED TO PARTICULAR STATES.  AND HAS IT

17       BEEN BROKEN OUT BY STATE?  I GUESS THAT'S MY QUESTION.

18               MR. DAUCHER:  IT HAS -- THE NUMBERS HAVE NOT

19       IT MAY WELL BE IN OUR INTEREST TO TRY TO BREAK THOSE C

20       BY STATE BECAUSE, AS I UNDERSTAND THE PLAINTIFF'S

21       BUSINESS, THEY ONLY REFER TO TRAFFIC SCHOOLS IN FIVE

22       STATES, NOT INCLUDING CALIFORNIA.  AND THOSE STATES

23       ARE -- COMPRISE LESS THAN TEN PERCENT OF OUR REFERRAL

24       BUSINESS AS WELL.  AND IT MIGHT MAKE SENSE TO BREAK OU

25       IN THOSE STATES, BUT I QUESTION WHETHER IT WOULD BE

EXHIBIT E  PAGE 32

1       WORTH THE EFFORT TO BREAK OUT REFERRAL REVENUE IN STAT

2       WHERE THE PLAINTIFFS DO NOT DO BUSINESS BECAUSE OF THE

3       BURDEN TO US SINCE WE DO NOT MAINTAIN THE DATA AND

4       CANNOT SIMPLY RUN A REPORT.  THAT'D BE -- I WOULD HAVE

5       DONE IT ALREADY IF THAT WAS THE CASE.

6               AND BECAUSE I DON'T SEE A THEORY ON WHICH TH

7       HAVE ANY STANDING IN STATES WHERE THEY MAKE NO REFERRA

8       TO OBTAIN -- TO EVEN THEORIZE ABOUT A RECOVERY.  IN TH

9       STATES WHERE THEY DO MAKE REFERRALS, I HAVE SERIOUS

10      RESERVATIONS BECAUSE THOSE REFERRAL REVENUES, AS WE'VE

11      INDICATED, ARE (INAUDIBLE).  BUT --

12              THE COURT:  NOW, THAT -- THAT WOULDN'T -- TH

13      WOULDN'T CONTROL, AND -- AND THIS ISSUE COMES UP AGAIN

14      LATER WHEN WE'RE TALKING ABOUT THE -- THE NUMBER OF

15      REFERRALS AND REVENUE AND -- AND -- AND COMMUNICATIONS

16      RELATING TO THAT.  SO I -- I WANTED TO -- I -- I -- I

17      WANT TO ADDRESS THAT.

18              I -- I -- I THINK WHAT MY INITIAL REACTION I

19      THAT IT -- I CAN SEE LIMITING THIS TO STATES WHERE

20      THERE'S SOME COMPETITION, BUT I CAN'T SEE NOT EXPANDIN

21      THE TIME FRAME.  I DON'T KNOW WHETHER AS A PRACTICAL

22      MATTER THOUGH -- I -- I ASSUMED THAT YOU PRODUCED

23      NATIONWIDE BECAUSE THAT WAS SIMPLY EASIER THAN PRODUCI

24      A STATE -- A STATE BREAKOUT.  BUT I'LL ALSO ASK -- GIV

25      PLAINTIFF AN OPPORTUNITY TO EXPLAIN IF THERE'S A THEOR

EXHIBIT E PAGE 33

```
 1              FOR WHY SOMETIMES OTHER THAN THE STATES WHERE YOU

 2              COMPETE FOR REFERRALS.

 3                    MS. HAMILTON:  I THINK -- IF I COULD JUST ST

 4              BACK -- I THINK REGARDING THE FINANCIALS THERE ARE TWO

 5              SEPARATE ISSUES.  ONE IS THE GROSS REVENUES AND

 6              ADVERTISING COST, AND THAT WE WOULD DEFINITELY WANT

 7              NATIONWIDE.  AND I BELIEVE THEY'VE PRODUCED NATIONWIDE

 8              FROM 2005 --

 9                    THE COURT:  YES.

10                    MS. HAMILTON:  -- TO 2007.

11                    THE COURT:  NOW -- NOW JUST GO BACK TO 2002.

12                    MS. HAMILTON:  RIGHT.  AND I -- I WOULD --

13              WOULD LIKE TO ASK THE COURT TO MAKE IT GO BACK TO 1999

14              BECAUSE THAT IS WHEN DMV WAS FIRST -- THEY FIRST START

15              USING THE DOMAIN NAME AND WEB SITE.  AND SO THERE'S AN

16              ISSUE THAT THE DEFENDANTS HAVE RAISED ABOUT LATCHES AN

17              WHEN WE FIRST -- WHEN WE FIRST KNEW ABOUT THE DOMAIN

18              NAME AND WEB SITE.  AND AS PART OF THAT ISSUE THEY'VE

19              SAID THEY -- THEY EXISTED FROM 1999.  WE FIRST KNEW

20              ABOUT THEM IN 2002, AND WE WAITED UNTIL 2006 TO FILE T

21              LAWSUIT.

22                    THE FACTS ARE THAT THE WEB SITE HAS CHANGED

23              DRAMATICALLY OVER THAT TIME.  AND THE FACTS ARE THAT W

24              BELIEVE THAT IF -- IF WE HAD THE EVIDENCE TO SHOW

25              ESPECIALLY THE REFERRAL REVENUE AND ALSO THE GROSS
```

EXHIBIT E   PAGE 34

**8/14/2007 Hearing, Motion to Compel**

1     REVENUE FROM THE SITE IT WOULD SHOW THAT THE ESCALATIC

2     OF THE MARKETING OF THE WEB SITE, WHAT HAPPENED, YOU

3     KNOW, IN 2006 AND 2005.  BUT TO SHOW THAT, WE WOULD NE

4     A PRIOR HISTORY OF -- FROM THE BEGINNING OF 1999, AND

5     THAT WOULD BE LIMITED.

6               THE COURT:  YEAH, I -- I SAW THAT THEORY, BU

7     I DON'T THINK YOU NEED IT GOING BACK TO '99.

8               MS. HAMILTON:  OKAY.

9               THE COURT:  THAT'S -- 2002 IS -- IT --

10              MS. HAMILTON:  WELL, THAT -- THAT IS WHEN --

11    WHEN --

12              THE COURT:  WHEN YOU LEARNED ABOUT IT.

13              MS. HAMILTON:  -- WHEN WE LEARNED ABOUT IT,

14    SO --

15              THE COURT:  YEAH.  OKAY.

16              MS. HAMILTON:  SO OKAY.  THAT WOULD BE FINE.

17    WITH THE STATES AND THE -- WE ALSO REQUIRED -- WE ASKE

18    FOR IT TO BE BROKEN OUT BY TYPE OF COURSES BECAUSE

19    TRAFFIC SCHOOL PROVIDES -- IS ONE CLIENT, AND IT

20    PROVIDES TRAFFIC SCHOOL COURSES, AND THE OTHER CLIENT

21    A DRIVER'S EDUCATION CLIENT.  AND WE ARE TRYING TO SHC

22    THAT IN EACH OF THOSE CATEGORIES WE COMPETE DIRECTLY I

23    VARIOUS STATES.

24              SO I WOULD AGREE THAT WE COULD LIMIT THE --

25    THE DETERMINATION TO THE STATES THAT WE COMPETE IN, BU

EXHIBIT E PAGE 35

EXHIBIT F

**Brian Daucher**

**From:**     Brian Daucher
**Sent:**     Saturday, October 20, 2007 4:59 PM
**To:**       'MINA HAMILTON'
**Subject:** Trial Issues

From below (the 10/17 email meet and confer), I do not see any indication as to which of our witnesses you intend to cross (to include possible examination beyond direct). We advised you of our list (Creditor, Kramer, Maronick, Any comp whose decls are offered, State of CA). Is it just anyone who offers a declaration you reserve right to cross?

Can you also confirm that the CA state DMV witnesses understand that if there is a declaration offered, they must appear?

Also, we continue to reserve the right to put on a rebuttal case consistent with the Court's March 15, 2007 Civil Trial Order, Court Trial section, paragraph 9 ("This order does not apply to rebuttal witnesses.") It is possible that Steve or Raj or others may need to testify depending on what you offer.

Thx,

Brian.


**From:** MINA HAMILTON [mailto:HAMILTON@lbbslaw.com]
**Sent:** Wednesday, October 17, 2007 10:38 AM
**To:** Brian Daucher
**Subject:** RE: Call?

see notes below in CAPS.

Mina I. Hamilton, Esq.
Intellectual Property and Technology
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
(213) 580-7926 (phone)
(213) 250-7900 (fax)
e-mail: hamilton@lbbslaw.com

*******************************************************************
This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
*******************************************************************

EXHIBIT ___F___   PAGE _36_

11/15/2007

>>>

**From:** "Brian Daucher" <BDaucher@sheppardmullin.com>
**To:** "MINA HAMILTON" <HAMILTON@lbbslaw.com>
**Date:** 10/17/2007 9:51 AM
**Subject:** RE: Call?

I will not have a screaming match with you.  If you will be civil, no screaming, then call back.

Otherwise, we can do this by email as far as I am concerned.

Dates for declarations should be as discussed yesterday:

Filed by Tuesday, October 23, 2007.
Objections to be filed by Thursday, October 25, 2007.
There will likely be certain further rebuttal evidence, either in lieu of cross or related to our rebuttal case thereafter.

FINE ON SCHEDULE.

REGARDING "FURTHER REBUTTAL EVIDENCE", THAT IS NOT WHAT THE JUDGE ORDERED. YOUR "REBUTTAL CASE" MUST BE SUBMITTED AFFIRMATIVELY WITH DECLARATIONS; HE SAID THAT WE HAVE DONE THE DISCOVERY AND KNOW WHAT THE ARGUMENTS/FACT ARE.  SO I'M NOT SURE WHAT YOU MEAN BY "FURTHER REBUTTAL EVIDENCE". PLEASE ADVISE.

As indicated, we will advise the court we are willing to attend mediation before a new mediator he identifies.
Perhaps we should aim for Friday, October 26, 2007 for this effort.

WE WILL TELL THE JUDGE THAT THE PARTIES ARE HUNG UP ON THE APPROPRIATE INJUNCTION IN THIS CASE AND WE DO NOT FEEL A MEDIATION IS GOING TO HELP AT THIS LATE STAGE, GIVEN THE TRIAL DATE BEGINNING ON OCT. 30.

On damages, we assume that we are to deal with the damage theory that Makous outlined at the hearing yesterday.  10% of DMV.ORG's profits on TS/DED advertising during the period from October 2006 to the date of trial in CA TX FL.  This is the only damage theory ever articulated in the case so anything else in our view will be contrary to the pre trial conference statements yesterday and contrary to Rule 26 requirements.

NO, YOU ASSUME INCORRECTLY. WE HAVE ARTICULATED OUR DAMAGE THEORY IN OUR MOTION TO COMPEL AND AT OTHER MEET AND CONFER CONFERENCES. THOSE COMMENTS BY DAVID (WHO SAID A LOT OF THINGS ABOUT REMEDY) ANTICIPATED THE COURT, AFTER CONSIDERATION OF ALL THE EVIDENCE, DECIDING TO ENJOIN THE DOMAIN NAME AND THUS LIMIT FUTURE HARM. IF THERE IS NO INJUNCTION OF THE DOMAIN NAME, WE MAY VERY ARGUE THAT MONETARY RECOVERY TO ACCOUNT FOR FUTURE HARM IS AWARDED.  INCIDENTALLY, WE DON'T KNOW WHERE YOU ARE COMING UP WITH YOUR FIGURES (WHICH ARE NOT UPDATED TO TIME OF TRIAL) WE ESTIMATE GROSS PROFIT FOR TS AND DE TO BE 15 MILLION, WHICH EVEN IF ONLY 10% IS 1.5 MILLION.  OUR THEORY OF RECOVERY IS AS ALWAWS STATED AND IS THAT WHICH  AS PROVIDED FOR BY LAW AND SUBJECT TO ALL EQUITABLE CONSIDERATIONS UNDER THE LANHAM ACT, SOUTHLAND SOD FARMS AND OTHER NINTH CIRCUIT PRECEDENT, INCLUDING ALL GROSS PROFITS (SUBJECT TO YOUR EVIDENCE OF OFFSETS), CORRECTIVE ADVERTISING, AMOUNTS EQUIVALENT TO SEARCH ENGINE ADVERTISING COSTS. THIS WILL BE ACCORDING TO EVIDENCE OFFERED AT TRIAL AND ARGUED IN OUR CLOSING BRIEFS.



WE ALSO NEED UPDATED FINANCIAL-MOST CURRENT DATA FOR GROSS PROFITS FOR TS AND DE. UPDATE TO TRIAL TO DEF04255.

EXHIBIT F   PAGE 37

11/15/2007

The witnesses that we anticipate cross-examining are:

Creditor (issues TBD based upon scope of stips, below, and evidence offered)
Kramer (same)
Maronick (if admitted, re his survey)
Any competitors who offer declarations
State of CA, if you offer their declaration (possibly beyond the scope of direct as previously agreed)

We plan to offer declarations from:

Raj Lahoti-CROSS
Steve Moretti-CROSS
Ravi Lahoti-CROSS
Ken Hollander-CROSS
Itamar Simonson-CROSS
Heather Johnson-CROSS

and probably deposition testimony from:

Creditor, Kramer, Leach, Maronick
WE WILL OFFER DEPOSITION TESTIMONY FROM RAVI, RAJ, MORETTI, JACOBSON, FLACK, HOLLANDER, SIMONSON, WARREN.

As for stipulations, we think much could be done by stipulation (and should) including:

WE DO TO: WE PROPOSE YOU STIPULATING TO ALL FACTS YOU SAID WERE UNDISPUTED IN THE MSJ PAPERS.

All stipulated facts from the PTCO-YES BUT NOT TO RELEVANCE
The additional stipulated facts re FedEx, IBM, CraigsList from the MIL Stip.-YES BUT NOT TO RELEVANCE
The agency/website chart-NO.
Sequential versions of the DMV.ORG website-WE'D HAVE TO SEE.

An exhibit stipulation allowing admission of all web-sourced exhibits such as Google/Yahoo searches, INTERNIC or similar registration reports on DMV related domains, WayBack reports showing TS' use of CaDMVTS.com and DMVApprovedTS.com, certain reports from Compete.Com, web-based newspaper articles or website confusion exemplars both sides may wish to offer, and certain exemplar similar websites (edmv.com, dmvsolutions.org, drivinglinks.com, military.com).

-WE WOULD HAVE TO SEE EXHIBITS. SOMETIMES WAYBACK IS NOT ACCURATE (WHEN YOU CHANGED THE LOGO ON DMV.ORG, IT CHANGED EVEN THOUGH IT WAS IN THE PAST).

And possibly if you will cooperate:

Basic facts re letter writing campaign, when done, to whom sent, response from GA, any facts you want.- IF YOU AGREE TO ALL FACTS RELATED TO DMV.ORG RECEIPT AND NONCHANGE OF WEBSITE BASED ON CA DMV AND OTHER THIRD PARTY COMPLAINTS??

Key facts re TS/DED unclean hands including registration and in some cases use of certain DMV domain names, history of drivinglinks domain. -YES, IF YOU AGREE TO FACTS RELATED TO DEFENDANTS' REGISTRATION OF DOMAIN NAMES, LINKING INTO DMV.ORG, ETC.

If you work with us, we are willing to consider any similar proposed stipulated facts as to aspects of the case against Defendants.

Give this some thought and either call me back or send an email, regards,

EXHIBIT F PAGE 38

11/15/2007

Brian.


**From:** MINA HAMILTON [mailto:HAMILTON@lbbslaw.com]
**Sent:** Wednesday, October 17, 2007 9:31 AM
**To:** Brian Daucher
**Subject:** RE: Call?

Brian,

Come on. That is very rude to hang up on us.  Call us when you want to continue.

Mina I. Hamilton, Esq.
Intellectual Property and Technology
Lewis Brisbois Bisgaard & Smith LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
(213) 580-7926 (phone)
(213) 250-7900 (fax)
e-mail: hamilton@lbbslaw.com

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


>>>
**From:**   "Brian Daucher" <BDaucher@sheppardmullin.com>
**To:**   "MINA HAMILTON" <HAMILTON@lbbslaw.com>
**Date:**   10/17/2007 9:09 AM
**Subject:** RE: Call?
ok


**From:** MINA HAMILTON [mailto:HAMILTON@lbbslaw.com]
**Sent:** Wednesday, October 17, 2007 9:09 AM
**To:** Brian Daucher
**Subject:** RE: Call?

we'll call in a couple of minutes.

>>>
       **From:**    "Brian Daucher" <BDaucher@sheppardmullin.com>

EXHIBIT___F___ PAGE___39___

11/15/2007

**To:**     "MINA HAMILTON" <HAMILTON@lbbslaw.com>
**Date:**   10/11/2007 1:15 PM
**Subject:** RE: Call?
Ok call us at 714 424 2843, thx


-----Original Message-----
From: MINA HAMILTON [mailto:HAMILTON@lbbslaw.com]
Sent: Thursday, October 11, 2007 1:08 PM
To: Brian Daucher
Subject: Re: Call?

okay, 2:15


>>>
From: "Brian Daucher" <BDaucher@sheppardmullin.com>
To:"MINA HAMILTON" <HAMILTON@lbbslaw.com>, "DAN DECARLO"
<DECARLO@lbbslaw.com>
Date: 10/11/2007 12:28 PM
Subject: Call?
CC:"Ashley Merlo" <AMerlo@sheppardmullin.com>, "Joseph Tadros"
<JTadros@sheppardmullin.com>

Should we set a call for 215 or so to visit about the status of the
MILs?  Regards,

Brian.

Sheppard, Mullin, Richter & Hampton LLP

Brian M. Daucher
Partner Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive
Fourth Floor
Costa Mesa, California 92626
bdaucher@sheppardmullin.com tel:
fax: (714) 424-2843
(714) 428-5925



Want to always have my latest info?Want a signature like this?


This message is sent by a law firm and may contain information that is
privileged or confidential. If you received this transmission in error,
please notify the sender by reply e-mail and delete the message and any
attachments.


Sheppard, Mullin, Richter & Hampton LLP
Please visit our website at www.sheppardmullin.com

EXHIBIT __F__ PAGE __40__