DAVID N. MAKOUS (State Bar # 082409)
makous@lbbslaw.com
DANIEL C. DECARLO (State Bar # 160307)
decarlo@lbbslaw.com
MINA I. HAMILTON (State Bar # 213917)
hamilton@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012-2601
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiffs
TRAFFICSCHOOL.COM, INC. and
DRIVERS ED DIRECT, LLC, California companies.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>EDRIVER, INC.; ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual; DOES 1 through 10,<br><br>Defendants. | Case No. CV 06-7561 PA (Cwx)<br><br>The Honorable Percy Anderson<br><br>***OPPOSITION* BY PLAINTIFFS TO DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS**<br><br>[Fed. R. Civ. P. 52(c)] |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

Plaintiffs strongly oppose Defendants' Motion for Judgment on Partial Findings. As will be shown herein, the uncontradicted (often *admitted*) facts presented at trial are sufficient to establish liability under the controlling law against *each* Defendant in this case. Fed. R. Civ. P. 52(c). Moreover, after the Court assesses witness credibility[1] and draws all reasonable inferences, the "disputed" evidence (e.g. intent of Defendants, joint and individual participation) is shown to support Plaintiffs' claims by a preponderance of evidence. Accordingly, Defendants' motion is without merit.

## II. *Correct* Standards for Liability of Defendants

Defendants fail to acknowledge Ninth Circuit precedent which sets forth the correct standards for individual and joint liability in a false advertising case. Instead, Defendants rely on inapposite cases[2] and propositions that are not supported by the law.[3] One need look no further for the correct standards than Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1020-1021 (9th Cir. 1985), in which the Ninth Circuit in a Lanham Act case stated:

> "A corporate 'officer or director is, in general, personally liable for all torts *which he authorizes or directs or in which he participates*, notwithstanding that he acted as an agent of the corporation and not on his own behalf.' [citations

---

[1] See, e.g., Gaffney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 451-542 (7th Cir. 2006)(in the context of a similar motion, district court found defendants' testimony not credible).

[2] The Federal Circuit case cited by Defendants (i.e., Wechsler v. Macke Int'l Trade, Inc., 486 F.3d 1286, 1292 (Fed. Cir. 2007)) is from a *patent* infringement case, which clearly adopts different willfulness standards.

[3] E.g., "Conspiracy depends upon an underlying state tort." (Motion, p. 3:21). While the proposition of law is simply not true, Plaintiffs have alleged conspiracy not as an independent tort in and of itself, but in connection with Plaintiffs' unfair competition and false advertising claims, both federal *and* state.

4837-2744-6530.1 -1-

omitted]" (Emphasis added).

Regarding conspiracy, the Ninth Circuit in <u>Transgo</u> stated:

"[C]ivil conspiracy occurs when the parties have reached 'a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement.' [citations omitted] *A conspiracy must be looked at as a whole, and acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme.* [citation omitted]." (Emphasis added).

As Professor McCarthy states: "The use of the word 'conspiracy' is merely another way of describing a concert of action and intent which will extend tort liability beyond the active wrongdoer to those who *merely planned, assisted or encouraged his acts*. Such "conspirators" are, in civil law, called "joint tortfeasors." [citations omitted]. 4 <u>McCarthy on Trademarks and Unfair Competition</u> § 25:23 (4th ed. 2007)(Emphasis added); <u>See, also</u>, <u>David Berg & Co. v. Gatto International Trading Co.</u>, 884 F.2d 306 (7th Cir. 1989)("Because unfair competition and trademark infringement are tortuous, the doctrine of joint tortfeasors does apply. ... Every person actively partaking in, lending aid to, or ratifying and adopting such acts is liable equally with the party itself performing these acts.)

Defendants' argument that "Plaintiffs have improperly alleged a state law claim for civil conspiracy to violate the Lanham Act against all defendants, including individual defendants" [Motion, p. 3:17-18] is without merit. Defendants are renewing the same argument made in opposing Plaintiffs' request for leave to file a second amended complaint [Docket 31-Defendants' Opposition], which was decided in Plaintiffs favor on June 11, 2007 [Docket 32-Order]. In the Order, the Court rejected Defendants' arguments that claims made against the additional corporate defendants and an individual defendant were not viable, stating:

///

"Plaintiffs' proposed SAC asserts viable claims against Find My Specialist and Seriousnet in alleging that they participate in a scheme to direct consumers to the dmv.org site through various other interlinked websites and are 'engaged in a joint venture relating to the operation of DMV.ORG' and a conspiracy to engage in false advertising and unfair competition. [citation to SAC] This is sufficient to state a claim for relief and vitiates Defendants' arguments that Plaintiffs' Motion is futile or made in bad faith." June 11 Order, p. 2-3.

## III. Sufficient Evidence Exists to Establish Liability of Defendants

### A. Raj Lahoti

Defendants concede that "Raj Lahoti is active in the business of Online Guru in managing the DMV.ORG domain name, including that he oversees search engine marketing and search engine optimization for the company." [Motion, p. 5:19-22.] This concession *in itself* is sufficient to support individual liability for false advertising (should it be found). However, Defendants contend that Mr. Raj Lahoti should be immune from liability because "there is no evidence whatsoever....that [he] knowingly engaged in false advertising." [Motion, p. 5:23 to p. 6:14; p. 7:12-22.]

While evidence of intent is not *necessary* to Plaintiffs' claims against Mr. Raj Lahoti, (all Plaintiffs need do is establish that Mr. Raj Lahoti engaged in these illegal practices, regardless of whether he did so intentionally) there is *overwhelming* evidence of intent by Mr. Lahoti in this case, as well as individual (as an officer of Defendant Online Guru, Inc., directing the management of DMV.ORG) and joint culpability (i.e., conspiring with the other Defendants in the false advertising related

to DMV.ORG). Consider the following proposed findings and evidence:[4]

17. Defendants Ravi Lahoti and **_Raj Lahoti_** own Biz Groups, Inc, which in turn owns each of the corporate Defendants other than SeriousNet (which is owned by Defendant Ravi Lahoti). [TE 333; Depo. Ravi Lahoti pp. 14:4-24; TT 11/6, p. 20:2-5; 21:2-5).]

18. **_Raj Lahoti is the CEO_** of Biz Groups, Inc. and all of its wholly owned subsidiaries, which includes Find My Specialist, Edriver, and Online Guru; Ravi Lahoti is the VP of Online Guru. [TE 333; TT 11/6 , pp. 19:22-20:18).]

19. Ravi Lahoti first registered the DMV.ORG domain name and both Ravi and **_Raj Lahoti_** in combination have decided to continue using the domain name DMV.ORG, [Depo. Steve Moretti, p. 17:12-15; 129:1-17.]

88. Defendants presented no persuasive evidence at trial that any of the changes Defendants made post-lawsuit either to its sponsored advertising or to DMV.ORG has been in any way effective in eliminating or reducing consumer confusion. Moreover, the Court finds that the Defendants' changes were in fact designed to provide the appearance that they were trying to make changes to reduce or eliminate confusion but in fact, their intention was to make changes which would not materially impact the flow of consumers to their website interested in purchasing drivers education and traffic school courses. The Defendants' explanations for why more robust changes were not made were unpersuasive. [TT 11/7, pp. 162:10-164:9; p. 165:2-6; pp. 164:13-166:7; pp. 155:2-158:25); TD Lisa Warren, ¶8 (confused in July of 2007, after changes were made).]

89. Defendants have admitted that confusion about DMV.ORG takes place daily; that "disclaimers" simply do not work; and that even after Online Guru made changes on its website in response to the allegations made in this lawsuit, Defendants continued to be informed that on a daily basis consumers were confused. [TT 11/6,

---

[4] Copied from Plaintiffs' Post-Trial [Proposed] Findings of Facts and Conclusions of Law, which emphasis added.

4837-2744-6530.1
-4-

pp. 53:14- 57:8; 88:22-89:6; p. 99:10; TT 11/7, pp. 162:6-163:8; Depo. Flack., pp. 61:9 to 63:11; 54:9 to 58:2 (i.e., 57-58:1); Depo. Steve Moretti, pp. 201:19 to 202:23.; Depo. Flack., pp. 54:9 to 58:2 (i.e., 57-58:1);61:9 to 63:11; Depo. Steve Moretti, pp. 163:15 to 174:5 (i.e., 164:15 to 165:13).]

90. Defendants have known about the consumer confusion at issue in this case since at least 2004. *Mr. Raj Lahoti* received a series of correspondence from the CA DMV complaining about the use of the domain name DMV.ORG and other deceptive practices. [TEs 136, 342-345, 362).] As part of its response to the CA DMV, Online Guru promised that it would eliminate concurrent reference to California and DMV on the DMV.ORG website [TE 385 and TT 11/6 , pp. 82:8-83:20.] Despite this representation, DMV.ORG subsequently utilized California in close proximity with DMV on its website and in sponsored advertising. [e.g., TE 318.]

91. The State of California Department of Motor Vehicles repeatedly objected to Defendants' use of the DMV term. [Depo. Moretti, pp. 242:19 to 248:10; TE 11;136; 342-345; TE 362 (CA DMV Opposition to DMV.ORG trademark, 2007)].

92. Although Defendants knew that consumers were confused as to the source and affiliation of DMV.ORG from even before this lawsuit was filed, Defendants failed to take measures designed to alleviate confusion in their search engine sponsored advertisements as it relates to traffic school and drivers education. [TE 322, 323, 328, 329, 330, 367, 372, 379, 380; TT 11/6, p. 53:14- 57:14.]

93. In his trial declaration, *Raj Lahoti*, at ¶16, in comparing a sponsored listing with an organic listing (referencing TE 671) testified that the sponsored listing, the text of which Online Guru controls, included more explicit disclosures of the unofficial nature of the DMV.ORG site than did the organic listing. Upon cross-examination, Mr. Lahoti admitted that in fact his declaration was not true and that rather it was his opinion that the organic listing provided more explicit disclosures of the unofficial nature of the DMV.ORG site than did sponsored listing. [11/7 TT, pp.

1  148:11-150:7.]

2  94.    The Court finds that the Defendants have shown a complete disregard for
3  the problem of confusion that they have caused. While Defendants have
4  acknowledged there is confusion, **Mr. Lahoti** testified that he does not view the
5  confusion as a problem. [11/7 TT, p. 165:2-6.]

6  Plaintiffs wish to emphasize here, that Mr. Lahoti's admission of confusion
7  from 2004 up until the time of trial, coupled with his brazen denial that any of this
8  confusion constitutes a "problem" is perhaps as stark an admission one can hope to
9  obtain on the issue of intentionality. Mr. Lahoti could care less that he has
10 engineered a vast web of confusion that is directed toward consumers (a large
11 segment of whom are teenagers). He has conveyed instead, nothing but a desire for
12 profit, regardless of the consequences of confusion.

13 Concerning the so-called "disclaimers" and "clarifying language", which the
14 Defendants contend illustrate a good faith intent, these changes came *after* this
15 lawsuit was filed, (and indeed *after* Defendants were well aware that their actions
16 caused confusion on a daily basis) and as such are not relevant for purposes of even
17 addressing the question of liability. However, the post lawsuit actions certainly
18 further establish the intent of Mr. Lahoti and all the Defendants as the only reasonable
19 inference that can be drawn from this post litigation behavior is that Defendants only
20 added these changes *because* of this lawsuit- not because of a genuine desire to
21 eliminate or even reduce confusion. Indeed, Trial Exhibit 317 is a print-out of the
22 DMV.ORG site in October 2006, prior to this suit, and shows that the *only* disclaimer
23 was hidden at the bottom of the third page, *not* viewable on a user's computer screen
24 unless that user knew to "scroll" down and view the disclaimer. The evidence at trial
25 established that no likely web user, who, for example, lands on the traffic school
26 page, after being directed there by a sponsored advertisement for traffic school, would
27 ever scroll down to the bottom of the screen. Today, even with the knowledge of
28 daily confusion and even after being sued, the same disclaimer is still hidden in the

same way on the DMV.ORG website. As to intent, the Defendants behavior begs the question: why have they not taken steps which would eliminate, or at least significantly reduce confusion? The Defendants were unable to answer that question.

### B. Ravi Lahoti and SeriousNet, Inc.

Based on Defendants own organizational chart, which is in evidence as Trial Exhibit 333, Ravi Lahoti is Vice President of Online Guru, Inc. Moreover, he is an owner (with his brother Raj Lahoti) of Biz Groups, Inc. which in turn owns corporate Defendants Find My Specialist, Inc. and Edriver, and he is a full owner of Defendant SeriousNet, Inc. See, Findings and Evidence, ¶¶ 17-18, *supra*. He directly participated in the operations of DMV.ORG as he initially registered the domain name and made the decision to continue to use DMV.ORG, ¶ 19, *supra*. In addition, consider the following proposed findings and evidence, all which lend further support to a finding of individual and joint liability of Mr Raj Lahoti and SeriousNet, Inc.:

15. Defendant Find My Specialist, Inc. ("Find My Specialist") and Defendant *Seriousnet, Inc.* ("Seriousnet") own various other domain names and websites which direct consumers to or from DMV.ORG. [Admission in Defendants' Answer to Third Amended Complaint, ¶19(a)-(c); Depo. Steve Moretti, pp.126:25 to 127:7; 134:12-23; TT 11/6, p. 21:9-20; Depo. Ravi Lahoti, p. 57:6-9; 95:19 to 96:6, Ex. 171.] As such, these defendants are directing traffic to a site which is designed and which in fact does, confuse the public. It cannot be reasonably argued that these defendants conduct of directing traffic to the site is not an act of unfair competition and false advertising.

16. Defendant Find My Specialist owns the TeenDriverEducation.com website (DMV.ORG's referral website for drivers education in California) but at other times [it] was previously owned by *SeriousNet* or Golden State Private School. [Depo. Steve Moretti, pp. 139:19-24 to 140:20; TE 162.] It was established at trial that the TeenDriverEducation website is managed by On Line Guru and is the site that consumers recognize as the provider of the drivers education course in

4837-2744-6530.1                                -7-
OPPOSITION BY PLAINTIFFS TO DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

California. [TT 11/6 p. 119 1-6; TT 11/6, pp. 36:6-37:11, 119:7-20, 120: 17-23; TE 413. As such, as specifically related to the advertisement, promotion and sale of drivers education courses in California, it is defendant SeriousNet that is a tort feasor as it relates to the acts of deception to the public.

20. At various times, the DMV.ORG domain name was owned by *SeriousNet.* [TE 161.]

21. *Seriousnet* has developed a routine business practice of registering domains that are confusingly similar to government or private domain names.[Depo. Ravi Lahoti, pp. 62:8 to 95:18; TE 163, 165-167; 169; 171.] Indeed, Seriousnet owned the website lasuperiorcourts.org which obviously was not the court's official web site address. [11/7 p.94:25, 96: 2].

**C. Edriver, Inc.**

Defendants contend that the owner of the domain name at issue in this lawsuit should be immune from liability. As noted above, however, Edriver is owned by Defendant Biz Group, Inc. which in turn is owned by Raj and Ravi Lahoti, ¶¶ 17-18, *supra*. This corporate Defendant, as owner of the domain name DMV.ORG, along with the other Defendants, is clearly part of the unlawful scheme of false advertising and is thus a party of the conspiracy. See, Transgro, *supra* ("*A conspiracy must be looked at as a whole, and acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme.*"). Further, it is axiomatic that the holder of the domain name at issue should be subject to any injunction the Court may order. In addition to the above, the following findings and evidence are also relevant for liability against EDriver:

13. Defendant *Edriver, Inc.* ("Edriver") owns the domain name "dmv.org." [TT 11/6, p. 21:6-8.]

14. Defendant Online Guru, Inc. ("Online Guru") is responsible for managing the DMV.ORG website and content located at http://www.dmv.org pursuant to a management agreement with *Edriver*. [TT 11/6, pp. 20:19-23; 22:16-

22.]

### D. Find My Specialist, Inc.

In addition to ¶¶15-18 of the Findings and Evidence, *supra*, which show that Raj and Ravi Lahoti own Biz Groups, Inc. which in turn owns Find My Specialist, which in turn owns the TeenDriversEducation.com website and other domains and websites which are connected to DMV.ORG, the following evidence supports joint liability of this corporate Defendant:

24. Like Plaintiffs [TD Eric Creditor ¶¶3; 5; 7; 11-14], Defendants own and manage websites in addition to DMV.ORG (i.e., TeenDriversEducation.com and FloridaDrivingCourse.com which are the referral websites from DMV.ORG in California and Florida) for the purpose of generating revenue from the sale of drivers education and traffic school services. For example, Golden State Private School entered an agreement with Defendant Online Guru whereby Defendant Online Guru is to "market and promote" Golden State Private School's courses using the TeenDriversEducation.com site that is "managed by" Online Guru, Inc. [TE 15 (DEF-00244); TE 413 (attached to Post-Trial Exhibit Stipulation); Depo. Steve Moretti, p. 316:2-10.]

25. Mr. Raj Lahoti's testimony that Defendants merely own the domain TeenDriversEducation.com for drivers education courses is false. ***Find My Specialist does own the domain name TeenDriversEducation.com*** [TT 11/6, p. 119:1-6], but Mr. Raj Lahoti testified that Golden State Private School ("Golden State") manages the site, not Defendants [TT 11/6, p.105:13-17]. However, as noted above and specified in TE 15 (the contract between Online Guru and Golden State [TT 11/6, pp. 36:6-37:11], Online Guru is responsible for managing the site, not Golden State. Indeed, when a consumer visits the California drivers education page at DMV.ORG, that consumer is not presented with any information about or even the identity of Golden State Private School [TT 11/6, p. 119:7-20]. Moreover, when a user clicks on the TeenDriversEducation.com link on the DMV.ORG website, the user goes to the

TeenDriversEducation.com website which is branded completely as Teen Drivers Education, not Golden State Private School [TT 11/6, p. 120:17-23; TE 413 (communicating to consumers that the courses are being offered by TeenDriversEducation.com by the use of the terms "our" and "we" in the text of the website)]. These facts do not support a conclusion that DMV.ORG is merely advertising for Golden State Private School. To the contrary, DMV.ORG is essentially marketing and selling driving education courses and retaining all good will associated with the website. [TT 11/6, pp. 122:17-124:19.]

77. Defendants' advertised DMV.ORG on a website called UnitedStates.org which stated: "UnitedStates.org guides you to the Web sites and services provided by the federal government"! [TE 114.] UnitedStates.org, a website owned by Defendant Find My Specialist is misleading. [TT 11/6, pp. 51:22-52:16.] The very first link on Unitedstates.org is a link to DMV.ORG which states, "A comprehensive easy-to-read guide for your Department of Motor Vehicles." [TT 11/6, p.53:12-14). The Court finds that the use of UnitedStates.org to direct consumer traffic to DMV.ORG is deceptive because UnitedStates.org clearly communicates to consumers that it is a resource to federal government websites and in fact DMV.ORG is not a government website. A consumer accessing the DMV.ORG link through the Unitedstates.org website will likely believe that DMV.ORG is affiliated with the government. [TT 11/6, pp. 52:8-9; 53:4-16). The Court finds this conduct to be intentionally designed to deceive consumers.

### IV. Conclusion

For the reasons stated above, Plaintiffs strongly oppose Defendants' Motion for judgment on partial findings and request that it be denied in its entirety and that any finding of liability and related injunction/monetary award apply jointly to all Defendants. Should the Court, however, be inclined to grant the request as to any particular Defendant, Plaintiffs respectfully seek leave to reopen their case. <u>Gathright</u>

OPPOSITION BY PLAINTIFFS TO DEFENDANTS' MOTION FOR JUDGMENT ON PARTIAL FINDINGS

v. St. Louis Teacher's Credit Union, 97 F.3d 266, 267 (8th Cir. 1996).

DATED: November 20, 2007　　**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By _____
　　David N. Makous
　　Daniel C. Decarlo
　　Mina I. Hamilton
　　Attorneys for Plaintiffs