1  DAVID N. MAKOUS (State Bar # 082409)
   makous@lbbslaw.com
2  DANIEL C. DECARLO (State Bar # 160307)
   decarlo@lbbslaw.com
3  MINA I. HAMILTON (State Bar # 213917)
   hamilton@lbbslaw.com
4  LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012-2601
   Telephone:  (213) 250-1800
6  Facsimile:  (213) 250-7900

7  Attorneys for Plaintiffs
   TRAFFICSCHOOL.COM, INC. and
8  DRIVERS ED DIRECT, LLC, California companies.

9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11

12
   TRAFFICSCHOOL.COM, INC.,            ) Case No. CV 06-7561 PA (Cwx)
13 a California corporation; DRIVERS ED )
   DIRECT, LLC, a California limited    ) The Honorable Percy Anderson
14 liability company,                   )
                                        ) **PLAINTIFFS' SUBMISSION OF**
15             Plaintiffs,              ) **MARKED COPY** OF DEFENDANTS'
                                        ) POST TRIAL [PROPOSED] FINDINGS
16       vs.                            ) OF FACT AND CONCLUSIONS OF
                                        ) LAW
17 EDRIVER, INC.; ONLINE GURU,          )
   INC., FIND MY SPECIALIST, INC.,      ) [Court's Nov. 8, 2007 Order and general
18 and SERIOUSNET, INC., California     ) marking procedure in Civil Trial Order,
   corporations; RAVI K. LAHOTI, an     ) ¶2 (Court Trials)]:
19 individual; RAJ LAHOTI, an individual;)
   DOES 1 through 10,                   ) RED UNDERLINE  =        Disputed
20                                       )
                                        ) BLUE UNDERLINE  =       Admitted
21             Defendants.              )
                                        ) YELLOW HIGHLIGHT  =     Irrelevant
22

23 DATED: November 27, 2007             LEWIS BRISBOIS BISGAARD &
                                        SMITH LLP
24
                                        By
25                                         David N. Makous
                                           Daniel C. Decarlo
26                                         Mina I. Hamilton

27                                      Attorneys for Plaintiffs
                                        TrafficSchool.com, Inc. and Drivers Ed
28                                      Direct, LLC

BRIAN M. DAUCHER, Cal. Bar No. 174212
ROBERT S. BEALL, Cal. Bar. No. 132016
JOSEPH H. TADROS, Cal. Bar. No. 239379
ASHLEY E. MERLO, Cal. Bar No. 247997
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
     Including Professional Corporations
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 513-5100
Facsimile: (714) 513-5130
bdaucher@sheppardmullin.com
jtadros@sheppardmullin.com

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC., a California limited liability company, | Case No. CV067561 PA (CWx)<br>*The Hon. Percy Anderson* |
| Plaintiffs, | **DEFENDANTS' POST TRIAL [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; DOES 1 through 10. | Trial Date: November 6, 2007<br>Time: 8:30 a.m.<br>Crtrm: 15 |
| Defendants. | [Complaint Filed November 28, 2006] |

-1-

1    Defendants' hereby submit the following post-trial findings of fact and

2  conclusions of law:

3

4                        **FINDINGS OF FACT**

5

6            **Background Facts Regarding The Defendants**

7

8        1.    Raj and Ravi Lahoti own, in equal shares, an entity call Biz

9  Groups, Inc.  Biz Groups, Inc. owns Online Guru, Inc., EDriver, Inc., and Find My

10 Specialist, Inc.  [Ravi Lahoti Trial Decl., ¶ 2.]

11

12       2.    The DMV.ORG domain is owned by defendant EDriver, Inc. and

13 licensed to Online Guru for exclusive management of the website.  The DMV.ORG

14 website was launched in 1999 and presently contains approximately 4,000 distinct

15 webpages with information pertaining to vehicle- and driver-related needs.  [Raj

16 Lahoti Trial Decl., ¶¶ 2-3; 11/6 RDT 20:19-24, 21:6-8 (Raj).]

17

18       3.    Ravi Lahoti turned over the management of DMV.ORG to Raj

19 Lahoti in 2003 and since then Ravi Lahoti's involvement with DMV.ORG has been

20 relatively limited.  [Ravi Lahoti Trial Decl., ¶ 5.]

21

22       4.    Ravi Lahoti solely owns SeriousNet, Inc., which is not part of the

23 BizGroup organization of companies.  [Ravi Lahoti Trial Decl., ¶ 3.]

24

25       5.    The DMV.ORG website does not implicate any serious threat to

26 public health and safety.

27

28

W02-WEST:3AAE1\400526095.2                                    DEFENDANTS' POST TRIAL [PROPOSED]
                                                        FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Background Facts Regarding Plaintiffs' Businesses**

6.      TrafficSchool.com owns the TrafficSchool.com website, from which it sells online traffic school courses in California, Texas and Florida. [11/6 Reporter's Daily Transcript ("RDT") 138:24-139:6; 163:9-165:24, 167:1-168:12, 170:18-171:10 (Creditor); Designated Creditor Depo., 66:3-7, 71:4-11, 72:10-18.]

7.      In 2005, TrafficSchool.com provided both traffic school and driver's education services from the TrafficSchool.com website. In 2006, the driver's education portion of the TrafficSchool.com business was transferred to a new entity, DriversEdDirect. [11/6 RDT 150:11-151:7 (Creditor).]

8.      Plaintiff DriversEdDirect provides driver's education courses for new drivers and behind-the-wheel training.  [11/6 RDT 139:7-12 (Creditor).]

9.      TrafficSchool.com served approximately 58,000 customers in California in 2005 and 57,000 in 2006.  In comparison to population statistics in California, Florida and Texas, TrafficSchool.com serves a significantly smaller portion of the traffic school market in Florida and Texas than in California. [11/7 RDT 11:15-12:2, 13:6-17:4 (Creditor); Designated Creditor Depo., 94:10-23; Defendants' Second Request for Judicial Notice, Item 1.]

**Standing: Plaintiffs And Defendants Do Not Compete**

*Violates Local Rule 52-3 ("Proposed findings... shall... not make reference to allegations...")*

10.      Plaintiffs allege competition with DMV.ORG on three bases: (a) DMV.ORG acts as a referral source in California and other states for third party traffic schools and drivers education and Plaintiffs offer traffic school and drivers

education services through their websites; (b) "both Plaintiffs and Defendants act as a referral source for third party traffic schools and drivers education in various states"; and (c) "both Plaintiffs and Defendants advertise other third party services and receive financial consideration from those third parties."  The latter two bases are the only viable bases upon which the parties may be deemed to compete, as the Court rejected the first basis on Defendants' motion to dismiss.  [TAC, ¶ 20(a)-(c); 1-24-2007 Order.]

11.    DMV.ORG's core business is to act as an internet publishing company, with 99 percent of its revenues derived from advertising.  [11/7 RDT 169:15-25 (Raj).]

12.    DMV.ORG does not earn any revenue until a visitor to its website clicks on an advertisement on the site, goes to the third party advertiser's website and takes some action on that third party site.  [11/7 RDT 190:3-6 (Moretti).]

13.    A visitor on DMV.ORG must click through to an advertiser's website to purchase traffic school; the services are not for sale on the DMV.ORG website.  [11/6 RDT 25:5-24 (Raj).]

14.    Find My Specialist owns the Teen Drivers Education domain for purposes of tracking sales generated by DMV.ORG advertisements, but Golden State Private School, a third party drivers education provider, has created the content of and manages the website.  [11/6 RDT 104:25-106:9, 119:1-6, 122:17-124:11, 124:20-125:14, 126:14-23 (Raj).]

-4-

DEFENDANTS' POST TRIAL [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

15.   TrafficSchool.com's core business is providing online traffic school services.  [11/7 RDT 103:2-5 (Kramer).]

*which includes marketing and selling its own and others' courses*

16.   DriversEdDirect's core business is providing online driver's education courses and behind the wheel training.  [11/7 RDT 103:4-13 (Kramer).]

17.   "Above 85, 90 percent" of TrafficSchool.com's revenue is derived from the core business of providing online traffic school services and an even higher portion of DriversEdDirect's revenue is derived from its core business of providing online drivers education and behind the wheel training.  [11/7 RDT 103:14-22 (Kramer).]

18.   IDriveSafely and Golden State Private School are Plaintiffs' actual "competitors" because, as Plaintiffs' principal, Eric Creditor explained, "they provide the same courses that [Plaintiffs] provide to the same consumers."  [11/6 RDT 143:15-144:10 (Creditor).]

19.   TrafficSchool.com provides traffic school courses in California and does not earn any referral fees in California.  [11/6 RDT 138:24-139:6, 162:6-12 (Creditor); Designated Creditor Depo., 66:3-7.]

20.   TrafficSchool.com earned no referral fees in Texas for traffic school referrals in 2005, 2006 and through June 2007, but rather sold courses to and collected payment directly from consumers and paid third parties for fulfillment of courses.  [Designated Creditor Depo., 71:4-11; 11/6 RDT 163:9-165:24 (Creditor).]

21.   TrafficSchool.com earned no referral fees in Florida for traffic school referrals in 2006 and through June 2007, but rather sold courses to and

-5-

DEFENDANTS' POST TRIAL [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  collected payment directly from consumers and paid third parties for fulfillment.

2  [Designated Creditor Depo., 72:10-18; 11/6 RDT 167:1-168:12 (Creditor).]

3

4       22.    TrafficSchool.com's total referral revenue from third party

5  providers in 2006 and through June 2007 was $5,681 and $2,147, respectively,

6  comprising less than one percent of TrafficSchool.com's gross revenue.  [11/6 RDT

7  170:19-171:13 (Creditor); Trial Exhibits ("TEs") 26 (PL01685), 62, 63a; Designated

8  Creditor Depo., 322:22-25.]

9

10      23.    DriversEdDirect earned no referral revenue for the advertisement

11  of driver's education courses; rather, DriversEdDirect collected the consumer dollars

12  and split the revenue with the driver's education providers.  [11/6 RDT 169:7-170:17

13  (Creditor); TE 26.]

14

15      24.    TrafficSchool.com has earned less than $1,000 on average over

16  the last four years for non-traffic school/drivers education related advertising

17  revenue.  [11/6 RDT 173:5-24 (Creditor); Designated Creditor Depo., 81:1-82:12;

18  TE 27 (PL01688).]

19

20      25.    TrafficSchool.com does not earn any referral revenue for the sale

21  of driving records; since 2006, it has sold driving records directly to consumers in

22  California.  [11/6 RDT 173:25-174:18 (Creditor).]

23

24      26.    DriversEdDirect has earned no more than "a couple hundred

25  dollars a month" on non-traffic school/drivers education related advertising.

26  [Designated Creditor Depo., 108:21-109:12; 326:16-327:3.]

27

28

-6-

27.     Plaintiffs' referral revenue and non-traffic school/drivers education advertising revenue comprises a de minimus portion of their businesses such that they cannot be deemed to compete with Defendants in any meaningful sense.

## Use of the DMV.ORG Domain Is Not Literally False

28.     Approximately 24 states use the term "DMV" in reference to their state motor vehicle department.  [Defendants' Request for Judicial Notice ("RJN"), Item 10.]

29.     The term "DMV" is generic, as demonstrated by the State of California's federal registration for the mark "STATE OF CALIFORNIA DMV DEPARTMENT OF MOTOR VEHICLES" in which the State of California expressly disclaims any right to exclusive use of the terms "DMV" and "DEPARTMENT OF MOTOR VEHICLES."  [Defendants' RJN, Items 8-9.]

30.     The use of the .ORG top level domain by DMV.ORG is not improper, since the .org top level domain is an "open" and "unrestricted" domain name (meaning anyone can register a .ORG, including commercial entities). [Defendants' RJN, Item 4.]

31.     In contrast to the .ORG top level domain, .GOV is restricted to federal and state government entities.  A very substantial majority (48) of state motor vehicle departments use the .gov or .us top level domain. [Defendants' RJN, Items 5, 10.]

W02-WEST:3AAE1\400526095.2

DEFENDANTS' POST TRIAL [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

32.   DMV.ORG expressly disclaims any affiliation with any government entity on every page of the site, in contrast to other similar websites, such as DrivingLinks.com, eDMV.com, and DMVsolutions.org.   [Raj Lahoti Trial Decl., ¶¶ 25-27, 29-34; TEs 623-625, 631; Designated Creditor Depo., 270:14-20, 272:16-20; TE 20 (DEF00990-00991); Defendants' RJN, Items 11-12.]

33.   Plaintiffs admit that DMV.ORG was "non-offensive" and not actionable until at least October 2006.  [Defendants' RJN, Items 1-2.]

34.   Nothing on the DMV.ORG website constitutes an express misrepresentation of fact.  [Compare 11/6 RDT 151:20-152:24, 157:18-158:16 (Creditor); 11/7 RDT 63:11-16; 65:25-66:22, 68:3-6 (Kramer); TEs 611 (LowestPriceTrafficSchool), 89 (dmvapprovedtrafficschool.com).]

## DMV.ORG Is Not Likely To Mislead An Appreciable Number Of Reasonably Prudent Consumers

35.   Since at least September 24, 2002, DMV.ORG has disclaimed at the bottom of each page of the website any affiliation with any government agency in text at least the same size as the other informational text on the site.  [Raj Lahoti Trial Decl., ¶ 25; TEs 623-625, 631.]

36.   The bottom disclaimer on DMV.ORG has evolved over time and, since 2003, has also stated in bold text that the site is a privately owned, for profit corporation.  [Raj Lahoti Trial Decl., ¶ 26; TEs 624-625, 631.]

37.   Since at least March 17, 2004, the clarifying "welcome statement" on the homepage of DMV.ORG has explained: "Since government sites

-8-

1  can sometimes be confusing to use, we have made this guide for the average user to

2  understand."  [Raj Lahoti Trial Decl., ¶ 27; TE 625.]

3

4       38.    The content and structure of DMV.ORG was revised in October

5  2006, though the primary look and feel of the website remained similar to what

6  immediately preceded it, including: (a) the use of the header "No need to Stand in

7  Line, Your DMV Guide is Now Online" on the homepage (replaced after the suit by

8  "The Unofficial Guide to the DMV"); (b) the use of the introductory sentence,

9  "Since government DMV sites can be confusing to use, we have developed this free

10  & comprehensive guide for the average user to understand"; (c) the use of bottom

11  disclaimers on every page; and (d) the use of the DMV.ORG license plate logo in

12  the top left of every page.  In short, there is no "vast difference" as to the website

13  from February 2006 to October 2006.  [11/6 RDT 189:18-190:16 (Creditor); Raj

14  Lahoti Trial Decl., ¶ 35; TEs 627 and 628 (compare).]

15

16       39.    Since inception of this litigation, Defendants have added further

17  disclaimers to DMV.ORG in the upper left corner of every webpage ("DMV.ORG is

18  not affiliated with any government agency"), in the title caption on the main

19  homepage and on each state-dedicated sub homepage ("The Unofficial Guide"), and

20  on the DMV.ORG license plate logo appearing in the upper left corner of every

21  webpage ("Unofficial Guide to the DMV").  [Raj Lahoti Trial Decl., ¶¶ 29-34; TE

22  631.]

23

24       40.    In 2006 and through September 2007, there have been

25  approximately 46 million and 44.6 million visits, respectively, to DMV.ORG.

26  [Moretti Trial Decl., ¶ 4; TE 674.]

27

28

DEFENDANTS' POST TRIAL [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW

41.     DMV.ORG receives on average more than 1 million visits per week, about 150,000-175,000 per day.  [Moretti Trial Decl., ¶ 4; TE 674.]

42.     In 2006 and through September 2007, over 50 percent of DMV.ORG visitors entered the website through either the DMV.ORG main homepage or one of the 51 state-dedicated sub homepages (including the District of Columbia).  [Moretti Trial Decl., ¶ 5(b); TEs 7, 672.]

43.     Approximately two-thirds of DMV.ORG's visitors view either the main homepage or one of the 51 state-dedicated sub homepages, with the conspicuous "Unofficial Guide" title, while visiting DMV.ORG.  [Moretti Trial Decl., ¶¶ 7-8; TE 675.]

44.     The average visitor to DMV.ORG views more than 5 pages per visit. [Moretti Trial Decl., ¶¶ 9-10; TEs 676-677.]

45.     In both 2006 and 2007 (through September), the DMV.ORG California traffic school webpage did not rank among the top fifty entry webpages for the site; and only one-third of one percent of DMV.ORG's visitors entered the fiftieth ranked entry webpage.  [Moretti Trial Decl., ¶¶ 13-14; TEs 7, 672.]

46.     In May 2007, 0.13 percent (about 4,000) of DMV.ORG's visitors entered the website through the California traffic school webpage and only 25 percent of those visitors viewed only that webpage and exited the site from that page.  [11/7 RDT 178:23-179:10 (Moretti); TEs 109. 641-642.]

47.     Apart from clicking on the IDriveSafely advertisement on the DMV.ORG California traffic school webpage, visitors to the page can exit the

-10-

DMV.ORG California traffic school webpage by various mechanisms including by typing in a new domain, closing the web browser, clicking on the web browser's home button, clicking on bookmarks, or clicking on another advertisement on the webpage.  [11/7 RDT 217:24-218:21 (Moretti).]

48.    Of the visitors entering DMV.ORG directly to the California traffic school webpage, approximately 75 percent visit other DMV.ORG webpages.  [Moretti Trial Decl., ¶¶ 15-17; TEs 109, 642.]

49.    In May 2007, there were approximately 18,000 visits to the DMV.ORG California traffic school webpage and 33,000 page views of that same page.  [Moretti Trial Decl., 15-16, 18; TEs 109 (p.1), 645 (p.2).]

50.    A consumer searching for online traffic school services will likely look at a variety of different sites before making a purchasing decision.  [Designated Maronick Depo., 217:13-17.]

51.    Traffic school consumers take extra precaution at the time that they are making a purchasing decision.  [Designated Maronick Depo., 217:18-218:14.]

52.    A visitor to TrafficSchool.com would have to view approximately 9 distinct webpages to complete a purchase of a traffic school course, and would spend at least three minutes navigating through TrafficSchool.com webpages to make a purchase.  [11/7 RDT 49:12-51:15 (Kramer).]

53.    A visitor to DriversEdDirect.com would have to view approximately 7 distinct webpages to complete a purchase of a drivers education

1   course and would likely spend more than three minutes to navigate through the

2   DriversEdDirect.com webpages to make a purchase.  [11/7 RDT 51:16-52:6

3   (Kramer).]

4

5       54.   Plaintiffs sent letters to various states about DMV.ORG but no

6   state has joined this suit.  [11/7 RDT 88:25-89:6 (Kramer).]

7

8       55.   In response to a letter from Plaintiffs, the State of Georgia wrote

9   to Plaintiffs that it had "reviewed the contents of www.DMV.ORG . . . and found no

10  misleading information." [Designated Creditor Depo., 287:3-288:6; TE 58.]

11

12      56.   The state of Pennsylvania has entered into a linking agreement

13  with Online Guru, an agreement by which Pennsylvania confirmed DMV.ORG's

14  express right to link to the Pennsylvania motor vehicle website from DMV.ORG.

15  [Moretti Trial Decl., ¶ 27; TE 659.]

16

17      57.   In October 2006, Online Guru added state flags for each state on

18  the state-dedicated sub homepages.  Online Guru received no complaints regarding

19  the use of these state flags until March 2007, when the state of New York contacted

20  Online Guru and requested removal of the state flag.  Online Guru promptly agreed

21  to remove and did remove the New York flag and so advised the state of New York.

22  The state of New York then replied that it regarded the matter as "closed."  (Raj

23  Lahoti Trial Decl., ¶¶ 36-37; TE 139.]

24

25      58.   Online Guru has received no other complaints regarding the use

26  of state flags on the website, but decided at the time that it took down the New York

27  state flag to take down all other state flags as well.  The state flags were therefore

28

-12-

1   only on the website from October 2006 through March 2007.  [Raj Lahoti Trial

2   Decl., ¶ 39.]

3

4          59.     In spite of Plaintiffs' agitation, no state has joined their effort and

5   many states voluntarily provide DMV.ORG with updated information.  [11/7 RDT

6   88:25-89:6 (Kramer); Moretti Trial Decl., ¶ 25; TE 635.]

7

8          60.     Online Guru's sponsored advertising listings in Yahoo! and

9   Google are subject to Yahoo!'s and Google's approval and their extensive rules

10   regarding the content of sponsored advertisement listings.  [Raj Lahoti Trial Decl.,

11   18; 11/7 RDT 49:5-11 (Kramer).]

12

13          61.     Online Guru has changed the sponsored listings for DMV.ORG

14   on Google and Yahoo! to further reinforce that the website is not affiliated with the

15   government by using terms such as "Unofficial Guide," "Driver's Ed Info,"

16   "California DMV Info," and "The unofficial guide to the CA DMV."  [11/6 RDT

17   99:6-18, 102:10-103:14 (Raj).]

18

19          62.     DMV.ORG's search engine marketing sponsored listings across

20   time actually resemble the organic listing that Google and Yahoo post for

21   DMV.ORG, which includes the phrase "California DMV" in the header, suggesting

22   that Google and Yahoo view those descriptions as reasonable.  [11/6 RDT 97:23-

23   99:2, 99:19-100:19, 102:10-103:14, 103:15-104:17; TEs 323, 324 (p.2), 670, 671.]

24

25          63.     A reasonably prudent consumer moving from search engine

26   result listings and viewing DMV.ORG in its full context, would understand that it is

27   not affiliated with any government entity, as indicated by the .ORG top level

28   domain, the multiple disclaimers on the site and other clarifying language.

-13-

DEFENDANTS' POST TRIAL [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW

**No Evidence Of Intent To Deceive**

64.     DMV.ORG has always utilized disclaimers and clarifying language on its site.  [Raj Lahoti Decl. ¶¶ 25-27; TEs 623-625.]

65.     DMV.ORG's use of disclaimers and clarifying language substantially exceeds what is done, or not done, by others including Plaintiffs. [Defendants' RJN, Items 11-13 (other similar type sites, no disclaimers); 11/6 RDT 205:25-206:25 (no disclaimer on DrivingLinks.com); TE 20 (DrivingLinks.com); 11/7 RDT 20:4-8 (no disclaimers on FloridaTrafficSchool.com).]

66.     Online Guru, under the direction of Raj Lahoti, has made voluntary changes to DMV.ORG to reinforce the message that there is no affiliation with the government.  [Raj Lahoti Decl. ¶¶ 29-34; TE 631.]

**No Appreciable Evidence Of Confusion On DMV.ORG**

67.     DMV.ORG has approximately 175,000 visitors per day but receives only a couple hundred emails per day from visitors to the website.  [11/6 RDT 113:14-114:2 (Raj).]

68.     On a weekly basis, DMV.ORG receives approximately 20 emails from visitors expressing appreciation or praise for the informational services provided on the DMV.ORG website.  [Moretti Trial Decl., ¶ 25; TE 635.]

69.     Although a few of the couple hundred emails that DMV.ORG receives each day may suggest that a particular visitor misunderstood the nature of

-14-

1  the site, these emails do not represent an appreciable number of confused consumers
2  in comparison to the traffic on the website.

3

4          70.    Although a few websites appear to misdirect Internet users to
5  DMV.ORG, this misdirection is insignificant in comparison to the approximately
6  70,000 websites or internet articles that link to DMV.ORG.  [11/6 RDT 114:3-12.]

7

8          71.    Every month, DMV.ORG receives emails from employees of
9  state agencies who willingly update or clarify information about the state agency
10  information on the DMV.ORG website.  Since January 2007, employees of at least
11  20 different states have offered corrections or clarifications to information on
12  DMV.ORG.  [Moretti Trial Decl., ¶ 26; TE 640.]

13

14          72.    While it is the practice of Plaintiffs' driving instructors to speak
15  to their behind-the-wheel students regarding the related driver's education program,
16  Shannon Robertson is the only student plaintiffs are aware of that expressed some
17  confusion as to driver's education advertisements on DMV.ORG.  [Designated
18  Creditor Depo., 395:11-396:6, 396:20-397:15.]

19

20          73.    Plaintiffs' third party witness, Lisa Warren, President of The
21  Online Traffic School, Inc., was allegedly confused by the advertisements on
22  DMV.ORG, but viewed only a single page of the DMV.ORG website for
23  approximately a minute and could not recall the page she viewed.  [11/7 RDT
24  133:25-134:3, 134:23-135:11, 135:22-136:15 (Warren).]

25

26          74.    Warren went on the DMV.ORG website in search of official
27  state Texas logos (not driver's education or traffic school services), but could not
28  find any.  [11/7 RDT 135:12-21 (Warren).]

-15-

75.     Warren agreed that the amended DMV.ORG license plate logo, which includes the phrase "Unofficial Guide to the DMV," was not confusing. [11/7 RDT 136:24-137:20 (Warren); TE 631.]

**Survey Evidence Shows No Confusion**

76.     Defendants' survey expert, Hollander, showing respondents three DMV.ORG/CAR.ORG pages plus a third party traffic school page, found that only 1.0 percent of California respondents (3/286) for the test group (DMV.ORG stimuli) identified DMV.ORG as affiliated with the DMV/state/government (again, in either direction) whereas 2.5 percent of California respondents (5/197) for the control group (CAR.ORG stimuli) identified CAR.ORG as affiliated with the DMV/state/government.  [Hollander Trial Decl., ¶ 25(b)-(c); TE 193.]

77.     Not a single respondent residing in any of the four other tested states (that do not use the "DMV" moniker) perceived DMV.ORG as affiliated with the government, whereas 2.0 percent of respondents in the non-DMV states identified the control, CAR.ORG, as affiliated with the DMV/state/government. [Hollander Trial Decl., ¶ 25(b)-(c); TE 193.]

78.     By subtracting the Hollander control group findings from the test group findings, it is apparent that no confusion as to source can reasonably be attributed to the use of the DMV.ORG domain name.  [Hollander Trial Decl., ¶ 25(c).]

79.     None of the respondents to the Hollander test survey (DMV.ORG) or control survey (CAR.ORG) perceived a sponsorship between

-16-

DEFENDANTS' POST TRIAL [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW

1  DMV.ORG or CAR.ORG, respectively, and the government.  [Hollander Trial

2  Decl., ¶ 25(d).]

3

4       80.    Plaintiffs' expert, Maronick, surveyed respondents only in

5  relation to California traffic school, did not address states not using the "DMV"

6  moniker, and gave no opinion whatsoever as to driver's education. [Designated

7  Maronick Depo., 83:24-84:1; 96:18-19.]

8

9       81.    Maronick surveys 2 and 3 do not provide meaningful results as

10 to confusion because of their methodology flaws including:

11

12       (a) the failure to mimic a visitor's actual experience through the

13 use of improper stimuli and dissection of DMV.ORG into component parts – search

14 results, the domain and the top two-thirds of a single webpage (a page through

15 which less than 1/3 of one percent of DMV.ORG visitors enter the site) [TE 142

16 (Simonson Decl., ¶¶ 42, 49-51); Designated Maronick Depo., 13:4-14:4; Moretti

17 Trial Decl., ¶¶ 13-14; TEs 7, 672];

18

19       (b) the use of leading questions [TE 142 (Simonson Decl., ¶¶ 37-

20 39, 41-48); Designated Maronick Depo., 54:7-10];

21

22       (c) the combination of key questions on the same page creating a

23 demand effect (e.g., "Is this website endorsed by any government agency?"

24 (question 6) followed on the same page by "What government agency?" (question

25 7)) [TE 144 (Surveys 2-3, questions 6-7 and 8-9); Designated Maronick Depo.,

26 39:5-11; 40:5-23; 44:2-18; 96:20-97:12; 97:17-21; 100:2-7; Simonson Decl., ¶¶ 23,

27 45-48];

28

DEFENDANTS' POST TRIAL [PROPOSED]
                              FINDINGS OF FACT AND CONCLUSIONS OF LAW

1          (d) the failure to include a control, which Maronick himself has

2    described in literature on surveys as "indispensable" in Lanham Act cases [TEs 142,

3    143; (Simonson Decl., ¶¶ 53-55); Designated Maronick Depo., 34:5-35:5; 72:15-

4    73:13]; and

5

6          (e) the failure to instruct survey respondents not to guess.

7    [TE 142 (Simonson Decl. ¶¶ 44, 57); Designated Maronick Depo., 45:17-46:22;

8    95:25-96:1; 172:4-173:11].

9

10           **Materiality: No Evidence That The Alleged**

11       **Misleading Advertising Affects the Purchasing Decision**

12   *Improper to refer to allegations in pleadings as finding*
                           *L.R. 52-3*

13       82.    Plaintiffs allege that DMV.ORG unfairly benefits by misleading

14   consumers to believe that the site is an actual government entity (or is

15   affiliated/endorsed by the government) and thereby compelling consumers to

16   purchase the courses advertised on DMV.ORG instead of Plaintiffs' courses.

17

18       83.    There is no evidence that consumers care more about

19   government recommendation of one acceptable traffic school course over another

20   acceptable traffic school.

21

22       84.    In fact, Plaintiffs expert, Maronick, understood the phrase

23   "recommended by the DMV," which he devised for survey 4, to mean that a traffic

24   school course would serve to discharge a traffic ticket. [Designated Maronick Depo.,

25   139:21-140:15.]

26

27       85.    There is no evidence that the traffic school and drivers education

28   courses advertised on DMV.ORG are not in fact approved by the government.

-18-

DEFENDANTS' POST TRIAL [PROPOSED]
FINDINGS OF FACT AND CONCLUSIONS OF LAW