1  DAVID N. MAKOUS (State Bar # 082409)
   makous@lbbslaw.com
2  DANIEL C. DECARLO (State Bar # 160307)
   decarlo@lbbslaw.com
3  MINA I. HAMILTON (State Bar # 213917)
   hamilton@lbbslaw.com
4  LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012-2601
   Telephone: (213) 250-1800
6  Facsimile:  (213) 250-7900

7  Attorneys for Plaintiffs
   TRAFFICSCHOOL.COM, INC. and
8  DRIVERS ED DIRECT, LLC, California companies.

9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11

12  TRAFFICSCHOOL.COM, INC.,        ) Case No. CV 06-7561 PA (CWx)
    a California corporation; DRIVERS ED )
13  DIRECT, LLC, a California limited )  The Honorable Percy Anderson
    liability company,               )
14                                    )
              Plaintiffs,             )  **PLAINTIFFS' POST-TRIAL BRIEF**
15                                    )
         vs.                          )
16                                    )
    EDRIVER, INC., a California        )
17  corporation; ONLINE GURU, INC.,   )
    FIND MY SPECIALIST, INC., and     )
18  SERIOUSNET, INC., California       )  Trial Conducted:   November 6-8, 2007
    corporations; RAVI K. LAHOTI, an  )
19  individual; RAJ LAHOTI, an individual; )
    and DOES 1 through 10,            )
20                                    )
              Defendants.             )
21  _____  )

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND WHY THIS IS AN EXCEPTIONAL CASE
     CALLING FOR THE FULL SCOPE OF THE COURT'S
     EQUITABLE POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

II.  PLAINTIFFS HAVE PROVED THE ELEMENTS OF THEIR
     CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

     A.   Elements of False Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

     B.   Defendants' Advertisements Are Literally False (Which
          Includes Falsity by *Necessary Implication*) . . . . . . . . . . . . . . . .   5

     C.   Consumers Are Likely to Be Misled or Confused . . . . . . . . . . . . .   5

     D.   The False Representation Is Material . . . . . . . . . . . . . . . . . . . . . .   6

     E.   Defendants' Key Defense to Confusion and Materiality Is
          Without Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

     F.   Plaintiffs Have and Are Likely to Be Injured . . . . . . . . . . . . . . .   7

     G.   Plaintiffs Have Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

          1.   Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

          2.   Application of Legal Standard to Trial Evidence . . . . . . . . .  10

          3.   Defendants' Standing Arguments Are Without
               Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

     H.   Defendants Are Liable for California Unfair Competition . . . . . . . .  13

III. DEFENDANTS' AFFIRMATIVE DEFENSES ARE WITHOUT
     MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

     A.   Unclean Hands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

     B.   Laches . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

IV.  THE COURT HAS BROAD EQUITABLE POWER TO FASHION
     AN   INJUNCTIVE REMEDY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

     A.   Defendants Have Failed to Prove Disclaimers Are
          Effective . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

     B.   The Court's Inherent Equitable Powers Include
          Divestiture of the Domain Name Which is the Only
          Remedy That Will Afford Complete Relief in this Case . . . . . . . . .  18

4822-9037-3890.1                          -i-

PLAINTIFFS TRAFFICSCHOOL.COM, INC. AND DRIVERS ED DIRECT, LLC'S POST-TRIAL BRIEF

C.    As an Alternative to Divestiture of the Domain Name,
Plaintiffs Request an Acknowledgment Page and
Interceptor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

V.    THE COURT CAN AND SHOULD ORDER DEFENDANTS TO
DISGORGE THEMSELVES OF ALL PROFITS OBTAINED AS A
RESULT OF THEIR FALSE ADVERTISING . . . . . . . . . . . . . . . . . . . . .   21

VI.    PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES . . . . . . . . . . .   24

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ames Publishing Co. v. Walker-Davis Publications, Inc.,*
    372 F.Supp. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Annunziato v. E-Machines,*
    402 F.Supp. 1133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Australian Gold, Inc. v. Hatfield,*
    436 F.3d 1228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Better Business Bureau v. Medical Directors, Inc.,*
    681 F.2d 397 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Citizens Financial Group, Inc. v. Citizens National Bank of Evans City,*
    383 F.3d 110 (3rd Cir. 2004) cert. denied, 544 U.S. 1018 . . . . . . . . . . . . 14

*Coastal Abstract Serv., Inc. v. First America Title Insurance Co.,*
    173 F.3d 725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*FTC v. Brown & Williamson Tobacco Corp.,*
    778 F.2d 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*F.T.C. v. H.N. Singer, Inc.,*
    668 F.2d 1107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Florists' Transworld Delivery Association v. Worldwide Flower
    and Gift Emporium Inc.,*
    46 U.S.P.Q.2d 1244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Florsheim v. FTC,*
    411 F.2d 874 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
    826 F.2d 837 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gracie v. Gracie,*
    217 F.3d 1060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Haagen-Dazs, Inc. v. Frusen Gladje Ltd.,*
    493 F.Supp. 73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harper House,
    Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197 . . . . . . . . . . . . . . . . . . . . . 4

*Intermatic Inc. v. Toeppen,*
    947 F.Supp. 1227 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*International Order of Job's Daughters v. Lindeburger,*
    633 F.2d 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jack Russell Terrier Network of Northern Ca. v. American Kennel Club, Inc.,*
    407 F.3d 1027 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Kournikova v. General Media Commc'ns,*
    278 F.Supp.2d 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kournikova v. General Media Commc'ns,*
    278 F.Supp.2d 1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Lindy Pen Co., Inc.,*
    982 F.2d at 1408 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Lucent Technologies,*
*Inc. v. Lucentsucks.com,* 95 F.Supp.2d 528 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Maier Brewing Co.,*
    390 F.2d 117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.,*
    316 U.S. 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moore Business Forms, Inc. v. Seidenburg,*
    619 F.Supp. 1173 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Northwest Environmental Defense Center v. Bonneville,*
    477 F.3d 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer*
*Pharmaceuticals Co.,*
    129 F.Supp.2d 351 (D.N.J. 2000)
    <u>aff'd</u> 290 F.3d 578 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Novartis v. Johnson and Johnson,*
    290 F.3d 578 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Paccar v. Telecan Tech,*
    319 F.3d 243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Playboy Enterprises v. Baccarat Clothing,*
    692 F.2d 1272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Porsche Cars North America, Inc. v. Porsche.net,*
    302 F.3d 248 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Reebok Intern Ltd. v. Marnatech Enterprises, Inc.,*
    970 F.2d 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island*
    *Foundation, Inc.,* 926 F.2d 134 . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 23

*Standard Oil Co. of California v. FTC,*
    577 F.2d 653 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stanley Laboratories v. Federal Trade Com.,*

138 F.2d 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*U-Haul Intern., Inc. v. Jartran, Inc.,*
   793 F.2d 1034 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22, 23

*W. States Wholesale, Ind. v. Synthetic Industrial, Inc.,*
   206 F.R.D. 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Whittaker Corp. v. Execuair Corp.,*
   953 F.2d 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Williams Electronics, Inc. v. Valley Manufacturing Corp.,*
   568 F.Supp. 1274 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATE CASES

*Baggett v. Gates,*
   32 Cal.3d 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Korea Supply v. Lockheed Martin,*
   29 Cal.4th 1134 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Punsly v. Ho,*
   105 Cal.App.4th 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Woodland Hills Residents Association,*
   *Inc. v. City Council,* 23 Cal.3d 917 . . . . . . . . . . . . . . . . . . . . . . . 24

## FEDERAL STATUTES

15 U.S.C. § 1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15 U.S.C. § 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

15 U.S.C. § 1118 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15 U.S.C. 1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8

## STATE LAW AND MISCELLANEOUS

Business & Professions Code §17200 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California Vehicle Code §25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Civil Code §1770(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,
   §31:48-53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# I.   INTRODUCTION AND WHY THIS IS AN EXCEPTIONAL CASE CALLING FOR THE FULL SCOPE OF THE COURT'S EQUITABLE POWERS

Plaintiffs submit that this is an unprecedented case of predatory and intentional false and misleading advertising and unfair competition. Consider the following facts supported by undisputed trial evidence[1]:

- Defendants[2] admittedly knew about confusion and objections to their use of DMV.ORG since at least 2004 [FF[3] 90, 91]; 2004 was the first year when Defendants began to aggressively market the DMV.ORG website (or "Site") using search engine marketing [Trial Exhibit ("TE") 668 and compare FF 130 and 131 (showing no search engine marketing expenses and minimal profits in 2003 but $1.3 million in search engine marketing and profits of $1.7 million in 2004)];

- Prior to this lawsuit, the only "disclaimer" Defendants used on the Site was hidden and *not viewable* to a consumer on their computer screen (unless the consumer knew to scroll down three pages to read it). That disclaimer remains similarly hidden today [FF 62 (TE 317, p. 3)];

- Defendants have been receiving evidence of *daily confusion* in the form of consumer emails to the Site since at least October of 2006 and they continue to this day [FF 80-82; 84; 89];

- Defendants admitted that the primary means of attracting consumers to the Site is through search engine listings (80%), which include admittedly misleading

---

[1]   Plaintiffs submitted detailed post-trial findings of fact and conclusions of law with citations to evidence and law. Plaintiffs also objected to portions of Defendants' deposition designations, their requests for judicial notice, and other trial exhibits under the procedures set by the Court for trial. This brief will therefore only highlight certain evidence for argument and conclude with a discussion of remedies.

[2]   The analysis of why each Defendant is liable is set forth in Plaintiffs' Opposition to Defendants' Motion for Judgment on Partial Findings and therefore will not be reiterated herein.

[3]   "FF" used herein refers to Plaintiffs' [Proposed] Findings of Facts *and* the citation to evidence therein.

advertisements controlled by Defendants [FF 44-47, 42 (11/6 Trial Transcript ("TT") pp. 60:1- 61:13); FF 49-50];

• Even after this lawsuit was filed, Defendants made changes to their Site and search engine listings which they knew were not sufficient to eliminate confusion, even though they had (and have) the means to make more robust changes and their own Director of Customer Services has suggested such changes [FF 61; 70-72; 83-90, 92-93];

• Even after acknowledging the ongoing confusion, when pressed at trial as to why they were not making changes that would eliminate confusion, Defendant Raj Lahoti protested that the confusion is not (and has never been) a "problem" [FF 94].

This evidence and more [e.g. FF 75-77, 33-40] leads to the obvious conclusion about intentionality here: Defendants certainly knew that they were (and are) attracting consumers in large numbers to the Site based in large part on consumers' false belief that they are visiting a government (or affiliated) DMV agency website. Defendants have exploited this confusion with the specific intent to generate profit.

Contrary to Defendants' contention, this is harmful to the public who may believe that they are getting accurate information and recommendations from a government entity[4/] and who often provide highly sensitive information via email to the Site (e.g., social security numbers, DUI information, license numbers) [FF 80-82]. It is also injurious to Plaintiffs and other competitors, who are at a distinct disadvantage when a consumer purchases a course believing it to be endorsed by their government DMV website [See, Shannon Robertson Trial Declaration ("TD"), submitted without objection, who stated she would have searched for other drivers education courses online had she known that it was not the official DMV recommending the course].

---

[4/]    While gaining of the benefit of public deception in the form of profits from their "informational" Site, Defendants notably disclaim any *liability* for any inaccurate information they post [TE 317, pg. 3].

As will be discussed *infra*, injunctive relief in the form of divestiture of the DMV.ORG domain is now necessary to eliminate deception and rightfully deprive Defendants from continuing to profit from the misleading use of the domain name in connection with the Site. Such a remedy would have no material impact on Defendants' ability to *legally* operate their business and website and compete under a different (and non-misleading) domain name. Monetary relief in the form of a significant portion of Defendants' profits derived from the wrongful conduct would also serve the established goal under the Lanham Act of *deterring* Defendants from similar deceptive patterns in the future with other domains and websites. Finally, Plaintiffs respectfully request an award of their attorneys fees, as provided by law.

## II. PLAINTIFFS HAVE PROVED THE ELEMENTS OF THEIR CLAIMS

### A. Elements of False Advertising

The elements of false advertising under the Lanham Act are as follows: (1) a false statement of fact in a commercial advertisement; (2) the statement actually deceived *or has the tendency* to deceive a substantial segment of its audience[5]; (3) the deception is material, in that it is *likely* to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce[6]; and (5) the plaintiff has *or is likely* to be injured as a result of the false statement, by direct diversion of sales from itself to the defendant. <u>Harper House, Inc. v. Thomas Nelson, Inc.</u>, 889 F.2d 197,

---

[5] Defendants misguided the Court in reciting this element as "a substantial segment of *reasonably prudent consumers*" [See, Defendants' Finding of Fact, No. 6]. The distinction is not insignificant, as Defendants have intimated that it is not their responsibility to guard against those inattentive consumers who do not scour the entirety of DMV.ORG in an effort to find some indication that they are not the government ["…without knocking that specific person, you know, maybe they are just not reading…" (11-7 TT, p. 164:6-7)] and therefore, they would like this element to be restricted to "reasonably prudent consumers." However, this is not the law for false advertising cases and indeed, consumers are not always attentive. The Lanham Act's false advertising provisions are meant to protect *inattentive* consumers as well as attentive consumers. Moreover, a substantial segment of the Defendants' audience consists of *minors* looking for information about driving schools – they, especially, need to be protected. [See, e.g., TD Shannon Robertson.]

[6] This element is undisputed. <u>Intermatic Inc. v. Toeppen</u>, 947 F. Supp. 1227, 1239-1240 (N.D. Ill. 1996)(Internet communications satisfy this element); [FF 41].

208 (9th Cir. 1989); <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1139 (9th Cir. 1997); 15 U.S.C. 1125(a)(1).[2/]

**B.   Defendants' Advertisements Are Literally False (Which Includes Falsity by *Necessary Implication*)**

To demonstrate falsity, Plaintiffs may show either of the following:

(1)   that an advertisement was literally false (*either* on its face *or* by necessary implication when viewed in its full context); *or*

(2)   that an advertisement is literally true but likely to mislead or confuse consumers. <u>Southland</u>, 108 F.3d at 1139.

Defendants' advertisements are literally false, if not on their face, then at the least by necessary implication in their full context because they imply the imprimatur of a government DMV agency, where none exists [FF 33-40; 42-43, 51-60, 62-68,73, 75-77, 78-79]. <u>See, e.g.</u>, <u>Better Business Bureau v. Medical Directors, Inc.</u>, 681 F.2d 397 (5th Cir. 1982); <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.</u>, 129 F. Supp. 2d 351 (D.N.J. 2000), <u>aff'd</u> 290 F.3d 578 (3rd Cir. 2002)(name "Mylanta Night Time Strength" for an antacid was enjoined); <u>Stanley Laboratories v. Federal Trade Com.</u>, 138 F.2d 388 (9th Cir. 1943)(use of "MD" in tradename itself implied endorsement of product by doctors).

Because the advertisements in this case are sufficiently clear and unambiguous about the message being conveyed (i.e., that DMV.ORG is owned or affiliated with an official DMV), the Court need not base its finding of liability on evidence of consumer perception at all. <u>Southland</u>, 108 F.3d at 1139; <u>Better Business Bureau</u>, 681 F.2d. at 403.

**C.   Consumers Are Likely to Be Misled or Confused**

~~In addition, however, to the advertisements being literally false, Plaintiffs have~~

---

[2/]    Stating in pertinent part: "Any person who...uses in commerce any word, term, name, symbol . . .false or misleading representation of fact . . .which misrepresents . . .shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act."

also established that consumers are *likely* to be misled or confused. <u>Southland</u>, 108 F.3d at 1139. In this case, there is no reasonable dispute as to likelihood of confusion. First, Defendants have admitted that their advertising is confusing and that actual confusion is taking place. [FF 89, 76, 42 (11-6 TT pp. 60:1- 61:13); TE 324].[8] Second, confusion was also established through countless instances of actual confusion evidenced by consumer e-mails and news articles which continue to this day [FF 80-86]. Finally, Plaintiffs' consumer surveys support the conclusion that confusion exists [FF 43, 79].[9]

## D. The False Representation Is Material

Plaintiffs have also established that the deception related to DMV.ORG is material (i.e., that the deception is likely to influence consumers to purchase traffic school and drivers education courses recommended through DMV.ORG). <u>Southland</u> at 1139. To do so, Plaintiffs merely need to show that the misrepresentation is *likely* to influence purchasers, not that a purchasing decision turns *solely* on the misrepresentation. <u>See</u>, <u>e.g.</u>, <u>Williams Electronics, Inc. v. Valley Manufacturing Corp.</u>, 568 F.Supp. 1274 (N.D. IL. 1983).

Plaintiffs have submitted persuasive evidence that the false representations are likely to (and in fact did) influence purchasing decisions [FF 95-99, TE 316, TE 350,

---

[8] Not only does TE 324 evidence literal falsity, it is evidence of Defendants' intent. Defendants control the text and layout of the advertisement, and the text is designed – through its emphasis of "California" in close juxtaposition to "DMV" and "recommended"– to persuade consumers to click on the link to the Site under the erroneous belief that the course is specifically being recommended by an official DMV agency. The trial evidence is devoid of any explanation by Defendants of why this and other similar advertisements were created if the intent was *not* to deceive. Moreover, Defendants actually represented to the State of California they would cease the practice of using "California" in close proximity to "DMV" but failed to do so [FF 90].

[9] Defendants' survey should be given little weight, if any, for the reasons fully briefed in Plaintiffs' motion *in limine*. There can be no reasonable dispute that the primary issue in this case is consumer perception regarding DMV affiliation with DMV.ORG. Despite the unassailable simplicity and relevance of the questions Dr. Maronick tested (Whose website/link is this?), the Defendants instead concocted a meaningless survey with an incomprehensible question: *"If you have an opinion, do you think that any of the entities shown on these four pages is affiliated, with anyone else, or that none of them are affiliated with anyone else?"* That Defendants refused to test the key issue in the case suggests that Defendants knew if they performed a proper survey, the results would have been highly unfavorable.

TE 389]. Witness Shannon Robertson clearly stated: "This [erroneous] belief influenced my decision to sign up with that course provider." [TD Shannon Robertson, ¶6].

## E. Defendants' Key Defense to Confusion and Materiality Is Without Merit

Defendants submitted false "conversion data" testimony by declaration to convince the Court that DMV.ORG visitors were no more inclined to purchase courses after visiting the Site than Plaintiffs' visitors, theorizing that if DMV.ORG deceived consumers into a false perception of DMV affiliation, consumers would purchase courses at a higher rate [Moretti TD, ¶¶18-22.] Defendants' witness Steve Moretti however conceded during cross examination that his declaration testimony was inaccurate and false [FF 111-114]. Thus, there is no conversion data in evidence to support Defendants' theory. Also, Mr. Moretti was impeached regarding Defendants' ability to track the exact exit path of users who visit the Site's traffic school and drivers education pages [FF 106; FF 115.][10]

## F. Plaintiffs Have and Are Likely to Be Injured

In order to establish false advertising under the Lanham Act, plaintiff need only show that they are *likely* to be injured, not that they actually have been injured.[11] Southland, at 1139; 15 U.S.C. 1125(a)(1); Kournikova v. Gen. Media Commc'ns, 278 F.Supp.2d. 1111, 1119 (C.D. Cal. 2003) (a plaintiff could show a measurable drop in sales to support injury). Plaintiffs' evidence of injury includes the following:

---

[10] Defendants' statistics *support* Plaintiffs' materiality argument and do not support Defendants' contentions [FF 107]. For example, of the 18,000 visitors to the California Traffic School page in May of 2007, over half exited the Site from that page. This suggests that the page was influential in persuading consumers to access the "I Drive Safely" link as that is the primary exit portal on the page [FF 108-109]. Also, of the 6,754 people who *landed* on the California Traffic School page from a search engine sponsored listing in May of 2007, 4,376 persons *exited from that page without looking at another page* [FF 108-110, TE 109 pp. 2534, 2534, 2537]. That two thirds of those who landed on the page after being referred by the deceptive sponsored link immediately exited the page without looking at another page suggests that users were persuaded to click on the I Drive Safely link and purchase the course.

[11] While Plaintiffs have established injury, that is not a requirement for injunctive relief. Southland at 1145 (9th Cir. 1997).

1        (1)     the false advertising has resulted in a direct loss of business and marketing

2   funds for Plaintiffs [FF 104-105, including citations to Eric Creditor TD with

3   explanations of financial data and reports in TE 365];

4        (2)     DMV.ORG enjoys higher consumer click-through rates which has impacted

5   Plaintiffs' marketing efforts because Plaintiffs have to compete for the same key words

6   on pay-per-click advertising on an uneven playing field [FF 100];

7        (2)     consumers view DMV.ORG's "recommendation" of traffic school and

8   drivers education courses through the Site as a recommendation by a state agency which

9   impacts the ability of Plaintiffs to compete in a fair competitive environment [FF 101];

10       (3)     Plaintiffs lose potential sales to consumers every time consumers are

11  directed to DMV.ORG through the false representations [FF 102-103].

12  **G.    Plaintiffs Have Standing**

13  The trial evidence only *further establishes* what was clear to the Court when it

14  issued its previous Orders resolving the standing issue in Plaintiffs' favor, refusing to

15  dismiss the First Amended Complaint for lack of standing and rejecting the "de

16  minimus" standing arguments in Defendants' Motion for Summary Judgment: Plaintiffs

17  have standing to bring their claims under relevant legal precedent, as follows.

18  **1.    Legal Standard**

19  Standing for Lanham Act false advertising claims is a flexible doctrine in which

20  the proper legal inquiry is not whether the parties are "competitors" *per se*, but rather,

21  whether the plaintiff has *or* is likely to suffer a *competitive injury*. See, 15 U.S.C. §

22  1125(a)(1).[12] Exact congruency at every level of business operations is not a

23  requirement. Rather, the inquiry is whether the alleged injury is "harmful to the

24  plaintiff's ability to compete with the defendant." Jack Russell Terrier Network of

25  Northern Ca. v. American Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir. 2005).

26

27      [12]     For purposes of standing under California law, there is no requirement that
    *competitive* injury be established. Rather, all that Plaintiffs need establish is that they

28  in fact have been injured as a result of the Defendants' false advertising. Annunziato
    v. E-Machines, 402 F.Supp. 1133, 1137 (C.D. Cal. 2005).

One case that is particularly well reasoned on the Ninth Circuit's standard is Nat'l Servs. Group v. Painting and Decorating Contractors of Am., No. SACV 06-563 CJC (Anx), 2006 WL 2035465, at *3-*4 (C.D. Cal. July 18, 2006). In that case, there was no dispute the parties were *not* actual competitors. The plaintiffs owned a network of painting contracting companies (and thus provided services to consumers, like Plaintiffs do in this case) while the defendant was simply a trade advocacy group that did not offer any painting services at all (similar to how Defendants purport to simply be Internet "publishers" in this case). In analyzing what it means to suffer a competitive injury, Judge Carney, relying upon the Ninth Circuit's standing requirements as set forth in Jack Russell, *supra*, and Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999),[13/] held as follows:

> Coastal Abstract and Jack Russell both stand for the proposition that 'competitive injury' rather than an exact congruency between the business of the plaintiff and defendant, is *the key* . . . In both cases, the Ninth Circuit focused not on whether the parties were for–profit or not, or on the structure of their business, but on whether the statement in issue tended to divert business from the plaintiff to the defendant . . . Although [the defendant] is a non-profit organization that itself *does not own or manage painting companies*, its members are commercial entities in direct competition with the plaintiffs. Id., at *4 (Emphasis added).

Other cases have arrived at similar logical results. For example, in Kournikova v. Gen. Media Commc'ns, 278 F.Supp.2d. 1111, 1117-1120 (C.D. Cal. 2003), Judge Fees noted that — obviously — the tennis player Anna Kournikova and the defendant, a

---

[13/] In Coastal Abstract, the defendant, an individual, was *not* a competitor of the plaintiff, a title company, but the Ninth Circuit held that the injury suffered was nonetheless competitive in nature. Id. at 734.

publishing company, were not competitors per se, but that Anna Kournikova nonetheless suffered a competitive injury and thus could bring her false endorsement claim. Id. See, also, W. States Wholesale, Ind. v. Synthetic Indus., Inc., 206 F.R.D. 271, 276 (C.D. Cal. 2002).

## 2. Application of Legal Standard to Trial Evidence

Similar to the cases *supra*, the fact that Defendants have to contract with other third parties for the actual fulfillment of traffic school and drivers education courses marketed on DMV.ORG and the fact that Defendant Raj Lahoti characterized his core business as that of a "publisher" is of no consequence.[14/]

The trial evidence establishes that Plaintiffs' business model is essentially the following: (1) Plaintiffs engage in search engine optimization and search engine marketing (pay-per-click advertising) seeking to attract consumers searching online for traffic school and drivers education courses to their webistes; (2) when consumers arrive at Plaintiffs' websites, they are presented with the ability to purchase traffic school and drivers education courses; and (3) from this model, Plaintiffs generate revenue when a course is sold [FF 1-12].

Defendants' business model works the *exact* same way: (1) Defendants engage in search engine optimization and search engine marketing to persuade consumers when searching online for traffic school and drivers education courses to link to DMV.ORG, even bidding on the same key words as Plaintiffs [FF 29-32]; (2) when consumers arrive at DMV.ORG, they are presented with the ability to purchase drivers education and traffic school course [FF 22-26]; and (3) when such a course is sold (and not before[15/]),

---

[14/] The labels the parties used to describe their businesses is far less important than what the evidence shows about their respective businesses. Moreover, if Defendant Online Guru, Inc. ("Online Guru") is primarily a "publisher" (which is disputed by Plaintiffs), then so to are Plaintiffs as both Plaintiffs and Defendants generation of revenue related to their traffic school and drivers education referral business is performed in substantially the same way.

[15/] Defendants do *not* act as passive advertisers, making money from the mere display of banner ads on their Site. They *only* generate traffic school and drivers education revenue once the course is *sold* [FF 23, 48].

Online Guru, like Plaintiffs, generate revenue [FF 23; 48].

With every state outside of California for traffic school and drivers education, Plaintiffs' and Defendants' business model is in every relevant way *identical*. Plaintiffs do not fulfill any traffic school or drivers education courses outside of California but rather, *exactly like Defendants*, enter into affiliate relationships with third parties to fulfill the courses in those states and in some cases, Defendants and Plaintiffs use the exact same referral partner [FF 6, 22, 26].[16]

### 3. Defendants' Standing Arguments Are Without Merit

Defendants make an issue of the difference in the means by which the parties fulfill courses in California and how revenues for non-California sales are accounted for in Plaintiffs' financial reports. In California, Plaintiffs actually fulfill the traffic school and drivers education courses themselves as they are licensed providers [FF 3].

For traffic school courses in California, Online Guru contracts with a third party (I Drive Safely) to fulfill the courses for those students who purchase the California traffic school courses by linking from the Site [FF 22-23]. Defendants contend that since they contract with another party to fulfill the courses, this equates with no competitive injury to Plaintiffs and thus no standing – an insupportable conclusion.

For drivers education courses in California, Online Guru refers consumers from the Site to TeenDriversEducation.com, a website owned by Defendant Find My Specialist, Inc. and managed by Online Guru [FF 16; 24-25]. From the consumer's perspective, the purchase of the course is from Teen Drivers Education – not from the actual course fulfiller, Golden State Private School [Id.; TE 413]. Thus, for California drivers education, Defendants do not even refer consumers from the Site to a separate entity. That the course is actually fulfilled by a third party (for which Defendants keep

---

[16] Defendants and Plaintiffs also engage in many other competitive endeavors such as offering insurance links, used car links, driving records and other related goods and services [FF 27-28]. Moreover, Defendants have placed in issue Plaintiffs' website "DrivingLinks.com" which Defendants contend is the same type of website as DMV.ORG, thus further refuting any claim that Defendants and Plaintiffs are not competitors.

upwards of 80% of the tuition fee [FF 23]), does not mean that there can be no competitive injury to Plaintiffs.[17]

Faced with these indisputable facts, Defendants nonetheless attempt to invent a "*de minimus*" standard [Defendants' Proposed Fact No. 27] that is not supported factually and is not the law. As the Court has already held, there is no authority to support the notion that "de minimus" competition is insufficient to create standing. However, even if this were the law, there are no *facts* to support the argument.

As Plaintiffs have testified, referral revenue to them means all of that revenue generated through the tuition/fees paid by consumers for courses sold outside of California [FF 6, 11-6 TT 161:6-169:6]. This referral revenue is accounted for in financial reports by Plaintiffs differently depending on whether Plaintiffs collect the fees from the students and pay the third party affiliate or whether the third party affiliate collects the student fees and pays Plaintiffs (this was recorded as "referral fees").

When Defendants refer to "referral fees" and then make their de minimus argument, they are only referring to the fees paid to Plaintiffs by the third party affiliate and Defendants are not including *all* the referral *revenue* generated by Plaintiffs through their third party affiliate referral relationships (i.e., Defendants ignore the fees collected by Plaintiffs and then shared with the third party affiliates). In fact, Plaintiffs' referral revenue as defined by those revenues earned *by revenue sharing with affiliates* is more than de minimus [TE 365 (p. 1685, showing approximately $530,000 coming from sales made outside of California with referral relationships), FF 104]. It only appears

---

[17] As it relates to California drivers education, Defendants are engaged in a common practice known as "private labeling." As anyone who has even been in a Costco store can attest, Costco has a house brand known as "Kirkland." The Kirkland brand is placed on any number of products from blue jeans to aspirin. That these products are branded as "Kirkland" does not mean that Costco is in fact the manufacturer of the products. Of course, Costco contracts with clothing companies to make its blue jeans and laboratories to make its aspirin. This illustrates the point: No one would seriously argue that when Costco sells aspirin or blue jeans under the Kirkland brand that it is not competing with Bayer or Levis simply because Costco does not make the aspirin or blue jeans themselves. While Defendants do not fulfill the drivers education courses in California, that fact is largely hidden from consumers. As far as the consumers are concerned, they are buying a course from TeenDriversEducation.com.

1 insignificant if one misunderstands the financial summaries of the Plaintiffs.

2 **H.  Defendants Are Liable for California Unfair Competition**

3 California's Unfair Competition Law ("UCL") codified in Business & Professions

4 Code §17200 is sweeping in nature and includes "any unlawful, unfair, or fraudulent

5 business act or practice and unfair, deceptive, untrue or misleading advertising and any

6 act prohibited by Chapter 1 (commencing with §17500) of Part 3 of Division 7 of

7 Business & Professions Code." In other words, §17200 "borrows" violations from other

8 state and federal laws and makes each independently actionable as an act of unfair

9 competition under California law. Korea Supply v. Lockheed Martin, 29 Cal.4th 1134,

10 1144 (2003). The same evidence that supports Plaintiffs' federal claim also supports

11 this claim. International Order of Job's Daughters v. Lindeburger, 633 F.2d 912, 916

12 (9th Cir 1980) (Federal and state laws regarding trademarks and related claims of unfair

13 competition are substantially congruent.)[18/]

14 **III.  DEFENDANTS' AFFIRMATIVE DEFENSES ARE WITHOUT MERIT**

15 Defendants' affirmative defenses of unclean hands and laches are inapplicable

16 and unsupported by the trial evidence.

17 **A.  Unclean Hands**

18 First, the doctrine of unclean hands does not apply to a claim for injunctive relief

19 where there is ongoing public deception by false advertising. See, J. Thomas McCarthy,

20 McCarthy on Trademarks and Unfair Competition, §31:48-53, Volume 6 (4th Ed.

21 2007)("McCarthy"); See also, U-Haul International, Inc. v. Jartran, Inc., 522 F. Supp.

22 1238 (D. Ariz. 1981), aff'd, 681 F.2d 1159 (9th Cir. 1982) (unclean hands is a

23 disfavored defense in false advertising cases); Ames Publishing Co. v. Walker-Davis

24

25 ──────────────────

26 [18/]    Defendants' conduct may also be deemed illegal pursuant to other California statutes, including Civil Code §1770(a)(2)(3) which prohibits various misrepresentations as to the "source, sponsorship, approval, or certification of goods or

27 services" as well as the fact that the conduct violates California Vehicle Code §25 which makes it "unlawful for any person to display or cause or permit to be displayed any sign,

28 mark, or advertisement indicating an official connection with The Department of Motor Vehicles."

Publications, Inc., 372 F. Supp. 1 (E.D. Pa. 1974) (unclean hands is no defense because consumers rely on plaintiff as their *vicarious avenger*). In this case, Plaintiffs are indeed acting as the vicarious avenger for consumers and government DMV agencies.[19]

Moreover, Defendants have not sustained their burden to prove unclean hands by *clear and convincing* evidence. See, Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 129 (3rd Cir. 2004), cert. denied, 544 U.S. 1018 ("Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands.")

Defendants contend that (1) Plaintiffs brought this suit because they have animosity toward Defendants and were unable to negotiate a deal with Defendants in 2006; (2) Plaintiffs have registered and used domain names that include the DMV acronym; and (3) Plaintiffs' DrivingLinks.com website and other advertising contain references to the DMV, but do not contain any disclaimers.

None of these facts, however, establishes unclean hands because none of this conduct is wrongful, egregious, or relevant to Plaintiffs' precise claim against Defendants. See, Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987). First, Defendants' "spurned lover" defense regarding previous business dealings between the parties is not wrongful conduct and therefore not "unclean hands." There is nothing that legally requires that parties have a positive view of their adversary before filing suit. Court houses are filled with parties who once worked together and for a variety of reasons are now suing each other.

---

[19]    As Professor McCarthy has noted: "Of course, *if* a competitor cannot be a vicarious avenger and neither consumers *nor public agencies make a move*, then the seller who uses false advertising has no adversary to challenge his activities. For this reason, the courts in recent years have been less enamored of the supposed prohibition against "vicarious avengers" of consumer rights." See, McCarthy, §27:2. Defendants' contention that no liability exists because no state has sued them or joined in this lawsuit is without merit, and it would be pure speculation to assume that state agencies *approve* of Defendants' practices. A more likely scenario is that litigation is expensive and state budgets are limited.

Second, there is no evidence that Plaintiffs are engaged in the same deceptive advertising as Defendants. See, Haagen-Dazs, Inc. v. Frusen Gladje Ltd., 493 F.Supp. 73, 76 (S.D.N.Y 1980) (unclean hands applied only because plaintiff was "guilty of the same deceptive trade practices of which it accuses defendants"). No evidence was presented that Plaintiffs' use any their domain names with the DMV acronym in them or any of their websites or advertising in a deceptive manner that causes consumer confusion [FF 120-121].[20] Defendants could (and would) have asserted a counterclaim – not an affirmative defense – if there was any merit to Defendants' contentions.

**B.  Laches**

Laches is similarly unfounded. As explained by Professor McCarthy, "laches" should be measured from the date that the defendant's acts first significantly impacted the plaintiff. Moreover, "any change in the format or method of use" by a defendant is sufficient to excuse a prior delay. See, McCarthy, § 31:19-20 (and discussion of the legal issues of encroachment and escalation of use by a defendant and case law therein).

DMV.ORG became a significant competitive issue to Plaintiffs in 2006 when Plaintiff Drivers Ed Direct, LLC entered into discussions with Defendants [FF 116-119]. Aggressive marketing of DMV.ORG did not begin in earnest until 2004 and 2005 and the "brand new" website did not launch until October of 2006 [FF 118, 130-332 ]. Moreover, during these negotiations, Defendants never told Plaintiffs that the California DMV had complained or that confusion among the public existed [FF 119]. Moreover, Plaintiffs did not even learn that Defendants' actions were potentially illegal until they sought counsel in August of 2006 [TD Eric Creditor, ¶37].

Finally, defendants have failed to prove that they suffered any prejudice caused by Plaintiffs' actions. Defendants chose to invest $10 million in marketing DMV.ORG with the knowledge of consumer confusion and actual notice of objection by California

---

[20] Arguing that Plaintiffs' use of the term DMV on the DrivingLinks.com website is wrongful is akin to arguing that H&R Block's use of the term "IRS" in its materials is wrongful. Descriptive and fair use of DMV is perfectly appropriate when conveying information about the DMV. This case is not about such usages.

1  DMV in 2004. Defendants argument that an objection on the part of Plaintiffs would
2  have caused them to alter their course is not credible. Even after being sued, Defendants
3  have not significantly altered their practices or changed their domain name.

4  **IV.    THE COURT HAS BROAD EQUITABLE POWER TO FASHION AN**
5  **INJUNCTIVE REMEDY**

6      Under the Lanham Act, a district court has the "power to grant injunctions,
7  according to the principles of equity and upon such terms as the court may deem
8  reasonable" to enjoin Defendants from violating §1125(a) of the Act and to protect the
9  public and to deter future violations. See, 15 U.S.C. § 1116(a); Northwest
10  Environmental Defense Center v. Bonneville, 477 F.3d 668, 680 (9th Cir.
11  2007)("[C]ourts of equity may, and frequently do, go much farther both to give and
12  withhold relief in furtherance of the public interest than they are accustomed to go when
13  only private interests are involved."); F.T.C. v. H.N. Singer, Inc., 668 F.2d 1107, 1112
14  (9th Cir. 1982); Playboy Enterprises v. Baccarat Clothing, 692 F.2d 1272, 1275 (9th Cir.
15  1982)(stating that trial courts should carefully fashion remedies which will take all the
16  economic incentive out of Lanham Act violations).

17      There is no dispute that the public interest is a significant factor in this case.
18  Defendants engaged in deceptive and misleading advertising and business practices that
19  involve holding themselves out as a government agency. This case extends far beyond
20  a private dispute between the parties because it is not simply Defendants' competitors
21  who are harmed by Defendants' unfair advantage but the public at large.

22      **A.    Defendants Have Failed to Prove Disclaimers Are Effective**

23      Defendants' theory that their alleged disclaimers are sufficient as a remedy has
24  been disproved because over the past years (and to this day) they have admittedly *not*
25  alleviated the confusion [See, FF 89, evidence of admission that disclaimers do not
26  work]. Defendants have similarly failed to present any credible evidence that their post-
27  suit textual changes are effective in preventing confusion.

28

PLAINTIFFS TRAFFICSCHOOL.COM, INC. AND DRIVERS ED DIRECT, LLC'S POST-TRIAL BRIEF

It is well-settled that when confusion exists, disclaimers are disfavored as a remedy. "The proponent of a disclaimer bears a 'heavy burden ... to come forward with evidence sufficient to demonstrate that any proposed materials would significantly reduce the likelihood of consumer confusion." Australian Gold, Inc. v. Hatfield, 436 F.3d 1228, 1240, 1243 (10th Cir. 2006).

In Novartis v. Johnson and Johnson, 290 F.3d 578, 599 (3rd Cir. 2002), the court said that "we are skeptical whether disclaimers can cure false advertising claims (made literally or by necessary implication)" and "if a district court is not persuaded that the defendant's proposed disclaimer would protect consumers fully, it may take the more significant measure of entering a complete prohibition on false speech.").

Moreover, when the predominant message (i.e, the domain DMV.ORG) is deceptive or misleading, it cannot be corrected by less prominent means of disclaiming association. See, Standard Oil Co. of California v. FTC, 577 F.2d 653, 659 (9th Cir.1978) (affirming finding that the predominant visual message of an advertisement was misleading, and that it was not corrected by the accompanying verbal message in the advertisements).

And it is firmly established that deceptive advertising is not cured by reference to small print disclaimers. See, FTC v. Brown & Williamson Tobacco Corp., 778 F.2d 35, 42-43 (D.C.Cir.1985) (consumers are unlikely to read the small print in part of the advertisement); Florsheim v. FTC, 411 F.2d 874 (9th Cir. 1969) (small print disclaimers were insufficient to dispel deception caused by defendants false advertising holding itself out to be government related).

Again, the "disclaimers" and other textual changes already employed by Defendants have not effectively dissipated confusion. Even if Defendants were to place appropriate and *conspicuous* disclaimers on all pages of their website (something they have yet to do), such would not prevent consumers from arriving at their website after being deceived to get to the Site by the misleading search engine advertising.

Moreover, consumers that find what they want after arriving to the Site, may very

well simply purchase what they came looking for, even if they are finally educated as to the Site not being affiliated with a government agency. This would therefore do nothing to alleviate the unfair competition aspect of the case. In <u>Australian Gold</u>, the court held that the defendant's disclaimers were inadequate to dissipate any initial interest confusion because "a defendant's website disclaimer, proclaiming its real source and disavowing any connection with its competitor, cannot prevent the damage of initial interest confusion, which will already have been done by the misdirection of consumers looking for plaintiffs' websites." <u>Id</u>. at 1243.

For the above reasons, Plaintiffs submit that disclaimers[21]alone have not and will not cure confusion (including initial interest confusion) and will not equate with complete injunctive relief.

**B.    The Court's Inherent Equitable Powers Include Divestiture of the Domain Name Which is the Only Remedy That Will Afford Complete Relief in this Case**

The only remedy which will ensure that Defendants cease profiting from their unfair advantage is simply to take that unfair advantage away. After all, Defendants admit that the domain name DMV.ORG is "deeply entrenched" in the Internet (with thousands of links and references) [<u>See</u>, Trial Declaration of Raj Lahoti, ¶ 19, 11-7 TT at pp. 153-54)].

Here, the root of deception lies in the domain name DMV.ORG and domain names are property. <u>Lucent Technologies, Inc. v. Lucentsucks.com</u>, 95 F.Supp.2d 528, 535 (E.D.Va 2000); see also <u>Porsche Cars North Am., Inc. v. Porsche.net</u>, 302 F.3d 248

---

[21]    A true disclaimer would read as: "THIS IS NOT THE STATE OF CALIFORNIA [OR OTHER STATE NAME] DEPARTMENT OF MOTOR VEHICLE'S WEBSITE. IF YOU WISH TO GO TO THAT WEBSITE, HERE IS THE LINK" and exist prior to a consumer being able to enter the Site. It would be prominent, conspicuous, clear and specifically identify with *whom* DMV.ORG is *NOT* to be associated with; it would not leave it to ambiguity and the imagination of the viewer to figure this out, such as "privately owned" or "unofficial" or other verbiage Defendants have now adopted.  It would be used on every page of the Site across the entire top quarter of the page (from margin to margin) with no DMV.ORG branding until below the disclaimer.

(4th Cir.2002) (Because domain names constitute property, they properly are considered a "*res*" for purposes of *in rem* jurisdiction). As property that significantly drives the confusion, the domain name is subject to the Court's broad statutory and equitable powers.

This Court's statutory and inherent equitable powers is broad and includes the authority to order a defendant to destroy, forfeit or relinquish all property used to violate the Lanham Act. <u>See</u> 15 U.S.C. § 1118 ("[T]he registered mark or, in the case of a violation of section 1125(a) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation . . .shall be delivered up and destroyed."); <u>Reebok Intern Ltd. v. Marnatech Enterprises, Inc.</u>, 970 F.2d 552 (9th Cir. 1992)("Under the circumstances, in addition to those specific remedies enumerated in the Lanham Act, the district court also has by implication the "authority to afford all necessary ancillary relief.") Transfer or destruction of infringing property has long been an equitable remedy under the Lanham Act. <u>Whittaker Corp. v. Execuair Corp.</u>, 953 F.2d 510, 518-19, n.1 (9th Cir. 1992) (the district court has the authority to order transfer and destruction of all infringing property).

The DMV.ORG domain name is the flash point for confusion and the core from which Defendants have created their misleading marketing campaign. <u>See, Paccar v. Telecan Tech</u>, 319 F.3d 243, 250 (6th Cir. 2003) (domain names may signify a source of origin and are, therefore, an important signal to internet users who are seeking to locate web resources). If the domain name is no longer part of the equation, confusion will likely end.

However, Defendants' business itself would not be shut down and could continue under a non-misleading domain name. Defendant Raj Lahoti testified that losing the domain name DMV.ORG would not result in his business shutting down or prevent the Site from being run under a different domain name [11-7 TT 155:7-156:6]. Any lost business from the change of the domain name would only be that which would have been gained by virtue of an unlawful and unfair advantage. Therefore, Defendants are

not truly harmed by the divestiture; they are simply placed on a level playing field with all other competitors.[22] Also, divesting Defendants of the domain name will do away with the constant policing that Plaintiffs will have to undertake if the domain name can be continued to be used under other restrictions.

For these reasons, Plaintiffs contend that divestiture of the domain name is the only means to completely alleviate the problem of unfair competition and false advertising.

## C.    As an Alternative to Divestiture of the Domain Name, Plaintiffs Request an Acknowledgment Page and Interceptor

In Moore Business Forms, Inc. v. Seidenburg, 619 F.Supp. 1173 (D.C.La.1985), pursuant to the plaintiff's request, the court ordered as follows:

> IT IS FURTHER ORDERED that an intercept operator be set up at
> defendant's expense, to answer defendant's telephone numbers
> 318/865-5207 and 318/222-9229 to advise all callers that if it was their
> intention to reach Moore Business Forms, Inc., they have reached the
> wrong party and that the correct number for Moore Business Forms, Inc.
> in Shreveport is 318/868-3615.

Id.;see also Florists' Transworld Delivery Ass'n v. Worldwide Flower and Gift Emporium Inc., 46 U.S.P.Q.2d 1244 (D. Nev. 1998) (defendant was ordered to place an intercept on the key telephone numbers and the telephone intercept operator would ask each caller whether he or she was seeking an FTD florist or defendant and direct the call accordingly.)

---

[22]    Consider: Defendants estimate that they will attract upwards of 60 million visitors in 2007 [Moretti Trial Dec. ¶4(b)] and 80% of its visitors arrive from search engines, which of course are products of the Search Engine Marketing and Search Engine Optimization strategies. [11-7 TT 156: 20-25]. Marketing the site under a different name, like, for example, UnofficialDMVGuide.com, would have no impact on Defendants' ability to engage in the exact same strategies.

Here, the false advertising means is through the Internet and interception is thus significantly less complex and costly. All that need be employed is an acknowledgment page communicating to all visitors on all entry pages of the Site that the Site is not a government DMV website and require an affirmative click-through to enter the Site after having understood this fact. The acknowledgment page should also provide links to the government websites through a click feature. Ironically, Defendants' own customer service representative, Jerry Flack, suggested to Mr. Moretti just this kind of interceptor page to help prevent consumers from submitting confidential information to DMV.ORG [FF 83].

## V. THE COURT CAN AND SHOULD ORDER DEFENDANTS TO DISGORGE THEMSELVES OF ALL PROFITS OBTAINED AS A RESULT OF THEIR FALSE ADVERTISING

The best way to deter future acts of false advertising and other forms of commercial piracy is simply to make such conduct unprofitable. Maier Brewing Co., 390 F.2d. 117, 123 (9th Cir. 1968). The Lanham Act, 15 U.S.C. § 1117 provides in pertinent part that a plaintiff "shall be entitled, upon the finding of an infringement and subject to the principles of equity, to recover defendant's profits." "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Id.

There is no requirement of proof of actual confusion or actual injury to recover an infringer's profits. Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000) ("[a] showing of actual confusion is not necessary to obtain a recovery of profits"). Instead, to recover a defendant's profits under the theory of unjust enrichment, the plaintiff must demonstrate some kind of intentional conduct on the defendant's part which shows an attempt to reap the harvest of another. Maier Brewing Co., 390 F.2d at 123. The amount of profits awarded bears no relation to the amount of damages suffered by plaintiff. Id. Rather, profits are awarded to take all financial incentive out of the unfair competition. Id.

The intent or *mens rea* of the defendant has been referred to as "deliberate," "willful," "intentional," or "knowing." See <u>Lindy Pen Co., Inc. v. Bic Pen Corp.</u> 982 F.2d 1400, 1406 (9th Cir. 1993)(collecting cases and noting that deliberate infringement has been described in many different ways). As detailed above, there can be no doubt that this case is exceptional.

Notably, defendants have "spent over $10,000,000 on search engine marketing to promote the DMV.ORG website since 2002" and it was because of these "successful marketing efforts" that DMV.ORG is now a "deeply entrenched name in the Internet with significant associated goodwill." <u>See,</u> Trial Declaration of Raj Lahoti, ¶¶ 5, 19. Defendants can find no shelter, however, in the argument that it would be unfair to be divested of the fruits of their wrongful conduct.

Because the amount of profit *reaped* by successful marketing is at least the amount *spent* on the marketing, the Ninth Circuit has held that a proper measurement of profits for purposes of disgorgement under the Lanham Act is one based on the amount spent on advertising. <u>U-Haul Intern., Inc. v. Jartran, Inc.</u>, 793 F.2d 1034 (9th Cir. 1986). In <u>Uhaul</u>, the district court awarded plaintiff $6 million in profits based on evidence that defendant spent $6 million in running the false advertising. The Ninth Circuit affirmed as follows:

> The district court assumed that the financial benefit was at least equal to the advertising expenditures. Considering the detailed evidence that the court had of Jartran's swift revenue growth and the connection of that growth to Jartran's advertising, that finding is not clearly erroneous. <u>Id</u>. at 1042.

Under the principles of <u>U-Haul</u>, a disgorgement remedy of $10 million is wholly supportable as that is the amount Defendants have admitted spending on search engine marketing in 2006 and 2007 [FF 141-142 ] to achieve their significant revenue stream with misleading advertising [which likely will be over $16 million in 2007 alone, up

from $11.6 million in 2006 [TE 680 (extrapolating income through the end of 2007].[23/]

Other methods of calculating profits involve tracing profits from sales attributable to the false advertising. Lindy Pen Co., Inc., 982 F.2d at 1408. Once the plaintiff has shown its entitlement to defendant's profits, it need only establish defendant's gross revenues from the illegal activity with reasonable certainty. Id. Thereafter, the defendant bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and, additionally, any permissible deductions for overhead (i.e., showing all elements of costs or deductions claimed). Id.; 15 U.S.C. § 1117; see also Maier Brewing Co., 390 F.2d, 123; Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206-07 (1942).

Defendants' profits were $5.582 million in 2006 and $6.697 million through September of 2007 [FF 133,134].[24/] Defendants' profits related to traffic school and drivers education alone were $1.946 million in 2006 and $1.833 million through September of 2007 [FF 137 and 138]. The facts of this case are egregious and Plaintiffs note that Defendants have shown no genuine desire to prevent confusion, and it is apparent that unless their practices are made unprofitable, the goal of deterrence will not be met. As such, Plaintiffs submit that an amount equal to *at least* Defendants' profits in 2006 and 2007 related to drivers education and traffic school profits should be disgorged.

---

[23/]    In fact, evidence that Defendants expended large sums of money in advertising and marketing supports a presumption of an intent to deceive. See U-Haul, 793 F.2d at 1040-41 ("Expenditure by a competitor of substantial funds in an effort to deceive consumers and influence their purchasing decisions justifies the existence of a presumption that consumers are, in fact, being deceived. He who has attempted to deceive should not complain when required to bear the burden of rebutting a presumption that he has succeeded."); see also, Southland Sod Farms, 108 F.3d at 1146; Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc., 926 F.2d 134, 140 (2d Cir.1991).

[24/]    Defendants Raj and Ravi Lahoti, who are the only owners, in 2006 and 2007 alone will collectively take home profits in excess of $10 million dollars! This, from a business which in 2003, before it began its deceptive advertising practices, only made about $27,000.

# VI. PLAINTIFFS ARE ENTITLED TO ATTORNEYS' FEES

Section 1117(a) of the Lanham Act also authorizes courts to award attorneys fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). As explained above, this case is exceptional but Plaintiffs are also entitled to fees under California law even for non-exceptional cases. California Code of Civil Procedure § 1021.5 "codifies the 'private attorney general' doctrine under which attorney fees may be awarded to successful litigants." Woodland Hills Residents Assn., Inc. v. City Council, 23 Cal.3d 917, 933 (1979). Entitlement to fees is based on a three-part test requiring the prevailing party to show that the litigation: (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) was necessary and imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter. Baggett v. Gates, 32 Cal.3d 128, 142 (1982); Punsly v. Ho, 105 Cal.App.4th 102, 114 (2003). There is no requirement to show bad faith. Id.

This litigation clearly served to vindicate the important public right to be protected against deceptive and misleading advertising[25] and the right to fair competition in the industry conferred to all members of the trade. Prevailing in this lawsuit will bestow a significant benefit to all consumers (who will no longer be misled) and all competitors (who will be able to compete on an even playing field) in the business of providing traffic school and drivers education services. Moreover, this litigation benefits the State of California by addressing Defendants' false association with the California DMV. Finally, because Plaintiff are but two of countless individuals and entities which will benefit from prevailing in this lawsuit, Plaintiffs' payment of attorneys' fees is out of proportion to its individual stake in the matter.

///

---

[25] In this regard, it should be noted that Defendants have a habit and custom of registering domain names that are similar to government names (e.g., LASuperiorCourts.org and USDepartmentofHomelandSecurity.org) [FF 21].

# VII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court enter judgment against Defendants in this case and provide the relief requested herein or other suitable relief as the Court may deem just.


DATED: November 28, 2007     LEWIS BRISBOIS BISGAARD & SMITH LLP


By _Mina Hamilton_____
       David N. Makous
       Daniel C. Decarlo
       Mina I. Hamilton
       Attorneys for Plaintiffs

PLAINTIFFS TRAFFICSCHOOL.COM, INC. AND DRIVERS ED DIRECT, LLC'S POST-TRIAL BRIEF