BRIAN M. DAUCHER, Cal. Bar No. 174212
ROBERT S. BEALL, Cal. Bar. No. 132016
JOSEPH H. TADROS, Cal. Bar. No. 239379
ASHLEY E. MERLO, Cal. Bar No. 247997
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 513-5100
Facsimile: (714) 513-5130
bdaucher@sheppardmullin.com
jtadros@sheppardmullin.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC., a California limited liability company,

Plaintiffs,

v.

EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual; DOES 1 through 10,

Defendants.

Case No. CV067561 PA (CWx)
*The Hon. Percy Anderson*

**DEFENDANTS' CLOSING BRIEF**

Complaint Filed: November 28, 2006
Trial Commenced: November 6, 2007

# TABLE OF CONTENTS

Page


1. Introduction ..... 1

2. Plaintiffs Lack Standing ..... 1

3. Plaintiffs Have Failed To Prove Lanham Act False Advertising ..... 4

    3.1. DMV.ORG Is Not Literally False or Misleading ..... 5

    3.2. The DMV.ORG Website Does Not Have The Tendency To Deceive A Substantial Segment Of Reasonably Prudent Consumers ..... 6

        3.2.1. Actual Confusion ..... 6

        3.2.2. The Maronick Surveys Provide No Reliable Information On The Question of Confusion ..... 9

        3.2.3. The Hollander Survey, Correcting For The Maronick Survey Errors, Shows No Statistically Significant Confusion ..... 10

    3.3. No Evidence Of Intent To Deceive ..... 11

    3.4. No Proof That DMV.ORG Affects The Purchasing Decision ..... 12

    3.5. Plaintiffs Have Not Shown Any Causal Connection Between The Alleged False Advertising And Their Purported Injuries ..... 14

4. Plaintiffs' Cal. Bus. & Prof. Code § 17200 Claim Fails ..... 15

5. Defendants Have Established Plaintiffs' Unclean Hands ..... 16

6. Defendants Have Established The Defenses Of SOL and Laches ..... 18

7. The Ninth Circuit Applies Equitable Defenses In Lanham Act Cases ..... 20

8. Remedy ..... 20

    8.1. Plaintiffs Are Not Entitled To Any Monetary Relief ..... 20

    8.2. Plaintiffs Are Not Entitled To Any Injunction ..... 23

9. Conclusion ..... 25

# TABLE OF AUTHORITIES

## Federal Cases

A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc., 57 F.Supp.2d 155 (E.D. Pa 1999)....7

ALPO Petfoods v. Ralston Purina Co., 913 F.2d 958 (D.C. Cir. 1990)....22, 23

Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc., 165 F.2d 693 (4th Cir. 1947)....19

Avis Rent A Car System, Inc. v. Hertz Corp., 782 F.2d 381 (2nd Cir. 1986)....5

Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903 (Fed. Cir. 1984)....22

Barrus v. Sylvania, 55 F.3d 468 (9th Cir. 1995)....2

Berkey Photo Co., Inc. v. Eastman Kodak Co., 603 F.2d 263 (2d Cir. 1979)....2

Better Business Bureau, Inc. v. Medical Directors Inc., 681 F.2d 397 (5th Cir. 1982)....5

Century 21 Real Estate Corp. v. Re/Max South County, 882 F.Supp. 915 (C.D. Cal. 1994)....15, 21

In re Circuit Breaker Litigation, 860 F.Supp. 1453 (C.D. Cal. 1994)....24

Contessa Food Products, Inc. v. Lockpur Fish Processing Co., Ltd., 2003 U.S.Dist. LEXIS 26682 (C.D. Cal. 2003)....22

Downtowner/Passport Intern. Hotel v. Norlew, 841 F.2d 814 (8th Cir. 1988)....21

Emco, Inc. v. Obst, 2004 U.S.Dist. LEXIS 12118 (C.D. Cal. 2004)....16

FTC v. Sterling Drug, Inc., 317 F.2d 669 (2d Cir. 1963)....5

Faberge, Inc. v. Saxony Products, Inc., 605 F.2d 426 (9th Cir. 1979)....22

Forschner Group v. Arrow Trading Co., 124 F.3d 402 (2nd Cir. 1997)....23

Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837 (9th Cir. 1987)....17

Fuller Bros., Inc. v. Int'l Mktg., Inc., 870 F.Supp. 299 (D. Or. 1994)....2

Gail Green Licensing & Design Ltd. v. Accord, Inc., 2006 WL 28773202 (N.D. Ill. 2006)....2

Grupo Gigante SA DE CV v. Dallo & Co., Inc., 391 F.3d 1088 (9th Cir. 2004)....19, 20

Haagen-Dazs v. Frusen Gladje, Ltd., 493 F.Supp. 73 (S.D.N.Y. 1980) .......... 17

Halicki v. United Artists Comm., Inc., 812 F.2d 1213 (9th Cir. 1987) .......... 2

Hall v. Wright, 125 F.Supp. 269 (S.D. Cal. 1954) .......... 17

Highway Cruisers of Cal. v. Sec. Industries, 374 F.2d 875 (9th Cir. 1967) .......... 21, 22

Int'l Ass'n of Machinists v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996) .......... 4, 7

International Order of Job's Daughters v. Lindeburg, 633 F.2d 912 (9th Cir. 1980) .......... 16

Jackson v. Okaloosa County, Florida, 21 F.3d 1531 (11th Cir. 1994) .......... 2

Japan Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866 (9th Cir. 2002) .......... 17

Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829 (9th Cir. 2002) .......... 19, 20

Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) .......... 9

Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400 (9th Cir. 1993) .......... 22

Maier Brewing Co. v. Fleischman Distilling, 390 F.2d 117 (9th Cir. 1968) .......... 22

Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd., 817 F.Supp. 1103 (S.D.N.Y. 1993) .......... 10

NFL Props., Inc. v. Prostyle, Inc., 57 F.Supp.2d 665 (D. Wis. 1999) .......... 10

Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc., 198 F.Supp.2d 474 (S.D.N.Y. 2002) .......... 10

Nikkal Industries Ltd. V. Salton, Inc., 735 F.Supp. 1227 (S.D.N.Y. 1990) .......... 15, 21

Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601 (9th Cir. 1987) .......... 7

Pizza Hut, Inc. v. Papa John's Intern., Inc., 227 F.3d 489 (5th Cir. 2000) .......... 14

ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62 (2d Cir. 2002) .......... 20, 21

Simon Prop. Group L.P. v. mySimon, Inc., 104 F.Supp.2d 1033 (S.D. Ind. 2000) .......... 10

Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134 (9th Cir. 1997) .......... 4, 5, 12

Sugai Products, Inc. v. Kona Kai Farms, Inc., 1997 WL 824022, 11 (D. Haw. 1997) .......... 2, 4

Summit Technologies v. High-Line Medical Instruments, Co., 933 F.Supp. 918 (C.D. Cal. 1996)........2
Taubman v. Webfeats, 319 F.3d 770 (6th Cir. 2003)........8
Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623 (6th Cir. 2002)........7
Transworld Airlines v. American Coupon Exchange, 913 F.2d 676 (9th Cir. 1990)........18, 19
Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112 (2d Cir. 1984)........10
Urecal Corp. v. Masters, 413 F.Supp. 873 (N.D. Ill. 1976)........16
Waits v. Frito-Lay, Inc., 978 F.2d 1093 (9th Cir. 1992)........2
Westinghouse Elec. Corp. v. Gen Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894 (9th Cir. 1997)........24
William H. Morris Co. v. Group W, 66 F.3d 255 (9th Cir. 1995)........9

**State Cases**

Meyer v. Sprint Spectrum L.P., 150 Cal.App.4th 1136 (2007)........16

**Statutes**

15 U.S.C. § 1117........20, 21, 22
15 U.S.C. § 1125(a)(1)(B)........2, 4
Cal. Bus. & Prof. Code § 17200 et seq........16
Cal. Bus. & Prof. Code § 17204........16
Cal. Civ. Code § 1750 et seq........16
Fed. R. Civ. P. 12(h)(3)........2
Fed. R. Civ. P. 26(a)(1)(C)........22

**Miscellaneous**

U.S. DHHS, Research-Based Web Design & Usability Guidelines, Section 2.1 (2006)........25

## 1. Introduction

Consumers flock to DMV.ORG in growing numbers to obtain easy-to-access information on what would otherwise be frustrating transactions with state motor vehicle departments. Plaintiffs seek to deprive consumers of this resource.

One commentator has described the battles over unfair competition on the Internet, in the trademark context, as attempts by trademark owners to shut down any unauthorized use without regard to materiality or consumer benefits. Consumers, on the other hand, prefer the competition and lower prices that broader access to information brings. This case fits the description.

In this case, the evidence establishes that the motive for litigation is not pro-consumer. The facts have also shown that: (a) there is no statistically significant confusion in the context of the vast number of visitors to DMV.ORG; (b) DMV.ORG has voluntarily made changes to make its mission clearer; and (c) industry evidence, traffic and revenue patterns all suggest that the alleged perception of government affiliation is not material to a purchasing decision.

Finally, the evidence also establishes Plaintiffs' own inequitable conduct and unreasonable delay including that: (a) Plaintiffs engage in conduct that is similar and arguably worse than that which they complain of; and (b) Plaintiffs waited for over four years to bring this suit and only did so after efforts to advertise on DMV.ORG failed (the: "if you can't join 'em, shut em down approach").

For the reasons summarized below, Defendants request that this Court enter judgment for Defendants in this matter.

## 2. Plaintiffs Lack Standing

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). See also Jackson v. Okaloosa County, Florida, 21 F.3d 1531, 1536 n. 5, 1541 (11th Cir. 1994) (standing can be revisited at trial or summary judgment if not supported by evidence); Berkey Photo Co., Inc. v. Eastman Kodak

Co., 603 F.2d 263, 289 (2d Cir. 1979) (holding that plaintiff, after a full trial, had only proved de minimis injury and accordingly was not entitled to judgment).

To establish standing to sue for false advertising under Lanham Act § 1125(a)(1)(B), plaintiff must show that it has suffered "a discernibly competitive injury." Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992) (analyzing false advertising prong – 1125(a)(1)(B)) (citing Halicki v. United Artists Comm., Inc., 812 F.2d 1213 (9th Cir. 1987)).

For an injury to qualify as "competitive," it must be "harmful to the plaintiff's ability to compete with the defendant." Barrus v. Sylvania, 55 F.3d 468, 470 (9th Cir. 1995) (dismissing for lack of standing, emphasis added). In other words, plaintiff and defendant must be considered competitors, that is to say, "persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." Fuller Bros., Inc. v. Int'l Mktg., Inc., 870 F. Supp. 299 (D. Or. 1994).

If parties who are not in direct competition are deemed competitors, then "any two parties with some economic nexus or whose conduct has some economic effect upon the other, could be construed as 'competitors,'" contrary to Ninth Circuit law. Sugai Products, Inc. v. Kona Kai Farms, Inc., 1997 WL 824022, *11 (D.Hawaii 1997) (quoting Summit Technologies v. High-Line Medical Instruments, Co., 933 F.Supp. 918 (C.D. Cal. 1996). See also Gail Green Licensing & Design Ltd. v. Accord, Inc., 2006 WL 28773202, *5 (N.D. Ill. Oct. 5, 2006) (finding plaintiffs, who develop, acquire, and license many commercial products, unable to assert a "discernibly competitive injury" since they are not in the same business as defendants, retailers/manufacturers of pet accessories and clothing).

Plaintiffs allege competition on three bases: (a) Plaintiffs offer traffic school and drivers education services through their websites, while DMV.ORG acts as a referral source in California and other states for third party schools; (b) "both Plaintiffs and Defendants act as a referral source for third party traffic schools and

drivers education in various states"; and (c) "both Plaintiffs and Defendants advertise other third party services and receive financial consideration from those third parties." [TAC, ¶ 20(a)-(c).] The latter two bases are the only viable bases upon which the parties may be deemed to compete, as the Court has already rejected the first basis on Defendants' initial motion to dismiss. [1-24-2007 Order.]

Considering the grounds for Plaintiffs' standing – competition in the business of advertising and referring consumers to third parties – the evidence reveals that Plaintiffs and Defendants are not competitors in any meaningful sense. Significantly, Plaintiffs' core businesses consist of providing traffic school and drivers education courses to consumers. [Defendants' [Proposed] Findings of Fact ("DF"), 15-17.] By contrast, Defendants' core business is internet publishing, with its revenue derived from advertising the services of others. [DF 11-13.]

Although Plaintiffs allege that they also refer consumers to third party traffic schools and driver's ed providers in states outside of California, in actuality Plaintiffs' referral revenue in 2006 and 2007 is less than $10,000 gross (nominally insignificant) and less than 1% of their gross revenues. [DF 22.] TrafficSchool.com never earned referral fees in California and earned no such fees in Texas in 2005-present nor in Florida in 2006-present. [DF 19-21.] Similarly, DriversEdDirect has earned no referral revenue for the advertisement of driver's ed courses. [DF 23.]

Plaintiffs' advertising revenues for non-traffic school/drivers education services are even less significant. TrafficSchool.com earned on average less than $1,000 per year over the last four years and DriversEdDirect earns no more than "a couple hundred dollars a month." [DF 24-26.]

Also notably, at trial Plaintiffs again identified other traffic and driver's education school companies as TrafficSchool.com's "competitors" because "they provide the same courses that [Plaintiffs] provide to the same consumers." [DF 18.] Plaintiffs in both their initial complaint and through trial, continue to identify their true competitors as other traffic and driver's ed schools.

The fact that Plaintiffs sought to advertise on the DMV.ORG website is further evidence of the lack of competition. [DF 132-135.]

Finally, Defendants' attempt to establish "competitive injury" because both parties purchase same keyword advertising must fail. [See Kramer Trial Decl.] First, this supposed injury is not alleged in the operative Third Amended Complaint. Second, Plaintiffs' resort to this new theory demonstrates both the lack of any more direct injury as well as a disregard for Ninth Circuit law which requires some form of competition between the parties as to goods and services.

Plaintiffs' have failed to establish any competitive injury. A finding that these parties compete would dramatically stretch the Ninth Circuit's definition of competition. Accordingly, judgment should be entered for Defendants because Plaintiffs lack standing. Sugai Products, Inc., supra, 1997 WL 824022 at *11.

**3. Plaintiffs Have Failed To Prove Lanham Act False Advertising**

Plaintiffs insist that this case sounds in false advertising even though it appears to be a classic case of false association (under § 1125(a)(1)(A)).

Nevertheless, to prevail on a false advertising claim under 1125(a)(1)(B), Plaintiffs must prove: (a) defendants[1] made a false or misleading statement in a commercial advertisement about the nature, characteristics, qualities, or geographic origin of a product; (b) the statement actually deceived or has the tendency to deceive a substantial segment of reasonably prudent consumers; (c) the deception is material, in that it is likely to influence the purchasing decision; and (d) plaintiffs have been (or are likely to be) injured by the conduct. 15 U.S.C. § 1125(a)(1)(B); Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); Int'l Ass'n of Machinists v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996). Plaintiffs have failed to prove any one of these four elements.

When evaluating an alleged false advertisement, the advertisement

---

[1] The alleged liability of defendants other than Online Guru, the manager of the website, has been addressed in Defendants 52(c) motion, on file.

must be considered in its full context. Southland Sod Farms, 108 F.3d at 1139; and Avis Rent A Car System, Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986) (courts must "consider the advertisement in its entirety and not ... engage in disputatious dissection"); and FTC v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir. 1963) (view the "entire mosaic" not "each tile separately").

Yet, Plaintiffs' analysis of the DMV.ORG website is done exclusively by dissection of the website into discrete segments (i.e., search engine results, the domain name in isolation, or even portions of one page of the website in isolation). Plaintiffs' fundamental refusal to look at the entire commercial impression renders much of their analysis and argument unfair and legally meaningless.

### 3.1. DMV.ORG Is Not Literally False or Misleading

An evaluation of the DMV.ORG website in its full context demonstrates that it is not literally false or misleading.

First, the use of the .ORG top level domain is not improper since .ORG TLDs are "open" and "unrestricted" (i.e., anyone can register a .ORG, including commercial entities). [DF 30.] The .GOV top level domain, however, is restricted to federal and state governments. [DF 31.] It is no coincidence that a substantial majority (48) of state motor vehicle departments use the .gov or .us TLD. [DF 31.]

No statement on DMV.ORG constitutes an express misrepresentation of fact. [DF 34.] Cf. Better Bus. Bureau, Inc. v. Med. Directors Inc., 681 F.2d 397, 399-400 (5th Cir. 1982) (express false claim of approval that the BBB made an "investigation" into the efficacy of the product). To the contrary, DMV.ORG has always included disclaimers and clarifying language specifying that it is not affiliated with any government agency and identifying it as a for-profit corporation; DMV.ORG now includes numerous and prominent reinforcing disclaimers.

Since at least September 24, 2002, DMV.ORG has disclaimed at the bottom of each page of the website (in bold since 2003) any government affiliation in text at least the same size as other general text on the site. [DF 35-36.] And,

since at least March 17, 2004, the clarifying "welcome statement" on the homepage of DMV.ORG has explained: "Since government sites can sometimes be confusing to use, we have made this guide for the average user to understand." [DF 37.]

During litigation, Online Guru has added further disclaimers reinforcing the nature of DMV.ORG in the license plate logo in the left corner of every webpage ("Unofficial Guide") and just below the logo (not affiliated), and in the title caption on the main homepage and on each state homepage ("The Unofficial Guide"). [DF 39.] Online Guru has also changed sponsored listings for DMV.ORG on Google and Yahoo! to reinforce the absence of affiliation by using terms such as "Unofficial" and "Info." [DF 61; and TEs 631, 670-671, attached hereto as Ex. A]

Notably, Plaintiffs themselves have admitted that DMV.ORG was "non-offensive" and "not actionable" prior to October 2006. [DF 33.]

Though the content of DMV.ORG was revised in October 2006, the elements at issue in this litigation remain similar to what immediately preceded, including: (a) the use of the header "No need to Stand in Line, Your DMV Guide is Now Online"[2] on the homepage (replaced after suit by "The Unofficial Guide to the DMV"); (b) the use of the introductory sentence, "Since government DMV sites can be confusing to use, we have developed this free & comprehensive guide for the average user to understand"; (c) the use of bottom disclaimers on every page; and (d) the use of the DMV.ORG license plate logo in the top left of every page. [DF 38.] In short, there is no "vast difference" between the February and October 2006 versions of the DMV.ORG website.

**3.2. The DMV.ORG Website Does Not Have The Tendency To Deceive A Substantial Segment Of Reasonably Prudent Consumers**

**3.2.1. Actual Confusion**

"The law has long demanded a showing that the allegedly infringing

---

[2] DMV.ORG's use of this tag line dates to 2004, pre-dating California's use of a similar tag line in the 2006. [11/6 RDT 79:9-80:11; 109:12-110:11.]

conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." Int'l Ass'n of Machinists v. Winship Green Nursing Ctr., 103 F3d 196, 201 (1st Cir. 1996).

Evidence of only a small number of instances of actual confusion can be dismissed as inconsequential. See e.g. Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F2d 601 (9th Cir. 1987) (misdirected letters and checks deemed insignificant in comparison to volume of the parties businesses); A&H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc., 57 F.Supp.2d 155 (E.D. Pa. 1999) (isolated evidence of actual confusion insufficient to establish confusion.); Therma-Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623 (6th Cir. 2002) (misdirected e-mails held "legally insignificant" in comparison to size of defendant's business). And, email confusion may be discounted, as "e-mail messages raise[] the possibility that consumers sent the inquiries to [the wrong company] because they were inattentive or careless, as opposed to being actually confused." Therma-Scan, Inc., 295 F.3d at 636.

Plaintiffs' evidence of actual confusion, in context, is insubstantial.

For example, Plaintiffs' third party witness, Lisa Warren, was allegedly confused by the advertisement listings on DMV.ORG. [DF 73.] However, she viewed only a single page of the DMV.ORG website for approximately a minute and could not recall the page that she viewed. [DF 73.] Notably, Warren was not looking for traffic school or drivers education services while on DMV.ORG, but rather was in search of official Texas logos (which she did not find). [DF 74.]

Warren's visit only illustrates the point that some visitors, not looking to purchase anything, may visit the site very quickly. Any impression that such a visitor forms is not directly relevant to whether a visitor looking to purchase traffic school services is materially misled by the website.

Shannon Robertson's confusion may also be regarded as unusual. Defendants showed that although Plaintiffs question each of their students, Robertson was the only one that was found to have been confused. [DF 72.]

In fact, other evidence shows that visitors searching for traffic school will generally take care and visit numerous sites before making a purchasing decision. [DF 50-51.] The average visitor to DMV.ORG views more than 5 pages on the site and two-thirds of visitors view either the main homepage or one of the 51 state-dedicated sub homepages. [DF 43-44.]

No evidence establishes that the small relative number of visitors to the traffic school or driver's ed pages of the DMV.ORG website are different. [DF 45-49.] In fact, to complete a purchase, such a visitor must go to the third party website and navigate through numerous additional pages. [DF 52-53.]

Although a few websites and emails may suggest a misunderstanding as to the nature of the website, these instances of confusion are not tied to persons seeking traffic school or driver's education. And, they are not significant in comparison to the 70,000 websites or internet articles that link to DMV.ORG and the <u>millions</u> of visits DMV.ORG receives <u>each week</u>. [DF 40-41, 67, 69-70.]

Defendants' control survey, using CAR.ORG, (and Maronick's refusal to conduct such a control) suggests that there is always some baseline level of confusion (1-3%) on the internet. [DF 76-79.] These internet links and consumer emails are indicative of that baseline confusion, and establish nothing more.

Furthermore, the numerous and conspicuous disclaimers on DMV.ORG (discussed above) dispel any likelihood of consumer confusion. <u>Taubman v. Webfeats</u>, 319 F.3d 770, 777 (6th Cir. 2003) (disclaimer indicating that site was not the official website for plaintiff's mall negated likelihood of consumer confusion; appellate court reversed preliminary injunction entered by district court).

For a business with 60 million visitors annually, it would be surprising if there were no confusion. The existence of modest relative evidence of confusion (less than 1%) is not probative of whether an appreciable number of reasonably prudent consumers are in fact confused. <u>See</u> <u>William H. Morris Co. v. Group W</u>, 66 F.3d 255 (9th Cir. 1995) (3% not significant); <u>and</u> <u>Johnson & Johnson-Merck</u>

Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20% might be sufficient).

**3.2.2. The Maronick Surveys Provide No Reliable Information On The Question of Confusion**

Plaintiffs have also offered the survey results prepared by their expert, Maronick, in an attempt to demonstrate that traffic school consumers in California are confused by DMV.ORG. These results however do not provide meaningful information on the question of consumer perceptions of the DMV.ORG website.

As an initial matter, the Maronick surveys tested respondents only in relation to California traffic school, did not address states not using the "DMV" acronym, and gave no opinion as to driver's education. [DF 80.] Thus, the survey results are not applicable to consumer perceptions in any state where Plaintiffs receive referral revenue, and also have no bearing on driver's ed consumers.

More importantly, the Maronick survey results do not provide reliable information as to consumer perception of DMV.ORG because of the numerous, and apparently deliberate, design and methodology flaws, including:

- The failure to mimic a visitor's actual experience through the use of improper stimuli; Maronick tested based upon improper dissection of DMV.ORG into component parts – such as search results (survey 2) and the top two-thirds of a single webpage (survey 3) (a page through which less than 1/3 of one percent of DMV.ORG visitors enter the site);
- The use of leading questions, that would not be permitted at trial;
- The unprecedented combination of key questions on the same page creating a demand effect (e.g., "Is this website endorsed by any government agency?" followed on the same page by "What government agency?");
- The failure to include a control, which Maronick himself has described in literature on surveys as "indispensable" in Lanham Act cases; and
- The failure to instruct survey respondents not to guess.

[DF 81(a)-(e).] Courts have repeatedly found that such errors render survey results unreliable and accordingly deserving of little weight (if any). Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112, 118 (2d Cir. 1984) (survey "so badly flawed that it cannot be used to demonstrate the existence of a question of fact on the likelihood of consumer confusion"); Simon Prop. Group L.P. v. mySimon, Inc., 104 F.Supp.2d 1033 (S.D. Ind. 2000) (survey excluded; survey "must consist of non-leading questions"); NFL Props., Inc. v. Prostyle, Inc., 57 F. Supp. 2d 665, 668-69 (D. Wis. 1999) (excluding survey evidence for failure to include a control); Nat'l Distillers Prods. Co. v. Refreshment Brands, Inc., 198 F.Supp. 2d 474, 484 (S.D.N.Y. 2002) (no weight where survey did "not sufficiently replicate marketplace conditions"); Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd., 817 F. Supp. 1103, 1123-24 (S.D.N.Y. 1993) (holding survey data "meaningless and having no evidentiary value" due to leading questions and failure to use controls), vacated pursuant to settlement, 859 F. Supp. 80 (S.D.N.Y. 1994).

The Maronick surveys should therefore be accorded no weight.

**3.2.3. The Hollander Survey, Correcting For The Maronick Survey Errors, Shows No Statistically Significant Confusion**

Defendants' survey expert, Hollander, corrected for the Maronick survey errors and, then found no statistically significant confusion.

Specifically, the Hollander surveys tested DMV.ORG as well as a control (CAR.ORG) and used stimuli representative of what an actual visitor to DMV.ORG that goes on to purchase a traffic school from an advertiser on the site would encounter in real life – three DMV.ORG pages (CAR.ORG pages for the control group) plus a third party traffic school page. [DF 76.] (If anything, the Hollander stimuli was conservative - fewer than the average number of pages viewed on the DMV.ORG website and fewer advertiser website pages than would actually be viewed before purchase.)

Employing these stimuli with non-leading questions, Hollander found