that only 1.0 percent of California respondents (3/286) for the test group (DMV.ORG stimuli) identified DMV.ORG as affiliated with the DMV/state/government (again, in either direction) whereas 2.5 percent of California respondents (5/197) for the control group (CAR.ORG stimuli) identified CAR.ORG as affiliated with the DMV/state/government. [DF 76.]

Not a single respondent residing in any of the four other tested states (that do not use the "DMV" moniker) perceived DMV.ORG as affiliated with the government, whereas 2.0 percent of respondents in the non-DMV states identified the control, CAR.ORG, as affiliated with the DMV/state/government. [DF 77.] This data demonstrates that Maronick's results cannot be extrapolated to states that do not use the DMV moniker.

By <u>subtracting</u> the Hollander control group findings from the test group findings, it is apparent that no confusion as to source can reasonably be attributed to the use of the DMV.ORG domain name. [DF 78.]

### 3.3. No Evidence Of Intent To Deceive

There is also no evidence to support a finding that any of the defendants intended to mislead consumers. Instead, the evidence shows that:

- DMV.ORG has always utilized disclaimers and clarifying language [DF 64];
- DMV.ORG's sponsored listings have always resembled organic listings that Google and Yahoo post for DMV.ORG, suggesting that search engines view those descriptions as reasonable [DF 62];
- DMV.ORG's use of disclaimers and clarifying language substantially exceeds what is done, or not done, by others including plaintiffs [DF 65]; and
- Online Guru has made voluntary changes to reinforce the message that there is no affiliation with the government [DF 66.].

Moreover, the fact that the term "DMV" is generic, as demonstrated by California's disclaimer in its federal trademark registration and the use of the term by other states, supports defendants' right to use the "DMV" acronym in their

website domain. [DF 29.]

Finally, defendants' innocent use of the "DMV" moniker on their website and as part of the domain name is further supported by the facts that: (a) despite agitation, no other state has joined this action; (b) the state of Georgia found nothing misleading about DMV.ORG; (c) the State of New York considered its objections to DMV.ORG closed once the state flag/seal was removed; (d) Pennsylvania has entered a linking agreement with defendants, expressly affirming DMV.ORG's right to link to the state motor vehicle website; (e) many states voluntarily provide DMV.ORG with updated information; (f) other websites employ the "DMV" acronym in their domains; and (g) even plaintiffs have registered and used domains containing the "DMV" acronym. [DF 54-59, 125; Defendants' RJN, Items 11-12.]

### 3.4. No Proof That DMV.ORG Affects The Purchasing Decision

To succeed on a false advertising claim, Plaintiffs must also prove that the misleading advertising is material, that is, it must affect the purchasing decision. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).

Plaintiffs allege that DMV.ORG misleads consumers to believe that the site is affiliated with/endorsed by the government, thereby impelling consumers to purchase the courses advertised on DMV.ORG instead of Plaintiffs' courses. But, Plaintiffs have failed to produce any credible evidence demonstrating that endorsement by a state would be or is material to the purchasing decision.

Significantly, Plaintiffs' expert, Maronick, understood the phrase "recommended by the DMV," which he used in his fourth survey, to mean only that a traffic school course would serve to discharge a traffic ticket. [DF 84.]

There is a critical distinction between these two questions: (a) is the school/course approved in the sense that it will serve the intended purpose (e.g., mask the traffic ticket points/satisfy the driver's ed requirement)? and (b) is the school endorsed by the state, over other schools that will serve the intended

purpose? By conflating these two concepts, Maronick concedes that his survey on this point, which led respondents to the answer he wanted, cannot be relied upon.

Defendants concede that a course must serve the intended purpose - such a characteristic is indisputably material. At the same time, however, there is no evidence that consumers care more about government endorsement of one acceptable traffic school course over another acceptable traffic school (that is not endorsed, but still will be acceptable). [DF 83.] Rather, the fact that online traffic schools are proliferating in California coupled with the fact that the state does not endorse <u>any</u> such course is evidence that consumers do not value an endorsement.

Beyond whether the course will serve the intended purpose, other factors unrelated to government endorsement appear to be material to the purchasing decision. As Plaintiffs' expert agreed from his twenty years of experience with college students, college students are generally interested in completing traffic school as quickly and cheaply as possible. [DF 86.]

Similarly, traffic school search engine listings prominently display price (e.g., Go to Traffic School – Starting at $14.50; Traffic School – Starting at $9.95; Traffic School - $10 Special, etc.). [DF 89.] And, the fact that numerous traffic schools convey information about the price in their name (e.g., "Cheap School," "LowestPriceTrafficSchool.com") strongly suggest that price is a critical factor in the purchasing decision. [DF 89.] And, as agreed by Plaintiffs' principal, Eric Creditor, convenience of a traffic school course is an important factor. [DF 88.]

Plaintiffs' thesis in this case is that a visitor to the DMV.ORG website interested in traffic school is more likely to purchase the traffic school advertised on the website due to the perceived affiliation. This perception, Plaintiffs' allege, conveys an unfair advantage to Plaintiffs' competitors that advertise on the DMV.ORG website. If this thesis was accurate, then the effect of the alleged implied endorsement should be traceable in terms of <u>higher</u> conversion rates, that is better conversion of visitors to purchasers for DMV.ORG advertisers as compared

1  to traffic schools without such advertising.

2      Unfortunately for Plaintiffs, the facts do not support this thesis.

3      First, Plaintiffs themselves have always viewed the traffic from
4  DMV.ORG as "unqualified," believing that it is <u>less</u> likely than other traffic to
5  produce paying customers. [DF 94-95.] This testimony contradicts the thesis that
6  the perception of an endorsement materially impacts the purchasing decision.

7      Apart from Plaintiffs' admissions on this point, the actual conversion
8  rates show that, whether measured by page views or unique visitors, DMV.ORG's
9  conversion rates are <u>below</u> those realized by Plaintiffs. [<u>Cf.</u> DF 93 (TS.com
10 converts at 10-15%) <u>with</u> DF 96-97 (DMV.ORG ads convert at a 3.25-7.5%).]

11     Moreover, if the alleged perception was improving conversion, some
12 decline would have been expected with the incremental addition of disclaimers.
13 [<u>Recall</u> DF 75 (Warren agrees that revised logo "not confusing").] But this thesis is
14 further undermined by the facts showing that DMV.ORG conversion rates have not
15 declined despite the addition of redundant disclaimers. [Moretti Trial Decl., ¶ 21
16 (no change in conversion rates from 2006, rising modestly over time).]

17     The evidence on conversion, both anecdotal and statistical, shows there
18 is no unfair advantage stemming from perceived affiliation. In short Plaintiffs have
19 failed to prove that affiliation with the state motor vehicle departments is material to
20 the purchasing decision. <u>Cf.</u> <u>Pizza Hut, Inc. v. Papa John's Intern., Inc.</u>, 227 F.3d
21 489, 504 (5th Cir. 2000) (judgment for defendant, plaintiff failed to prove misleading
22 slogan "Better Ingredients-Better Pizza" was material to purchasing decision).

23     **3.5.** **<u>Plaintiffs Have Not Shown Any Causal Connection Between The</u>**
24         **<u>Alleged False Advertising And Their Purported Injuries</u>**

25     Plaintiffs must prove "a logical causal connection between the alleged
26 false advertising and [their] own sales position." <u>Century 21 Real Estate Corp. v.</u>
27 <u>Re/Max South County</u>, 882 F.Supp. 915, 924-25 (C.D. Cal. 1994); <u>see also</u> <u>Nikkal</u>
28 <u>Industries Ltd. v. Salton, Inc.</u>, 735 F.Supp. 1227, 1238 (S.D.N.Y. 1990) (plaintiff

1 failed to prove lost sales were the result of defendant's advertisements rather than
2 other factors such as its marketing and increased competition). A "mere subjective
3 believe that [they] will be injured" is insufficient. Century 21, 882 F.Supp. at 925.
4       Plaintiffs have offered no expert testimony correlating any decline in
5 their business to the DMV.ORG website. And, several other plausible explanations
6 exist for Plaintiffs' <u>modest</u> decline in sales, including:
7   • Increased competition in the online traffic school and drivers education
8     market, including lower prices offered by other traffic schools;
9   • Plaintiffs' decrease in their search engine marketing expenditures and increase
10    in radio advertising expenditures;
11  • Plaintiffs' reduction in marketing expenditures to pay for this litigation; and
12  • Plaintiffs' decision to transition from receiving referral fees in Texas and
13    Florida to actually selling the courses, collecting the money, and paying third
14    parties for fulfillment, correlating in different years with a drop in the number
15    of courses sold in each of those states.
16 [DF 99-106.] There is no reason to believe that any of these factors has not
17 impacted Plaintiffs' businesses. Plaintiffs' <u>subjective</u> <u>belief</u> that DMV.ORG is the
18 cause of decline is simply insufficient.
19       To summarize, Plaintiffs have failed to carry their burden to prove any
20 of these four elements of their Lanham Act and therefore judgment should be
21 entered in Defendants' favor.
22 **4.     Plaintiffs' Cal. Bus. & Prof. Code § 17200 Claim Fails**
23       Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL") precludes standing
24 unless such person (other than government) has "suffered injury in fact and [has]
25 lost money or property as a result of [the] unfair competition." Cal. Bus. & Prof.
26 Code § 17204; <u>Meyer v. Sprint Spectrum L.P.</u>, 150 Cal.App.4th 1136, 1140 (2007).
27       Under the new standing requirements, courts have determined that "a
28 plaintiff suffers an injury in fact . . . when he or she has (1) expended money due to

the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." Id. at 1142-43.

Plaintiffs have failed to produce any evidence to meet these standing requirements and accordingly this cause of action fails.

In the event the Court finds that plaintiffs meet the standing requirements for a 17200 claim, their false advertising claim fails for the same reasons that their Lanham Act false advertising claim fails. Int'l. Order of Job's Daughters v. Lindeburg, 633 F.2d 912, 916 (9th Cir. 1980) ("Federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent.") And, to the extent Plaintiffs base their 17200 claim on Cal. Vehicle Code § 25 and/or the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.), such reliance on those statutory provisions is improper since plaintiffs never raised these allegations in the operative pleading. [See Defs' Memorandum of Fact and Law, pp. 7-8.]

### 5. Defendants Have Established Plaintiffs' Unclean Hands

The doctrine of unclean hands precludes relief to a party that has acted improperly in a related matter. Urecal Corp. v. Masters, 413 F.Supp. 873, 875 (N.D. Ill. 1976). "It is the age-old policy of courts of equity to require that he who sues seeking equity must . . . come into court with 'clean hands' as respects that controversy." Hall v. Wright, 125 F.Supp. 269, 273 (S.D. Cal. 1954).

To establish unclean hands, a defendant must establish that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of the claims. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987). In Haagen-Dazs v. Frusen Gladje, Ltd., 493 F.Supp. 73, 75-76 (S.D.N.Y. 1980), for example, plaintiff was denied a preliminary injunction, seeking to enjoin defendant from packaging its domestic ice cream so as to appear to be of Swedish origin. Plaintiffs' hands were deemed "unclean" because plaintiff itself packaged its domestic ice cream to appear to be of Scandinavian origin. Id.; see also Japan

1  Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866, 870 (9th Cir. 2002)
2  (expressly recognizing the availability of the unclean hands defense to false
3  affiliation claims); Emco, Inc. v. Obst, 2004 U.S. Dist. LEXIS 12118, *12 (C.D.
4  Cal. 2004) (holding that the unclean hands doctrine provides a defense to false
5  advertising claims under the Lanham Act).

Plaintiffs' conduct is arguably worse than the alleged conduct of which they complain. Consider:

- Registration <u>and</u> use of the domains dmvapprovedtrafficschool.com and cadmvtrafficschool.com (though the California Department of Motor Vehicles does <u>not</u> license or approve online traffic schools) [DF 125];
- Registration of other domains including dmvlicenserenewal.com, dmvregistrationrenewal.com, dmvrenewals.com, internetdmv.com, dmvi.com, and trafficschool.us, with use in question [DF 127];
- Registration of online-dmv.org and internet-dmv.org, though plaintiffs could not identify a business purpose for the registration of these domains [DF 128];
- The DrivingLinks.com website, which "mirrors" the concept and content of DMV.ORG and maintains references to state motor vehicle agencies that link only to other pages on DrivingLinks.com (not a motor vehicle agency website), but lacks any disclaimer as to the lack of affiliation between DrivingLinks.com and the state motor vehicle departments or the traffic school behind the website [DF 120, 124];
- The FloridaTrafficSchool.com website, with no disclaimer as to government affiliation, including a picture of a police officer (though not endorsed by any Florida police department), with links to "Florida DHSMV resources" and to a "DHSMV Website guide" (which link to the DrivingLinks.com website, not the official state site) [DF 115-117]; and
- DriversEdDirect.com's ongoing use of various state indicia without license to do so, such as images of state license plates, logos, and state seals. [DF 113.]

1    Additionally, Plaintiffs have engaged in other conduct that might be
2    designed to mislead consumers. For example, TrafficSchool.com is advertised
3    through LowestPriceTrafficSchool.com, leading consumers to believe that
4    TrafficSchool.com offers the <u>lowest priced</u> traffic school in California, when in fact
5    it does not. [DF 118-119.] TrafficSchool.com also uses the term "Official Site"
6    prominently in its sponsored search engine listings, arguably to improve its own
7    click-through rate by suggesting a government affiliation. [DF 114.]
8    Plaintiffs' conduct is arguably worse than the alleged conduct that they
9    complain about in this case. The doctrine of unclean hands should therefore be held
10   to bar any form of recovery for Plaintiffs.

## 6. **Defendants Have Established The Defenses Of SOL and Laches**

Laches bars an action for equitable relief where the defendant can show unreasonable delay in bringing suit plus <u>either</u> acquiescence in the act about which plaintiff complains <u>or</u> prejudice to the defendant from the delay. <u>Transworld Airlines v. American Coupon Exchange</u>, 913 F.2d 676, 696 (9th Cir. 1990).

**Unreasonable Delay**: Plaintiffs have known of Defendants website since at least March 2002 when they were contacted by Ravi Lahoti. [DF 129.] The evidence shows that Plaintiffs took wide ranging immediate action. [DF 130 (registration of DrivingLinks.com domain; efforts to recover domain name).] Plaintiffs' suggestion to the Court that these occurrences were "mere coincidence" are not plausible. And, Plaintiffs again visited DMV.ORG in 2003, at which time they complained to the Overture advertising network about DMV.ORG. [DF 131.]

Yet, Plaintiffs have waited over four years to bring this action. <u>See e.g.</u> <u>Grupo Gigante SA DE CV v. Dallo & Co., Inc.</u>, 391 F.3d 1088, 1101, 1105 (9th Cir. 2004) (finding laches based on four year delay).[3]

---

[3] Moreover, the limitation periods on a false advertising claim is the analogous state statute of limitations. "The analogous limitations period is California's period for fraud, which is three years." <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 838 (9th Cir. 2002).

W02-WEST:3AAE1\400521293.4                    -18-                    DEFENDANTS' CLOSING BRIEF

1         **Acquiescence**: Plaintiff TrafficSchool.com was advertised on the DMV.ORG website in 2003 and Plaintiffs sought to have and did have their services advertised on the DMV.ORG website in the Spring/Summer of 2006. [DF 131-132, 135-136.] During this time, Plaintiffs made no objection to Defendants' website. Instead, Plaintiffs acknowledged that Defendants were doing "a fantastic job marketing" the Website and indicated that they hoped to become "DMV.ORG's premiere California online driver's ed program and behind-the-wheel provider in Los Angeles." [DF 133-134.]

        This conduct constitutes acquiescence. See e.g. Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc., 165 F.2d 693, 694-95 (4th Cir. 1947) (acquiescence found where plaintiff tried to sell ingredients to defendant, saying in a "friendly epistle" that the fact that defendant used the same mark "increased our interest" in selling to defendant).

        **Prejudice to Defendants**: "The prejudice that the doctrine of laches is designed to prevent occurs when a defendant, by reason of a plaintiff's delay, is or will be worse off than he would have been if the plaintiff had enforced his rights in a timely fashion." Transworld Airlines, supra, 913 F.2d at 696.

        Since 2002, Defendants' have developed, significantly invested in, and promoted their website, turning it into a profitable enterprise. Since 2002, Defendants have spent over $10 million on search engine advertising for the promotion of the DMV.ORG website and over $500,000 on content development of the DMV.ORG website. [DF 138-139.] And through these efforts, DMV.ORG has become recognized as a good resource for motor vehicle related information, with nearly 70,000 internet links to DMV.ORG. [Defs' DF, 140.]

        Had Plaintiffs filed this lawsuit when they first learned of Defendants' website, the impact to Defendants business would have been significantly less. Thus, Defendants will be prejudiced, as they will be worse off than they would have been had Plaintiffs brought this action in a timely fashion. Id.; see e.g. Grupo

1 Gigante, 391 F.3d at 1105 (prejudice found where defendant built business during
2 the four years that the plaintiff delayed the exercise of its legal rights).
3       Given the facts demonstrating delay, and both of the alternative second
4 prongs, acquiescence and prejudice, the doctrine of laches should be held to bar any
5 form of recovery for Plaintiffs.

6 **7. The Ninth Circuit Applies Equitable Defenses In Lanham Act Cases**

7       Ninth Circuit case law makes clear that equitable defenses are trumped
8 only where the related causes of action raise allegations concerning a threat to
9 public safety and well being. Jarrow Formulas, Inc. v. Nutrition now, Inc., 304 F.3d
10 829, 841 (9th Cir. 2002) (affirming summary judgment against plaintiff's false
11 advertising claim based on laches, finding that "the public's interest will trump
12 laches only when the suit concerns allegations that the product is harmful or
13 otherwise a threat to public safety and well being"). Additionally, even where an
14 injunction is necessary to protect the public, an award of damages may still be
15 denied. ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical
16 Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002).

17       Plaintiffs' false advertising claims relating to DMV.ORG raise no
18 reasonable concern for public safety or well being. Accordingly, the equitable
19 defenses foreclose both damage and injunctive relief claims.

20 **8. Remedy**

21     **8.1. Plaintiffs Are Not Entitled To Any Monetary Relief**

22       15 U.S.C. § 1117 provides that monetary relief is for the purposes of
23 "compensation and not a penalty." Plaintiffs have failed to show any evidence that
24 DMV.ORG has caused them injury requiring compensation. Century 21 Real Estate
25 Corp. v. Re/Max South County, 882 F.Supp. 915, 924-25 (C.D. Cal. 1994)
26 (plaintiff's false advertising claim failed since it could not prove "a logical causal
27 connection between the alleged false advertising and its own sales position";
28 plaintiff's "mere subjective believe that he will be injured" deemed insufficient);

Nikkal Industries Ltd., supra, 735 F.Supp. at 1238 (verdict for defendant; plaintiff failed to prove lost sales were the result of defendant's advertisements rather than other factors such as its marketing strategy and increased competition).

Plaintiffs' unclean hands and laches also bar any damage award. ProFitness Physical Therapy Ctr., supra, 314 F.3d at 68.

Even setting aside the equitable bar, Plaintiffs' referral business is only nominal. Accordingly, if the Court finds that plaintiffs have established some causal relationship between DMV.ORG and their purported injuries, an award of damages, if any at all, should be nominal as well. Highway Cruisers of Cal. v. Sec. Industries, 374 F.2d 875, 876 (9th Cir. 1967) (awarding nominal damages of $1 since no evidence that plaintiff suffered any damages and plaintiff's loss would not be fairly measured by an accounting of defendant's profits); Downtowner/Passport Intern. Hotel v. Norlew, 841 F.2d 814, 220 (8th Cir. 1988) (awarding only nominal damages because anything greater would be based on "sheer speculation").

If the Court finds that plaintiffs are entitled to more than nominal damages, the only theory of recovery ever articulated by plaintiffs is disgorgement of ten percent of defendants' profits on traffic school and driver's education in California, Florida, and Texas since October 2006. [Pre-Trial Conf. Hearing, 10/16/2007, 13:19-15:12.] To the extent that plaintiffs advocate some theory of damage other than what has been articulated, it was never disclosed to defendants as required by Fed. R. Civ. P. 26(a)(1)(C).

An accounting of profits is not available as a matter of right, but rather is subject to equity. 15 U.S.C. § 1117; Maier Brewing Co. v. Fleischman Distilling, 390 F.2d 117, 120 (9th Cir. 1968). Courts evaluating whether such an accounting is appropriate take into consideration the intent of the alleged wrongdoer, and require willful and deliberate wrongdoing. Maier Brewing Co., 390 F.2d at 124; Alpo Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 961 (D.C. Cir. 1990); Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 919 (Fed. Cir. 1984) (accounting

may be denied absent showing of fraud or loss of "substantial business and profits").

As discussed above, Plaintiffs have failed to prove that Defendants willfully or deliberately intended to confuse consumers through the DMV.ORG website; rather, the evidence is to the contrary (section 3.3 infra). As a result, an accounting of profits is not justified. See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1406 (9th Cir. 1993); Faberge, Inc. v. Saxony Products, Inc., 605 F.2d 426, 429 (9th Cir. 1979); Highway Cruisers of Cal. v. Sec. Industries, 374 F.2d 875, 876 (9th Cir. 1967); Contessa Food Products, Inc. v. Lockpur Fish Processing Co., Ltd., 2003 U.S. Dist. LEXIS 26682, *24 n.9 (C.D. Cal. 2003).

If the Court finds that Plaintiffs are entitled to an accounting of profits, plaintiffs are not entitled to "a windfall." Bandag, Inc., supra, 750 F.2d at 918; Highway Cruisers, supra, 374 F.2d 875, 876 (9th Cir. 1967). Using Plaintiffs' ten percent figure, an award of ten percent of defendants' traffic school and drivers education profits in California, Texas, and Florida could not exceed $114,403.[4]

And even this amount would constitute a windfall to plaintiffs and thus should not be awarded. Ten percent of profits in California, Texas, and Florida, for the period October 2006 to present, must overstate actual damages for at least the following reasons: (a) Plaintiffs suffered no competitive injury in California, Texas, or Florida (where they sell their own courses); (b) notably, Plaintiffs' share of the Texas and Florida markets are substantially smaller than ten percent; (c) even Maronick's unreliable survey showed that, at most, only one-half of visitors even perceived an affiliation, but the ten percent figure would award 100% of such profits; and (d) ignores the substantial changes made to DMV.ORG in December 2006, and May 2007, and July 2007. [DF 9, 19-21, 39 and TE 144.]

The suggestion that Plaintiffs have suffered any actual damage is

---

[4] This number is derived by multiplying defendants' gross revenues for traffic school and drivers ed related advertisements in California, Texas, and Florida by the average profit per dollar earned (to obtain profits) and then multiplied by ten percent. [Moretti Trial Decl., ¶¶ 30-31, 33(a)-(d); TEs 647, 680-682.]

entirely speculative and unsupported. Plaintiffs' unclean hands, laches, and failure to prove any damages strongly suggest that no damages should be awarded.

### 8.2. Plaintiffs Are Not Entitled To Any Injunction

In considering injunctive relief, "the law requires that courts closely tailor injunctions to the harm that they address." ALPO Petfoods v. Ralston Purina Co., 913 F.2d 958, 972 (D.C. Cir. 1990). "It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation." Forschner Group v. Arrow Trading Co., 124 F.3d 402, 406 (2d Cir. 1997).

In considering this case, Defendants ask this Court to consider the FTC's resolution of a false advertising matter with FreeCreditReport.com. In that matter, in which the affirmative use of the word "Free" was at issue, the FTC required a disclaimer on the website in standard font, but not in as prominent a manner as existing disclaimers on DMV.ORG; notably, FreeCreditReport.com makes no disclaimer of any kind in search engine marketing. [Defs' RJN, Item 3.]

Plaintiffs' request for an injunction should be denied, as the DMV.ORG website is not misleading. See In re Circuit Breaker Litigation, 860 F. Supp. 1453, 1456 (C.D. Cal. 1994) (aff'd by Westinghouse Elec. Corp. v. Gen Circuit Breaker & Elec. Supply, Inc., 106 F.3d 894 (9th Cir. 1997)) (Where a "defendant has infringed innocently, ceased before judgment and assured the court that it has no intention of infringing in the future, the public needs no protection. In these circumstances, courts usually deny requests for permanent injunctions."). Lisa Warren conceded this point. [DF 75 (logo not confusing).]

Importantly, there are several disclaimers at the top and bottom of each page of the website, expressly disclaiming any government affiliation, including: (a) the use of the "Unofficial Guide to the DMV" on the logo at top left of each page; (b) the use of the disclaimer "DMV.ORG is not affiliated with any government agency" below the logo on every page; (c) the use of the prominent title

"The Unofficial Guide to the DMV" on all homepages; and (d) the use of the bold, bottom disclaimer on every page. [DF 39; Ex. A (TE 631).] In addition, many sponsored listings now include the words "Info" and/or "Unofficial." [DF 61; Ex. A (TEs 670-671).] DMV.ORG also ceased using state flags on the website immediately following the request from the state of New York and has never used any other forms of state indicia such as state seals, drivers licenses, police badges, etc. (which are used on Plaintiffs' websites). [DF 57, 113, 116.]

As stated before, Defendants have no intention to remove the disclaimers on DMV.ORG or to use any state indicia that could cause confusion. The Court can accept DMV.ORG's representation, made here and elsewhere, that it will maintain its current level of disclaimers, specified above. Or, the Court may also order Online Guru, as manager of DMV.ORG to maintain such disclaimers.

If the Court considers any further relief, Defendants propose the following alternatives, either of which could adequately address any specific concern that visitors seeking traffic school or driver's education services may erroneously perceive a material affiliation:

- Require use of the word "Unofficial" in any search engine marketing (sponsored listings) that links visitors directly to a traffic school or driver's education page on DMV.ORG [Ex. A (TEs 670-671 (current examples))]; or
- Require a clickable disclaimer button adjacent to ads for traffic school and drivers education that would display a disclaimer specifying that DMV.ORG is not affiliated with any government agency. [Ex. B (example).]

Plaintiffs' demand that this Court either take away the domain name or impose a splash page upon entry to the site (as used by adult entertainment and alcohol-related sites) are unreasonable. These forms of injunctive relief are grossly overbroad since they impact the entire website rather than addressing plaintiffs' alleged injuries. Such draconian relief would be unprecedented and would destroy the goodwill that Defendants have cultivated. [DF 141.] Splash pages are

1  uncommon, disrupt a visitor's flow, and in fact confuse website visitors. [DF 142.]
2    Further, splash pages contradict basic principles of web design set forth
3  by, among others, the U.S. Department of Health and Human Services. Specifically,
4  DHHS advises: (a) <u>against</u> the use of unsolicited "pop-ups" because of the
5  annoyance and distraction; (b) "put[ting] a descriptive, unique, concise, and
6  meaningfully different title on each Web page"; and (c) "ensur[ing] that headings
7  are descriptive and relate to the content they introduce." DHHS, <u>Research-Based
8  Web Design & Usability Guidelines</u>, § 2.1 & 9.2-9.4 (2006) (avail. at usability.gov).
9    Plaintiffs' requested relief aims at their goal of "shutting down"
10 DMV.ORG and Online Guru, not at any legitimate remedy.

**9.  Conclusion**

  For the reasons set forth above, Defendants request that this Court enter judgment in favor of Defendants in this matter.

DATED:  November 28, 2007

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
    BRIAN M. DAUCHER

Attorneys for Defendants
