| | |
|---|---|
| 1 | BRIAN M. DAUCHER, Cal. Bar No. 174212 |
| 2 | ROBERT S. BEALL, Cal. Bar. No. 132016 |
|   | JOSEPH H. TADROS, Cal. Bar. No. 239379 |
| 3 | ASHLEY E. MERLO, Cal. Bar No. 247997 |
| 4 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
|   |     A Limited Liability Partnership |
| 5 |     Including Professional Corporations |
| 6 | 650 Town Center Drive, 4th Floor |
|   | Costa Mesa, California  92626-1925 |
| 7 | Telephone:  (714) 513-5100 |
|   | Facsimile:  (714) 513-5130 |
| 8 | bdaucher@sheppardmullin.com |
| 9 | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC., a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual, and DOES 1 through 10,<br><br>Defendants. | Case No. CV067561 PA (CWx)<br>*The Hon. Percy Anderson*<br><br>**DEFENDANTS' MARKED COPY (WITH STATEMENTS OF DISPUTE) OF PLAINTIFFS' POST-TRIAL [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>[Pursuant to the Court's Jan. 16, 2008 Order]<br><br>Red Highlight   =   Disputed<br>Blue Highlight  =   Admitted<br>Yellow Highlight =  Irrelevant<br><br>Trial Date: November 6, 2007<br><br>[Complaint Filed November 28, 2006] |

Dated:  January 24, 2008

Respectfully submitted,
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  *Ashley E. Merlo*
　　ASHLEY E. MERLO
　　Attorneys for Defendants

1  DAVID N. MAKOUS (State Bar # 082409)
   makous@lbbslaw.com
2  DANIEL C. DECARLO (State Bar # 160307)
   decarlo@lbbslaw.com
3  MINA I. HAMILTON (State Bar # 213917)
   hamilton@lbbslaw.com
4  LEWIS BRISBOIS BISGAARD & SMITH LLP
   221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012-2601
   Telephone: (213) 250-1800
6  Facsimile: (213) 250-7900

7  Attorneys for Plaintiffs
   TRAFFICSCHOOL.COM, INC. and
8  DRIVERS ED DIRECT, LLC, California companies.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>EDRIVER, INC., a California corporation; ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual, and DOES 1 through 10,<br><br>Defendants.<br>_____ | Case No. CV 06-7561 PA (CWx)<br><br>The Honorable Percy Anderson<br><br>PLAINTIFFS' POST-TRIAL [PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW (CITATIONS TO EVIDENCE AND LEGAL AUTHORITIES)<br><br>[November 16, 2007]<br><br>Trial: Nov. 6-8, 2007 |

/ / /

/ / /

/ / /

# **TABLE OF CONTENTS**

I. FINDINGS OF FACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

    A. The Parties: Plaintiffs (¶¶1-12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

    B. The Parties: Defendants (¶¶13-21) . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

    C. Competition: Both Plaintiffs and Defendants Market and Sell Traffic School and Drivers Education Courses (and Advertise Other Driving Related Services ) via the Internet Through Search Engine Marketing and Their Respective Websites (¶¶22-32) . . . . . . . . . . . -4-

    D. The .ORG Top-Level Domain; The DMV Moniker; Use by Defendants of DMV and Other State Agency Names in Search Engine Advertising Even for "Non-DMV" States; Defendants' Attempt to Appropriate for Exclusive Use the DMV Moniker as a Trademark; No License or Permission From DMVs (¶¶33-40) . . . . . . . . . . . . . . . . . . . . . . . . . -7-

    E. Defendants' False and Misleading Search Engine Advertising (¶¶41-61) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

    F. Defendants' False and Misleading DMV.ORG Website (¶¶62-74) -12-

    G. Other Advertising for the DMV.ORG Website (¶¶75-77) . . . . . . . -14-

    H. Evidence of Actual and Likelihood of Confusion and Intent to Deceive (¶¶78-94) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

    I. The Materiality of the False and Misleading Advertising (¶¶95-99) -19-

    J. The Actual and Likely Injury to Plaintiffs (¶¶100-105) . . . . . . . . . . -20-

    K. Steve Moretti Testified Falsely: Page View Statistics (¶¶106-110) -20-

    L. Steve Moretti Testified Falsely: Defendants' Conversion Data (¶¶111-115) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

    M. Findings Related to Alleged Unclean Hands and Laches Defenses (¶¶116-121) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

    N. Factual Findings Relating to Remedies: Injunction (¶¶122-128) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-

    O. Factual Findings Relating to Remedies: Defendants' Profits/Drivers Education and Traffic School Revenues/Advertising Costs/Laches Rebuttal (¶¶129-144) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

II. CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -27-

    A. Elements of False Advertising Under 15 U.S.C. § 1125(a)(1)(B) . . -27-

    B. Legal Conclusions Regarding Various Defenses . . . . . . . . . . . . . . . -32-

|   |    |                                                                               |      |
|---|----|-------------------------------------------------------------------------------|------|
|   | C. | Legal Conclusions Regarding Unfair Competition Under B&P Code § 17200 et seq. | -35- |
|   | D. | Legal Conclusions Regarding Injunctive Remedies under the Lanham Act          | -37- |
|   | E. | Legal Conclusions Regarding Monetary Remedies under the Lanham Act            | -39- |
|   | F. | Legal Conclusions Regarding Remedies: B&P Code § 17200 et seq                 | -41- |

ABBREVIATIONS TO EVIDENCE USED HEREIN:

"TD"- Trial *Declaration* without sustained objection relating to the finding.

"TE"- Trial *Exhibit* (Post-Trial Stipulation filed on Nov. 14, 2007).

"TT"- Trial *Testimony*, to extent any objections were not sustained.

"Depo."- Trial *Deposition Designation* without any sustained objection.

## I. FINDINGS OF FACT

### A. The Parties: Plaintiffs (¶¶1-12)

1. TrafficSchool.com, Inc. ("TSC") is in the business of providing classroom, home study, and Internet-based traffic school courses. [TD Eric Creditor ¶¶2-3; 11.]

2. TSC owns the TrafficSchool.com website and markets and sells traffic school courses to online consumers via that website. [TD Eric Creditor ¶¶3; 17(except lines 14-15); TE 300.]

3. TSC is officially licensed by the California Department of Motor Vehicles ("CA DMV") to provide traffic school courses in the State of California to the public. [TD Eric Creditor ¶6.]
*[Disputed on the grounds that the statement misleadingly implies that TSC's online courses, which comprise approximately 98 percent of TSC's traffic school sales in California, are licensed by the California Department of Motor Vehicles. The California Department of Motor Vehicles does not license online traffic school or home-study courses. Kramer Designated Depo., 273:12-20, 274:25-275:4, 276:12-277:13; 11/6 TT 152:25-154:5.]*

4. Since 2005, Plaintiff Drivers Ed Direct, LLC ("Direct") has been providing drivers education courses to the public and is licensed and approved by the CA DMV to do so. [TD Eric Creditor ¶10.]

5. Direct owns the DriversEdDirect.com website, which is accessible also through the TSC website, and markets and sells drivers education courses to online

consumers via that website. [TD Eric Creditor ¶8.]

6. From its origins in 1994, Plaintiffs' business model has expanded to include the use of Plaintiffs' websites to market traffic school and drivers education courses in California and various other states, and Plaintiffs' contractual relationships with referral providers in additional states continues to grow. [TD Eric Creditor ¶¶3; 5; 7; 11-14 (except to extent describing DMV.ORG operations per sustained objections).]

*[Disputed on the grounds that Plaintiffs' core business is the <u>provision</u> of traffic school and drivers education courses, not the advertisement of and/or referral to other businesses. 11/7 TT 103:2-22. Plaintiffs' referral revenue from third party traffic school and drivers education providers is less than $10,000 gross annually and less than 1% of their respective gross revenues. 11/6 TT 169:7-171:13; Designated Creditor Depo., 322:22-25, TEs 26 (PL01685), 62, 63.]*

7. Plaintiffs also use their websites as advertising forums for non-traffic school and non-drivers education third party services and to provide resources and links to other sites. [TD Eric Creditor ¶16 (a-d); TE 304, 306, 308, 310, 314.]

*[Disputed on the grounds that Plaintiffs' core business is the <u>provision</u> of traffic school and drivers education courses, not the advertisement of and/or referral to other businesses. 11/7 TT 103:2-22. TSC has earned less than $1,000 on average in advertising revenue over the last four years and Direct has earned no more than a few hundred dollars. 11/6 TT 173:5-174:18; Designated Creditor Depo., 81:1-82:12, 108:21-109:12, 326:16-327:3; TE 27 (PL01688).]*

8. Plaintiffs also provide the public with driving information through their DrivingLinks.com website, which permits users to link to the TSC and Direct websites. [TD Eric Creditor ¶30; TE 371.]

9. In order to compete for online consumers interested in traffic school and drivers education courses, Plaintiffs bid on "keywords" from search engines, including Google and Yahoo! [TD Eric Creditor ¶¶17 (except lines 14-15)-18; TD

Chris Kramer ¶¶3-4.]

10. When a bid-for keyword is used by a consumer as part of their search, the search results include the paid-for (or "sponsored") advertisement of the advertiser that bid on the keyword. [TD Chris Kramer ¶3; TD Eric Creditor ¶17-19 (except lines 14-15); TE 367; 322-330.]

11. In Google, for example, the sponsored listings are generally listed above the "natural" or non-sponsored listings. [TD Chris Kramer ¶3; TE 367; 322-330.]

12. Plaintiffs also rely on "natural" (or non-paid) listings of certain search engines. [TD Chris Kramer ¶6; TE 324 (showing Direct's natural results link at bottom of first page) and TE 325 (showing TSC's natural results link as first non-sponsored listing).]

**B.    The Parties: Defendants (¶¶13-21)**

13. Defendant Edriver, Inc. ("Edriver") owns the domain name "dmv.org." [TT 11/6, p. 21:6-8.]

14. Defendant Online Guru, Inc. ("Online Guru") is responsible for managing the DMV.ORG website and content located at http://www.dmv.org pursuant to a management agreement with Edriver. [TT 11/6, pp. 20:19-23; 22:16-22.]

15. Defendant Find My Specialist, Inc. ("Find My Specialist") and Defendant Seriousnet, Inc. ("Seriousnet") own various other domain names and websites which direct consumers to or from DMV.ORG. [Admission in Defendants' Answer to Third Amended Complaint, ¶19(a)-(c); Depo. Steve Moretti, pp.126:25 to 127:7; 134:12-23; TT 11/6, p. 21:9-20; Depo. Ravi Lahoti, p. 57:6-9; 95:19 to 96:6, Ex. 171.]

16. Defendant Find My Specialist owns the TeenDriverEducation.com website (DMV.ORG's referral website for drivers education in California) but at other times was previously owned by SeriousNet or Golden State Private School. [Depo. Steve Moretti, pp. 139:19-24 to 140:20; TE 162.]

*[Find My Specialist owns the domain name TeenDriversEducation.com, but the content on the website was created and is managed by Golden State Private School, not any of the Defendants. The website is used to track Golden State Private School's teen driver education sales derived from advertisements on the DMV.ORG website. 11/6 TT 104:18-106:9, 119:1-6, 122:17-124:11, 124:20-125:14, 126:14-23.]*

17. Defendants Ravi Lahoti and Raj Lahoti own Biz Groups, Inc, which in turn owns each of the corporate Defendants other than Seriousnet (which is owned by Defendant Ravi Lahoti). [TE 333; Depo. Ravi Lahoti pp. 14:4-24; TT 11/6, p. 20:2-5; 21:2-5).]

18. Raj Lahoti is the CEO of Biz Groups, Inc. and all of its wholly owned subsidiaries, which includes Find My Specialist, Edriver, and Online Guru; Ravi Lahoti is the VP of Online Guru. [TE 333; TT 11/6, pp. 19:22-20:18).]

19. Ravi Lahoti first registered the DMV.ORG domain name and both Ravi and Raj Lahoti in combination have decided to continue using the domain name DMV.ORG, [Depo. Steve Moretti, p. 17:12-15; 129:1-17.]

20. At various times, the DMV.ORG domain name was owned by SeriousNet. [TE 161.]

*[Disputed in that, although Seriousnet was the initial registrant for the DMV.ORG domain, it did not own the domain at the time of the alleged unfair competition, i.e., late 2006 to the present. See Defendants' RJN Nos. 1-2. As shown in the cited exhibit, eDriver, Inc. has owned the domain since at least October 2003. TE 161, p. 5.]*

21. Seriousnet has developed a routine business practice of registering domains that are confusingly similar to government or private domain names.[Depo. Ravi Lahoti, pp. 62:8 to 95:18; TE 163, 165-167; 169; 171.]

*[Disputed that Seriousnet's unspecified domains are confusingly similar to government or private domains. No evidence is offered to show that consumers were*

*misled by any domains registered by Seriousnet.]*

      **C.    Competition: Both Plaintiffs and Defendants Market and Sell Traffic School and Drivers Education Courses (and Advertise Other Driving Related Services ) via the Internet Through Search Engine Marketing and Their Respective Websites (¶¶22-32)**

22. Like Plaintiffs [TD Eric Creditor ¶¶3; 5; 7; 11-14], Defendants have referral relationships (often exclusive) with traffic school and drivers education providers to market and sell those services via the DMV.ORG website. [Depo. Steve Moretti, pp. 75:15 to 76:14; 78:1-25; 79:13 to 80:24; 81:3-14; 95:18 to 97:8; 104:21 to 106:24 (admission by Online Guru that they are in competition with Plaintiffs); 252:14-24 (TE 14 list of "different partners used and in what state they are currently being advertised on the DMV.ORG website."); Depo. Steve Moretti, pp. 256:7 to 258:20; 260:1 to 263:25 (TE 15 agreements with referral companies).]
*[Disputed that Plaintiffs have referral relationships similar to Defendants, as Plaintiffs' core business is the provision of traffic school and drivers education courses, not the advertisement of or referral to third parties (which comprise less than 1% of their respective gross revenues). 11/6 TT 169:7-171:13; 11/7 TT 103:2-22; Designated Creditor Depo., 322:22-25; TEs 26 (PL01685), 62, 63. Online Guru's referral relationships with third party traffic school and drivers education providers are only for the advertisement of those services on DMV.ORG; no such services are sold on DMV.ORG. Raj Lahoti Trial Decl., ¶¶ 8, 10; 11/7 TT 25:5-24, 169:15-25.]*

23. DMV.ORG and Defendants do not act as mere passive advertisers functioning like newspaper classifieds; they receive no revenue for the mere listings of the traffic school or drivers education advertisements on DMV.ORG site, but only receive revenue once the traffic school or drivers education course is sold through Defendants' marketing efforts; indeed, they refer to this advertising revenue as "sales commissions" or "marketing fees" from their referral partners and receive over half

and as much as 80% of the total fee paid by the consumers for the courses. [TE 15 (e.g., (DEF-01957),(DEF-00239), (DEF-00244 ("sales commission"); TE 356; TT 11/7, pp. 188:2-190:21.]

*[Disputed on the grounds that the statement mischaracterizes the nature of DMV.ORG's advertisement of third party services and products based merely on the fee structure for these advertisements. The fact is that DMV.ORG's core business is to act as an internet publishing company, with 99 percent of its revenues derived from advertising. 11/7 TT 169:15-25.]*

24. Like Plaintiffs [TD Eric Creditor ¶¶3; 5; 7; 11-14], Defendants own and manage websites in addition to DMV.ORG (i.e., TeenDriversEducation.com and FloridaDrivingCourse.com which are the referral websites from DMV.ORG in California and Florida) for the purpose of generating revenue from the sale of drivers education and traffic school services. For example, Golden State Private School entered an agreement with Defendant Online Guru whereby Defendant Online Guru is to "market and promote" Golden State Private School's courses using the TeenDriversEducation.com site that is "managed by" Online Guru, Inc. [TE 15 (DEF-00244); TE 413 (attached to Post-Trial Exhibit Stipulation); Depo. Steve Moretti, p. 316:2-10.]

*[Disputed on the grounds that unlike Plaintiffs, Defendants do not manage other websites for the purpose of generating revenue from the sale of drivers education and traffic school services. Rather, Defendants own other domain names, such as TeenDriversEducation.com, for the purpose of tracking consumers that purchase courses from third parties advertised on DMV.ORG; Online Guru did not create the content nor does it manage the TeenDriversEducation.com website. 11/6 TT 104:18-106:9, 119:1-6, 122:17-124:11, 124:20-125:14, 126:14-23; Raj Lahoti Trial Decl., ¶ 8.]*

25. Mr. Raj Lahoti's testimony that Defendants merely own the domain TeenDriversEducation.com for drivers education courses is false. Find My

1 Specialist does own the domain name TeenDriversEducation.com [TT 11/6, p.
2 119:1-6], but Mr. Raj Lahoti testified that Golden State Private School ("Golden
3 State") manages the site, not Defendants [TT 11/6, p.105:13-17]. However, as noted
4 above and specified in TE 15 (the contract between Online Guru and Golden State
5 [TT 11/16, pp. 36:6-37:11], Online Guru is responsible for managing the site, not
6 Golden State. Indeed, when a consumer visits the California drivers education page
7 at DMV.ORG, that consumer is not presented with any information about or even the
8 identity of Golden State Private School [TT 11/6, p. 119:7-20]. Moreover, when a
9 user clicks on the TeenDriversEducation.com link on the DMV.ORG website, the
10 user goes to the TeenDriversEducation.com website which is branded completely as
11 Teen Drivers Education, not Golden State Private School [TT 11/6, p. 120:17-23; TE
12 413 (communicating to consumers that the courses are being offered by
13 TeenDriversEducation.com by the use of the terms "our" and "we" in the text of the
14 website)]. These facts do not support a conclusion that DMV.ORG is merely
15 advertising for Golden State Private School. To the contrary, DMV.ORG is
16 essentially marketing and selling driving education courses and retaining all good
17 will associated with the website. [TT 11/6, pp. 122:17-124:19.]
18 *[Mr. Lahoti's testimony was truthful; as explained, the business purpose for Online*
19 *Guru's ownership of the TeenDriversEducation.com domain is to track Golden State*
20 *Private School's teen driver education sales derived from advertisements on the*
21 *DMV.ORG website. As to contentions relating to the branding of the website,*
22 *TeenDriversEducation.com website explains to visitors on the "about us" page of*
23 *the website that the home study course is developed by Golden State Private School,*
24 *and the "contact us" page provides an address for Golden State Private School.*
25 *Online Guru (through DMV.ORG) does not sell driving education services, nor does*
26 *it derive goodwill based on the mere ownership of the teendriverseducation domain*
27 *as the website sells a third party service that cannot simply be replaced by some*
28 *other provider. TT 104:18-106:9, 119:1-6, 122:17-124:11, 124:20-125:14, 126:14-*

*23; TE 413.]*

26. **Defendants in some instances have referral relationships with the *same* traffic school and drivers education providers as Plaintiffs.** [TD Eric Creditor ¶¶12-15 (except to extent it relates to DMV.ORG's operations); e.g., TE 300 (showing TSC's "courses offered" for traffic school in Nevada, New Mexico, Colorado, Idaho, Virgina through I DRIVE SAFELY referral provider) and TE 301(showing DMV.ORG's courses offered for Nevada, New Mexico, Colorado, Idaho, Virginia through I DRIVE SAFELY referral provider), TE 302 (showing Direct's drivers education courses being offered for Texas and Colorado through Driver Ed in a Box and Virtual Drive) and TE 303 (showing DMV.ORG's offering drivers education courses for Texas and Colorado through Driver Ed in a Box and Virtual Drive); TE 14.]

*[Disputed on the grounds that TSC's referral revenue is less than $10,000 annually (less than 1% of gross revenue), none in California, Florida or Texas, and Direct has earned no referral revenue. Rather, Plaintiffs' core business is the provision of traffic school and drivers education, not referrals to third parties, which comprises an insignificant portion of their respective businesses. 11/6 TT 138:24-139:6, 162:6-12, 163:9-165:24, 167:1-168:12, 169:7-171:13; 11/7 TT 103:2-22; Designated Creditor Depo., 66:3-7, 71:4-11, 72:10-18, 322:22-25; TEs 26 (PL01685), 62, 63.]*

27. **Defendants even advertise some of the same services and products on their DMV.ORG website as Plaintiffs advertise on their websites.** [Depo. Steve Moretti, pp. 41:19 to 45:21; 45:22 to 46:6 (describing nature of DMV.ORG business and goods and services provided); TD Eric Creditor ¶16(a)-(e) (except to extent it relates to DMV.ORG's operations); compare TE 304 and 305 (vehicle history reports); compare TE 306 and 307 (new/used car quotes); compare TE 308 and 309 (auto insurance quotes); compare TE 310 and 311 (driver's records); compare TE 312 and 313 (DVD product "Rules of the Road."); TT 11/16, pp. 44:5-21; 45:5-15;

46:7-12.]

*[Disputed on the grounds that Plaintiffs' advertising revenues are de minimus (less then $1,000 on average over the last four years for TSC and only a few hundred dollars for Direct) and that their core business is the provision of traffic school and drivers education courses, not advertising. If Plaintiffs and Defendants are deemed to compete based on the fact that Plaintiffs run advertisements on their websites, Plaintiffs can be said to compete with any website running advertisements. 11/6 TT 173:5-174:18; 11/7/ TT 103:2-22, Designated Creditor Depo., 81:1-82:12, 108:21-109:12, 326:16-327:13; TE 27 (PL01688).]*

28. DMV.ORG and Plaintiff Direct have advertised their respective affiliate referral programs through the same third party website. [TE 321 (AffiliatePrograms.com ads for DMV.ORG and Direct on 2/4/2007).]

29. Defendants, like Plaintiffs do for their websites [TD Chris Kramer ¶3; TD Eric Creditor ¶17-19 (except lines 14-15)], pay for "sponsored" result listings to feature DMV.ORG on certain search engines. [Depo. Steve Moretti, p. 251:8-14; TE 13 (list of traffic school and drivers ed related keywords bid on by DMV.ORG); Depo. Steve Moretti, p. 345:1-9; TE 101 (DMV.ORG state specific traffic school and drivers related keywords).]

*[Disputed that Defendants' marketing of DMV.ORG through payment for "sponsored" result listings is comparable to Plaintiffs' marketing efforts. TEs 602, 680; Raj Lahoti Trial Decl., ¶ 14.]*

30. Defendants, like Plaintiffs [TD Chris Kramer ¶6; TE 324, 325], also rely on "natural" listings of certain search engines. [TD Chris Kramer, ¶6; TT 11/7, pp. 150:11-151:5.]

31. Significantly, both Plaintiffs and Defendants compete and bid on many of the same keywords in order to insure that their respective sponsored listings are displayed to consumers performing online searches for traffic school and drivers education courses. [TD Chris Kramer ¶¶4 (except second sentence in ¶4) and 8; TE

13 and 101 (Defendants' keywords) and TE 603 and 604 (Plaintiffs' keywords).]

32. Defendants even bid on Plaintiff TSC's complete domain name "trafficschool.com" so as to hopefully direct consumers searching online for Plaintiffs' website to instead link to DMV.ORG. [TE 13 (DEF-00252)(showing trafficschool.com as a bid on keyword by Defendants.]

*[Disputed on the grounds that the trafficschool.com keyword is generic and there is no evidence to suggest that Defendants bid on this keyword for any reason other than its generic nature.]*

**D. The .ORG Top-Level Domain; The DMV Moniker; Use by Defendants of DMV and Other State Agency Names in Search Engine Advertising Even for "Non-DMV" States; Defendants' Attempt to Appropriate for Exclusive Use the DMV Moniker as a Trademark; No License or Permission From DMVs (¶¶33-40)**

33. The .ORG is a top level domain that may be used for non-profit companies, including state government DMV agencies. [TE 315 (PL01273–1274 (North Corolina's DMV website at NCDOT.ORG and NCDOT.ORG/DMV).]

*[Disputed to the extent that the finding misleadingly implies that .org domains are restricted. To the contrary, the .org top level domain is an "open" and "unrestricted" domain (meaning anyone can register a .org, including commercial entities, like IBM.ORG, FEDEX.ORG, and Craigslist.org.). Defendants' RJN No. 4.]*

34. The "DMV" moniker is the state adopted unique identifier for the state government motor vehicle regulatory agency for California as well as many other states. [TE 315 (examples of selected state government agencies' use of DMV acronym on official websites- including CA, AK, CT, DE, DC, ID, NE, NV, NY, NC, OR, SC, UT, VT, VA, WI).]

*[Disputed as to the characterization of "DMV" as unique. To be factual, approximately 24 states use the DMV moniker. Defendants RJN Nos. 10. Further, Plaintiffs as well as other third parties use the DMV moniker in domain names and*

*on websites. 11/6 TT 208:5-209:18; Designated Creditor Depo., 271:15-272:19; TE 20; Defendants' RJN Nos. 11-12.]*

35. The California Department of Motor Vehicles ("CA DMV") uses the identifier DMV. [TE 315 (PL01039-1042).]

36. When consumers in California see the moniker "DMV," they recognize it as standing for the "Department of Motor Vehicles". [TD Dr. Thomas Maronick, TE 350 (pg. 6, Study 1).]

37. Even in states where the formal name of the motor vehicle regulatory agency is not abbreviated as the "DMV," evidence suggests some consumers in those states still refer to the agency in that state as the "DMV." [TE 400 (consumer emails to DMV.ORG where the consumer is referencing the acronym DMV and DMV.ORG is sending them to the state agency URL in the non-DMV state (e.g., Massachusetts (DEF-01172); (DEF-01181-from non-DMV state AZ, but consumer asks "...can I get a temporary plate to go to the dmv?"); (DEF-01601-"I was told to contact the DMV"- from consumer in Florida), etc., etc.]

*[Disputed on the grounds that a handful of emails from persons residing in non-DMV states is not probative of how any significant portion of the population in those states would refer to their motor vehicle departments; this use of exemplar emails illustrates the danger of accepting anecdotal rather than statistically reliable evidence. Further, Defendants' survey demonstrates that there is no statistically significant confusion relating to the DMV.ORG website. TEs 172-173.]*

38. Defendants even bid on keywords such as "Alabama DMV", and other non-DMV states so that the DMV.ORG sponsored listings appear in the search results [TE 401]; they also bid on keywords incorporating the non-DMV state's agency acronym and display advertising that would attract users who know the non-DMV acronym (e.g.. "Alabama DPS Info...DMV.ORG/Alabama-DPS") [TE 402.]

39. Defendant Edriver was attempting to appropriate the DMV.ORG name exclusively nationwide by applying to the United States Patent and Trademark Office

for the mark "DMV.ORG," which was opposed by the CA DMV and subsequently abandoned by Edriver. [TE 362.]

40. Defendants have no license or permission to act as the official website on behalf of any state DMV agency or to represent (impliedly or expressly) that they are endorsed by, affiliated with, or licensed by the California DMV or any other state DMV. [Admission in Defendants' Answer to Third Amended Complaint, ¶42; TE 317 (000131-last page text on DMV.ORG showing ineffective disclaimer appearing at bottom of third page)]

*[Disputed to the extent that the statement implies that DMV.ORG represents that it is endorsed by, affiliated with, or licensed by any state agency and/or that the disclaimers on DMV.ORG are ineffective. There is no evidence of any express claim of affiliation, and to the contrary, DMV.ORG contains several prominent disclaimers and additional clarifying language explaining the nature of the website. Raj Lahoti Trial Decl., ¶¶ 25-27, 29-34; TEs 623-625, 631.]*

### E. Defendants' False and Misleading Search Engine Advertising (¶¶41-61)

41. DMV.ORG is advertised in interstate commerce. [Admission in Defendants' Answer to Third Amended Complaint, ¶25-26.]

42. Online Guru's search engine marketing, i.e., its pay-per-click advertising, often results in the display of deceptive sponsored links on search engines such as Google because a consumer is likely to believe that it is a link to a state DMV website or sanctioned by their state DMV agency and thus the recommended traffic school or drivers education course on DMV.ORG is recommended by the DMV. [TEs 322- 330, 367, 372, and 379-381, 401 and 402); TT 11/6, pp. 60:9-62:9 (TE 324); TD Shannon Roberston, ¶¶3-6; TD Chris Kramer, ¶7; TT 11/6, pp. 60:1-61:13; 61:21-63:18; 63:19-65:4 (TE 324, 325); TE 394 (governmental entities such as the United States Army do use sponsored listings through Google); TD Lisa Warren, ¶5-8.]

*[Disputed that the sponsored links for DMV.ORG are deceptive; a handful of examples are not probative in light of the million visits that the website receives on a weekly basis. Moretti Trial Decl., ¶ 4; TE 674; William H. Morris Co. v. Group W, 66 F.3d 255 (9th Cir. 1995) (3% not significant); and Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20% might be sufficient). If these few instances suffice to establish actionable false advertising claims, then entities such as Bank of America and US Bank could be liable for similar "false advertising" as well.]*

43. One of Plaintiffs' consumer surveys was directed to testing consumer confusion at the search engine stage and found that "[W]hen California residents see the DMV.ORG internet address/link on a Google search for online traffic schools, over half (58%) believe it is a link to the DMV or Department of Motor Vehicles". [TD Dr. Thomas Maronick, TE 350 (pg. 7, Study 2); TE 389 (Rebuttal Statement of Dr. Maronick).]

*[Disputed on the grounds that the Maronick surveys are unreliable because of the serious survey errors including the failure to use a control, the failure to instruct respondents not to guess, the failure to mimic a visitor's actual experience through the use of improper stimuli and dissection of DMV.ORG into component parts, the use of leading questions, and the combination of key questions on the same page. TE 142 (Simonson Decl., ¶¶ 23, 37-38, 41-51, 53-55, 57); Designated Maronick Depo., 13:4-14:4, 34:5-35:5, 39:5-11, 40:5-23, 44:2-18, 45:17-46:22, 54:7-10, 72:15-73:13, 95:25-96:1, 96:20-97:12, 97:17-21, 100:2-7, 172:4-173:11; TE 144 (Surveys 2-3, questions 6-7 and 8-9). Hollander's results show that when these errors are corrected, there is no statistically significant confusion. TEs 172-173. ]*

44. Assessing consumer perception at the search engine result stage is critical because a significant number of consumers (about 80% according to Defendants) locate DMV.ORG through search engine listings, 61% coming from the

1 Google search engine. [TT 11/7, p. 154:6-10; TE 339; Depo. Steve Moretti, pp.
2 223:13 to 230:25 (i.e., 224:8-21).]
3 *[Disputed that consumer perceptions at the search results stage is critical, as*
4 *Plaintiffs have offered no evidence in support of this statement and their own expert,*
5 *Dr. Maronick, testified that a consumer is likely to hunt around on a variety of*
6 *websites before making a purchasing decision. Maronick Designated Depo.,*
7 *217:13-17; 11/7 TT 10:3-6, 206:19-207:20, 219:8-220:12.] Further, Plaintiffs'*
8 *focus on search engine results, separate from the DMV.ORG website, improperly*
9 *dissects the alleged "false advertising," rather than considering it in its full context.*
10 *Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997); and*
11 *Avis Rent A Car System, Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986)*
12 *(courts must "consider the advertisement in its entirety and not ... engage in*
13 *disputatious dissection"); and FTC v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir.*
14 *1963) (view the "entire mosaic" not "each tile separately").]*
15      45. Online Guru, through search engine optimization and paid-for
16 advertising and bidding on key words, seeks to attract visitors from all states who are
17 interested in purchasing traffic school and drivers education courses, and is very
18 effective at doing so. [TT 11/6 , pp. 48:18-50:1; 50:6-16; 50:10-22; 65:24-66:13; TD
19 Chris Kramer, ¶3.]
20 *[Disputed on the grounds that the cited testimony does not support the statement;*
21 *Online Guru bids on keywords related to every topic covered on DMV.ORG to*
22 *attract consumers interested in every aspect of motor vehicle information. The kiw*
23 *conversion rates for traffic school and drivers education courses advertised on*
24 *DMV.ORG (regardless of the method of calculation) also undermine the claimed*
25 *effectiveness of Online Guru's search engine optimization and paid-for advertising.*
26 *11/6/ TT 65:24-66:13; 11/7 TT 10:3-6, 206:19-207:20, 219:8-220:12; Moretti Trial*
27 *Decl., ¶¶ 19-21.]*
28      46. When a user clicks on a DMV.ORG pay-per-click advertisement for

1 traffic school or drivers education, they will travel to a dedicated page for drivers
2 education or traffic school on the DMV.ORG website and are thus highly targeted
3 consumers. [TT 11/6, pp. 68:14-70:9; TT 11/7, p. 173:3-8 and p.175:12-18 ; TE
4 127,TE 133.]
5 *[Disputed on the grounds that the average visitor on DMV.ORG views at least 5*
6 *webpages. Moretti Trial Decl., ¶¶ 10-11.]*
7    47.    In 2006, 23% of those who visited DMV.ORG entered through the
8 DMV.ORG homepage. In 2007 that figured dropped to 16.9%. This illustrates that
9 DMV.ORG is becoming increasingly more effective and efficient in inducing
10 consumers to land on targeted pages of interest. [TT 11/7, p. 172:4-21.]
11 *[Disputed on the grounds that the drop in the percentage of visitors entering through*
12 *the main homepage may also be due to the increase in the number of webpages on*
13 *DMV.ORG, making it more likely that consumers will enter the site through other*
14 *webpages. 11/7 TT 172:4-16.]*
15    48.    Online Guru's revenues are driven almost completely, upwards of 90%,
16 on a business model known as "cost per action". This means that Online Guru only
17 makes money when a certain action is taken by a user, such as a user clicking on an
18 icon displayed on the DMV.ORG website and then purchasing a drivers education
19 course or traffic school course, for example. [TT 11/6, pp. 50:23-51:19.]
20 *[Disputed on the grounds that the description of "cost per action" misrepresents the*
21 *process. "Cost per action" is a simply a way to charge for effective advertising. Raj*
22 *Lahoti Trial Decl., ¶ 8.]*
23    49.    The advertiser, i.e., Defendant Online Guru, sets forth the message that
24 consumers see in the sponsored listings, and is solely responsible for it, not the
25 search engine company. No evidence exists that Google or Yahoo! have ever
26 specifically approved DMV.ORG's advertisements. [Depo. Steve Moretti, pp. 146:18
27 to 147:4; TE 97, TT 11/6 pp. 54:20-25; 58:1-25; 60:22-25.]
28 *[Disputed on the grounds that Online Guru's sponsored advertising listings in*

*Yahoo! and Google are subject to Yahoo!'s and Google's approval and their extensive rules regarding the content of sponsored advertisement listings. Raj Lahoti Trial Decl., ¶ 18; 11/7 TT 49:5-11; TEs 94-96. Plaintiffs concede that their own search engine marketing is subject to Yahoo! and Google's review. 11/7 TT 49:2-11.]*

50. Indeed, Google search results for the keywords "red light camera ticket" and "license plate covers" show sponsored links that appear to conflict with Google's stated advertising policy. [TE 392; TE 95 (p. 3 of 3 relating to "Traffic Devices".]

51. A November 17, 2006 search result shows DMV.ORG as the #1 sponsored listing for the "California DMV" and provides a link to consumers to the domain name *www.ca.dmv.org* which linked directly to DMV.ORG. [TE 322.]

52. The CA DMV provides information and guidance to consumers on the internet at *www.dmv.ca.gov*. [TE 322 (CA DMV listing at *www.ca.dmv.org* directly under the sponsored DMV.ORG listing of *www.ca.dmv.org*); TE 315 (PL01039-1042).]

53. A November 17, 2006 search for "dmv" shows the statement (in the text of the sponsored search results): "CA Dept. Motor Vehicles Guide. Guide to DMV, License, Registration." [TE 322.]

54. There is no support for the notion that the public believes that the government does not publish consumer guides; indeed, as evidenced by the USA.GOV website [TE 412 (attached to Post-Trial Exhibit Stipulation)], the government offers dozens of guides; thus, the Defendants' testimony in this regard is not credible. [TT 11/6, pp. 92:16-95:7.]

55. A November 17, 2006 search for "dmv" shows the placement of DMV.ORG in the second non-sponsored (or "natural") position, including the text: "DMV Department of Motor Vehicles Guide-DMV.ORG with the following text: "Nationwide DMV information. Drivers License, Vehicle Registration, DMV Forms, Locations, Vehicle History ..." [TE 322.]