1   56.   As illustrated by a May 22, 2007 search for "dmv", Defendants changed, subsequent to being sued, the sponsored advertisement link to "California DMV Info" from the previous language which read "California DMV." [TE 323.]

*[Disputed on the grounds that the statement refers to all Defendants. Online Guru, not any of the other Defendants, manages the DMV.ORG website, and thus it was Online Guru that changed the content of the sponsored listings for DMV.ORG. Raj Lahoti Trial Decl., ¶ 2. Further, Plaintiffs' focus on the search engine result listings separate from the DMV.ORG website improperly dissects the website, rather than considering it in its entirety. Avis Rent A Car System, Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986) (courts must "consider the advertisement in its entirety and not ... engage in disputatious dissection"); and FTC v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir. 1963) (view the "entire mosaic" not "each tile separately").]*

57.   On November 20, 2006 and January 31, 2007 searches of the term "drivers ed", DMV.ORG is the #1 sponsored listing with a link by the domain name "california.dmv.org" and text: "CA Recommended drivers ed Course for obtaining a Learners Permit." [TE 324.]

58.   In the January 31, 2007 search results for "drivers ed", the Defendants changed, subsequent to being sued, the text from "California DMV Drivers Ed" to "CA Drives Ed Online" and from "CA recommended drivers ed" to "Recommended Drivers Ed..." [TE 324.]

*[Disputed on the grounds that the statement refers to all Defendants. Online Guru, not any of the other Defendants, manages the DMV.ORG website, and thus it was Online Guru that changed the content of the sponsored listings for DMV.ORG. Raj Lahoti Trial Decl., ¶ 2. Further, Plaintiffs' focus on the search engine result listings separate from the DMV.ORG website improperly dissects the website, rather than considering it in its entirety. Avis Rent A Car System, Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986) (courts must "consider the advertisement in its entirety and not ... engage in disputatious dissection"); and FTC v. Sterling Drug, Inc., 317 F.2d*

*669, 674 (2d Cir. 1963) (view the "entire mosaic" not "each tile separately").]*

59. Additional sponsored listings for DMV.ORG from searches on various dates for other traffic school and drivers education "keywords" show the sponsored listings without any disclaimer of affiliation with an official DMV in the text. [TE 325-330; 367; 372; 379-381.]

*[This finding is irrelevant, as it improperly dissects the DMV.ORG website rather than considering it in its entirety. Moreover, the FTC's resolution of the false advertising claims against FreeCreditReport.com, requiring no changes made to search engine result listings, demonstrates that search engine result listings are not considered independently material by the FTC. Defendants' RJN No. 3.]*

60. An August 17, 2007 search for "california dmv government" showed Defendants' advertisement on the Google sponsored listing as: "California DMV GOV Info." [TE 372.]

61. Even though it is within the power of the Defendants to write text in their sponsored listings to decrease confusion, Defendants failed to place the word "unofficial" prominently in all of their sponsored listings related to traffic school and drivers education; and at the time of trial, Defendant Raj Lahoti was uncertain if all search engine advertisements incorporated the "unofficial" reference. [TT 11/6, p.126:8-127:11.]

*[Disputed on the grounds that the statement assumes that the sponsored listings for DMV.ORG are confusing. Additionally, as of November 2007, Online Guru had made an effort to include the "unofficial" language in all of its traffic school and drivers education sponsored listings and was unaware of any sponsored listings not containing the unofficial language. 11/6 TT 127:8-128:11.]*

**F.    Defendants' False and Misleading DMV.ORG Website  (¶¶62-74)**

62. The DMV.ORG home page on October 30, 2006 (prior the lawsuit) displayed the license plate logo DMV.ORG and the large text (above the fine print) in bold lettering, "No need to stand IN LINE. Your DMV Guide is now ONLINE!"

1  [TE 317.]

2  *[Disputed that the language underneath heading: "No need to stand IN LINE . . ." is*
3  *in fine print. The text below the heading is the same font size as the other*
4  *informational text on the website. TE 317.]*

5  63.  The California 2006 DMV Driver Handbook contains the statement on
6  the second page: "Don't stand in LINE, Go on LINE! " [TE 391.]

7  *[DMV.ORG has used the phrase "No need to stand in line, your DMV guide is no*
8  *online" (or similar) since 2004. TE 625.]*

9  64.  Defendants used names of the states directly in the DMV.ORG license
10 plate logo on the upper left corner (e.g., showing DMV.ORG used with Nevada,
11 DMV.ORG used with New Mexico, etc., etc.) [TE 301.]

12 *[Disputed on the grounds that the statement is vague as to time. The license plate*
13 *logos no longer appear in this format; rather, the license plate logos contain no*
14 *reference to any state and include the phrase "Unofficial Guide to the DMV." TE*
15 *631.]*

16 65.  DMV.ORG's home page on October 30, 2006 contained a map of the
17 United States and text instructing consumers to "Choose Your State" by clicking on a
18 state in the map to "select your state DMV guide". [TE 317.]

19 66.  DMV.ORG's website on October 30, 2006 contained text that instructed
20 users to select a state, such as "California," and then text stating "Your Online Guide
21 to the California DMV" (using the official California state flag) and provided links
22 related to "how to complete DMV-related transactions" and other related topics. [TE
23 318.]

24 67.  The link on DMV.ORG for "Traffic Schools" under California on
25 October 30, 2006, for example, directed users to a page entitled "Traffic Schools"
26 and contained text which read, in part: "We recommend I DRIVE SAFELY as your
27 best choice for California traffic school online". [TE 319.]

28 68.  The link on DMV.ORG for "Drivers Ed" under California on November

1  27, 2006, directed users to a page entitled "Driver Education" and contained - in
2  conjunction with a picture of a California DMV issued driver's license- text, which
3  read, in part: "We recommend TeenDriversEducation.com as your best choice for
4  completing your California driver education requirement online or with a homestudy
5  course". [TE 320.]
6  *[Disputed on the grounds that the drivers license appeared in the third party*
7  *advertisement itself.]*
8      69.   The Court finds that Online Guru's use of the term "recommended" on
9  its traffic school and drivers education pages, was designed to deceive the consumer
10 into the false belief that the course was being recommended by the DMV in order to
11 achieve the inherent benefit to the seller of those courses. [TD Eric Creditor, ¶¶4,
12 7,9.]
13 *[Disputed on the grounds that the evidence cited does not support the proposed*
14 *finding.]*
15     70.   Some changes were made to DMV.ORG's site after the lawsuit was
16 filed, but confusion among the public continues. [TE 331 (showing addition of
17 language in top left corner, but continued use of state flags-print-out from January
18 31, 2007); TE 332(showing addition of "Unofficial Online Guide" text but not on the
19 California Driver Education or Traffic Schools pages and not in the DMV.ORG
20 license plate logo at that time-print-out from May 10, 2007); TT 11/7, pp. 159:23-
21 160:24; 172:22-174:4.] . The Court finds it significant that the Defendants failed to
22 place this language on the traffic school and drivers education landing pages. [TT
23 11/7, pp. 173:25-174:4.] The Court finds that this represents an intentional omission
24 by the Defendants designed to maintain visitors traffic and increase profits.
25 *[Disputed on the grounds that (i) every page of the DMV.ORG website contains*
26 *several prominent disclaimers - twice at the top left of each webpage as well as once*
27 *at the bottom of each webpage; and (ii) there is no reliable evidence (cited or*
28 *otherwise) supporting a finding that any substantial segment of the public is*

1  *confused by the DMV.ORG website. To the contrary, the Hollander controlled*
2  *survey results and the steady traffic on DMV.ORG even after the addition of further*
3  *disclaimers on the website, show that no substantial segment of the public is*
4  *confused by DMV.ORG. TEs 172-173, 631, 666, 676; 11/7 TT 170:23-171:15.]*
5        71.   Defendants do not believe that adding the "unofficial" tag line to the
6  traffic school or drivers education pages of DMV.ORG will limit or reduce
7  confusion.  ( TT 11/7, pp. 174:21-175:25).
8  *[Disputed to the extent that the statement implies that there is any significant level of*
9  *confusion created by the DMV.ORG website, for which plaintiffs have offered no*
10 *evidence. Moreover, each page of the website already contains several prominent*
11 *disclaimers, including two at the top left of each webpage as well as one at the*
12 *bottom of each webpage. TE 631.]*
13       72.   Indeed, DMV.ORG has enjoyed steady growth in the number of visitors
14 from January 1, 2006 through September, 2007. [TT 11/7. pp. 170:23-171:15.] The
15 Court agrees that the placement of this text on the traffic school and drivers
16 education pages would likely not reduce the level of confusion because there are too
17 many other elements which serve to confuse consumers.
18 *[Disputed on the grounds that the finding is vague as to "this text" and not*
19 *supported by evidence.]*
20       73.   Plaintiffs survey, Study 3 found that "[O]ver half (56%) of California
21 residents, when they see the DMV.ORG website, believe that it is the website of the
22 DMV or Department of Motor Vehicles [...]" (Question 5).  [TD Dr. Thomas
23 Maronick, TE 350 (Study 3); TE 389 (Rebuttal Statement of Dr. Maronick).]
24 *[Disputed on the grounds that the Maronick surveys are unreliable because of the*
25 *numerous survey errors including the failure to use a control, the failure to instruct*
26 *respondents not to guess, the failure to mimic a visitor's actual experience through*
27 *the use of improper stimuli and dissection of DMV.ORG into component parts, the*
28 *use of leading questions, and the combination of key questions on the same page.*

1  *TE 142 (Simonson Decl., ¶¶ 23, 37-38, 41-51, 53-55, 57); Designated Maronick*
2  *Depo., 13:4-14:4, 34:5-35:5, 39:5-11, 40:5-23, 44:2-18, 45:17-46:22, 54:7-10,*
3  *72:15-73:13, 95:25-96:1, 96:20-97:12, 97:17-21, 100:2-7, 172:4-173:11; TE 144*
4  *(Surveys 2-3, questions 6-7 and 8-9).] Hollander's results show that when these*
5  *errors are corrected, there is no statistically significant confusion. TEs 172-173. ]*

6  74.  The Court finds that Defendants use of the DMV.ORG domain name in the context of the DMV.ORG website as set forth above is false and misleading. *[Disputed on the grounds that: (i) Plaintiffs have failed to produce evidence demonstrating any appreciable amount of confusion in light of the million visits the website receives each week; (ii) controlled survey results shows no confusion attributable to the domain name; and (iii) there is no evidence that the alleged perceived affiliation/sponsorship/approval by a government agency is material to the purchasing decision (in fact, the evidence indicates that other factors - masking points, price, convenience - are the important factors to consumers). 11/6 TT 160:19-161:23; 11/7 TT 41:19-42:13; TE 67, 172-173, 674; Moretti Trial Decl., ¶ 4.]*

17  **G.   Other Advertising for the DMV.ORG Website   (¶¶75-77)**

18  75.  Defendants represented themselves to potential third party advertisers on the website AffliatePrograms.com under the guise that they are the "Department of Motor Vehicles. [TE 321] *[Disputed on the grounds that (i) the statement mischaracterizes the DMV.ORG advertisement; and (ii) there is no evidence that Defendants provided or knew of the language used on AffiliatePrograms.com. Further, the advertisement includes the .ORG domain, suggesting that the website is not a governmental entity, describes the website as a <u>nationwide</u> guide, and refers advertisers to the DMV.ORG website, where it is apparent from the numerous disclaimers that DMV.ORG is not affiliated with any government agency. TE 321.]*

28  76.  TE 17 and TE 18 represent examples of Online Guru's further attempts

to mislead the public through advertising. The advertisements offer no indication that the sponsor is not The Department of Motor Vehicles and consumers would likely believe that the advertisements were for an official DMV website. [Depo. Steve Moretti, pp. 268:6-272:7.]

*[Disputed on the grounds that the cited testimony does not support the statement. Online Guru has never intended to mislead the public, as demonstrated by the facts that DMV.ORG has disclaimed any affiliation with any government agency on every page of the website since 2002, includes language clarifying the absence of any affiliation (i.e., "Since government sites can sometimes be confusing to use, we have made this guide for the average user to understand"), and has added further disclaimers since inception of this lawsuit. Raj Lahoti Trial Decl., ¶¶ 24-27, 29-34.]*

77.     Defendants' advertised DMV.ORG on a website called UnitedStates.org which stated: "UnitedStates.org guides you to the Web sites and services provided by the federal government"! [TE 114.] UnitedStates.org, a website owned by Defendant Find My Specialist is misleading. [TT 11/6, pp. 51:22-52:16.] The very first link on Unitedstates.org is a link to DMV.ORG which states, "A comprehensive easy-to-read guide for your Department of Motor Vehicles." [TT 11/6, p.53:12-14). The Court finds that the use of UnitedStates.org to direct consumer traffic to DMV.ORG is deceptive because UnitedStates.org clearly communicates to consumers that it is a resource to federal government websites and in fact DMV.ORG is not a government website. A consumer accessing the DMV.ORG link through the Unitedstates.org website will likely believe that DMV.ORG is affiliated with the government. [TT 11/6, pp. 52:8-9; 53:4-16). The Court finds this conduct to be intentionally designed to deceive consumers.

*[Disputed on the grounds that the UnitedStates.org website is not relevant to this case. Further, no evidence supports the finding that UnitedStates.org is misleading, nor is there any evidence that the use of UnitedStates.org to direct consumer traffic to DMV.ORG is deceptive and/or intentionally designed to deceive consumers.]*

**H.     Evidence of Actual and Likelihood of Confusion and Intent to Deceive  (¶¶78-94)**

78.    The DMV.ORG domain name in the context of the DMV.ORG website has misled and confused the public as to the website's ownership and/or affiliation with an official DMV agency. [TD Shannon Robertson, ¶¶5-6; TD Lisa Warren, ¶8; TE 4; 102; 116; 334; 335; 395; 408. .]

*[Disputed that a handful of examples of alleged confusion are probative in light of the million visits that the website receives on a weekly basis.  Moretti Trial Decl., ¶ 4; TE 674; William H. Morris Co. v. Group W, 66 F.3d 255 (9th Cir. 1995) (3% not significant); and Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20% might be sufficient).  This evidence is insufficient, in context, to meet Plaintiffs' burden of proof.]*

79.    Plaintiffs' consumer survey confirms that the DMV.ORG domain name in the context of the DMV.ORG website is misleading and confusing to the public. [TD Dr. Thomas Maronick, TE 350 (pg. 8, Study 3).]

*[Disputed on the grounds that the Maronick surveys are unreliable because of the numerous survey errors including the failure to use a control, the failure to instruct respondents not to guess, the failure to mimic a visitor's actual experience through the use of improper stimuli and dissection of DMV.ORG into component parts, the use of leading questions, and the combination of key questions on the same page. TE 142 (Simonson Decl., ¶¶ 23, 37-38, 41-51, 53-55, 57); Designated Maronick Depo., 13:4-14:4, 34:5-35:5, 39:5-11, 40:5-23, 44:2-18, 45:17-46:22, 54:7-10, 72:15-73:13, 95:25-96:1, 96:20-97:12, 97:17-21, 100:2-7, 172:4-173:11; TE 144 (Surveys 2-3, questions 6-7 and 8-9).  Hollander's results show that when these errors are corrected, there is no statistically significant confusion.  TEs 172-173. ]*

80.    Public emails to DMV.ORG evidence confusion and at times anger at DMV.ORG by the public. [TE 4; 102; 116; 334; 335; 395; 408.]

*[Disputed on the grounds that (i) emails allegedly showing anger with DMV.ORG do not show confusion and (ii) a handful of examples of alleged confusion are not probative in light of the million visits that the website receives on a weekly basis. Moretti Trial Decl., ¶ 4; TE 674; William H. Morris Co. v. Group W, 66 F.3d 255 (9th Cir. 1995) (3% not significant); and Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20% might be sufficient). If these few instances suffice to establish actionable false advertising claims, then entities such as Bank of America and US Bank could be liable for similar "false advertising" as well.]*

81. Some examples are as follows:

    a. "DV Driver" (DEF-01568) said "Suggestion: clearly state you are not the DMV.or Gov't agency." [TE 334.]

    b. "Roger" (DEF-01651) said "It is disconcerting that your site shows up in Google ahead of the real State of Idaho Web site when seeking information. I am concerned this is a problem and a farce." [TE 334.]

    c. "Leigh, on behalf of George" (DEF-01577) said, ".I was told by Central Court for Lexington County in South Carolina that if we contacted the Arkansas DMV that ya'll would be able to tell us what court this was in and where to pay the ticket". [TE 334.]

    d. "Aubrey" (DEF-01588) wrote "Thanks for the quick follow-up from Mrs. (redacted). We did receive a letter from the DMV about a two to three day insurance lapse but according to Mrs. (redacted) in your office I don't owe anything". [TE 334.]

    e. "Sharon Silva" (DEF-10595) said "To the public it looked like you are the real thing". [TE 334.]

*[Disputed that a handful of examples are probative in light of the million visits that the website receives on a weekly basis. Moretti Trial Decl., ¶ 4; TE 674; William H.*

1  *Morris Co. v. Group W*, 66 F.3d 255 (9th Cir. 1995) (3% not significant); and
2  *Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer*
3  *Pharmaceuticals*, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20%
4  *might be sufficient). Moreover, some of these examples are irrelevant, as three out*
5  *of the five are clearly not confused as to the nature of DMV.ORG. See Marshall*
6  *Field & Co. v. Mrs. Field's Cookies, 25 U.S.P.Q.2d 1321, 1334 (TTAB 1992)*
7  *(inquiries from persons obviously aware of the absence of affiliation not evidence of*
8  *actual confusion).]*

9      82.    Examples of state government employees that sent emails to DMV.ORG
10 evidencing confusion also exist, one in which someone from the Washington
11 Department of Transportation is telling DMV.ORG that "Google ads by DMV.org
12 [are] illegal" and stating: "This poses a significant public safety issue since taxpayers
13 could be led to believe they are getting accurate information from a government
14 source which could be especially harmful in the event of an emergency. " [TE 4
15 (DEF-00344); Depo. Steve Moretti, pp. 193:17 to 199:19]
16 *[Disputed on the grounds that the cited email does not evidence confusion, includes*
17 *improper opinion testimony, and constitutes hearsay to the extent that it is offered to*
18 *prove the statements therein (i.e., DMV.ORG poses a public safety issue). Further,*
19 *no state has taken legal action against Defendants, no state has joined Plaintiffs*
20 *lawsuit (despite Plaintiffs' letters to the states encouraging participation), the State*
21 *of Georgia found nothing confusing on DMV.ORG, and the State of Pennsylvania*
22 *has entered a linking agreement with DMV.ORG. 11/7 TT 88:25-89:6; Designated*
23 *Creditor Depo., 287:3-288:6; Moretti Trial Decl., ¶ 27; TEs 58, 659.]*

24     83.    The Court finds that because Defendants offer government related
25 information on DMV.ORG, including information related to the DMV, there is a
26 danger to the public in believing that the information being provided emanates from
27 the government. [11/7 TT, p. 208:20-25.] Defendants' Director of Customer Service,
28 Gerald Flack, expressed his concern to the Defendants about the daily confusion.

[Depo. Flack, pp. 54:9-55:14).  Mr. Flack recognized that there was a significant problem stemming from the state of confused customers, namely, that these customers provided sensitive financial information and the like to DMV.ORG through its email system. [Depo. Flack, pp. 58:8-60:20.]  Mr. Flack suggested to Mr. Moretti that Defendants consider forcing consumers to acknowledge that they were not contacting the government so as to prevent the transmittal of sensitive information. [Id.]  Defendants have not instituted any of the suggestions by Mr. Flack and the Court finds that their failure to do so is a further indication of their desire to continue to confuse people .  The Court finds that there has been no credible evidence presented to suggest that there has been any reduction in confusion since Defendants made changes to its website and search engine advertising after the commencement of this lawsuit. [Depo. Flack, pp. 61:9-63:11.]

*[Disputed on the grounds that (i) there is no evidence that DMV.ORG poses a danger to the public health or safety; (ii) Mr. Flack did not testify that there was a "significant problem" with regard to receipt by DMV.ORG of sensitive personal information; (iii) the few instances of daily confusion acknowledged by Flack are insignificant in light of the million visits to DMV.ORG per week; and (iv) Defendants had no intent to mislead consumers, as demonstrated by the facts the website has had disclaimers since 2002, has included other clarifying language, and the voluntary addition of further disclaimers since inception of the lawsuit.  TEs 666, 674, 676; 11/7 TT 170:23-171:15.; Moretti Trial Decl., ¶ 4; Raj Lahoti Trial Decl., ¶¶ 24-27, 29-34.]*

84.  Public emails as late as August, 2007, *after* DMV.ORG made its change to the license plate logo evidence that confusion persists. [TE 388; 395.]

*[Disputed to the extent that the statement implies that the cited emails represent any significant portion of the visitors to DMV.ORG.  Moretti Trial Decl., ¶ 4, TE 674. Moreover, Plaintiffs' witness, Lisa Warren, testified that the amended version of the DMV.ORG license plate logo, which had previously contributed to her confusion, is*

*not confusing. 11/7 TT 136:24-137:30; Warren Trial Decl., ¶ 8.]*

85. Numerous other third parties (including third party websites and journalists) have mistaken DMV.ORG for an official state agency website from at least as early as 2006. [TD Shannon Robertson; TD Lisa Warren; Depo. Steve Moretti, pp. 196:22-197; 233:3 to 236:25; TE 10, 16, 128-130, 341, 404-407.] *[Disputed to the extent that (i) the referenced "third parties" are not consumers seeking traffic school or drivers education related services and therefore are irrelevant; and (ii) the statement implies that the cited alleged confusion represents any significant portion of the references to DMV.ORG. DMV.ORG is referenced by approximately 70,000 websites/internet articles. Moretti Trial Decl., ¶ 4, TE 674; 11/6 TT 114:3-12. Plaintiffs have failed to show anything approaching the 20% confusion that courts have suggested is required. Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, 19 F.3d 125 (3rd Cir. 1994) (7.5% not significant, noting that 20% might be sufficient).]*

86. As recently as the end of October, 2007, journalists have continued to confuse DMV.ORG with the Department of Motor Vehicles website. [TE 410-411.] *[Disputed to the extent that (i) the referenced journalists are not consumers seeking traffic school or drivers education related services and therefore are irrelevant; and (ii) the statement implies that the cited articles represent any significant portion of references to DMV.ORG. There are approximately 70,000 websites or internet articles that link to DMV.ORG. 11/6 TT 114:3-12.]*

87. Defendants have no way to track how many visitors to DMV.ORG believe they are dealing with a DMV office or website. [Depo. Steve Moretti, pp. 163:15 to 174:5 (i.e., 168:9 to 169:4; 172:7-13; 173:19 to 174:5).] No evidence was presented at trial to suggest that the rate of confusion of those consumers who visit the DMV.ORG website and do not send emails to DMV.ORG, is any less than those that visit the website and do send emails. In fact, the Court finds that the opposite is likely true, namely, that confusion of those visiting DMV.ORG is rampant. The

1 Court rejects the Defendants' hypothesis that only a small percentage of visitors to
2 DMV.ORG are confused. [TT 11/7, pp. 165:13-166:7; TD Shannon Robertson, ¶7
3 (was confused but did not email DMV.ORG).]

*[Disputed on the grounds that (i) this and other findings invert the burden of proof which rests on Plaintiffs; and (ii) the proposed finding is not supported by any evidence suggesting confusion among visitors to DMV.ORG is rampant, and, assuming the email population is representative of the entire site (which is supported by common sense), then the rate of confusion (less then 1/10 of a percent) is insignificant.  Furthermore, the Hollander surveys show that consumers are not confused by DMV.ORG.  TE 172-173.]*

88.     Defendants presented no persuasive evidence at trial that any of the changes Defendants made post-lawsuit either to its sponsored advertising or to DMV.ORG has been in any way effective in eliminating or reducing consumer confusion.  Moreover, the Court finds that the Defendants' changes were in fact designed to provide the appearance that they were trying to make changes to reduce or eliminate confusion but in fact, their intention was to make changes which would not materially impact the flow of consumers to their website interested in purchasing drivers education and traffic school courses.  The Defendants' explanations for why more robust changes were not made were unpersuasive. [TT 11/7, pp. 162:10-164:9; p. 165:2-6; pp. 164:13-166:7; pp. 155:2-158:25); TD Lisa Warren, ¶8 (confused in July of 2007, after changes were made).]

*[Disputed on the grounds that Plaintiffs, who must carry the burden of proof, have offered no evidence of any <u>significant</u> level of confusion on DMV.ORG, nor is there any evidence that Defendants intend to mislead consumers, rather it is to the contrary.  Further, Plaintiffs' witness, Lisa Warren, testified that the amended version of the DMV.ORG license plate logo, prominently appearing in the upper left corner of each page of the website, is not confusing.  11/7 TT 136:24-137:20.   Raj Lahoti Trial Decl., ¶¶ 24-27, 29-34. ]*

89. Defendants have admitted that confusion about DMV.ORG takes place daily; that "disclaimers" simply do not work; and that even after Online Guru made changes on its website in response to the allegations made in this lawsuit, Defendants continued to be informed that on a daily basis consumers were confused. [TT 11/6, pp. 53:14- 57:8; 88:22-89:6; p. 99:10; TT 11/7, pp. 162:6-163:8; Depo. Flack., pp. 61:9 to 63:11; 54:9 to 58:2 (i.e., 57-58:1); Depo. Steve Moretti, pp. 201:19 to 202:23.; Depo. Flack., pp. 54:9 to 58:2 (i.e., 57-58:1);61:9 to 63:11; Depo. Steve Moretti, pp. 163:15 to 174:5 (i.e., 164:15 to 165:13).]

*[Disputed on the grounds that (i) the statement mischaracterizes the testimony; (ii) the "daily" confusion cited is insignificant in that it occurs only a few times per day whereas the site receives a million visits per week; and (iii) the testimony relating to the ineffectiveness of disclaimers is only as to consumers who are careless (not the vast majority) in that they fail to read any information on the site. Moretti Trial Decl., ¶ 4; TE 674; Flack Depo., 57:12-58:1.]*

90. Defendants have known about the consumer confusion at issue in this case since at least 2004. Mr. Raj Lahoti received a series of correspondence from the CA DMV complaining about the use of the domain name DMV.ORG and other deceptive practices. [TEs 136, 342-345, 362).] As part of its response to the CA DMV, Online Guru promised that it would eliminate concurrent reference to California and DMV on the DMV.ORG website [TE 385 and TT 11/6 , pp. 82:8-83:20.] Despite this representation, DMV.ORG subsequently utilized California in close proximity with DMV on its website and in sponsored advertising. [e.g., TE 318.]

*[Disputed on the grounds that the volume of the alleged confusion generated by DMV.ORG was de minimus in light of the high traffic on the website, that the state of California has seen no need to take any action beyond the three letters it wrote in 2004 as evidenced by the fact they have not joined Plaintiffs' case, and that Plaintiffs admitted that the website was not actionable until late 2006. Moretti Trial Decl., ¶*

*4; TE 674, 11/7 TT 88:25-89:6; Defendants' RJN Nos. 1-2.  As to Online Guru's letter in response to California regarding concurrent reference to California and DMV on DMV.ORG, Online Guru specifically reserved its rights in this regard, no agreement was in fact ever reached, and the matter was essentially closed, with no further contemporaneous communication from the state.  TE 385; 11/6 TT 82:8-83:12.]*

91.  The State of California Department of Motor Vehicles repeatedly objected to Defendants' use of the DMV term. [Depo. Moretti, pp. 242:19 to 248:10; TE 11;136; 342-345; TE 362 (CA DMV Opposition to DMV.ORG trademark, 2007)].
*[Disputed on the grounds that Online Guru received three letters from the State of California in 2004 and then nothing further until California objected to DMV.ORG'S trademark application in 2007 (after Plaintiffs sent letters to the states about their lawsuit against DMV.ORG and informing the states of the deadline to oppose DMV.ORG's trademark registration).  Designated Creditor Depo., 289:18-291:23; TE 57, 60; 11/7 TT 88:25-89:6.  Moreover, the State of California acknowledged that the term DMV and phrase Department of Motor Vehicles are generic, as demonstrated by the fact that these terms are disclaimed in the state's federal trademark application. Defendants' RJN No. 8-9.]*

92.  Although Defendants knew that consumers were confused as to the source and affiliation of DMV.ORG from even before this lawsuit was filed, Defendants failed to take measures designed to alleviate confusion in their search engine sponsored advertisements as it relates to traffic school and drivers education. [TE 322, 323, 328, 329, 330, 367, 372, 379, 380;  TT 11/6, p. 53:14- 57:14.]
*[Disputed on the grounds that (i) the finding improperly dissects DMV.ORG by focusing on search engine listings rather than considering the website in its entirety (FTC v. Sterling Drug, Inc., 317 F.2d 669, 674 (2d Cir. 1963) (view the "entire mosaic" not "each tile separately")); (ii) the volume of the alleged confusion*

1  *generated by DMV.ORG was de minimus in light of the high traffic on the website*
2  *and (iii) Plaintiffs admitted that the website was not actionable until late 2006.*
3  *Moretti Trial Decl., ¶ 4; TE 674; Defendants' RJN Nos. 1-2. Moreover, any alleged*
4  *confusion at the search engine result stage is immaterial, as the purchasing decision*
5  *is not made at that stage (nor is it even made on DMV.ORG) and consumers are*
6  *likely to hunt around on a variety of websites before making a purchasing decision.*
7  *Maronick Designated Depo., 217:13-17.]*

8  93.  In his trial declaration, Raj Lahoti, at ¶16, in comparing a sponsored listing with an organic listing (referencing TE 671) testified that the sponsored listing, the text of which Online Guru controls, included more explicit disclosures of the unofficial nature of the DMV.ORG site than did the organic listing.  Upon cross-examination, Mr. Lahoti admitted that in fact his declaration was not true and that rather it was his opinion that the organic listing provided more explicit disclosures of the unofficial nature of the DMV.ORG site than did sponsored listing. [11/7 TT, pp. 148:11-150:7.]

16  *[Disputed on the grounds that Mr. Lahoti's testimony does not admit that his*
17  *declaration was untrue.  Additionally, similar Yahoo! search results for the term*
18  *"dmv" show a sponsored listing for DMV.ORG including explicit disclosure of the*
19  *unofficial nature of the website that are not included in the organic results.  11/7 TT*
20  *148:11-150:10; TE 670.]*

21  94.  The Court finds that the Defendants have shown a complete disregard for the problem of confusion that they have caused.  While Defendants have acknowledged there is confusion, Mr. Lahoti testified that he does not view the confusion as a problem. [11/7 TT, p. 165:2-6.]

25  *[Disputed on the grounds that a  handful of consumers allegedly confused by*
26  *DMV.ORG is insignificant in light of the million visits that the website receives on a*
27  *weekly basis.  Moretti Trial Decl., ¶ 4; TE 674.  DMV.ORG has always carried*
28  *disclaimers on every page of the website and has voluntarily added further*