1  advertising about Defendants' own services in that DMV.ORG is (a) literally false

2  (on its face or by necessary implication in the context of the traffic school and drivers

3  education industry) OR (b) likely to mislead and confuse consumers. Southland Sod

4  Farms v. Stover Seed Co. ,108 F.3d 1134, *1139 (9th Cir. 1997).

5  *[Disputed on grounds that: (i) by referring generally to "Defendants' " "domain*

6  *name, website, and related marketing" Plaintiffs illustrate their own fundamental*

7  *failure to identify the advertisement or even defendant at issue in this case, making*

8  *any regular false advertising analysis difficult; (ii) Plaintiffs then mix into one*

9  *finding two distinct tests for false advertising: advertising that is literally false and*

10  *advertising likely to mislead; (iii) there is no case for literal falsity here where there*

11  *is no express claim of affiliation and mere use of a generic abbreviation;*

12  *(iv) Plaintiffs failed to prove that the advertisement is likely to mislead a significant*

13  *number of reasonably prudent consumers.]*

14  3.   The advertisements in this case are sufficiently clear and unambiguous

15  that the message being conveyed (i.e., that DMV.ORG is owned or affiliated with an

16  official DMV) is obvious, and the Court thus not need base its decision on evidence

17  of consumer reaction at all. Better Business Bureau Inc. v. Medical Directors Inc.,

18  681 F.2d 397 (5th Cir. 1982)(affirming the lower court's enjoining of ads that

19  misleadingly implied that a weight reduction program was approved by the Better

20  Business Bureau).

21  *[Disputed on grounds that: (i) by this finding, Plaintiffs ask this Court to unmoor its*

22  *decision from any analysis of the likelihood that an advertisement will mislead and*

23  *instead summarily conclude that the use of the generic abbreviation DMV is false*

24  *advertising; in this context, it is worth noting that the Better Business Bureau case*

25  *was on appeal of a preliminary injunction, where full evidence was not available and*

26  *where a non-generic mark was at issue; and (ii) the Better Business Bureau case*

27  *which Plaintiffs rely on in fact illustrates Defendants' contentions that this is a false*

28  *association case, not a false advertising case, and that the owner of a mark should*

1 be the one to sue (i.e., in that case BBB had clear false association standing).  See
2 Better Business Bureau, Inc. v. Medical Directors, Inc., 681 F.2d 397 (5th Cir. 1982)
3 (BBB has plain standing to pursue false association case); compare Merck & Co.,
4 Inc. v. Mediplan Health Consulting, Inc., 425 F.Supp.2d 402, 417 (S.D.N.Y. 2006)
5 ("false advertising claims based on allegations of implied government approval have
6 not been allowed").]

7     4.   A website's domain name, such as DMV.ORG, signifies its source of
8 origin and is, therefore, an important signal to Internet users who are seeking to
9 locate web resources.  See, e.g., PACCAR Inc. v. Telescan Tech. LLC, 319 F.3d 243,
10 250 (6th Cir.2003) [citing cases, including: People for the Ethical Treatment of
11 Animals v. Doughnev, 263 F.3d 359, 366 (4th Cir.2001) ("The domain name
12 peta.org simply copies PETA's Mark,conveying the message that it is related to
13 PETA."); Brookfield 174 F.3d at 1055, 1066 ("The domain name is more than a mere
14 address: like trademarks, second-level domain names communicate information as to
15 source.. ."); Panavision, 141 F.3d 1316, 1327("We reject [the] premise that a domain
16 name is nothing more than an address.  A significant purpose of a domain name is to
17 identify the entity that owns the web site.")].
18 [Irrelevant because the finding itself again demonstrates that this is a
19 trademark-type "origin" case, not a false advertising case about the mere "nature,
20 qualities, characteristics, or geographic origin."  Plaintiffs lack standing to pursue
21 false association under (a)(1)(A) because they have no interest in the mark.
22 Compare e.g. People for the Ethical Treatment of Animals v. Dougherty, 263 F.3d
23 359, 366 (4th Cir. 2001) (PETA has plain standing to sue for alleged improper use
24 of PETA in domain).]

25     5.   Defendants have acted, at the least, with indifference as to the truth of
26 their advertising; thus it is presumed (without reliance on actual deception or
27 tendency to deceive) that Defendants  accomplished the intended purpose to deceive.
28 U-Haul Intern., Inc. v. Jartran, Inc. , 522 F.Supp. 1238, 1254 (D.C.Ariz., 1981), aff'd,

1  681 F.2d 1159 (9th Cir. 1982)("although [the defendant] may not have set out

2  deliberately to develop a misleading advertising campaign . . ., the strategy it adopted

3  as the basis for its campaign created a substantial risk of misleading the public, a risk

4  that was called to [the defendant's] attention on several occasions. Nonetheless, [the

5  defendant] did nothing to insure that the misleading potential of its strategy did not

6  materialize"); U-Haul International Inc. v. Jartran Inc., 793 F.2d 1034, 1041 (9th

7  1986) ("The expenditure by a competitor of substantial funds in an effort to deceive

8  consumers and influence their purchasing decisions justifies the existence of a

9  presumption that consumers are, in fact, being deceived. He who has attempted to

10  deceive should not complain when required to bear the burden of rebutting a

11  presumption that he succeeded."); Oil Heat Institute of Oregon v. Northwest Natural

12  Gas , 708 F.Supp. 1118, 1126 (D.Or.,1988)(on the plaintiff's motion for summary

13  judgment, a trier of fact could find that defendant intended to create a false

14  impression on basis of evidence that defendant knew that its statement was not true

15  with respect to all recipients, but made no attempts to clarify it).

16  *[Disputed on grounds that: (i) Plaintiffs again ask this Court to short-circuit the*

17  *false advertising analysis, this time based upon a specious allegation of intentional*

18  *misconduct; (ii) the evidence in this case showed that from day one DMV.ORG has*

19  *had disclaimers and clarifying language on every page of its website, without any*

20  *affirmative misrepresentation; by looking at the behavior of others in the industry,*

21  *including Plaintiffs themselves (who make no disclaimers), DMV.ORG's conduct*

22  *cannot fairly be construed as intentionally misleading.  Contrast U-Haul v. Jartran,*

23  *Inc., 522 F.Supp. 1238, 1254 (D.Az. 1981) (defendant "did nothing" to mitigate*

24  *confusion); and Oil Heat Institute of Oregon v. Northwest Natural Gas, 708 F.Supp.*

25  *1118, 1126 (D.Or. 1988) (on summary judgment, merely noting that fact that*

26  *defendant made "no attempts to clarify" could weigh against defendant).]*

27      6.    DMV.ORG actually deceived or has the tendency to deceive a

28  substantial segment of its audience. Southland Sod Farms v. Stover Seed Co. ,108

F.3d 1134, *1139 (9th Cir. 1997); <u>U-Haul Intern., Inc. v. Jartran, Inc.</u>, 601 F.Supp. 1140, 1149 (D.C.Ariz. 1984), aff'd in art, rev'd in part on other grds, mod. in part on other grds., 793 F.2d 1034 (9th Cir. 1986)("Consumer reliance . . . can be shown by direct evidence such as testimony from individual members of buying public, or by circumstantial evidence, such as surveys of buying public."); <u>Cuisinarts, Inc. v. Robot-Coupe International Corp.</u>, 509 F.Supp. 1036 (S.D.N.Y. 1981)(if tendency to deceive is obvious, court may so determine without reference to recipients' reactions); <u>Better Business Bureau Inc. v. Medical Directors, Inc.</u>, 681 F.2d 397 (5th Cir. 1982)(direct evidence of specific persons who were the target of Defendants' misrepresentations and who were deceived may be sufficient to establish deception and may even be the best means of establishing it, rather than survey evidence).

*[Disputed on grounds that: (i) Plaintiffs refuse to acknowledge that confusion must be by consumers who are "reasonably prudent;" <u>see</u> <u>Cairns v. Franklin Mint Co.</u>, 24 F.Supp. 2d 1013 (C.D.Cal. 1998) ("reasonable consumer" vantage point required); (ii) there is no proof of actual deception of a "substantial segment;" confusion evidence is anecdotal and statistically insignificant across one million visitors per week (e.g., one driver's ed student); <u>compare</u> <u>Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals</u>, 19 F.3d 125 (3rd Cir. 1994) (7.5% found not substantial) and McCarthy on Trademarks, section 32:193 (4th ed.) (reliable survey evidence required in false advertising cases); (iii) the Maronick survey is not reliable because of its numerous flaws.]*

     7.   The Court finds that Dr. Maronick's surveys addressed to consumer perception are probative on the ultimate question of whether consumers were and are likely to be materially deceived by the DMV.ORG website and search engine links <u>Southland Sod Farms v. Stover Seed Co.</u>, 108 F.3d 1134, 1142 -1143 (9th Cir. 1997); <u>McNeilab Inc. v. American Home Products Corp.</u>, 501 F.Supp. 517 (S.D.N.Y. 1980)(qualitative rather than quantitative determination is enough to support conclusion that advertisement tends to mislead).

1  *[Disputed on the grounds that the Maronick surveys are unreliable because of the*

2  *numerous survey errors including the failure to use a control, the failure to instruct*

3  *respondents not to guess, the failure to mimic a visitor's actual experience through*

4  *the use of improper stimuli and dissection of DMV.ORG into component parts, the*

5  *use of leading questions, and the combination of key questions on the same page.*

6  *Simon Prop. Group L.P. v. mySimon, Inc., 104 F.Supp.2d 1033 (S.D. Ind. 2000)*

7  *(survey excluded; survey "must consist of non-leading questions"); NFL Props., Inc.*

8  *v. Prostyle, Inc., 57 F. Supp. 2d 665, 668-69 (D. Wis. 1999) (excluding survey*

9  *evidence for failure to include a control); Nat'l Distillers Prods. Co. v. Refreshment*

10 *Brands, Inc., 198 F.Supp. 2d 474, 484 (S.D.N.Y. 2002) (no weight where survey did*

11 *"not sufficiently replicate marketplace conditions"); and Major League Baseball*

12 *Properties, Inc. v. Sed Non Olet Denarius, Ltd., 817 F. Supp. 1103, 1123-24*

13 *(S.D.N.Y. 1993) (holding survey data "meaningless and having no evidentiary value"*

14 *due to leading questions and failure to use controls).]*

15       8.   The deception related to DMV.ORG is material, in that it is likely to

16 influence the purchasing decision [i.e., to purchase traffic school and drivers ed

17 services referred from DMV.ORG]. Southland Sod Farms v. Stover Seed Co. ,108

18 F.3d 1134, *1139 (9th Cir. 1997); In re Cliffdale Ass'n, Inc., 3 Trade Reg Rptr

19 (CCH) ¶22,137 (FTC Ckt 9156 1984) (it is presumed that misleading testimonials or

20 endorsements would have a tendency to mislead consumers into making buying

21 decisions that otherwise might not be made).

22 *[Disputed on the grounds that: (i) Plaintiffs again seek a presumption, this time of*

23 *materiality, that is entirely unwarranted; (ii) Plaintiffs failed to carry their burden to*

24 *establish materiality; instead, the facts show that the alleged perceived affiliation is*

25 *not material; rather, of critical importance is simply whether the course will satisfy*

26 *the government requirement - no evidence suggests that endorsement by a state*

27 *agency of one acceptable course over another would be material (Maronick*

28 *conceded he did not even test this thesis); of significant additional importance are*

1  *price and convenience; Plaintiffs themselves believed, contrary to the materiality*
2  *thesis, that DMV.ORG's traffic was "unqualified" (i.e., unlikely to produce a sale);*
3  *and, conversion data shows that DMV.ORG's traffic converts to purchasers at a*
4  *lower rate than Plaintiffs' own traffic (both before and after changes to the website),*
5  *undermining the materiality thesis.  Cf. Pizza Hut, Inc. v. Papa John's Intern., Inc.,*
6  *227 F.3d 489, 504 (5th Cir. 2000) (plaintiff failed to prove that misleading slogan*
7  *"Better Ingredients, Better Pizza" was material to the purchasing decision).]*

8      9.  In this case, it is obvious that the misrepresentations concern a quality or
9  characteristic of a service (DMV approved/affiliated) which would influence the
10 decision of a purchaser of traffic school or drivers education courses. See, e.g., Oil
11 Heat Institute of Oregon v. Northwest Natural Gas, 708 F.Supp. 1118, 1123
12 (D.Or.,1988)("A factfinder could reasonably conclude that information regarding the
13 amount of maintenance required for natural gas equipment is likely to influence the
14 purchasing decisions of consumers.").

15 *[Disputed on the grounds that: (i) Plaintiffs mis-define this case when they assert*
16 *that the alleged affiliation goes to a "quality" or "characteristic" of the service - the*
17 *alleged wrong is one of source or endorsement (1125(a)(1)(A)), not a*
18 *quality/characteristic of the services (1125(a)(1)(B)); Plaintiffs at this stage of the*
19 *case bear the burden of proof and are no longer entitled to the lenient 12(b)(6)*
20 *pleading standards; and (ii) Plaintiffs then urge this Court to assume materiality,*
21 *relying upon a case in which a district court merely denied defendants' motion for*
22 *summary judgment on grounds that one of the accused advertisements could be*
23 *construed as material (not finding that it was in fact actually false).  See Oil Heat*
24 *Institute, 708 F.Supp. at 1123.]*

25     10.  Plaintiffs are required only to show that the misrepresentations made by
26 Defendants are "likely" to influence purchasers; not that a purchasing decision
27 turned solely on the Misrepresentations. See, e.g., Williams Electronics Inc. v Bally
28 Manufacturing Corp., 568 F.Supp 1274 (N.D. Ill. 1983) (evidence that misleading

1 promotional material was distributed only to members of trade who were

2 sophisticated and who did not make purchasing decisions solely on basis of

3 promotional material would not preclude finding that such persons relied on

4 promotional material to some extent and could be influenced by it).

5 *[Disputed on the grounds that Ninth Circuit precedent requires the allegedly*

6 *misleading material to be material to the purchasing decision.  Southland Sod Farms*

7 *v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997).  Accord ALPO Petfoods v.*

8 *Ralston Purina Co., 913 F.2d 958, 964 (D.C. Cir. 1990) (false or misleading*

9 *advertisements must be "material in their effects on buying decisions"); Taquino v.*

10 *Teledyne Monarch Rubber, 893 F.2d 1488, 1500 (5th Cir. 1990) (deception must be*

11 *"material, in that it is likely to influence the purchasing decision"); American Tel. &*

12 *Tel. Co. v. Winback & Conserve Program, 42 F.3d 1421, n.9 (3d Cir. 1994) (plaintiff*

13 *alleging false advertising must prove that "the deception is material in that it is*

14 *likely to influence purchasing decisions").*

15        11.   Defendants caused their false statements to enter interstate commerce.

16 Southland Sod Farms v. Stover Seed Co. ,108 F.3d 1134, *1139 (9th Cir. 1997);

17 Intermatic Inc. v. Toeppen, 947 F.Supp. 1227, 1239-40 (N.D. Ill. 1996)(finding

18 internet communications to meet the "in commerce" requirement).

19 *[Disputed only as to whether there were false statements.]*

20        12.   Plaintiffs have been or are likely to be injured as a result of the false

21 statements by direct diversion of sales from themselves to Defendants. Southland

22 Sod Farms v. Stover Seed Co. ,108 F.3d 1134, *1139 (9th Cir. 1997); Oil Heat

23 Institute of Oregon v. Northwest Natural Gas, 708 F.Supp. 1118, 1123 -1124

24 (D.Or.,1988)(the court found sufficient that the plaintiff had produced evidence from

25 which it could be found that the parties were competitors and that sales by the

26 defendant would necessarily represent a loss of business to the plaintiff);Mortellito v.

27 Nina of California Inc., 335 F.Supp 1288 (S.D.N.Y 1972) (plaintiff and defendant

28 were indirect competitors where their products were similar).

1   *[Disputed on the grounds that Plaintiffs have offered no evidence correlating any*

2   *alleged injuries with the DMV.ORG website. Plaintiffs and Defendants are not in*

3   *the same business. Plaintiffs' subjective belief of injury is insufficient. Century 21*

4   *Real Estate Corp. v. Re/Max South County, 882 F.Supp. 915, 924-25 (C.D. Cal.*

5   *1994) (plaintiff's false advertising claim failed since it could not prove "a logical*

6   *causal connection between the alleged false advertising and its own sales position";*

7   *plaintiff's "mere subjective believe that he will be injured" deemed insufficient);*

8   *Bateman v. Por-ta Target, Inc., 2004 U.S. Dist. Lexis 28487, *65 (C.D. Cal. 2004)*

9   *(summary judgment granted as to false advertising counterclaim for failure to show*

10   *specific harm or causal connection to alleged false advertising).]*

11       13.   Plaintiffs have standing in that both Plaintiffs and Defendants are using

12   the same type of search engine marketing to attract the same consumers (i.e., those

13   interested in traffic school and drivers education courses) to their respective websites

14   which allow consumers, *inter alia*, to then purchase, either directly or from a third

15   party affiliate, a traffic school or driving school course. Plaintiffs and Defendants

16   both realize business revenue from the sale of traffic school and drivers education

17   courses in this way, and in some instances uses the same third party affiliate to

18   provide the service. This is sufficient to confer competitor standing as both parties

19   "vie for the same dollars from the same consumer group" and Plaintiffs are thus

20   likely to be injured. 15 U.S.C. § 1125(a)(1)(providing that one who false advertises

21   "shall be liable in a civil action by any person who believes he or she is or is likely to

22   be damaged. . ."; Jack Russell Terrier Network of N. California v. Am. Kennel Club,

23   407 F.3d 1027, 1037 (9th Cir. 2005); Nat'l Servs. Group v. Painting & Decorators

24   Contractors of Am., No. SACV06-563CJC(ANX), 2006 WL 2035465, at *3-*4

25   (C.D. Cal. July 18, 2006); Kournikova v. Gen. Media Commc'ns, 278 F. Supp. 2d

26   1111, 1117-18 (C.D. Cal. 2003); Coastal Abstract Serv., Inc. v. First Am. Title Ins.

27   Co., 173 F.3d 725, 734 (9th Cir. 1999); W. States Wholesale, Inc. v. Synthetic Indus.,

28   Inc., 206 F.R.D. 271, 276 (C.D. Cal. 2002); Summit Tech., Inc. v. High-Line Med.

1  Instruments, Co., 933 F.Supp. 918, 939 (C.D. Cal. 1996).

2  *[Disputed on the grounds that a broad theory of standing based upon mere common*

3  *purchase of keywords is inconsistent with 9th Circuit law and demonstrates the*

4  *desperate state of Plaintiffs' standing.  Fuller Bros., Inc. v. Int'l Mktg., Inc., 870*

5  *F.Supp. 299, 303 (D.Or. 1994) (competitors are "persons endeavoring to do the*

6  *same thing and each offering to perform the act, furnish the merchandise, or render*

7  *the service cheaper than his rival").  If the Court were to adopt plaintiffs' standing*

8  *argument, "any two parties with some economic nexus, or whose conduct has some*

9  *economic effect upon the other, could be construed as 'competitors' and there would*

10  *be no need for distinction in the standing requirements between a false advertising*

11  *claim . . . and a false association claim," contrary to Ninth Circuit precedent.  Sugai*

12  *Products, Inc. v. Kona Kai Farms, Inc., 1997 WL 824022, *11 (D.Hawaii 1997)*

13  *(quoting Summit Technologies v. High-Line Medical Instruments, Co., 933 F.Supp.*

14  *918 (C.D. Cal. 1996)).]*

15       14.  Each named Defendant is in some significant respect responsible for

16  DMV.ORG and connecting domains, websites, and marketing and are thus jointly

17  and severally liable under the theories of direct (as owners and officers) and joint

18  liability. See, J. Thomas McCarthy, MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋs ᴀɴᴅ Uɴꜰᴀɪʀ

19  Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ, § 25:23 [4th Edition 2006] stating, the "use of the word 'conspiracy'"

20  is merely another way of describing a concert of action and intent which will extend

21  tort liability beyond the active wrongdoer to those who merely planned, assisted or

22  encouraged his acts, and citing to numerous cases, including Transgo, Inc. v. Ajac

23  Transmission Parts Corp., 768 F.2d 1001 (9th Cir. 1985), cert. denied, 474 U.S. 1059

24  (1986)(corporate officer or director is personally liable for all infringing acts which

25  he authorizes or directs or in which he participates; liability found); Corning Glass

26  Works v. Jeannette Glass Co., 308 F. Supp. 1321 (S.D.N.Y. 1970), aff'd, 432 F.2d

27  784  (2nd Cir. 1970); Hard Rock Café Licensing Corp. v. Concession Services, Inc.,

28  955 F.2d 1143, 1768 (7th Cir. 1992); American Philatelic Soc'y v. Claibourne, 3 Cal.

2d 689, 46 P.2d 135 (1935)(in cases of unfair competition, one who induces another to commit fraud and furnishes the means is equally guilty); <u>Data Digests, Inc. v. Standard & Poor's Corp.,</u> 43 F.R.D. 386 (D.N.Y. 1967). David Berg & Co. v. Gatto International Trading Co., 884 F.2d 306 (7th Cir. 1989)("Because unfair competition and trademark infringement are tortious, the doctrine of joint tortfeasors does apply. … Every person actively partaking in, lending aid to, or ratifying and adopting such acts is liable equally with the party itself performing these acts."); <u>Babbit Electronics, Inc. v. Dynascan Corp.,</u> 38 F.3d 1161, 1184, 33 U.S.P.Q.2d 1001, 1018 (11th Cir. 1994) (found liable were corporate officers who directed, controlled, ratified or participated in, or were the moving force behind, infringing activity. These persons are personally liable "without regard to piercing of the corporate veil.").

*[Disputed on the grounds that Plaintiffs failed to offer any evidence demonstrating an intent to engage in false advertising or plan to assist in false advertising on behalf of each of the named Defendants.  <u>See</u> Defendants' Motion for Judgment on Partial Findings; <u>compare</u> <u>Transgo, Inc. v. Ajac Transmission Parts</u>, 768 F.2d 1001, 1021 (9th Cir. 1985) (president's individual liability affirmed where evidence amply demonstrated "instrumental role" of president in "copying" plaintiffs products and "marketing the imitations as if they were Transgo's products"); and <u>Donsco, Inc. v. Casper Corporation</u>, 587 F.2d 602 (3rd Cir. 1978) (personal liability of owner found where owner delivered plaintiff's certificate of authenticity to designer for copying); and <u>Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1184</u> (11th Cir. 1994) (personal liability found where individuals admitted they were personally involved in purchase and sale of infringing products after receipt of notice by plaintiff that such conduct was in violation of plaintiff's rights).]*

## B.    Legal Conclusions Regarding Various Defenses

15.    Plaintiffs' claim rightly sounds in false adverting.  See e.g., Performance Indus. Inc. v. Koos. Inc., 18 U.S.P.Q.2d 1767, 1770-71 (E.D. Pa. 1990)(a false claim that a product has Environmental Protection Agency approval is

PLAINTIFFS' POST TRIAL [PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW

a violation of § 43(a)); William H. Morris Co. v. Group W. Inc., 66 F.3d 255, 257-58 (9th Cir. 1995)(The Lanham Act reaches not only blatant falsehoods, but also innuendo, indirect intimations and ambiguous suggestions); U-Haul Intern., Inc. v. Jartran, Inc., 681 F.2d 1159, 1161-62 (9th Cir. 1982); Schroeder v. Lotito, 577 F.Supp. 708, 721 (D.C.R.I.,1983); Better Business Bureau Inc. v. Medical Directors Inc., 681 F.2d 397 (5th Cir. 1982)(false implication of agency's approval on the face of advertisement); CPC Intern., Inc. v. Caribe Food Distributors, 731 F.Supp. 660, 670 (D.N.J.,1990)(manufacturer of a corn oil could prevail on its claim under § 43(a) if it could prove that the sentence that appeared on the back of the bottle implying the oil was approved the United States government had a tendency to deceive – the manufacturer was not required to show actual deception); Birthright v. Birthright Inc., 827 F.Supp. 1114, 1138 (D. N.J. 1993)(held that the incorporation in fund-raising letters sent out by organization of another's service mark supported false advertising claim because donors may have chosen not to make contributions if they knew that the donations were going only to the defendant).

*[Disputed on the grounds that Plaintiffs' claim is really a false endorsement claim brought under the guise of a false advertising claim.  See Third Amended Complaint, ¶ 31 ("sanctioned by or affiliated with" the state).  Each of the implied approval cases relied upon by Plaintiffs relate to mere EPA or FDA approval of a product implying safety or efficacy, without any suggestion that the EPA or FDA either endorsed or was affiliated with the manufacturer of the product.  See e.g. Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1255-56 (10th Cir. 1999) (implied claim of EPA approval of efficacy claim actionable).  To the extent that Plaintiffs' claim is one of implied endorsement/affiliation, it fails as a matter of law.  Mylan Labs, Inc. v. Matkari, 7 F.3d 1130 (4th Cir. 1993) (false advertising claims failed to due to lack of express claim of government approval); Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F.Supp. 2d 402, 417 (S.D.N.Y. 2006) ("false advertising claims based on allegations of implied governmental approval have not been allowed, for*

1   *'the law does not impute representations of government approval . . .in the absence*
2   *of explicit claims.'").]*

3       16.   **Simply because the domain name DMV.ORG was available for**
4   **registration does not make such registration legal where the use of the domain name**
5   **in the context of the website and search engine marketing is false and misleading or**
6   **otherwise actionable.** Zipee Corp. v. U.S. Postal Service, 140 F.Supp.2d 1084
7   (D.Or.,2000) (owner of "postal-service.com" had violated the anti-cybersquatting
8   statute by registration of the United States Postal Service's "postal service" mark,
9   even though domain name was open for registration).
10  *[Disputed on grounds that: (i) Online Guru has never suggested that the mere*
11  *availability of the domain is a defense in this case; (ii) the* Zipee *case,* supra, *aptly*
12  *illustrates the absence of standing in the present case; compare the U.S. Post Office*
13  *in that case - with a plain interest in the descriptive mark - and Plaintiffs in the*
14  *present case - with no rights in the term DMV; the analogous situation would be*
15  *where a competitor of a mere advertiser on the Zipee website were given standing to*
16  *sue Zipee for its use of the domain.]*

17      17.   **Simply because many states utilize the DMV acronym does not mean**
18  **that the acronym is "generic" and cannot be used in a misleading manner.**
19  **Trademarks do, as a matter of trademark law, have geographic limitations that are**
20  **dictated by the geographic reach of the trademark's use; moreover, even generic**
21  **trademarks cannot be used as the vehicle for false advertising.** Pennsylvania State
22  University v. University Orthopedics, Ltd., 706 A.2d 863, 868 (Pa.Super.1998)
23  (University was not required to prove exclusive use of term "university" to support
24  its cause of action for unfair competition under the Lanham Act where "consumer
25  confusion or a likelihood of consumer confusion arose from the failure of the
26  defendant to adequately identify itself as the source of the product.").
27  *[Disputed on grounds that again the case relied upon by Plaintiffs demonstrates the*
28  *lack of Plaintiffs standing. In* Pennsylvania State University, *supra, an entity with an*

4851-6320-8706.1                           -63-
PLAINTIFFS' POST TRIAL [PROPOSED] FINDINGS OF FACTS AND CONCLUSIONS OF LAW

1   *interest in the mark "University" filed suit.  In the present case, whether the term*

2   *DMV is generic or descriptive is irrelevant: Plaintiffs have no interest in the term*

3   *DMV.]*

4       18.   Plaintiffs' false advertising claim in this case is not dependent on the

5   actions or inactions of others (including state DMV agencies) related to this suit.

6   Southland Sod Farms v. Stover Seed Co. ,108 F.3d 1134, *1139 (9th Cir. 1997).

7   *[Disputed on the grounds (i) these entities are the ones that would have an interest*

8   *in the matter; and (ii) the inaction of all of the states is probative.  In fact, despite the*

9   *letters Plaintiffs sent encouraging states to join their lawsuit, no state joined and the*

10  *state of Georgia responded that it found nothing misleading on DMV.ORG and*

11  *Pennsylvania entered a linking agreement with DMV.ORG.  11/7 TT 88:25-89:6; TE*

12  *58, 659.]*

13      19.   The alleged disclaimers on DMV.ORG are ineffective and thus cannot

14  support a defense to false advertising. See, e.g., Tambrands Inc. v. Warner-Lambert

15  Co., 673 F.Supp. 1190, 1194 (S.D.N.Y. 1987)("I find that the thrust of defendants'

16  advertisements is false, and that even the qualifying words added to the advertising

17  copy do not sufficiently modify the message to render the advertisements true.");

18  Thompson Medical Co. v. Ciba-Geigy Corp., 643 F.Supp. 1190, 1197 (S.D.N.Y.

19  1986)(disclaimers printed beside bar graph were not sufficient to prevent graph from

20  conveying false message).

21  *[Disputed.  Plaintiffs have offered no proof that the current conspicuous and*

22  *numerous disclaimers are insufficient to provide notice to reasonably prudent*

23  *consumers.  To the contrary, Lisa Warren, one of Plaintiffs' few witnesses, testified*

24  *that the current logo license plate is "not confusing."  11/7 TT 136:24-137:20; see*

25  *e.g. Taubman v. Webfeats, 319 F.3d 770, 777 (6th Cir. 2003) (Defendant's*

26  *disclaimer on its website, www.shopsatwillowbend.com, indicating that it was not*

27  *the official website for Plaintiff's mall, "The Shops at Will Bend,"  negated likelihood*

28  *of consumer confusion.).  If the Court finds these conspicuous and redundant*

1  *disclaimers insufficient, then it will redefine and dramatically expand the court's*

2  *supervisory role over U.S. businesses and invite further litigation.]*

3      20.   The Court finds that Plaintiffs claims are not barred by the equitable

4  doctrines of unclean hands or laches.

5  *[Although in many cases, claims of laches and unclean hands are without merit, this*

6  *case is an exception. Here, Plaintiffs have intentionally and continue to engage in*

7  *conduct which is demonstrably worse than that of which they complain. Moreover,*

8  *they unreasonably delayed this suit, instead choosing to seek to do business with*

9  *DMV.ORG.]*

10     21.   Unclean Hands is not applicable in false advertising cases where the

11  public is being deceived as an injunction is always available. "That is, if the

12  evidence shows that plaintiff is engaging in inequitable practices, but defendant is

13  also guilty of the unfair competition charged, an injunction should be granted

14  notwithstanding the unclean hands maxim. It is better to remedy one wrong than to

15  leave two wrongs at large. If defendant thinks that plaintiff is guilty of inequitable

16  conduct, he should raise it in a counterclaim or in a separate suit against plaintiff."

17  See, J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR

18  COMPETITION, § 31:53, Volume 6 (4th Ed. 2007)(hereafter "MCCARTHY"), citing

19  cases, including, the Ninth Circuit's U-Haul International. Inc. v. Jartran, Inc., 522 F.

20  Supp. 1238 (D. Ariz. 1981), aff'd, 681 F.2d 1159, 216 U.S.P.Q. 1077 (9th Cir. 1982)

21  *(unclean hands is a disfavored defense in false advertising cases)*." Republic

22  Molding Corp. v. B. W. Photo Utilities, 319 F.2d 347 (9th Cir. 1 963)(Unclean

23  hands, then, does not stand as a defense that may be properly considered independent

24  of the merits of the plaintiffs claim...its assertion does not eliminate the need for the

25  court to ascertain the soundness of the plaintiff's claim . . . the relative extent of each

26  party's wrong upon the other and upon the public should be taken into account and

27  an equitable balance struck.").

28  *[Disputed on the grounds that equitable defenses are trumped "only when the suit*

1  *concerns allegations that the product is harmful or otherwise a threat to public*

2  *safety and well being." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829,*

3  *841 (9th Cir. 2002). Further, "[t]he unclean hands doctrine provides a defense to*

4  *false advertising claims under the Lanham Act." Emco v. Obst, 2004 U.S. Dist.*

5  *Lexis 12118, *12-13 (C.D. Cal. 2004); Japan Telecom, Inc. v. Japan Telecom Am.,*

6  *Inc., 287 F.3d 866, 870 (9th Cir. 2002) (expressly recognizing the availability of the*

7  *unclean hands defense to false affiliation claims).]*

8       22.   It is well-settled law that "Plaintiffs position must be judged by the facts

9  existing as they were when suit was begun, not by the facts existing in an earlier

10  time." MCCARTHY § 3 1:55, citing Coca-Cola Co. v. Koke Co. of America, 254

11  U.S. 143 (1920); Q-Tips. Inc. v. Johnson & Johnson, 108 F. Supp. 845 (D.N.J. 1952)

12  (misrepresentations of plaintiff stopped before suit filed); Finchley. Inc. v. Finchly

13  Co., 40 F.2d 736 (D. Md. 1929) (allegedly deceptive advertising discontinued several

14  years before suit filed). "Even if plaintiffs conduct existed at the time of filing suit, if

15  that conduct has been rectified by the time of judgment, unclean hands may be no

16  defense." Fund of Funds. Ltd. v. First American Fund of Funds, 274 F. Supp. 517

17  (S.D.N.Y. 1967).

18  *[Plaintiffs have not ceased the conduct which constitutes unclean hands, for*

19  *instance: (i) they continue to use state indicia on their DrivingLinks.com and*

20  *FloridaTrafficSchool.com websites; and (ii) they continue to own DMV domain*

21  *names (dmvapprovedtrafficschool.com, internet-dmv.org, online-dmv.org, etc.).]*

22       23.   In order for unclean hands to be used as a defense the conduct alleged to

23  be wrongful by the defendant must be relevant to Plaintiff's claim. "For example, an

24  alleged infringer of plaintiffs protectable restaurant trade dress argued that plaintiff

25  was guilty of unclean hands in falsely advertising its hamburger meat as "ground

26  steak." The court held that even assuming that the ad was false, the misstatement

27  was not material to the subject matter of the litigation and did not constitute an

28  unclean hands defense. MCCARTHY § 31:51, citing Fuddruckers. Inc. v. Doc's

1  B.R. Others, Inc. 826 F.2d 837 (9th Cir. 1987), also citing, Republic Molding Corp.

2  v. B. W. Photo Utilities, 319 F.2d 347 (9th Cir. 1963) (false marking of article as

3  patented before plaintiff actually obtained a patent held unrelated to action for

4  simulation of that article).”

5      24.   **“The defense of laches is trumped by a strong showing of likely**

6  **confusion of he public.”**  MCCARTHY § 31:41; See, e.g. ProFitness Physical

7  Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62

8  (2d Cir. 2002)(“[A] court may nonetheless grant injunctive relief if it determines that

9  the likelihood of confusion is so great that it outweighs the effect of plaintiff’s

10  delay.”).

11  *[Disputed on the grounds that Ninth Circuit case law makes clear that equitable*

12  *defenses are trumped only where the related causes of action raise allegations*

13  *concerning a threat to public safety and well being.  Jarrow Formulas, Inc. v.*

14  *Nutrition now, Inc., 304 F.3d 829, 841 (9th Cir. 2002) (affirming summary judgment*

15  *against plaintiff's false advertising claim based on laches, finding that "the public's*

16  *interest will trump laches only when the suit concerns allegations that the product is*

17  *harmful or otherwise a threat to public safety and well being").  Further, there is no*

18  *“strong showing” of likely confusion - only statistically insignificant confusion and*

19  *an unreliable survey.]*

20      25.   **“Laches should not necessarily always be measured from defendant’s**

21  **very first use of the contested mark, but from the date that defendant’s acts first**

22  **significantly impacted on plaintiffs good will and business reputation.”**

23  MCCARTHY § 31:19-20.

24  *[Disputed.  See Grupo Gigante SA De CV v. Dallo & Co., Inc., 391 F.3d 1088, 1101*

25  *(9th Cir. 2004) (laches based on four year delay).  Defendants presented significant*

26  *evidence that Plaintiffs carefully considered responses to DMV.ORG in 2002,*

27  *including the immediate registration of DrivingLinks.com and efforts to recover a*

28  *domain name; Plaintiffs re-encountered DMV.ORG in 2003 and still took no action.]*

**C.    Legal Conclusions Regarding Unfair Competition Under B&P Code § 17200 et seq.**

26.   Defendants' conduct constitutes a violation of California's Unfair Competition Law because it squarely falls within the definition. California Business and Professions Code §17200 (The "UCL").   The UCL is sweeping in nature and includes "... any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of Business and Professions Code."   Section 17200 thus "borrows" violations from other laws by making them independently actionable as unfair competitive practices.  Cel-Tech v. Los Angeles Cellular, 20 Cal.4th 163, 180 (1999).  In addition, under section 17200, "a practice may be deemed unfair even if not specifically proscribed by some other law." Cel-Tech, at p. 180; also see Korea Supply v. Lockheed Martin, 29 Cal. 4th 1134, 1144 (2003).

*[Disputed.  Plaintiffs ignore the standing requirements under Cal. Bus. & Prof. Code section 17204, which specifically require both injury in fact and resulting loss of money or property.  Plaintiffs have failed to carry their burden to establish either standing prong.  For the same additional reasons that Plaintiffs' Lanham Act claims fail (failure to prove confusion, failure to prove materiality), Plaintiffs' 17500 claim also fails.]*

27.   In addition to the above, the Defendants' conduct constitutes unfair competition under California Law because it violates Cal. Civ. Code §1770(a)(2)(3) which prohibits misrepresenting the "source, sponsorship, approval, or certification of goods or services" or "affiliation, connection, or association with, or certification by, another".  Defendants conduct also constitutes unfair competition because it violated Cal Vehicle Code §25 which makes it "unlawful for any person to display or cause or permit to be displayed any sign, mark, or advertisement indicating an

1  official connection with either the Department of Motor Vehicles...".

2  *[Plaintiffs continue to assert these improper bases for 17200 which were not pleaded*

3  *and are not therefore properly before this Court.  See Third Amended Complaint, ¶¶*

4  *51-55 (17200 claim); and discussion in Defendants Memorandum of Fact and Law,*

5  *pp. 7-8; and Conley v. Gibson, 355 U.S. 41, 47-48 (1957) (complaint must give "fair*

6  *notice of the claim being asserted and the grounds upon which it rests").]*

7  28.   California's UCL and Section of 43a of the Lanham Act are

8  substantively substantially congruent. International Order of Job's Daughters v.

9  Lindeburg, 633 F. 2d 912, 916 (9th Cir. 1980)("federal and state laws regarding

10  trademarks and related claims of unfair competition are substantially congruent.").

11  As such, by virtue of the Court's finding that Defendants have violated Section 43a

12  of The Lanham Act, Defendants are also in violation of California's UCL.

13  *[Disputed to the extent that this Court construes the Lanham Act to require*

14  *something less than the statutory requirements for standing under Cal. Bus. & Prof.*

15  *Code section 17204.  Section 17204 specifically precludes a private person from*

16  *bringing suit unless he has suffered "injury in fact and has lost money or property as*

17  *a result."]*

18  29.   Plaintiffs have standing under the UCL because they have been injured

19  and lost money as a result of Defendants' false advertising. Annunziato v.

20  Emachines, 402 F. Supp. 1133, 1137 (C.D. Cal. 2005)

21  *[Disputed on grounds that Plaintiffs utterly failed to prove an injury in fact or that*

22  *they actually lost money as a result of some conduct by Defendants.]*

23  **D.   Legal Conclusions Regarding Injunctive Remedies under the**

24  **Lanham Act**

25  30.   Under the Lanham Act, a district court has the "power to grant

26  injunctions, according to the principles of equity and upon such terms as the court

27  may deem reasonable ... to prevent the violation of subsection (a), (c), or (d) of

28  section 43 [§ 1125(a), (c), or (d)]."  15 U.S.C. § 1116(a).  "Unless otherwise

provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. [When] the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." F.T.C. v. H.N. Singer, Inc., 668 F.2d 1107, 1112 (9th Cir. 1982), quoting Virginian R. Co. v. System Federation, 300 U.S. 515, 552 (1937). The Court finds that the public interest is critical to this lawsuit.

*[Disputed on the grounds that the public interest is invoked only when the subject of the lawsuit implicates public safety and/or well being. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 841 (9th Cir. 2002) (affirming summary judgment against plaintiff's false advertising claim based on laches, finding that "the public's interest will trump laches only when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well being"). There is no evidence that the DMV.ORG website implicates any such interest.]*

31.    "Unless Congress provides otherwise,  courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." Northwest Environmental Defense Center v. Bonneville, 477 F.3d 668, 680 (9th Cir. 2007) (internal citations and quotations omitted). "Power is thereby resident in the District Court, in exercising this jurisdiction, 'to do equity and to mold each decree to the necessities of the particular case.'" F.T.C. v. H.N. Singer, 668 F.2d 1107, 1112 (9th Cir. 1982), quoting Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944 ). "It is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement." Playboy Enterprises v. Baccarat, 692 F.2d 1272, 1275 (C.D. Cal. 1982). The Ninth Circuit has held that the same rationale for awarding profits in trademark infringement suits under the Lanham Act applies to false advertising claims under the Lanham Act. U-Haul v.

1  Jartran, Inc. 793 F. 2d. 1034, 1042 (9th Cir. 1986).

2  *[Disputed on the grounds that 15 U.S.C. § 1117 provides that monetary relief is for*

3  *the purposes of "compensation and not a penalty," and that Plaintiffs are not entitled*

4  *to a windfall. Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 919 (Fed.*

5  *Cir. 1984) ("accounting [of profits] . . . is not automatic, and may be denied . . . ,*

6  *where there has been no showing of fraud . . . , or where . . . 'careful examination of*

7  *the record fails to reveal . . . that [plaintiff] has lost substantial business and profits*

8  *as a result of [defendant's] unfair competition.'"); Century 21 Real Estate Corp. v.*

9  *Re/Max South County, 882 F.Supp. 915, 924-25 (C.D. Cal. 1994) (plaintiff's false*

10  *advertising claim failed since it could not prove "a logical causal connection*

11  *between the alleged false advertising and its own sales position"; plaintiff's "mere*

12  *subjective believe that he will be injured" deemed insufficient); Nikkal Industries*

13  *Ltd. v. Salton, Inc.,735 F.Supp. 1227, 1238 (S.D.N.Y. 1990) (verdict for defendant;*

14  *plaintiff failed to prove lost sales were the result of defendant's advertisements*

15  *rather than other factors such as its marketing strategy and increased competition).*

16  *Plaintiffs ignore the fundamental tenet of equitable relief, namely that equity should*

17  *"grant relief no broader than necessary to cure the effects of the harm caused by the*

18  *violation." Forschner Group v. Arrow Trading Co., 124 F.3d 402, 406 (2d Cir.*

19  *1997).]*

20      32.  In Lanham Act cases, "the courts are given flexibility in fashioning

21  injunctive relief, and "the scope of the injunction to be entered depends upon the

22  manner in which plaintiff is harmed, the possible means by which that precise harm

23  can be avoided, the viability of the defenses raised, and the relative inconvenience

24  that would be caused to defendant by each of the several means of avoidance."'

25  Kelley Blue Book v. Car-Smarts, Inc., 802 F.Supp. 278 (C.D.Cal.1992), quoting J.

26  McCarthy, Trademarks and Unfair Competition, § 30:3 p. 466 (2d ed. 1984).

27      33.  A plaintiff does not need to prove the element of actual injury when

28  seeking injunctive relief. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134,

1  1145 (9th Cir. 1997); see also <u>Harper House, Inc. v. Thomas Nelson, Inc.</u>, 889 F.2d

2  197, 210 (9th Cir. 1989).  Rather, to obtain injunctive relief under the Lanham Act,

3  plaintiff must show that the advertisement has misled, confused, or deceived the

4  consuming public.  <u>Southland Sod</u>, 108 F.3d at 1140.  The relevant inquiry is

5  "whether it is likely that [defendants'] advertising has caused or will cause a loss of

6  [plaintiff's] sales, not whether [plaintiff] has come forward with specific evidence

7  that [defendants'] ads actually resulted in some definite loss of sales."  <u>Johnson and</u>

8  <u>Johnson v. Carter-Wallace, Inc.</u>, 631 F.2d 186, 190 (2nd Cir. 1980) ("Sound policy

9  reasons exist for not requiring proof of actual loss as a prerequisite to 43(a)

10  injunctive relief.  Failure to prove actual damages in an injunction suit, as

11  distinguished from an action for damages, posed no likelihood of a windfall for the

12  plaintiff.  The complaining competitor gains mo more than to which it is already

13  entitled a market free of false advertising.")  "The passage of 43(a) represented a

14  departure from the common law action for trade disparagement and from the need to

15  prove actual damages as a prerequisite for injunctive relief.  This departure marked

16  the creation of a 'new statutory tort' intended to secure a market-place free from

17  deceitful marketing practices."  <u>Id.</u> at 189, citing  <u>L'Aignon Apparel v. Lana Lobell,</u>

18  <u>Inc.</u>, 214 F.2d 649, 651 (3rd Cir. 1954), and <u>Bose Corp. v. Linear Design Labs, Inc.</u>,

19  467 F.2d 304, 311 (2nd Cir. 1972).

20  *[Disputed on grounds that numerous courts have dismissed false advertising cases*

21  *on summary judgment where plaintiffs failed to demonstrate such an actual injury.*

22  *<u>Century 21 Real Estate Corp. v. Re/Max South County</u>, 882 F.Supp. 915, 924-25*

23  *(C.D. Cal. 1994) (plaintiff's false advertising claim failed since it could not prove "a*

24  *logical causal connection between the alleged false advertising and its own sales*

25  *position"; plaintiff's "mere subjective believe that he will be injured" deemed*

26  *insufficient); <u>Nikkal Industries Ltd. v. Salton, Inc.</u>, 735 F.Supp. 1227, 1238 (S.D.N.Y.*

27  *1990) (verdict for defendant; plaintiff failed to prove lost sales were the result of*

28  *defendant's advertisements rather than other factors such as its marketing strategy*