BRIAN M. DAUCHER, Cal. Bar No. 174212
ROBERT S. BEALL, Cal. Bar No. 132016
JOSEPH H. TADROS, Cal. Bar No. 239379
ASHLEY E. MERLO, Cal. Bar No. 247997
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 513-5100
Facsimile: (714) 513-5130
bdaucher@sheppardmullin.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC., a California limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual, and DOES 1 through 10.<br><br>    Defendants. | Case No. CV067561 PA (CWx)<br>*The Hon. Percy Anderson*<br><br>**DEFENDANTS' OBJECTIONS TO AND PROPOSED CHANGES TO PROPOSED JUDGMENT AND PERMANENT INJUNCTION**<br><br>[*Declaration of Bruce Tognazzini and Defendants' Proposed Revised Judgment lodged concurrently herewith*]<br><br>Complaint Filed: November 28, 2006<br>Trial Commenced: November 6, 2007 |

## 1. Introduction

Defendants submit the following objections with the goal of articulating possible alternatives or modifications to the proposed judgment that could strike a reasonable balance among the following interests: (a) the interest in preventing confusion or inadvertent disclosure of confidential information; (b) the public interest in efficient access to DMV.ORG's information; and (c) DMV.ORG's interest in being able to operate its business and publish a website in accordance with industry standard usability practices.

Over sixty million visitors come to DMV.ORG each year, a number which did not decline despite materially increased disclaimers in 2007. The large number of visitors and significant positive feedback from the public suggests that the DMV.ORG website provides significant public value. Defendants seek a modified injunction that addresses the Court's concerns without undermining the usefulness of the website.

On this basis, Defendants object to the form of the proposed permanent injunction on the following grounds (detailed bases set forth below):

- The splash page requirement is: (a) not narrowly tailored to remedy the alleged confusion; and (b) unduly harmful.[1]
- The redirect requirement (sections (d) and (e) of the proposed injunction) is: (a) likely to cause confusion as to possible affiliation with those sites; (b) unnecessary to remedy any alleged confusion of consumers to the DMV.ORG site; (c) likely to result in the further frustration of consumers seeking information by directing them merely to state home pages; and (d) not feasible as many states have more than one entity with responsibility for driving-related functions (e.g., licensing, title/registration, insurance).

---

[1] In section 3, below, Defendants propose alternative relief tailored to the concerns expressed by the Court in section D of its Findings.

## 2. An Injunction Must Be Narrowly Tailored; A Splash Page Fails This Test

In considering injunctive relief, "[t]he law requires that courts closely tailor injunctions to the harm that they address." [Court's Findings at 27, citing <u>ALPO Petfoods v. Ralston Purina Co.</u>, 913 F.2d 958, 972 (D.C. Cir. 1990)]. "It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation." <u>Forschner Group v. Arrow Trading Co.</u>, 124 F.3d 402, 406 (2d Cir. 1997).

In <u>Perfumebay.com v. Ebay</u>, 506 F.3d 1165, 1181-82 (9th Cir. 2007) the 9th Circuit affirmed a limited injunction precluding Perfumebay only from using conjoined versions of its mark, thereby permitting ongoing use of Perfume Bay. Despite the potential for some confusion from use of the Perfume Bay mark, the Court recognized that the district court had "balanced the conflicting interests both parties had in unimpaired continuation of their trademark use." <u>Id.</u> at 948.

Similarly, in <u>Forschner Group, Inc. v. Swiss Army Brands, Ltd.</u>, 124 F.3d 402 (2nd Cir. 1997), involving a trademark infringement claim by an importer of Swiss Army knives from Switzerland, the appellate court affirmed the district court's limited injunction which allowed the defendant to use the color red for its pocket knives. In summarizing its review of the district court opinion, the appellate court found that "by striking a reasonable balance between [plaintiff's] and [defendant's] conflicting interests, focusing upon hindrances to legitimate competition as well as assuring sufficient product differentiation to avoid source confusion, the district court did not abuse its discretion in devising an appropriate injunction." <u>Id.</u> at 410.

In terms of identifying the public interest in need of protection, the Court in its Findings identified three specific areas of concern: (a) confusion arising from search engine listings; (b) transmission of sensitive information from the public to DMV.ORG; and (c) possible confusion among teenagers seeking a learner's permit. [Findings, p. 29.]

As a remedy, the Court proposes a mandatory splash page that 60 million consumers must stop and read before proceeding to any portion of the site.

The splash page requirement is unduly harmful in that, as is commonly acknowledged, 25% of consumers who see a splash page, <u>regardless</u> of content, will simply leave the site due to the inconvenience of the delay and/or frustration at not being directed to the information they expected. [<u>See</u> Declaration of Bruce Tognazzini, ¶¶ 11-12, 16, 25.] Mr. Tognazzini is a recognized and published expert on website usability and, given the substantial impact that such a page could have on DMV.ORG's traffic, Defendants respectfully request that this Court consider his expert opinion in this context.

Splash pages are used almost exclusively by websites devoted to vices such as pornography, alcohol and gambling. [Tognazzini Decl. ¶ 13.] Requiring DMV.ORG to use a splash page will unfairly associate DMV.ORG with these types of websites. [<u>Id.</u> at ¶ 14.]

At trial, Defendants also offered evidence that such splash pages are uncommon, disrupt a consumer's flow, and create their own confusion and frustration. [Defendants' Fact 142.[2]] This evidence is supported by numerous Internet publications. <u>See</u> Eric Holter, <u>Splash Is Dead</u>, (located at: http://www.newfangled.com/more/websmart_print.php/id/144) (splash pages "overpower" visitors, create problems with search engines, suggest to users that there is inappropriate content behind the splash page, decreases effective use of a site, and may lead to blacklisting by search engines); Jennifer Kyrnin, <u>Splash Pages: Pros and Cons</u> (http://webdesign.about.com/od/navigation/a/aa020303a.htm) (splash pages are "annoying," "flawed," may "break search engines," studies show up to 25% of visitors seeing such a page leave immediately); Andy King, <u>Sink the Splash</u>

---
[2] Plaintiffs did not offer any contrary evidence.

Pages (http://www.websiteoptimization.com/speed/tweak/splash/) (splash pages "increase bailout rates" and "reduce web credibility with up to 71% traffic loss").

Further, splash pages can significantly decrease or eliminate the ability of search engines to index the contents of websites for purposes of search result listings (both organic and sponsored listings). Consequently, the proposed splash page puts the large majority of the internet traffic arriving to DMV.ORG (which comes through search engine result listings) at risk and therefore DMV.ORG's entire business at risk. In short, the splash page may lead search engines to conclude that the DMV.ORG website has no information relevant to motor vehicles; and, instead, that the website only offers an acknowledgment.

Defendants believe that Plaintiffs proposed a splash page precisely because they understood that, regardless of the value of the content on the DMV.ORG website, such a page will automatically deter a significant number of users from <u>any</u> use of the DMV.ORG website and could even prevent consumers from finding DMV.ORG through search engines. [Tognazzini Decl., ¶¶ 11-12, 16, 25.]

DMV.ORG's success year after year is based upon the convenience it provides to consumers looking for motor vehicle related information. The splash page substantially reduces that consumer benefit by disrupting, even for what might be considered a mere moment in time, a consumer's expectation that he or she will find the information he or she is looking for. It also puts the entire website at risk due to the impact it will have on search engine indexing of the website. Because splash pages are known to cause a substantial loss in traffic and goodwill, Defendants respectfully request that this Court reconsider the splash page concept altogether.

### 2.1 Specific Points Related To The Drop Down Menu

In addition to the significant loss of traffic outlined above, the requirement of drop down menu to redirect visitors to state agency websites (section (d)-(e)) is overbroad in that it goes beyond what is necessary to cure any potential confusion.

See New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 202 U.S.P.Q. 643 (9th Cir. 1979) ("a reasonable consumer of average intelligence"); AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 204 U.S.P.Q. 808 (9th Cir. 1979) ("typical buyer exercising ordinary caution"); Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129, 46 U.S.P.Q.2d 1561 (9th Cir. 1998) ("the test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused").

Sections (d) – (e) are not aimed at removing consumer confusion but rather require DMV.ORG to redirect visitors in a way that may not promote consumer benefit.

First, such a drop down menu would effectively make DMV.ORG a clearinghouse to the state agency website homepages, and could thereby generate incremental confusion as to an affiliation between DMV.ORG and the state agencies. Visitors may also regard the drop down menu as likely to take them to state specific DMV.ORG pages, not to official state home pages, because a similar internal navigating function is also in use on the DMV.ORG website already.

The drop down menu also has the following additional disadvantages:
- Such a menu pushes consumers toward a less efficient search by driving them towards state agency home pages. As set forth below, consumers desiring specific information from government sites would be better served to simply click the browser's back button and drill down into government sites from search results.
- Such a menu is also impracticable in that many states have more than one agency with jurisdiction over motor vehicle issues. As set forth below, absent knowledge of the nature of information sought, these redirecting links will direct consumers to the wrong agencies, creating more confusion and negative goodwill for DMV.ORG.

### (A) Clicking The Browser's Back Button Is More Efficient

If a consumer accesses DMV.ORG seeking a state agency website, then the best course of action for such a consumer would simply be to click the "back" button on his or her browser to navigate to the appropriate website. <u>Bihari v. Gross</u>, 119 F. Supp. 2d 309, n. 15, 56 U.S.P.Q.2d 1489, n. 15 (S.D.N.Y. 2000) ("resuming one's search for the correct website is relatively simple. With one click of the mouse and a few seconds delay, a viewer can return to the search engine's results and resume searching for the original website."); <u>Savin Corp. v. Savin Group</u>, 68 U.S.P.Q.2d 1893, 2003 WL 22451731 (S.D. N.Y. 2003), aff'd in part, rev'd in part on other grounds, 391 F.3d 439, 73 U.S.P.Q.2d 1273 (2d Cir. 2004) ("consumers diverted on the Internet can more readily get back on track than those in actual space"); J.E. Rothman, <u>Initial Interest Confusion: Standing at the Crossroads of Trademark Law</u>, 27 Cardozo L. Rev. 105, 175 (2005) ("It takes seconds to click back to a prior webpage or search results list, or to redirect to another website online, whereas driving off and on the freeway could take many minutes if not longer.").

The redirect link would likely cost a visitor more time than would simply clicking "Back," returning to the initial search results, and clicking an alternative link.

For example, assume: (a) consumer searches for "California drivers tests" on a search engine such as Google; and (b) clicks on a link to DMV.ORG. The question is, once the person is on notice that he or she is on a private website, and assuming the person wants to go to the state agency site, what is the most efficient means to get to that point?

<u>Scenario 1</u>: The consumer could get there in two clicks by: (a) clicking the "Back" button on the browser; and (b) selecting the alternative www.dmv.ca.gov link on the search results. This path will take the consumer, in two clicks to the precise page the consumer seeks.

6

Scenario 2: Alternatively, if there is a splash page with a dropdown menu, then: (a) the user will have to understand the choices presented on the splash page; (b) select California from the drop down menu (one click, equivalent to back button); (c) be redirected to the California DMV home page; (d) determine how to navigate from the California DMV home page to the desired page (in this example, actual manual navigation from the buttons to any state agency drivers tests is very difficult); (e) a frustrated user may then try using the California DMV site search tool, entering yet another search and then click through to the page.

A comparison of these two sequential processes shows that consumers will be better off if they return to original search engine search results and proceed from there. [See Tognazzini Decl., ¶¶ 20-24.]

### (B) Redirection To State Agency Websites Is Not Practicable

Redirect links also prove problematic in practice. The DMV.ORG website contains information related to many different topics associated with driving and motor vehicles, including information regarding: (a) what to do if your car is stolen; (b) current vehicle manufacturer and tire recalls; (c) lemon law rules in various states and referrals to counsel; (d) buying new and used cars; (e) auto insurance; (f) drivers training; (g) registration; (h) traffic tickets, etc. [Raj Lahoti Trial Decl., ¶ 3.]

Each state divides up these state functions in different ways, often among different departments; and, of course, some states don't cover some of the topics at all. For example, the following states have multiple departments handling different topics/functions and they provide information at multiple websites as well:

- Alabama: Alabama Traffic Service Center (www.traffic.alacourt.gov/) (Tickets), Department of Public Safety (www.dps.alabama.gov/) (Licensing), Department of Revenue Motor Vehicle Division (www.revenue.alabama.gov/motorvehicle/index.html) (Registration).

- Georgia: Department of Driver Services (www.dds.ga.gov/) (Licensing) and Department of Revenue – Motor Vehicle Division (www.motor.etax.dor.ga.gov/) ( Registration).
- Texas: Department of Public Safety (www.txdps.state.tx.us/) (Licensing) and Department of Transportation (www.wdot.state.tx.us/) (Registration).

[See Defendants' Request for Judicial Notice, No. 10 (filed 10-23-07; docket number 147).]

Consequently, because many states have more than one agency assigned to driving related information, the proposed redirect links would very likely result in DMV.ORG sending a consumer to the wrong state website. This could potentially create confusion and tarnish DMV.ORG's goodwill, as the website redirecting the visitor, by wasting the consumer's time. In part, the value provided to the public by the 400+ topics and corresponding 5,000+ pages of the DMV.ORG website is that visitors can actually locate otherwise difficult-to-find information.

### 3. A More Narrowly Tailored Injunction

Defendants respectfully submit that, in lieu of a splash page altogether, alternative, more narrowly tailored measures are available that will address, perhaps more robustly, the public interest concerns identified by the Court. For instance:

- To address any possible search engine confusion, require DMV.ORG to use either the term "unofficial" or "independent" in search results (both sponsored and organic listings) that directly relate to either traffic school or driver's education school. Already in use by DMV.ORG, this change was not tested by Dr. Maronick and constitutes immediate notice of the independent nature of the site.
- To help preclude consumers from inadvertently sending confidential information to DMV.ORG, require visitors sending communications to affirmatively check a box acknowledging that "DMV.ORG is a **privately owned website** that is **not** owned or operated by any government agency."

8

W02-WEST:3AAE1\400886577.2                    DEFENDANTS' OBJECTION TO PROPOSED
                                              JUDGMENT AND PERMANENT INJUNCTION

This more timely and directed notice would likely eliminate any transfer of confidential information.

- Require the Court's disclaimer in size 16 point font, to be highlighted and used at the top of <u>every</u> page of the website (as reflected in Exhibit A). [Findings, p. 16 (noting large home page disclaimer not used on every page).] Such a header will be a constant, repeated, and absolutely unavoidable notice to every visitor to the site.

- To further decrease the risk of perceived endorsement from explicit recommendations (Findings, p. 7), preclude DMV.ORG from using <u>express</u> recommendation language in relation to third party traffic school and drivers education advertisers.

In an effort to proactively address the concerns of the Court, <u>all</u> of these changes are already in place on the DMV.ORG website for the Court to view. A proposed revised judgment to establish this further relief is lodged herewith.

## 4. **Conclusion**

The use of a splash page will negatively impact the entire DMV.ORG website. Without taking into consideration the effect that the splash page may have on search engines' ability to index DMV.ORG, a splash page could nonetheless drive away 15 million visitors from DMV.ORG each year simply because of consumers' distaste for such pages, regardless whether DMV.ORG's published information would in fact answer their questions.

Alternative means, proposed above, could ensure ample, repeated notice to consumers, further enhance protection against inadvertent transfer of confidential information, and mitigate the risk of perceived endorsement of DMV.ORG advertisers, without crippling the usability of the website and the business entirely. Defendants respectfully submit to the Court that the concerns identified in the Court's findings can be addressed through Defendants' alternative proposed injunction, rather than a splash page which will have much broader implications.

For these reasons, Defendants respectfully request that this Court modify the proposed injunction and enter the alternative proposed injunction lodged herewith.

Respectfully submitted,

DATED: June 18, 2008

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____
BRIAN M. DAUCHER

Attorneys for Defendants

**EXHIBIT A**



EXHIBIT A PAGE 11

W02-WEST:3AAE1\400899721.1


EXHIBIT __A__ PAGE __12__



EXHIBIT **A** PAGE 13

W02-WEST:3AAE1\400899721.1



EXHIBIT A PAGE 14

W02-WEST:3AAE1\400899721.1



EXHIBIT A PAGE 15

W02-WEST:3AAE1\400899721.1