1  BRIAN M. DAUCHER, Cal. Bar No. 174212
2  ROBERT S. BEALL, Cal. Bar. No. 132016
   JOSEPH H. TADROS, Cal. Bar. No. 239379
3  ASHLEY E. MERLO, Cal. Bar No. 247997
4  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        A Limited Liability Partnership
5        Including Professional Corporations
6  650 Town Center Drive, 4th Floor
   Costa Mesa, California  92626-1925
7  Telephone:  (714) 513-5100
   Facsimile:  (714) 513-5130
8  bdaucher@sheppardmullin.com
9
10 Attorneys for Defendants

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14 TRAFFICSCHOOL.COM, INC., a          Case No. CV067561 PA (CWx)
   California corporation; DRIVERS ED   *The Hon. Percy Anderson*
15 DIRECT, LLC., a California limited
   liability company,
16                                      **DEFENDANTS' OBJECTIONS TO**
              Plaintiffs,               **AND PROPOSED CHANGES TO**
17                                      **PROPOSED JUDGMENT AND**
        v.                              **PERMANENT INJUNCTION**
18
   EDRIVER, INC., ONLINE GURU,          *[Declaration of Bruce Tognazzini and*
19 INC., FIND MY SPECIALIST, INC.,      *Defendants' Proposed Revised*
   and SERIOUSNET, INC., California     *Judgment lodged concurrently*
20 corporations; RAVI K. LAHOTI, an     *herewith]*
   individual; RAJ LAHOTI, an
21 individual; and DOES 1 through 10.   Complaint Filed:   November 28, 2006
                                        Trial Commenced: November 6, 2007
22            Defendants.

23

24

25

26

27

28

DEFENDANTS' OBJECTION TO PROPOSED
                                                    JUDGMENT AND PERMANENT INJUNCTION

**1.   Introduction**

Defendants submit the following objections with the goal of articulating possible alternatives or modifications to the proposed judgment that could strike a reasonable balance among the following interests: (a) the interest in preventing confusion or inadvertent disclosure of confidential information; (b) the public interest in efficient access to DMV.ORG's information; and (c) DMV.ORG's interest in being able to operate its business and publish a website in accordance with industry standard usability practices.

Over sixty million visitors come to DMV.ORG each year, a number which did not decline despite materially increased disclaimers in 2007.  The large number of visitors and significant positive feedback from the public suggests that the DMV.ORG website provides significant public value.  Defendants seek a modified injunction that addresses the Court's concerns without undermining the usefulness of the website.

On this basis, Defendants object to the form of the proposed permanent injunction on the following grounds (detailed bases set forth below):

- The splash page requirement is: (a) not narrowly tailored to remedy the alleged confusion; and (b) unduly harmful.[1]

- The redirect requirement (sections (d) and (e) of the proposed injunction) is: (a) likely to cause confusion as to possible affiliation with those sites; (b) unnecessary to remedy any alleged confusion of consumers to the DMV.ORG site; (c) likely to result in the further frustration of consumers seeking information by directing them merely to state home pages; and (d) not feasible as many states have more than one entity with responsibility for driving-related functions (e.g., licensing, title/registration, insurance).

---

[1] In section 3, below, Defendants propose alternative relief tailored to the concerns expressed by the Court in section D of its Findings.

W02-WEST:3AAE1\400886577.2

DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

2.    **<u>An Injunction Must Be Narrowly Tailored; A Splash Page Fails This Test</u>**

In considering injunctive relief, "[t]he law requires that courts closely tailor injunctions to the harm that they address." [Court's Findings at 27, citing <u>ALPO Petfoods v. Ralston Purina Co.</u>, 913 F.2d 958, 972 (D.C. Cir. 1990)]. "It is well-settled that the essence of equity jurisdiction has been the power to grant relief no broader than necessary to cure the effects of the harm caused by the violation." <u>Forschner Group v. Arrow Trading Co.</u>, 124 F.3d 402, 406 (2d Cir. 1997).

In <u>Perfumebay.com v. Ebay</u>, 506 F.3d 1165, 1181-82 (9th Cir. 2007) the 9th Circuit affirmed a limited injunction precluding Perfumebay only from using conjoined versions of its mark, thereby permitting ongoing use of Perfume Bay. Despite the potential for some confusion from use of the Perfume Bay mark, the Court recognized that the district court had "balanced the conflicting interests both parties had in unimpaired continuation of their trademark use." <u>Id.</u> at 948.

Similarly, in <u>Forschner Group, Inc. v. Swiss Army Brands, Ltd.</u>, 124 F.3d 402 (2nd Cir. 1997), involving a trademark infringement claim by an importer of Swiss Army knives from Switzerland, the appellate court affirmed the district court's limited injunction which allowed the defendant to use the color red for its pocket knives.  In summarizing its review of the district court opinion, the appellate court found that "by striking a reasonable balance between [plaintiff's] and [defendant's] conflicting interests, focusing upon hindrances to legitimate competition as well as assuring sufficient product differentiation to avoid source confusion, the district court did not abuse its discretion in devising an appropriate injunction." <u>Id.</u> at 410.

In terms of identifying the public interest in need of protection, the Court in its Findings identified three specific areas of concern: (a) confusion arising from search engine listings; (b) transmission of sensitive information from the public to DMV.ORG; and (c) possible confusion among teenagers seeking a learner's permit. [Findings, p. 29.]

DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

1    As a remedy, the Court proposes a mandatory splash page that 60 million

2    consumers must stop and read before proceeding to any portion of the site.

3    The splash page requirement is unduly harmful in that, as is commonly

4    acknowledged, 25% of consumers who see a splash page, <u>regardless</u> of content, will

5    simply leave the site due to the inconvenience of the delay and/or frustration at not

6    being directed to the information they expected.  [<u>See</u> Declaration of Bruce

7    Tognazzini, ¶¶ 11-12, 16, 25.]  Mr. Tognazzini is a recognized and published expert

8    on website usability and, given the substantial impact that such a page could have on

9    DMV.ORG's traffic, Defendants respectfully request that this Court consider his

10   expert opinion in this context.

11   Splash pages are used almost exclusively by websites devoted to vices such as

12   pornography, alcohol and gambling.  [Tognazzini Decl. ¶ 13.]  Requiring

13   DMV.ORG to use a splash page will unfairly associate DMV.ORG with these types

14   of websites.  [<u>Id.</u> at ¶ 14.]

15   At trial, Defendants also offered evidence that such splash pages are

16   uncommon, disrupt a consumer's flow, and create their own confusion and

17   frustration.  [Defendants' Fact 142.[2]]  This evidence is supported by numerous

18   Internet publications.  <u>See</u> Eric Holter, <u>Splash Is Dead</u>, (located at:

19   http://www.newfangled.com/more/websmart_print.php/id/144) (splash pages

20   "overpower" visitors, create problems with search engines, suggest to users that

21   there is inappropriate content behind the splash page, decreases effective use of a

22   site, and may lead to blacklisting by search engines); Jennifer Kyrnin, <u>Splash Pages:</u>

23   <u>Pros and Cons</u> (http://webdesign.about.com/od/navigation/a/aa020303a.htm) (splash

24   pages are "annoying," "flawed," may "break search engines," studies show up to

25   25% of visitors seeing such a page leave immediately); Andy King, <u>Sink the Splash</u>

26

27   ――――――――――――
     [2]   Plaintiffs did not offer any contrary evidence.

28

DEFENDANTS' OBJECTION TO PROPOSED
                                                JUDGMENT AND PERMANENT INJUNCTION

1  Pages (http://www.websiteoptimization.com/speed/tweak/splash/) (splash pages
2  "increase bailout rates" and "reduce web credibility with up to 71% traffic loss").
3          Further, splash pages can significantly decrease or eliminate the ability of
4  search engines to index the contents of websites for purposes of search result listings
5  (both organic and sponsored listings).  Consequently, the proposed splash page puts
6  the large majority of the internet traffic arriving to DMV.ORG (which comes
7  through search engine result listings) at risk and therefore DMV.ORG's entire
8  business at risk.  In short, the splash page may lead search engines to conclude that
9  the DMV.ORG website has no information relevant to motor vehicles; and, instead,
10  that the website only offers an acknowledgment.
11          Defendants believe that Plaintiffs proposed a splash page precisely because
12  they understood that, regardless of the value of the content on the DMV.ORG
13  website, such a page will automatically deter a significant number of users from any
14  use of the DMV.ORG website and could even prevent consumers from finding
15  DMV.ORG through search engines.  [Tognazzini Decl., ¶¶ 11-12, 16, 25.]
16          DMV.ORG's success year after year is based upon the convenience it
17  provides to consumers looking for motor vehicle related information.  The splash
18  page substantially reduces that consumer benefit by disrupting, even for what might
19  be considered a mere moment in time, a consumer's expectation that he or she will
20  find the information he or she is looking for.  It also puts the entire website at risk
21  due to the impact it will have on search engine indexing of the website.  Because
22  splash pages are known to cause a substantial loss in traffic and goodwill,
23  Defendants respectfully request that this Court reconsider the splash page concept
24  altogether.
25      **2.1    Specific Points Related To The Drop Down Menu**
26          In addition to the significant loss of traffic outlined above, the requirement of
27  drop down menu to redirect visitors to state agency websites (section (d)-(e)) is
28  overbroad in that it goes beyond what is necessary to cure any potential confusion.

4

DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

See <u>New West Corp. v. NYM Co. of California, Inc.</u>, 595 F.2d 1194, 202 U.S.P.Q. 643 (9th Cir. 1979) ("a reasonable consumer of average intelligence"); <u>AMF, Inc. v. Sleekcraft Boats</u>, 599 F.2d 341, 204 U.S.P.Q. 808 (9th Cir. 1979) ("typical buyer exercising ordinary caution"); <u>Dreamwerks Production Group, Inc. v. SKG Studio</u>, 142 F.3d 1127, 1129, 46 U.S.P.Q.2d 1561 (9th Cir. 1998) ("the test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused").

Sections (d) – (e) are not aimed at removing consumer confusion but rather require DMV.ORG to redirect visitors in a way that may not promote consumer benefit.

First, such a drop down menu would effectively make DMV.ORG a clearinghouse to the state agency website homepages, and could thereby generate incremental confusion as to an affiliation between DMV.ORG and the state agencies.  Visitors may also regard the drop down menu as likely to take them to state specific DMV.ORG pages, not to official state home pages, because a similar internal navigating function is also in use on the DMV.ORG website already.

The drop down menu also has the following additional disadvantages:

- Such a menu pushes consumers toward a less efficient search by driving them towards state agency home pages.  As set forth below, consumers desiring specific information from government sites would be better served to simply click the browser's back button and drill down into government sites from search results.

- Such a menu is also impracticable in that many states have more than one agency with jurisdiction over motor vehicle issues.  As set forth below, absent knowledge of the nature of information sought, these redirecting links will direct consumers to the wrong agencies, creating more confusion and negative goodwill for DMV.ORG.

DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

### (A)   <u>Clicking The Browser's Back Button Is More Efficient</u>

If a consumer accesses DMV.ORG seeking a state agency website, then the best course of action for such a consumer would simply be to click the "back" button on his or her browser to navigate to the appropriate website. <u>Bihari v. Gross,</u> 119 F. Supp. 2d 309, n. 15 , 56 U.S.P.Q.2d 1489, n. 15 (S.D.N.Y. 2000) ("resuming one's search for the correct website is relatively simple. With one click of the mouse and a few seconds delay, a viewer can return to the search engine's results and resume searching for the original website."); <u>Savin Corp. v. Savin Group</u>, 68 U.S.P.Q.2d 1893, 2003 WL 22451731 (S.D. N.Y. 2003), aff'd in part, rev'd in part on other grounds, 391 F.3d 439, 73 U.S.P.Q.2d 1273 (2d Cir. 2004) ("consumers diverted on the Internet can more readily get back on track than those in actual space"); J.E. Rothman, <u>Initial Interest Confusion: Standing at the Crossroads of Trademark Law</u>, 27 Cardozo L. Rev. 105, 175 (2005) ("It takes seconds to click back to a prior webpage or search results list, or to redirect to another website online, whereas driving off and on the freeway could take many minutes if not longer.").

The redirect link would likely cost a visitor more time than would simply clicking "Back," returning to the initial search results, and clicking an alternative link.

For example, assume: (a) consumer searches for "California drivers tests" on a search engine such as Google; and (b) clicks on a link to DMV.ORG.  The question is, once the person is on notice that he or she is on a private website, and assuming the person wants to go to the state agency site, what is the most efficient means to get to that point?

<u>Scenario 1</u>: The consumer could get there in two clicks by: (a) clicking the "Back" button on the browser; and (b) selecting the alternative www.dmv.ca.gov link on the search results.  This path will take the consumer, in two clicks to the precise page the consumer seeks.

6

1     <u>Scenario 2</u>: Alternatively, if there is a splash page with a dropdown menu,

2     then: (a) the user will have to understand the choices presented on the splash page;

3     (b) select California from the drop down menu (one click, equivalent to back

4     button); (c) be redirected to the California DMV home page; (d) determine how to

5     navigate from the California DMV home page to the desired page (in this example,

6     actual manual navigation from the buttons to any state agency drivers tests is very

7     difficult); (e) a frustrated user may then try using the California DMV site search

8     tool, entering yet another search and then click through to the page.

9         A comparison of these two sequential processes shows that consumers will be

10    better off if they return to original search engine search results and proceed from

11    there.  [See Tognazzini Decl., ¶¶ 20-24.]

12         **(B)    <u>Redirection To State Agency Websites Is Not Practicable</u>**

13         Redirect links also prove problematic in practice.  The DMV.ORG website

14    contains information related to many different topics associated with driving and

15    motor vehicles, including information regarding: (a) what to do if your car is stolen;

16    (b) current vehicle manufacturer and tire recalls; (c) lemon law rules in various

17    states and referrals to counsel; (d) buying new and used cars; (e) auto insurance;

18    (f) drivers training; (g) registration; (h) traffic tickets, etc.  [Raj Lahoti Trial Decl.,

19    ¶ 3.]

20         Each state divides up these state functions in different ways, often among

21    different departments; and, of course, some states don't cover some of the topics at

22    all.  For example, the following states have multiple departments handling different

23    topics/functions and they provide information at multiple websites as well:

24    •    <u>Alabama</u>: Alabama Traffic Service Center (www.traffic.alacourt.gov/)

25         (Tickets), Department of Public Safety (www.dps.alabama.gov/) (Licensing),

26         Department of Revenue Motor Vehicle Division

27         (www.revenue.alabama.gov/motorvehicle/index.html) (Registration).

28

7

DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

1 • <u>Georgia</u>:  Department of Driver Services (www.dds.ga.gov/) (Licensing) and
2     Department of Revenue – Motor Vehicle Division
3     (www.motor.etax.dor.ga.gov/) ( Registration).
4 • <u>Texas</u>: Department of Public Safety (www.txdps.state.tx.us/) (Licensing) and
5     Department of Transportation (www.wdot.state.tx.us/) (Registration).
6 [<u>See</u> Defendants' Request for Judicial Notice, No. 10 (filed 10-23-07; docket
7 number 147).]

8     Consequently, because many states have more than one agency assigned to
9 driving related information, the proposed redirect links would very likely result in
10 DMV.ORG sending a consumer to the wrong state website.  This could potentially
11 create confusion and tarnish DMV.ORG's goodwill, as the website redirecting the
12 visitor, by wasting the consumer's time.  In part, the value provided to the public by
13 the 400+ topics and corresponding 5,000+ pages of the DMV.ORG website is that
14 visitors can actually locate otherwise difficult-to-find information.

15 **3.**     **A More Narrowly Tailored Injunction**
16     Defendants respectfully submit that, in lieu of a splash page altogether,
17 alternative, more narrowly tailored measures are available that will address, perhaps
18 more robustly, the public interest concerns identified by the Court.  For instance:

19 • To address any possible search engine confusion, require DMV.ORG to use
20     either the term "unofficial" or "independent" in search results (both sponsored
21     and organic listings) that directly relate to either traffic school or driver's
22     education school.  Already in use by DMV.ORG, this change was not tested
23     by Dr. Maronick and constitutes immediate notice of the independent nature
24     of the site.

25 • To help preclude consumers from inadvertently sending confidential
26     information to DMV.ORG, require visitors sending communications to
27     affirmatively check a box acknowledging that "DMV.ORG is a **privately**
28     **owned website** that is **not** owned or operated by any government agency."

8

1  This more timely and directed notice would likely eliminate any transfer of
2  confidential information.
3  • Require the Court's disclaimer in size 16 point font, to be highlighted and
4  used at the top of <u>every</u> page of the website (as reflected in Exhibit A).
5  [Findings, p. 16 (noting large home page disclaimer not used on every page).]
6  Such a header will be a constant, repeated, and absolutely unavoidable notice
7  to every visitor to the site.
8  • To further decrease the risk of perceived endorsement from explicit
9  recommendations (Findings, p. 7), preclude DMV.ORG from using <u>express</u>
10 recommendation language in relation to third party traffic school and drivers
11 education advertisers.
12 In an effort to proactively address the concerns of the Court, <u>all</u> of these changes are
13 already in place on the DMV.ORG website for the Court to view.  A proposed
14 revised judgment to establish this further relief is lodged herewith.
15 **4.    Conclusion**
16      The use of a splash page will negatively impact the entire DMV.ORG
17 website.  Without taking into consideration the effect that the splash page may have
18 on search engines' ability to index DMV.ORG, a splash page could nonetheless
19 drive away 15 million visitors from DMV.ORG each year simply because of
20 consumers' distaste for such pages, regardless whether DMV.ORG's published
21 information would in fact answer their questions.
22      Alternative means, proposed above, could ensure ample, repeated notice to
23 consumers, further enhance protection against inadvertent transfer of confidential
24 information, and mitigate the risk of perceived endorsement of DMV.ORG
25 advertisers, without crippling the usability of the website and the business entirely.
26 Defendants respectfully submit to the Court that the concerns identified in the
27 Court's findings can be addressed through Defendants' alternative proposed
28 injunction, rather than a splash page which will have much broader implications.

9

1        For these reasons, Defendants respectfully request that this Court modify the

2  proposed injunction and enter the alternative proposed injunction lodged herewith.

3

4  Respectfully submitted,

5

6  DATED:  June 18, 2008

7                     SHEPPARD MULLIN RICHTER & HAMPTON LLP

8

9                     By

10                                 BRIAN M. DAUCHER

11                             Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                     DEFENDANTS' OBJECTION TO PROPOSED
JUDGMENT AND PERMANENT INJUNCTION

# EXHIBIT A



EXHIBIT___A___ PAGE___11___



EXHIBIT____A____ PAGE____12____



EXHIBIT ___A___ PAGE __13__



EXHIBIT __A__ PAGE __14__



EXHIBIT ___A___ PAGE _15_