DAVID N. MAKOUS (State Bar # 082409)
makous@lbbslaw.com
DANIEL C. DECARLO (State Bar # 160307)
decarlo@lbbslaw.com
MINA I. HAMILTON (State Bar # 213917)
hamilton@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012-2601
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiffs
TRAFFICSCHOOL.COM, INC. and
DRIVERS ED DIRECT, LLC, California companies.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>　vs.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual; and DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. CV 06-7561 PA (CWx)<br><br>The Honorable Percy Anderson<br><br>**PLAINTIFFS' OBJECTIONS TO FORM OF COURT'S PROPOSED PERMANENT INJUNCTION**<br><br>Findings of Fact and Conclusions of Law and Order Finding Defendants Liable for False Advertising and [Proposed] Judgment and Permanent Injunction:<br><br>Filed June 4, 2008 |

## I. Overview of Plaintiffs' Objections to Court's [Proposed] Judgment and Permanent Injunction

In the Court's Findings of Fact and Conclusions of Law and Order Finding Defendants Liable for False Advertising and [Proposed] Judgment and Permanent Injunction (hereafter "Findings" and "Injunction"), the Court allowed the parties ten days "to file any objections to *the form of the Court's proposed permanent injunction*." (Emphasis added).[1] Plaintiffs seek to ensure that the Court's intent to rectify and prevent the false advertising – clearly expressed in pages 28-30 of its Findings – is sufficiently translated into the Injunction language, leaving no room for Defendants to circumvent that intent, including by claims that the Injunction is ambiguous in certain respects.

Plaintiffs have reason to believe that Defendants (self-professed online marketing experts) will attempt to lessen the impact of the Injunction as much as possible, and will try to use every means possible to continue to benefit from the false advertising "good-will" that they have developed in their marketing and branding of DMV.ORG. Indeed, attached as Exhibit A are recent screen-shots of DMV.ORG which reflect what appears to be testing by Defendants of various splash screens subsequent to the Court's issued Findings on June 4, 2008. These exemplars show that Defendants are apparently intending to: (1) brand the splash screen with their DMV.ORG license plate logo; (2) use marketing text on the page such as "We answer your DMV Questions on-line so you don't have to stand in-line"; and (3) possibly display the DMV.ORG website in the background as a faint image, among other things.

///

---

[1] Plaintiffs respect that the Court has already decided on the type of injunction it will order (i.e., an intercept page rather than a divestiture of the domain name DMV.ORG), and therefore will not argue herein for other types of injunctive relief. However, Plaintiffs anticipate that Defendants may do just the opposite and attempt to present evidence or arguments as to why an intercept page should not be ordered. Any such attempt is beyond the scope of this Court's order, which calls for objections to the form of the *proposed injunction* (i.e., the language itself).

While Plaintiffs do not know what Defendants are thinking, it is quite possible that Defendants believe that either one of the exemplars in Exhibit A satisfies the language in the Court's proposed Injunction. These exemplars fit within the Defendants' ongoing pattern of deceptive conduct. Specifically, the test splash screens are heavily branded and de-emphasize to an extreme degree the intercept message while overtly enhancing the likelihood that visitors will click the large and inviting "continue" button without reviewing the intercept message. As this was clearly not the Court's intent for a remedy as expressed extensively in its Findings, Plaintiffs feel it is critical to ensure that the Court's intent is observed and that deception no longer continues at the hands of creative efforts by Defendants to design around the intent of the Injunction.

To prevent this, and pursuant to Fed. R. Civ. Pro. 65's mandate that an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required," Plaintiffs propose the revisions discussed herein to the Injunction. Plaintiffs also submit a redlined version of the Injunction tracking proposed changes [Exhibit B] and a final [proposed] version of the Injunction incorporating the redlined changes [Exhibit C].

**II.  There Should be No Branding or Marketing of DMV.ORG on the Splash Screen – It Should Serve Its Sole Purpose as An Interceptor Ordered by the Court as a Remedy to a False Advertising Liability Finding**

Without requiring Defendants to divest themselves of the DMV.ORG name or to change their search engine marketing practices, the Court aptly recognized that only an acknowledgment page or "splash screen" intercept would be sufficient to cure any existing or imminent confusion in the minds of visitors to DMV.ORG. Specifically, the Court found that confusion may already exist when visitors reach DMV.ORG because of the Defendants' search engine marketing, stating: "This suggests that some consumers are confused before even viewing Defendants' website. Therefore, the Court finds that injunctive relief must be sufficient to remedy any confusion that consumers have already developed before visiting the DMV.ORG website for the first

time." [Findings, pg. 29:5-10.] Likewise, the Court found that an interceptor was the only way to ensure that visitors who email DMV.ORG do so only after being fully advised that they are visiting a private website, noting that "[s]ome members of the public are emailing extremely sensitive information to Defendants in the belief that Defendants are a state agency." [Findings, pg. 28:18-21].

However, to be effective as a remedy for a finding of false advertising liability, the acknowledgment page or interceptor should be just that –and *nothing* more. It should *not* allow the DMV.ORG website to flash before the visitor's eyes before it appears.[2/] It should *not* be another marketing vehicle for Defendants by being branded with the DMV.ORG license plate logo or contain any slogan such as "Welcome to DMV.ORG. We answer your DMV Questions on-line so you don't have to stand in-line." It should *not* allow Defendants to display the DMV.ORG website ever so faintly in the background. It should *not* be that the "continue" click-through button is larger and more prominent that the rest of the disclaiming text. [See, Exhibit A examples of Defendants' testing.] It should *not* allow the public to erroneously think that the Defendants are voluntarily agreed to post it.

Accordingly, the Injunction should be clarified as follows (for the Court's convenience, specific edits to the Court's own proposed Injunction – which follow these guidelines and add additional clarifying language – are submitted in the form of a "redlined" version of the Injunction submitted as Exhibit B):

- The splash screen shall be viewable *immediately* and *prior to any* viewing of the DMV.ORG website. It should not contain any branding or excess wording or logos other than what the Court has proposed, and the DMV.ORG website cannot appear anywhere in the background image (even faintly) of the splash screen.

---

[2/]  Plaintiffs noticed during Defendants' recent testing of a splash screen that when a user typed in "dmv.org" into a browser or entered through a search link, the DMV.ORG website would appear first, albeit momentarily, before any splash screen appeared.

- All fonts used throughout the entire page of the splash screen, including those in the continue button, drop-down menus, etc., should be in black color and be of the same font *type*, *size*, and *boldness* (except that certain words should be bolded and underlined as proposed by the Court).
- The continue button graphic shall not be disproportionately larger than the other text on the site or the drop-down menu.
- For clarity to the visitor (who may know their state's "motor vehicle regulatory agency" to be called DMV or Department of Motor Vehicles), the statement under the continue button should read: "If you intended to visit your state's DMV or motor vehicle regulating agency, choose your state below to be redirected."
- The acknowledgment language should include that the DMV.ORG website is "for profit."
- The drop down menu, like the continue button, should appear on all computer monitors without a visitor having to scroll down.
- The splash screen should have the text: "This acknowledgment page is mandated by a Federal Court ruling."

### III. Technical Means Should Not Be Used to Circumvent the Intent of the Injunction and the Injunction Should Specifically Enjoin Such Means

Plaintiffs noticed during Defendants' recent testing of sample splash screens that after one visit to the DMV.ORG site where the sample splash page was presented, a repeat visit to the site from the same computer did not display the splash page again.[3/] This example highlights how Defendants may try to circumvent the actual intent of the order.

For example, Defendants may interpret the phrase "every visitor", as currently worded in the Court's proposed Injunction, item "(a)", to mean every unique *computer*

---

[3/] Presumably, a "cookie" or other technical means was used for DMV.ORG to recognize a repeat visit by the same computer, and therefore prevent another display of the splash screen.

visiting the site. It is Plaintiffs' position that while each visitor should not be required to see the splash screen every time they navigate to different pages *within* DMV.ORG, each time a visitor attempts to enter any DMV.ORG page (even if from a computer which previously visited the site), that visitor should see the splash screen. This is justified because many families may use only one computer and may have more than one teenager or adult looking for DMV information, and so multiple persons using the same computer should all be presented with the splash page before entering the website, even on subsequent visits.[4] According, the proposed revised language of the Injunction makes clear that the splash page must be seen by each visitor once *upon each visit.*

Moreover, the language of the Injunction should prohibit other practices that may be used by Defendants to circumvent the intent of the Court's rulings. Specifically, the Injunction should make clear that the splash screen should be utilized prior to any entry of both the DMV.ORG domain name and *website*. This is to prevent Defendants from using the exact website content, with DMV.ORG branding, which was found to be false advertising, with another domain altogether and thus argue that the splash screen need not be employed because it is technically not the "dmv.org" domain (even though the user is confronted with the same misleading DMV.ORG branded website.)

In addition, when a visitor reads the splash screen and chooses to use the drop-down menu to be redirected to their state's DMV homepage, Defendants should not be allowed to: (1) display any further messages, advertisements, or other communications to the visitor before the user is directed to their state's DMV website; and (2) collect any identifying information (e.g., IP addresses or emails) or use any tracking devices (e.g., cookies) to then solicit or otherwise contact the visitors that selected to go

---

[4] This is also supported by the Court's Findings that the splash page must communicate to *all visitors* to *all entry pages* of DMV.ORG that the website is privately owned because "injunctive relief must be sufficient to eliminate confusion from all members of the public, not just those that might otherwise use Plaintiffs' services" and that it also "must be sufficient to prevent confusion among DMV.ORG's consumers, may of whom are likely to be teenagers looking to obtain a learner's permit." [Findings, pg. 29:10-22.]

immediately to their state's DMV website. Again, Defendants should not benefit in any way from a visit by a user who was actually intending to go to their state's DMV website.

**IV.     Conclusion**

For all the foregoing reasons, Plaintiffs respectfully request the Court enter the proposed judgment and injunction against Defendants in the form (or substantially the form) submitted as Exhibit C.

DATED: June 18, 2008                    LEWIS BRISBOIS BISGAARD & SMITH LLP

By    /s/
            David N. Makous
            Daniel C. Decarlo
            Mina I. Hamilton
            Attorneys for Plaintiffs