1  BRIAN M. DAUCHER, Cal. Bar No. 174212
2  ROBERT S. BEALL, Cal. Bar. No. 132016
   JOSEPH H. TADROS, Cal. Bar No. 239379
3  ASHLEY E. MERLO, Cal. Bar No. 247997
4  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
          A Limited Liability Partnership
5         Including Professional Corporations
6  650 Town Center Drive, 4th Floor
   Costa Mesa, California  92626-1925
7  Telephone:  (714) 513-5100
   Facsimile:  (714) 513-5130
8  bdaucher@sheppardmullin.com
   jtadros@sheppardmullin.com
9  amerlo@sheppardmullin.com

10 Attorneys for Defendants

11                    UNITED STATES DISTRICT COURT
12                   CENTRAL DISTRICT OF CALIFORNIA
13

14 TRAFFICSCHOOL.COM, INC., a              Case No. CV067561 PA (CWx)
   California corporation; DRIVERS ED      *The Hon. Percy Anderson*
15 DIRECT, LLC., a California limited
   liability company,
16
                  Plaintiffs,              **DEFENDANTS' REPLY IN
17                                         SUPPORT OF MOTION FOR STAY
          v.                               OF THE PERMANENT
18                                         INJUNCTION**
19 EDRIVER, INC., ONLINE GURU,             Hearing Information:
   INC., FIND MY SPECIALIST, INC.,         Date:    October 20, 2008
20 and SERIOUSNET, INC., California        Time:    1:30 p.m.
   corporations; RAVI K. LAHOTI, an        Crtrm.:  15
21 individual; RAJ LAHOTI, an
   individual, and DOES 1 through 10.
22                                         Complaint Filed November 28, 2006
                  Defendants.              Trial Commenced: November 6, 2007
23

-1-

W02-WEST:3JHT1\401089970.1     REPLY ISO MOTION FOR STAY OF PERMANENT
                                          INJUNCTION PENDING APPEAL

Dockets.Justia.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. Introduction

Defendants have shown that a stay of the permanent injunction pending appeal is appropriate in this case to preserve the status quo because (a) the injunction may be more restrictive than necessary, (b) there is a possibility of success on the merits on appeal, and (c) without a stay Defendants will suffer "irreparable harm."

In fact, Defendants are already suffering such harm. Since implementing the splash page, the DMV.ORG website has lost hundreds of thousands of visitors, resulting in significant declines in advertising revenue. (Lahoti Decl., ¶ 5 & 7.) If the injunction is not promptly stayed, Defendants may be unable to maintain profitability or avoid downsizing. (Lahoti Decl., ¶ 7).

Defendants' initial data shows that the splash page injunction may be more restrictive than necessary to remedy the alleged confusion. In June 2008, Defendants employed various measures to the DMV.ORG website to ensure that visitors were aware that it is a privately-owned, independent website, including a yellow banner at the top of each page stating in 16 point font, "DMV.ORG is a **privately owned website** that is **not** owned or operated by any government agency" (see Image A below) as well as acknowledgement check boxes including similar disclaimer language which a visitor must click through before sending communications to the website. After instituting the proactive measures, Defendants received virtually no emails from visitors that included their personal information.

However, upon launching the splash page, Defendants temporarily removed their proactive measures from the site, and Defendants began receiving emails in which visitors included their personal information. Thus, it appears that the splash page may be overly restrictive and at the same time less effective than the proactive measures taken by Defendants.

1    For these reasons, and since no injury will result to Plaintiffs or the public,
2 this Court should preserve the status quo and prevent irreparable harm to Defendants
3 by issuing an injunction pending appeal.

**2.      The Purpose of A Stay Is To Preserve The Status Quo**

Plaintiffs essentially argue in opposition that the Court should not stay the injunction because doing so would be "inconsistent" with the Court's judgment. (Opp., p.5:11-6:1.)  By this flawed logic, though, an injunction would <u>never</u> be proper.  Plaintiffs appear to forget that the purpose of staying an injunction is to <u>preserve</u> <u>the</u> <u>status</u> <u>quo</u>.  See <u>McClatchy Newspapers v. Central Valley Typographical Union No. 46</u>, 686 F.2d 731, 734 (9th Cir. Cal. 1982) ("Rule 62(c) codifies the 'long established' and narrowly limited right of a trial court 'to make orders appropriate to preserve the status quo while the case is pending in [an] appellate court.' [Citation omitted.]") (cited by Plaintiffs).

Yet, at the same time, Plaintiffs misapply this important legal doctrine by suggesting that keeping the injunction in place somehow preserves the status quo. (Opp., p.5:10-11 ("[The splash page] is simply the remedy for the confusion that was proven at trial, and is the status quo during the pendency of the appeal.").)  Such an assertion cannot be taken seriously.

To preserve the status quo, here, is to permit the Defendants to operate the DMV.ORG website with the measures added proactively by Defendants during the course of this lawsuit, and not to allow the Defendants to continue to sustain catastrophic injury.

**3.      Defendants Will Suffer Irreparable Harm Without Issuance Of A Stay**

Defendants have and will continue to suffer irreparable harm if a stay is not issued.  The Defendants have already witnessed the loss of hundreds of thousands of visitors to the DMV.ORG website, have suffered significant declines in advertising revenue, and were forced to significantly cut advertising expenditures in an effort to

maintain profitability. (Lahoti Decl., ¶¶ 5 & 7.) Plaintiffs have offered <u>no evidence</u> to contradict this showing of severe harm, nor can they.

Courts will generally preserve the status quo pending appeal where a party is subject to such dire consequences as Defendants are here. <u>See</u> <u>C. Albert Sauter Co. v. Richard S. Sauter Co.</u>, 368 F. Supp. 501, 520 (E.D. Pa. 1973) (granting stay of execution of money judgment under F.R.C.P. 62(d) where execution would "most likely terminate" the defendant and "eliminate it as a competitor"); <u>McBride v. Western Union Tel. Co.</u>, 78 F. Supp. 446, 450 (C.D. Cal. 1948) (preserving status quo pending appeal where, otherwise, party's business "will be destroyed," since such "considerable damage would result" if the court were in error and the party "would be without a remedy to recoup such damages").

This Court should similarly protect the Defendants against such drastic damages, and from possibly being put out of business altogether, particularly since doing so will not cause harm to Plaintiffs or third parties.

**4.  <u>A Stay Would Do No Harm To Plaintiffs Or The Public</u>**

No harm will come to Plaintiffs or the public if the stay is issued. First, Plaintiffs will not be harmed, as this Court has already ruled that they failed to prove any injury as a result of the DMV.ORG website. (Findings, June 4, 2008, at 31.) Therefore, issuance of a stay is not likely to injure Plaintiffs.

Secondly, as discussed in the Motion, Defendants employed various measures before the Court entered its judgment to ensure that visitors to the website are aware that DMV.ORG is a privately owned website. (Motion, Sec. 2; Lahoti Decl., ¶ 3.) Significantly, Defendants added language from the Court's proposed splash-page disclaimer at the top of <u>each</u> webpage highlighted in yellow and in a font size larger than that required by the Court. (<u>Compare</u> Image A (screenshot of top portion of exemplar DMV.ORG webpage, scaled by 80%) <u>with</u> Image B (screenshot of disclaimer on splash page, also scaled by 80%).) This disclaimer currently remains on DMV.ORG webpages. Defendants also added acknowledgement check boxes

-4-

including similar disclaimer language which a visitor must click through before sending communications to the website. (Lahoti Decl., ¶ 3.)

**Image A**



**Image B**

YOU ARE ABOUT TO ENTER A **PRIVATELY OWNED** WEBSITE THAT IS **NOT** OWNED OR OPERATED BY ANY STATE GOVERNMENT AGENCY. TO CONTINUE, CLICK 'CONTINUE' BELOW.

As explained in the Motion and above, upon launching the splash page, Defendants briefly removed the proactive measures, including the yellow-highlighted disclaimer in Image A and the acknowledgement check boxes, to compare the effectiveness of the splash page.[1] (Lahoti Decl., ¶ 6.) Upon doing so, emails from visitors including personal information (which were nearly non-existent since implementing the additional disclaimers in June 2008) began to increase, which suggests that the Defendants' proactive measures have been more effective at eliminating such emails than the splash page. (Lahoti Decl., ¶ 4 & 6.) Moreover, since the banner has been added to <u>all</u> DMV.ORG webpages (rather than just upon entry to the site), the disclaimer language is more pervasively spread throughout the site.

---

[1] Plaintiffs accuse Defendants of breaking a "post trial promise" to the Court by temporarily taking down the self-imposed precautionary measures. (Opp., p.8:20-23.) Plaintiffs' assumptions are ridiculous. An obvious assumption in Defendants' commitment to maintain its proactive measures, was that the Court's judgment would either approve or supersede them. Moreover, Defendants only <u>temporarily</u> removed the disclaimers, and did so to test the effectiveness of the splash page. The measures have been reinstituted and remain on the website today (though not required).

These factors indicate that even though the splash page is more restrictive, Defendants' own proactive measures may be more effective. Additionally, the splash page may have other unforeseeable, negative consequences (such as a negative impressions from the splash page itself) that have impeded visitors from entering the DMV.ORG website.

With the proactive measures in place, the Court can be confident that in issuing a stay of the injunction, visitors will not be harmed since they are still made aware that DMV.ORG is a publicly-owned website that is not owned or operated by a government agency.

## 5. Conclusion

For the foregoing reasons, and for the reasons in Defendants' original moving papers, Defendants respectfully request that the Court issue a stay of the injunction pending appeal subject to maintenance by Online Guru of the current level of disclaimers and safeguards now on the website.

Dated: October 13, 2008

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  _____
BRIAN M. DAUCHER
JOSEPH H. TADROS

Attorneys for Defendants