DAVID N. MAKOUS (State Bar # 082409)
makous@lbbslaw.com
DANIEL C. DECARLO (State Bar # 160307)
decarlo@lbbslaw.com
MINA I. HAMILTON (State Bar # 213917)
hamilton@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012-2601
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiffs
TRAFFICSCHOOL.COM, INC. and
DRIVERS ED DIRECT, LLC, California companies.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>            Plaintiffs,<br><br>    vs.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual; DOES 1 through 10,<br><br>            Defendants. | ) Case No. CV 06-7561 PA (Cwx)<br>)<br>) The Honorable Percy Anderson<br>)<br>) PLAINTIFFS' NOTICE AND MOTION<br>) FOR CONTEMPT AGAINST<br>) DEFENDANTS FOR VIOLATION OF<br>) THE COURT'S INJUNCTION AND<br>) FOR SANCTIONS; MEMORANDUM<br>) IN SUPPORT THEREOF<br>)<br>) [Filed Concurrently with the Declarations of Thomas Benton Greenhaw V, Benjamin P. Watson, Eric Creditor, Chris Kramer, Daniel C. DeCarlo, and Mina I. Hamilton]<br>)<br>) Date:      January 26, 2009<br>) Time:      1:30 p.m.<br>) Courtroom: 15<br>) |

4826-1039-7955.1

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

Dockets.Justia.com

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

2  NOTICE IS HEREBY GIVEN that on January 26, 2009 at 1:30 p.m or as soon

3  thereafter as the Court may entertain this motion, Plaintiffs TrafficSchool.com, Inc. and

4  Drivers Ed Direct, LLC ("Plaintiffs") will move the Court to issue an order of civil

5  contempt against Defendants Edriver, Inc., Online Guru, Inc., Find My Specialist, Inc.,

6  Serious Net, Inc., Ravi K. Lahoti and Raj Lahoti ("Defendants").

7  Defendants are currently in contempt of the Court's August 26, 2008 permanent

8  injunction ("Injunction") in the following particulars:

9  1.  Pursuant to paragraph 1(f) of the Injunction, the splash screen statement

10  must appear in 14 point font and must be in "larger font size than that used in the

11  DMV.ORG logo and the 'continue' button." Defendants have violated this provision

12  by making the DMV.ORG logo (including text therein) larger than the splash screen

13  statement and the "continue" button.

14  2.  Pursuant to paragraph 1(e) of the Injunction, "nothing other than" the

15  court-ordered splash screen statement and the DMV.ORG logo shall be visible on the

16  splash screen. Defendants have violated this provision by displaying additional text on

17  the splash screen consisting of "title tags" at the top of the screen.

18  3.  Pursuant to paragraph 1(a) of the Injunction, the splash screen must be

19  displayed to "every visitor to any entry webpage of the DMV.ORG domain" prior to

20  viewing any webpage content. Defendants have designed the splash screen using

21  technology that ensures that *not* every visitor will see the splash screen prior to seeing

22  the webpage content, even though alternative technology is readily available that would

23  ensure compliance. Specifically, the following visitors are not being presented with the

24  splash screen *at all* before landing directly on the DMV.ORG website: (a) visitors using

25  mobile devices such as BlackBerry smartphones and Palm Treo devices which are not

26  "Java Script" enabled; (b) visitors using computers with browsers that do not support

27  Java Script or that have Java Script disabled; and (c) visitors using computers that

28  reject "cookies," estimated to be approximately 12% of all computer users.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    This Motion follows dozens of attempts to meet and confer regarding these and

2  other issues since September 2, 2008 and thereafter upon Plaintiffs' discovery of

3  additional violations. As of the date of filing this Motion, despite being placed on notice

4  of these issues, Defendants have either refused to comply or claimed that more time

5  was necessary to comply because they lack the necessary expertise. Neither is

6  excusable.

7    This Motion is based on this Notice and Motion, Memorandum of Points and

8  Authorities, as well as the concurrently filed declarations of Thomas Benton Greenhaw

9  V, Benjamin P. Watson, Mina I. Hamilton, Eric Creditor, Chris Kramer, and Daniel C.

10  DeCarlo, the records on file in this case, and any oral argument or additional evidence

11  that the Court may entertain.

12    Plaintiffs request as relief herein:

13    1.    An order decrying that Defendants are in contempt of court for violating

14  the Injunction;

15    2.    That Defendants be ordered to reimburse Plaintiffs for their attorneys fees

16  and costs relating to policing Defendants' contempt and for having to bring this Motion,

17  and to pay Plaintiffs for the profits derived from the DMV.ORG website during the

18  period of non-compliance (i.e., from the date that the Court ordered the Injunction to

19  the present); and in order to determine these amounts, that within 10 days of the

20  Court's finding of civil contempt, that Plaintiffs submit to the Court supporting

21  documents for their attorney's fees and costs associated with this Motion and that

22  Defendants submit documentation showing their profits during the stated period and any

23  off-sets to those profits claimed, so that the Court may make a final determination as

24  to the appropriate award of compensatory sanctions to be awarded to Plaintiffs; and

25  that Defendants be ordered to pay such attorneys' fees and costs and profits within five

26  days of the Court's further order.

27    3.    That Defendants be ordered to come into full compliance with the

28  Injunction within 10 days from the Court's order on contempt or be subject to a

$10,000 per day coercive sanction for future non-compliance; or in the alternative, that a court-appointed expert be retained to design a splash screen in conformance with the Injunction, at Defendants' expense, pursuant to Fed. R. Civ. P. 70(a).


DATED: January 5, 2009                Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP


By:_____/s/___Mina Hamilton_____
         David N. Makous
         Daniel C. DeCarlo
         Mina I. Hamilton
         Attorneys for Plaintiffs

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4826-1039-7955.1

-3-

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION
AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

**Page**

I. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF VIOLATIONS AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . 2

    A. Past Violations Show A Blatant Disregard For This Court's Injunction And The Need To Police Defendants' Noncompliance . . . . . . . 2

    B. Current Violations Exist And Are Significant . . . . . . . . . . . . . . . . . . . . . . . 3

        1. *Improper Logo Size.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2. *Improper Title Tags.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        3. *Splash Screen Not Visible to Every Visitor.* . . . . . . . . . . . . . . . . . 4

    C. Sanctions And Expert Appointment Requested (If Necessary) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. CONTEMPT STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A. The Nature And Purpose Of Civil Contempt . . . . . . . . . . . . . . . . . . . . . 6

    B. The Burden Of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. There Is No Willful Requirement Or Good Faith Exception . . . . . . . . . 6

    D. Defendants Must Show That They Took All Reasonable Steps To Comply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    E. Enjoined Parties Must Keep A "Safe Distance" From Violations . . . . . . . . 7

    F. Policing Action Is Required By Those Enjoined . . . . . . . . . . . . . . . . . . . 7

IV. CLEAR AND CONVINCING EVIDENCE SHOWS THAT DEFENDANTS HAVE NOT MADE REASONABLE EFFORTS TO COMPLY WITH THE SPECIFIC AND DEFINITE PROVISIONS OF THE INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A. The DMV.ORG Logo . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1. Relevant Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2. Paragraph 1(f) Of The Injunction Is Specific And Definite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3. Evidence Of Non-compliance . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        4. Defendants Have An Ability To Comply . . . . . . . . . . . . . . . . . 10

    B. Title Tag Text On The Splash Screen And Other Past Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

1.     Paragraph 1(e) Of The Injunction Is Specific And Definite . . . . . . . . 10

2.     Evidence Of Non-Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    (a)    Title Tags Marketing . . . . . . . . . . . . . . . . . . . . . . . . . 11

    (b)    Past Violations: Displays Of Advertising On The Splash Screen And Direct Links To Advertising From The Splash Screen . . . . . . . . . . . . . . . . . . . 11

3.     Defendants Have An Ability to Comply . . . . . . . . . . . . . . . . . . . . . 13

C.    Visitors Not Seeing The Splash Screen At All . . . . . . . . . . . . . . . . . . . 13

1.     Paragraph 1(a) Of The Injunction Is Specific And Definite . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

2.     Evidence Of Non-Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    (a)    A Significant Portion Of Mobile Device Users Do Not See The Splash Screen . . . . . . . . . . . . . . . . . . . . . 13

    (b)    Visitors Using Computers With Browsers That Do Not Support "Java Script" Or Have "Java Script" Disabled Do Not See The Splash Screen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    (c)    Visitors That Reject "Cookies" Do Not See The Splash Screen . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

3.     Defendants Have An Ability to Comply . . . . . . . . . . . . . . . . . . . . . 16

4.     If Defendants Continue To Claim That They Lack The Necessary Expertise To Design A Compliant Splash Screen, Fed. R. Civ. P. 70(a) Allows The Court To Appoint An Expert . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.    REMEDIAL AND COERCIVE SANCTIONS REQUESTED . . . . . . . . . . . . . . . . . . . 18

A.    Remedial Sanctions Are Warranted . . . . . . . . . . . . . . . . . . . . . . . . . 18

1.     Awarding Plaintiffs' Attorneys' Fees Is Appropriate . . . . . . . . . . . 19

2.     Awarding Defendants' Profits During Noncompliance Is Justified . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.    A Large Coercive Sanctions Is Warranted . . . . . . . . . . . . . . . . . . . . . . . . 21

1.     The Harm Of Continued Violations Is Great . . . . . . . . . . . . . . . . . . . 21

2.     A Large Monetary Amount Is Necessary To Compel Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4826-1039-7955.1

-ii-

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION
AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

2 <u>**Federal Cases**</u>

3 *In re Bennett*, 298 F.3d 1059 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4 *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353 . . . . . . . . . . . . . . . . . . . . . . . . 7

5 *Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc.*, 744 F. Supp. 526 . . . . . . . . 8,12

6 *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361 . . . . . . . . . . . . . . . . . . . . . . . . 6

7 *FTC v. Affordable Media, LLC*, 179 F.3d 1228 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8 *Frank Music Corp. v. Metropolitan-Goldwyn-Mayer, Inc.*, 772 F.2d 505 . . . . . . . . . . . . 20

9 *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 . . . . . . . . . . . . . . . . . . 5,7,8,12,18,20

10 *Guess?, Inc. v. Tres Hermanos Inc.*, 51 U.S.P.Q.2d 1687 . . . . . . . . . . . . . . . . . . . . . . . 19

11 *Harvey-Davidson, Inc. v. Morris*, 19 F.3d 142 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12 *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998 . . . . . . . . . . . . . . . . . . . . . . . 5,20

13 *King v. Allied Vision*, 65 F.3d 1051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

14 *Manhattan Industries, Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 . . . . . . . . . . . . . . 7

15 *McComb v. Jacksonville Paper Company*, 336 U.S. 187 . . . . . . . . . . . . . . . . . . . . . . . . 6

16 *Perry v. O'Donnell*, 759 F.2d 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 *Plough, Inc. v. Kreis Laboratories*, 314 F.2d 635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 *Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126 . . . . . . . . . . . . . . . . . . . 5,18,19

19 *Sekaquaptewa v. MacDonald*, 544 F.2d 396 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20 *Stone v. City and County of San Francisco*, 968 F.2d 850 . . . . . . . . . . . . . . . . . . . . . . . 6

21 *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 211 U.S.P.Q. 25 . . . . . . . . . . . . . . . . . 7

22 *United States v. United Mine Workers*, 330 U.S. 258 . . . . . . . . . . . . . . . . . . . . . . . . . . 6,18

23 *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 . . . . . . . . . . . . . . 7

24 *Wesco Manufacturing, Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833
      F.2d 1484 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25 *Western Lighting Corp. v. Smoot-Holman Co.*, 352 F.2d 1019 . . . . . . . . . . . . . . . . . . . 19

26 *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

27 *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320 . . . . . . . . . . . . . . . . . . . . . . . . . 7

28

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4826-1039-7955.1                                           -iii-

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION
AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

**<u>Federal Statutes</u>**

18 U.S.C.A. § 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,5,6,17,18,22

15 U.S.C. § 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>Trademark Law Revision Act of 1988</u>
    Pub.L. 100-667, 102 Stat. 3935 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

4826-1039-7955.1

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PROCEDURAL BACKGROUND

Plaintiffs filed suit approximately two years ago alleging that Defendants' misleading marketing practices related to the DMV.ORG website constituted willful false advertising and unfair competition. Plaintiffs sought as a primary remedy the divestiture of the "dmv.org" domain name from Defendants as well as a disgorgement of Defendants' profits and Plaintiffs' attorney's fees and costs through trial.

On June 4, 2008, after a bench trial and post-trial submissions, the Court found Defendants liable for willful false advertising under § 43 (a) of the Lanham Act, but declined to divest Defendants of the "dmv.org" domain name or to award any monetary relief other than costs of suit to Plaintiffs. Rather, in its Findings of Facts and Conclusions of Law, the Court proposed a permanent injunction consisting of an intercept "splash screen" to the DMV.ORG website. After considering the parties' divergent written objections to the form of the proposed injunction, the Court issued its final Judgment and Permanent Injunction on August 26, 2008, Docket # 215 ("Injunction"), *which contains very specific and definite provisions* regarding the parameters of the splash screen.[1]

Instead of being grateful that the Court (1) allowed them to keep the dmv.org domain name, (2) did not order changes to their search engine practices or to the DMV.ORG website itself, and (3) declined to award any monetary relief other than costs to Plaintiffs, Defendants have decided to risk a contempt finding rather than comply with the Injunction.[2] As will be shown, Defendants have *never* been in compliance, and are guilty of both past and current violations of the Injunction.

---

[1]    See, Declaration of Mina Hamilton ("Hamilton Decl."), ¶ 2, Ex. A (Injunction).

[2]    Indeed, Defendants believe that this Court was wrong to issue the Injunction and initiated an appeal to the Ninth Circuit on the "scope of the injunctive relief ordered," among other things. [See, *Civil Appeals Docketing Statement*, Docket # 223.] While an appeal is Defendants' right, defiant non-compliance with the Injunction pending appeal is not.

## II.    SUMMARY OF VIOLATIONS AND RELIEF REQUESTED

### A.    Past Violations Show A Blatant Disregard For This Court's Injunction And The Need To Police Defendants' Noncompliance

Almost immediately after this Court enjoined the Defendants, Plaintiffs had to police Defendants' non-compliance by *repeatedly* bringing violations to their attention. In some instances, Defendants were displaying the advertisement of "Teen Drivers Education" (Defendants' provider in California for drivers education courses) directly over the Court mandated disclaimer on the splash screen.[3] In other cases, Defendants were displaying drop down menus on the splash screen that directed visitors to Defendants' advertising partners on the DMV.ORG website without the visitors having to first click through the "continue" button below the disclaimer.[4]

It was only *after* Plaintiffs confronted Defendants with these violations that Defendants cured them, labeling them as an "error on the screen shot," a "problem on the link," and a "technical bug."[5]   However, these admitted past violations are significant because they not only show that Plaintiffs had to police Defendants' non-compliance, but because they show that Defendants initially attempted to thwart the immediate effect of the Injunction by using the splash screen to divert visitors directly to Defendants' third party traffic school and driver's education providers in order to generate as much referral fee revenue as possible without interference of the Injunction for as long as possible.[6]

---

[3]    See, Hamilton Decl., ¶ 3(a), Ex. B (email and 9:45 a.m. screen shot, 9/3/08).

[4]    See, Hamilton Decl., ¶5, Ex. D (email and 9/22/08 screen shots showing "Choose Your County" drop down menus on New York and New Jersey defensive driving and traffic school pathway links on DMV.ORG, and sample resulting advertising page for "American Safety Classes" advertisement on DMV.ORG.).

[5]    See, Hamilton Decl., ¶ 4, Ex. C;  ¶ 6, Ex. E; ¶ 7, Ex. G.

[6]    See, *Findings of Fact...*, Docket # 210, pg. 3:11-13 and pg. 5:21-27, finding that Defendants make the majority of their money through referral fees from third party traffic school and driver's education providers.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**B.     Current Violations Exist And Are Significant**

With regard to certain other substantial violations that are still ongoing, Defendants have either stubbornly refused to comply or have indicated that they need more time and lack the necessary expertise to comply, stating that "the imposition of the splash page is a complicated undertaking that will require refinement and adjustments over time" and that with "respect to mobile devices, further technical work is ongoing . . ." [Hamilton Decl., ¶ 9, Ex. G; ¶ 10, Ex. H.]

As will be shown, a compliant splash screen is *not* a complicated undertaking and full compliance has always been entirely feasible.[7] However, even after approximately four months now, Defendants are still violating three (out of six) clear and unambiguous provisions of the Injunction, as follows:

1.     *Improper Logo Size.*

Defendants are ignoring the clear mandate of paragraph 1(f) of the Injunction by making the DMV.ORG logo (including text therein) *much larger* than the splash screen statement and the "continue" button when the Court specified that it must be smaller, and when compliance is feasible (as evidenced by smaller versions of the DMV.ORG logo that are displayed on Defendants' own website at www.onlineguru.com, as well as Plaintiffs' mock-up sample compliant screen pages).[8]

2.     *Improper Title Tags.*[9]

Defendants are ignoring paragraph 1(e) of the Injunction by displaying marketing

---

[7]     See, Declaration of Thomas Benton Greenhaw V ("Greenhaw Decl."), ¶¶ 15-18 (Section "C. Compliance is Feasible"); and Declaration of Benjamin P. Watson ("Watson Decl."), ¶¶ 4-13, Exs. A-I.

[8]     See, Watson Decl. ¶¶ 3-11, Exs. A-H; Hamilton Decl. ¶ 3 (a), Ex. B (9/3/08, 9:41 am screen shot), and Ex. I (more recent screen shots of splash screen).

[9]     "Title tags" refer to the visible text in the top line of a Web browser that is created by the website designer and usually consist of descriptive wording for the page that is being shown in the browser window. The title tags are visible on the splash screen (with different marketing text) to every visitor to the DMV.ORG domain that views the splash screen. See, Watson Decl., ¶ 12, Ex. I; Hamilton Decl. ¶ 11, Ex. I (illustrative screen shots with circles around the title tag text on the DMV.ORG splash screen).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    text on the splash screen consisting of "title tags" when the Court ordered that nothing

2    other than the disclaimer statement and continue button, and the DMV.ORG logo shall

3    be visible on the splash screen, and when compliance is simply a matter of deleting the

4    title tag text. [Watson Decl., ¶¶ 12-13, Exs. A and B (showing mock-up sample splash

5    screens with no title tag text).]

6            *3.*    *Splash Screen Not Visible to Every Visitor.*

7       Defendants are ignoring paragraph 1(a) of the Injunction by using technology

8    that ensures that *not* every visitor will see the splash screen, even though the Court

9    ordered that the splash screen must be displayed to "**every** visitor to any entry webpage

10   of the DMV.ORG domain" (emphasis added) and even though feasibility is not an issue.

11   Specifically, visitors that do not have Java Script enabled devices (i.e., a significant

12   portion of mobile device users, including users of the BlackBerry and Palm Treo, and

13   those computer users who disable Java Script on their computers), and users that reject

14   "cookies" (estimated to be approximately 12% of all computer users) are not viewing

15   the splash screen at all; instead, they are improperly and without excuse being directed

16   immediately to the DMV.ORG website and content.[10/]

17       To comply, Defendants have to make the splash screen viewable to *every* visitor.

18   As will be shown, technology is available that would make the splash screen viewable

19   to every visitor to the DMV.ORG domain, but Defendants have chosen to design their

20   splash screen using a different technology that makes the viewing of the splash screen

21   dependant on the visitor's computer settings. Nonetheless, if a visitor is unable to view

22   the splash screen for any reason, then Defendants should make the DMV.ORG website

23   content *inaccessible* to that visitor altogether, which they have not done.

24

25          [10/]    See, Declaration of Eric Creditor ("Creditor Decl."), ¶¶ 2-5, Ex. A

26   (multimedia PDF illustration of results when users reject cookies); Declaration of Chris Kramer ("Kramer Decl."), ¶¶ 2-3, Ex. A (multimedia PDF illustration of results when

27   Java Script is disabled); Declaration of Daniel C. DeCarlo ("DeCarlo Decl."), ¶2; Greenhaw Decl., ¶¶ 8-14 (discussing Java Script disabling and cookies disabling and

28   citation to 12% of users that reject cookies, Ex. B) and ¶¶ 15-18 (explaining in detail how compliance is feasible).

1    Moreover, while it is irrelevant whether the *majority* of visitors to DMV.ORG

2    are presented with the splash screen since the Injunction calls for *every* visitor to see

3    it, it is disingenuous for Defendants to claim that this violation is insignificant in any

4    respect. Even if only a small *percentage* of visitors do not view the splash screen, this

5    still represents a significant amount of the public since Defendants claim that they have

6    6 million unique visitors each month to their website and 65 million viewers each year,

7    and that they are positioning the DMV.ORG website "for exponential growth in the

8    years ahead."[11/] It is also undisputable that consumers are increasingly using their mobile

9    devices to access the Internet, and that BlackBerry devices are leading in sales for such

10   devices, with Palm devices not far behind.[12/]

11   **C.    Sanctions And Expert Appointment Requested (If Necessary)**

12   Based on the above violations, summarized above and detailed further herein,

13   Plaintiffs easily meet their burden on a contempt motion by proving that Defendants

14   have violated specific and definite provisions of the Injunction. See, FTC v. Affordable

15   Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). Accordingly, sanctions should be

16   employed to compensate Plaintiffs for their attorneys' fees and costs incurred in having

17   to bring this Motion, and for the profits derived from the DMV.ORG website during the

18   period of non-compliance. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126,

19   1130, n. 5 (9th Cir. 2006); Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998,

20   1004 (9th Cir. 2004). In addition, Plaintiffs request appropriate coercive sanctions to

21   force Defendants to come into compliance with the Injunction by a prospective

22   monetary sanction if Defendants fail to comply by a given date; or in the alternative, for

23   the Court to appoint an expert web designer (at Defendants' expense) to ensure that the

24   splash screen is compliant. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380

25   (9th Cir. Cal. 1986); Fed. R. Civ. P. 70(a).

26   _____

27   [11/]    See, Hamilton Decl., ¶ 12, Ex. J.

28   [12/]    See, Hamilton Decl., ¶ 13, Ex. K (Los Angeles Times Business article); ¶ 14; Ex. L (Information Week article).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

III.     **CONTEMPT STANDARDS**

A.     **The Nature And Purpose Of Civil Contempt**

It is axiomatic that federal courts may punish as contempt the "disobedience or resistance to its lawful writ, process, order, rule, decree or command." 18 U.S.C.A. § 401(3); <u>Perry v. O'Donnell</u>, 759 F.2d 702, 705 (9th Cir. 1985).[13] Judicial sanctions in civil contempt proceedings are intended to both coerce the defendant into compliance with the court's order and to compensate the complainant for its losses. <u>United States v. United Mine Workers</u>, 330 U.S. 258, 303-04 (1947).

B.     **The Burden Of Proof**

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." <u>In re Bennett</u>, 298 F.3d 1059, 1069 (9th Cir. 2002).

C.     **There Is No Willful Requirement Or Good Faith Exception**

The moving party does not have to show that the contempt was willful, and there is no "good faith" exception to the requirement of obedience to a court order. <u>In re Crystal Palace Gambling Hall, Inc.</u>, 817 F.2d 1361, 1365 (9th Cir. 1987); <u>Stone v. City and County of San Francisco</u>, 968 F.2d 850, 856-857 (9th Cir. 1992); <u>McComb v. Jacksonville Paper Company</u>, 336 U.S. 187, 191(1949).

D.     **Defendants Must Show That They Took All Reasonable Steps To Comply**

In demonstrating an inability to comply, the non-movants "must show they took every reasonable step to comply." <u>Stone v. San Francisco</u>, 968 F.2d 850, 856, ftn. 9

---

[13]     Also, pursuant to Fed. R. Civ. P. 70(a), if "a judgment requires a party to . . . perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done – at the disobedient party's expense – by another person appointed by the court" and Rule 70(e) states that the "court may also hold the disobedient party in contempt."

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  (9th Cir. Cal. 1992)(citing <u>Sekaquaptewa v. MacDonald</u>, 544 F.2d 396, 404 (9th Cir.

2  1976)). Likewise, "substantial compliance" may only be a defense to contempt by a

3  party who "take[s] all reasonable steps to prevent the violation" of the injunction.

4  <u>General Signal Corp. v. Donallco, Inc.</u>, 787 F.2d 1376, 1378-79 (9th Cir. 1986);

5  <u>Harvey-Davidson, Inc. v. Morris</u>, 19 F.3d 142, 149 (3d Cir. 1994)(demonstrating how

6  more recent decisions have narrowed the defense as applied in <u>Vertex Distributing, Inc.</u>

7  <u>v. Falcon Foam Plastics, Inc.</u>, 689 F.2d 885, 891 (9th Cir. 1982), stating: "the court [in

8  <u>Vertex</u> did not hold that all good faith interpretations would be a defense to contempt).

9      **E.    Enjoined Parties Must Keep A "Safe Distance" From Violations**

10          In addition to the above standards, in the context of unfair competition and

11  Lanham Act cases, courts have often followed what is known as the "safe distance

12  rule." The classic statement of the rule is from the Sixth Circuit in 1930:

13              [A] competitive business, once convicted of unfair

14              competition in a given particular, should thereafter be required

15              to keep a safe distance from the margin line - even if that

16              requirement involves a handicap as compared with those who

17              have not [been found guilty of unfair competition].

18  <u>Broderick & Bascom Rope Co. v. Manoff</u>, 41 F.2d 353, 354 (6th Cir. 1930).

19          The Ninth Circuit has affirmed this rule. <u>Plough, Inc. v. Kreis Laboratories</u>, 314

20  F.2d 635, 639 (9th Cir. 1963); <u>Wolfard Glassblowing Co. v. Vanbragt</u>, 118 F.3d 1320,

21  1323 (9th Cir. 1997). See, also, <u>Transgo, Inc. v. Ajac Transmission Parts Corp.</u>, 211

22  U.S.P.Q. 25, *8  (C.D. Cal. 1981)("One under an injunction must do more than see

23  how close he can come with safety to that which he has been enjoined from doing").

24      **F.    Policing Action Is Required By Those Enjoined**

25          Finally, diligent compliance with the terms of an injunction is necessary to avoid

26  a contempt finding. An enjoined party that is not "reasonably diligent and energetic in

27  attempting to accomplish what was ordered" fails to ensure proper and effective

28  compliance and is in contempt. <u>Manhattan Industries, Inc. v. Sweater Bee by Banff,</u>

1  Ltd., 885 F.2d 1, **12 (2d Cir. 1989), cert. denied, 494 U.S. 1029 (1990). More is

2  required than a grudging, half-hearted or foot-dragging attempt at compliance. Cancer

3  Research Inst., Inc. v. Cancer Research Soc'y, Inc., 744F. Supp. 526, 530 (S.D.N.Y.

4  1990); see also, General Signal Corp. v. Donallco, Inc., 787 F.2d 1376 (9ᵗʰ Cir. 1986)(a

5  party who does not "take all reasonable steps to prevent the violation" will be found in

6  contempt).

7  **IV.  CLEAR AND CONVINCING EVIDENCE SHOWS THAT DEFENDANTS**

8  **HAVE NOT MADE REASONABLE EFFORTS TO COMPLY WITH THE**

9  **SPECIFIC AND DEFINITE PROVISIONS OF THE INJUNCTION**

10  Plaintiffs can easily establish the elements required for a contempt finding and

11  refute any claimed defense because (1) the Injunction provisions that Defendants have

12  failed to comply with are "specific and definite," (2) the evidence of noncompliance is

13  "clear and convincing," and (3) despite having an ability to comply, Defendants have

14  failed to take reasonable steps to comply or to keep a "safe distance" from violating the

15  Injunction.

16  **A.  The DMV.ORG Logo**

17  **1.  Relevant Background**

18  Before the Court ordered the final Injunction, it gave both parties an opportunity

19  to object to the form of the Court's *proposed* injunction. In their objections, Plaintiffs

20  alerted the Court to Defendants' apparent intent to brand the splash screen with the

21  DMV.ORG license plate logo and other marketing text.[14] In drafting and ordering the

22  final Injunction, the Court appeared to make a compromise, and allowed Defendants to

23  display the DMV.ORG license plate logo – but no other marketing – on the splash

24  screen, but *specifically required the disclaimer language to appear in larger font than*

25  *that used in the DMV.ORG license plate logo (and the "continue") button.*[15]

26  ─────────────

27  [14]  See, *Plaintiffs' Objections...*, Docket #213, Ex. A.

28  [15]  The purpose of the Injunction is not to enable Defendants to create a splash
screen that benefits their branding interests through the use of logos and other

### 2. Paragraph 1(f) Of The Injunction Is Specific And Definite

Paragraph 1(f) of the Injunction states: "The statement in paragraph (c) shall appear in fourteen (14) point font, and ***shall be in larger font size than that <u>used</u> in the DMV.ORG logo*** and the 'continue' button." (Emphasis added.) There is nothing ambiguous about the Court's order; it is specific and definite in its proscription that the font "used in the DMV.ORG logo" must be smaller than the font used in the disclaimer statement. No other interpretation is possible from the plain meaning of the provision.[16]

### 3. Evidence Of Non-compliance

Defendants have violated this provision by making the DMV.ORG logo font much larger than the splash screen disclaimer statement and continue button.[17] As is readily apparent from the evidence, Defendants are not in compliance: the "DMV.ORG" lettering in the logo is larger than the disclaimer font and the continue button and therefore Defendants have not made it so that the "statement in paragraph (c) shall appear in fourteen (14) point font, and shall be in larger font size than that used in the DMV.ORG logo and the 'continue' button.[18]

/ / /

/ / /

marketing text; it is to cure the rampant and bad faith deception that Defendants employed.

[16] Plaintiffs' counsel justifiably rejected an offer by Defendants' counsel to seek clarity on the issue from the Court. It was (and is) Defendants' burden to make any motions it wishes to the Court, and Defendants' risk in not doing so. Defendants failure to abide with the clear provision of the Injunction on this point is not based on any good faith or reasonable interpretation of the Injunction. As noted above, Defendants are required to "keep a safe distance from the margin line" by making the DMV.ORG font smaller than the disclaimer, even if they have any subjective doubt about the Court's prohibition.

[17] See, Hamilton Decl., ¶ 11, Ex. I (splash screens from DMV.ORG showing same) and ¶ 3 (b), Ex. B (9/3/08, 9:41 am screen shot); Watson Decl., Ex. ¶ 4-11, Exs. A-B and C-D (visual aids showing size of disclaimer font and DMV.ORG logo); Ex. F.

[18] Besides improperly making the DMV.ORG logo text larger than the disclaimer text, Defendants do not appear to be using a true 14 point font for the disclaimer text as is required under the Injunction, but rather, a 10 point font, as illustrated and explained in the Watson Decl., ¶ 6, Exs. C-E.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**4.    Defendants Have An Ability To Comply**

Paragraph 1(f) of the Injunction is readily capable of being adhered to, even in an aesthetically acceptable manner. Plaintiffs were able to create two sample mockups of a splash screen that comports with the Injunction on this point in less than one hour [Watson Decl., ¶¶ 4-11, Exs. A-B.]

Defendants were put on notice of this violation and explained their noncompliance through their counsel by stating, "If we make the letters 'DMV.ORG' in the logo less than 14 [font], as you suggest, the logo become illegible (see attached) . . . " [Hamilton Decl., ¶ 16, Ex. N].    Defendants' counsel attempted to support this statement by presenting Plaintiffs' counsel with a grossly exaggerated small version of the DMV.ORG logo, claiming that it was representative of what the logo would look like if Defendants adhered to the Court's order. [Id.]

Defendants claim that they are incapable of making the logo smaller is without merit. Plaintiffs discovered that Defendants themselves are displaying the same DMV.ORG logo on their own website in smaller versions than what they are currently displaying on the DMV.ORG splash screen. [Watson Decl., ¶¶ 9-11, Exs. G and H.] As shown by Plaintiffs' mock-up sample splash screens, and Defendants' own ability to create and display smaller versions of the DMV.ORG logo which are clearly legible on their www.onlineguru.com website, Defendants' feigned excuse is not valid.[19]

**B.    Title Tag Text On The Splash Screen And Other Past Violations**

**1.    Paragraph 1(e) Of The Injunction Is Specific And Definite**

Paragraph 1(e) of the Injunction states: "***Nothing other than*** the content in paragraph (c) and the DMV.ORG logo shall be visible to the visitor when viewing the acknowledgment splash page." [Emphasis added.] Again, this language is clear and unambiguous, specific and definite.

---

[19]    Plaintiffs anticipated that Defendants "will attempt to lessen the impact of the Injunction as much as possible, and will try to use every means possible to continue to benefit from the false advertising 'good will' that they have developed..." [Docket #213 at lns 12-15.]

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    **2.    Evidence Of Non-Compliance**

2    **(a)    Title Tags Marketing**

3    Defendants have violated this provision by making additional text in the form of

4    "title tags" viewable to the visitor when viewing the splash screen. "Title tags," or the

5    visible text in the top line of a Web browser are entirely created and under the control

6    of the website designer. They are used as a marketing tool and usually consist of

7    descriptive wording for the page that is being shown in the browser window. [Watson

8    Decl., ¶ 12, Ex. I.]

9    Specifically, Defendants are displaying title tags at the top of the DMV.ORG

10   splash screen such as "DMV.ORG – DMV Guide – The Unofficial Guide to the DMV";

11   "Traffic Schools Online Guide - Find Internet Traffic Ticket School Info-DMV.ORG";

12   "Driver Ed Online Guide-Online & Classroom Drivers Education." The precise title tag

13   text viewable to the visitor to the DMV.ORG splash screen depends on the URL or

14   pathway link that is used to access the website. In each case, however, the title tag is

15   visible to each visitor to the DMV.ORG domain that views the splash screen.[20] These

16   title tags serve a pure marketing function and have no place on the splash screen after

17   this Court ordered that nothing other than the disclaimer statement and the DMV.ORG

18   logo and continue button shall be visible on the splash screen.

19   **(b)    Past Violations: Displays Of Advertising On The**

20   **Splash Screen And Direct Links To Advertising From**

21   **The Splash Screen**

22   In addition to Defendants' current violation of the Injunction through the display

23   of title tags on the splash screen, past violations of Paragraph 1(e) have been admitted

24   to by Defendants, and these past violations are alone sufficient for a finding of

25   contempt. Almost immediately since the Court ordered the Injunction, Plaintiffs had to

26   repeatedly inform Defendants of violations of Paragraph 1(e). In some cases,

27

28   [20]    See, Watson Decl., ¶ 12, Ex. I; Hamilton Decl. ¶ 11, Ex. I (illustrative
screen shots with circles around the title tag text on the DMV.ORG splash screen ).

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  Defendants displayed the advertisement of "Teen Drivers Education" (Defendants'

2  provider in California for drivers education courses) rather than the Court mandated

3  disclaimer on the splash screen.[21]  In other cases, Defendants displayed drop down

4  menus on the splash screen itself that directed visitors to Defendants' advertising

5  partners on the DMV.ORG website without the visitors first having to click through the

6  "continue" button below the disclaimer text.[22]

7  Defendants acknowledged and cured these violations only *after* Plaintiffs

8  confronted Defendants with the violations. While Defendants chose to label the

9  violations as an "error on the screen shot," a "problem on the link," and a "technical

10  bug,"[23] these admitted past violations show that Plaintiffs had to police Defendants'

11  non-compliance in order to stop Defendants from actually using the splash screen to

12  generate profit by diverting visitors directly to Defendants' third party traffic school and

13  driver's education providers without interference of the Injunction for as long as

14  possible.[24]

15  As noted above, where a defendant fails to undertake serious policing action in

16  the face of an expanding body of obvious violations of the decree, it will be held in

17  contempt. Cancer Research Inst., Inc. v. Cancer Research Soc'y, Inc., 744F. Supp.

18  526 (S.D.N.Y. 1990)(more is required than a grudging, foot-dragging attempt at

19  compliance; contempt was found); General Signal Corp. v. Donallco, Inc., 787 F.2d

20  1376 (9th Cir. 1986)(a party who does not "take all reasonable steps to prevent the

21

22  ─────────────────
      [21]    See, Hamilton Decl., ¶ 3(a), Ex. B (email and 9:45 a.m. screen shot,
23  9/3/08).

24      [22]    See, Hamilton Decl., ¶5, Ex. D (email and 9/22/08 screen shots showing
   "Choose Your County" drop down menus on New York and New Jersey defensive
25  driving and traffic school pathway links on DMV.ORG, and sample resulting page for
   "American Safety Classes" advertisement on DMV.ORG.).

26      [23]    See, Hamilton Decl., ¶ 4, Ex. C; ¶ 6, Ex. E; ¶ 7, Ex. G.

27      [24]    See, *Findings of Fact...*, Docket # 210, pg. 3:11-13 and pg. 5:21-27,
28  finding that Defendants make the majority of their money through receiving referral fees
   from third party traffic school and driver's education providers.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   violation" will be found in contempt).

2           **3.    Defendants Have An Ability to Comply**

3       Paragraph 1(e) of the Injunction is readily capable of being adhered to because

4   Defendants control the title tag text and can eliminate it altogether from the splash

5   screen. [Watson Decl., ¶¶ 12-13, Exs. I; A and B(sample splash screen mock-ups

6   prepared by Plaintiffs without the title tag text).] When asked to remedy the

7   noncompliance, Defendants simply refused to do so and never offered any explanation

8   for why the title tag text on the splash screen is not a violation of the Injunction.

9   [Hamilton Decl., ¶¶ 8 and 9, Exs. G and H (September 23, 2008 e-mail exchange

10  between counsel).]

11      **C.    Visitors Not Seeing The Splash Screen At All**

12          **1.    Paragraph 1(a) Of The Injunction Is Specific And Definite**

13      Paragraph 1(a) of the Injunction states: "Defendants shall employ an

14  acknowledgment splash page, or "splash screen" that **every** visitor to any entry

15  webpage on the DMV.ORG domain shall see prior to viewing any webpage content."

16  This statement is specific and definite in its requirement that <u>every</u> visitor to the

17  DMV.ORG domain must see the splash screen before viewing any website content.

18          **2.    Evidence Of Non-Compliance**

19      Defendants have designed the splash screen using technology that ensures that

20  *many* visitors to the DMV.ORG domain are not presented with the splash screen *at all*

21  before viewing the website content, including the following visitors: (a) those using

22  non-Java Script enabled mobile devices such as the BlackBerry and Palm Treo; (b)

23  those using computers with browsers that do not support "Java Script" or have "Java

24  Script" disabled; and (c) those using a computer that rejects "cookies," estimated to be

25  approximately 12% of all computer users.

26          **(a)    A Significant Portion Of Mobile Device Users Do Not**

27                  **See The Splash Screen**

28      Defendants have chosen what is known as Java Script to render the splash

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    screen. [Greenhaw Decl., ¶ 9.] Java Script is a programming technology that operates

2    on the computer user's web browser. [Id.] It allows the web browser to recognize

3    content written using the Java Script application. [Id.] Accordingly, in order for the

4    splash screen to be visible to visitors to the DMV.ORG domain , the visitor *must* be

5    using a Java Script enabled web browser or device. [Greenhaw Decl., ¶¶ 9 and 10.]

6        Accordingly, Defendants' use of Java Script ensures non-compliance with

7    paragraph 1(a) of the Injunction because a significant portion of mobile devices are not

8    Java Script enabled. For example, users accessing the DMV.ORG domain from their

9    BlackBerry and Palm Treo mobile devices, and any other non-Java Script enabled

10   mobile device, do not (and will not) see the splash screen before viewing the

11   DMV.ORG website.[25/]

12       As <u>every</u> visitor must be presented with the splash screen, Defendants are not in

13   compliance because they have designed a splash screen which cannot be viewed by a

14   significant and growing number of mobile device users. According to one report, the

15   non-Java Script enabled BlackBerry made up 44.5% of the mobile device market for the

16   first three months of 2008 with Palm in third place for sales.[26/] Moreover, there can be

17   no doubt that consumers are becoming increasingly reliant upon mobile devices such

18   as Blackberries and Palm Treos to access the worldwide Web. In a recent Los Angeles

19   Times article, it was stated that about 11% of North Americans use the Internet on their

20   cellphones at least once a month.[27/] Access to web sites by users of mobile devices is

21   therefore prevalent and growing.[28/] Accordingly, the failure by Defendants to design a

22

23       [25/]   <u>See</u>, Greenhaw Decl., ¶ 10; Creditor Decl., ¶¶ 2-4; DeCarlo Decl., ¶ 2;
     Kramer Decl., ¶ 2.

24       [26/]   <u>See</u>, Hamilton Decl., ¶ 14, Ex. L (May 30, 2008 article from Information
25   Week setting forth these statistics).

26       [27/]   <u>See</u>, Hamilton Decl., ¶ 13, Ex. K (October 13, 2008 article from Los
     Angeles Times).

27       [28/]   Plaintiffs ask the Court to take judicial notice of this fact under Federal
28   Rule of Evidence 20, which (b) permits judicial notice of facts "not subject to
     reasonable dispute" in that they are "either (1) generally known within the territorial

1  splash screen that is viewable by *all* mobile device users, which is entirely feasible (as

2  discussed *infra)*, is a significant and sanctionable violation of the Injunction.

3  **(b)  Visitors Using Computers With Browsers That Do Not**

4  **Support "Java Script" Or Have "Java Script" Disabled**

5  **Do Not See The Splash Screen**

6  As is the case with mobile devices, because Defendants have chosen to use Java

7  Script in the rendering of the splash screen, a computer user who does not have a Java

8  Script enabled browser will not see the splash screen before viewing the DMV.ORG

9  website content. [Greenhaw Decl., ¶ 9.]  Even for those computer users who do have

10 Java Script enabled browsers, if the function is disabled on a computer user's computer

11 (whether knowingly or not), that computer user will not see the splash screen at all.[29/]

12 It is common for computer users to disable the Java Script functionality.

13 [Greenhaw Decl., ¶ 11.] Usually this is done for a variety of security reasons (e.g.,

14 some computer users feel that the data communicated via Java Scripting can potentially

15 pose a security threat).  [Id.]  As such, a significant number of computer users, even

16 those with Java Script enabled browsers, are not seeing (and/or will never see) the

17 splash screen. As every visitor must be presented with the splash screen, Defendants

18 are in violation of the Injunction.

19 **(c)  Visitors That Reject "Cookies" Do Not See The Splash**

20 **Screen**

21 Defendants also employ a technology known as "cookies" as a means of tracking

22 visitors to DMV.ORG.[30/] If a computer user "rejects cookies" (a common setting for

23 _____

24 jurisdiction or the trial court or (2) capable of accurate and ready determination by
resort to sources whose accuracy cannot reasonably be questioned."

25 [29/] Id.; See, also, Kramer Decl., ¶ 3, Ex. A, consisting of an Adobe Reader
26 Version 9 PDF multi-media presentation of what occurs when a computer user disables
Java Scripting and then accesses the DMV.ORG site.

27 [30/] See, Greenhaw Decl., ¶ 12. Cookies are small text files which are stored
28 on a computer user's web browser. Id. Cookies are placed in a computer user's
browser by the DMV.ORG website upon the visitor accessing DMV.ORG. Id.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

a substantial portion of users), that user will not see the splash screen and will be directed immediately to the DMV.ORG website content.[31/]

As with Java Script technology, many computer users for a variety of reasons, including those related to security and privacy, set their web browsers to reject cookies. [Greenhaw Decl., ¶ 13.] According to the Internet Advertising Bureau ("IAB")[32/], an estimated 12% of computer users set their computers to reject cookies. [Greenhaw Decl., ¶ 13, Ex. B.] This is a significant percentage of computer users as it relates to visitors to DMV.ORG because, according to Defendants, DMV.ORG has more than 65 million visitors a year and "has become such a widely used resource," ranking as "one of the Top Five automotive sites and one of the Top 300 Web sites in the United States."[33/] Even if the percentage of users that reject cookies is only 10%, then that is 6.5 million visitors a year that do not see the splash screen before viewing the content on the DMV.ORG website. Regardless of the percentage, however, since _every_ visitor must see the splash screen, the use of cookies functionality by Defendants results in a violation of the Injunction because visitors who reject cookies (or will in the future reject cookies) do not and will not see the splash screen before viewing the DMV.ORG website.

**3.     Defendants Have An Ability to Comply**

For those skilled in the art of web development, creating a splash screen which is visible to _every_ visitor to the DMV.ORG domain as required by the Injunction, including to visitors using non-Java Script enabled devices and/or visitors who have de-

---

[31/]     _See_, Greenhaw Decl., ¶ 14; Creditor Decl., ¶ 5, Ex. A (consisting of an Adobe Reader Version 9 PDF multi-media presentation of what occurs when a computer user sets his or her computer to reject cookies and then accesses the DMV.ORG website).

[32/]     The IAB is an organization comprised of over 375 media and technology companies who are responsible for selling almost 90% of online advertising in the United States. _See_, Hamilton Decl., ¶ 15, Ex. M.

[33/]     _See_, Hamilton Decl., ¶ 12. Ex. J (print-outs from onlineguru.com website).

4826-1039-7955.1

activated cookies functionality, is <u>not</u> a complicated or uncommon undertaking. [Greenhaw Decl., ¶¶15-18.] Splash screens are frequently used by a number of commercial websites most notably for "terms of use" and other types of gate keeping that require affirmative action by a user before being granted access to the general material of a given website. [Greenhaw Decl., ¶ 6.] Many popular websites such as Amazon.com employ technology that in essence assigns a tracking number to a computer user which is tied to the website URL so that the website server, rather than the computer user's Java Script enabled browser, controls the identification of and navigation of the computer user; and, with this technology, a standard html web page could be used as a splash screen and such a screen would then ***effectively be visible to all computer users and visitors to the DMV.ORG domain***, including to the likely millions of users of non-enabled (or disabled) Java Script devices and computers, and users who have de-activated cookies functionality. [Greenhaw Decl., ¶ 15.]

4. **If Defendants Continue To Claim That They Lack The Necessary Expertise To Design A Compliant Splash Screen, Fed. R. Civ. P. 70(a) Allows The Court To Appoint An Expert**

Defendants' counsel, after being alerted to these issues, offered as an excuse his clients' apparent lack of expertise in splash screen design, stating:

> The fact is that the imposition of the splash page is a complicated undertaking that will require refinement and adjustments over time. Our clients are not experts in splash page mechanics and there are technical limitations to splash page functionality.

[Greenhaw Decl., ¶ 16, Ex. C.] With respect to mobile devices, Defendants' counsel stated that "further technical work is ongoing but it is operative in most cases." [Greenhaw Decl., ¶ 16, Ex. C.]

Defendants' counsel is incorrect. Splash screen design is not a "complicated undertaking" and there are no "technical limitations" that cannot be overcome by a

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   competent website designer. [Greenhaw Decl., ¶ 17.] Moreover, even after over four

2   months now, the DMV.ORG splash screen is still not appearing on BlackBerry or Palm

3   Treo mobile devices, so it is not true that it is "operative in most cases." [Creditor

4   Decl., ¶¶ 2-4; DeCarlo Decl., ¶ 2; Kramer Decl., ¶ 2.]

5       However, accepting the statement by Defendants' counsel to be true, it appears

6   that Defendants are essentially stating that they do not have the expertise to design a

7   compliant splash screen.[34]  If so, while not excusing their contempt, Fed. R. Civ. P.

8   70(a) expressly provides the Court with the power to appoint another person to

9   construct a compliant splash screen (at Defendants' expense) and such is hereby

10  requested by Plaintiffs if Defendants continue to claim that they lack the expertise to

11  design the splash screen using the technology outlined in the Declaration of Mr.

12  Greenhaw.

13  **V.      REMEDIAL AND COERCIVE SANCTIONS REQUESTED**

14      "Judicial sanctions in civil contempt proceedings may, in a proper case, be

15  employed for either or both of two purposes: to coerce the defendant into compliance

16  with the court's order, and to compensate the complainant for losses sustained." United

17  States v. United Mine Workers, 330 U.S. 258, 303-04 (1947); Reno Air Racing Ass'n.,

18  Inc. v. McCord, 452 F.3d 1126, 1130, n. 5 (9th Cir. 2006)(awarding attorney's fees and

19  costs to compensate plaintiff for contempt motion); General Signal Corp. v. Donallco,

20  Inc., 787 F.2d 1376, 1380 (9th Cir. Cal. 1986).  Here, both a large coercive sanction

21  to be paid to the Court, as well as compensatory sanctions to be paid to Plaintiffs, are

22  entirely warranted and supported by the law.

23  / / /

24

---

25      [34]     Ironically, Defendant OnlineGuru, Inc. promotes itself as a company which
    specializes in website development. [Hamilton Decl., ¶ 12, Ex. J, print-out from
26  www.onlineguru.com.] These self-proclaimed "online gurus" – when convenient for
    them – claim to lack the necessary expertise to design a compliant splash screen. This
27  claim is highly suspicious, especially since the Defendants have had over four months
    now to figure it out since the Injunction was entered, and even before that, generally
28  knew what would be expected of them since the Court's ruling and proposed injunction
    was entered in June of 2008.

**LEWIS BRISBOIS BISGAARD & SMITH** LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

**A.     Remedial Sanctions Are Warranted**

Compensatory awards are for the "actual losses sustained as a result of the contumacy." <u>General Signal Corp.</u>, 787 F.3d at 1380.   Here, both an award of Plaintiffs' attorneys' fees and costs, as well as an award of Defendants' profits during the period of noncompliance, are justified as remedial sanctions.

**1.     Awarding Plaintiffs' Attorneys' Fees Is Appropriate**

It is well-settled that an award of attorneys' fees is appropriate for contempt of court orders.  <u>See</u>, e.g., <u>Reno Air Racing Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1130, n. 5 (9th Cir. 2006)(awarding attorneys' fees and costs to compensate the plaintiff for contempt motion); <u>Guess?, Inc. v. Tres Hermanos Inc.</u>, 51 U.S.P.Q.2d 1687 (C.D. Cal. 1998)($30,000 in attorneys' fees awarded).    Here, besides the expense of Plaintiffs' time in policing Defendants' violations, Plaintiffs have incurred attorneys' fees in moving for contempt. Plaintiffs' counsel repeatedly communicated with Defendants' counsel in an attempt to obviate the need to bring this Motion, but to no avail. Accordingly, as compensation, Defendants should be ordered to pay Plaintiffs' attorneys' fees and costs related to this Motion.

**2.     Awarding Defendants' Profits During Noncompliance Is
        Justified**

In certain cases, where "actual losses" are difficult to prove by a plaintiff, courts have awarded to the plaintiff the defendant's profits made during the time of noncompliance of an injunction.  Here, as it is difficult to prove actual losses from the continued violations of the Injunction, Defendants should be ordered to pay to Plaintiffs the profits derived from the DMV.ORG website during the period of non-compliance (i.e., from the date that the Court ordered the Injunction to the present).

In commenting on the policy for awarding such a compensatory fine, the Ninth Circuit in <u>Western Lighting Corp. v. Smoot-Holman Co.</u>, 352 F.2d 1019, 1022 (9th Cir. Cal. 1965), stated:

This is a matter largely within the court's discretion. [citations

1    omitted.] The "fine" must bear some relation to, or not

2    exceed, appellee's actual loss. [citation omitted.] In a patent

3    infringement case, the "actual loss" of a plaintiff resulting

4    from sales by an infringer is not readily proved. If the

5    defendant had not made the sale, would the plaintiff have

6    made it? No one can really know. Perhaps that is why the

7    patent statute contains a very liberal provision as to damages.

8    As in a patent case, in a Lanham Act case such as this one, a plaintiff's actual

9    losses due to violations of a court order are difficult to prove. Accordingly, following

10   the Lanham Act's liberal provision for awarding a defendant's profits in lieu of

11   damages, the Ninth Circuit and other circuits have awarded to the plaintiff the

12   defendant's profits as a contempt sanction. See, e.g., <u>Jerry's Famous Deli, Inc. v.</u>

13   <u>Papanicolaou</u>, 383 F.3d 998, 1004 (9th Cir. Cal. 2004); <u>Wesco Mfg., Inc. v. Tropical</u>

14   <u>Attractions of Palm Beach, Inc.</u>, 833 F.2d 1484, 1487-88 (11th Cir.1987).

15   In <u>Jerry's Famous Deli</u>, the defendant argued that the district court improperly

16   awarded a disgorgement of his profits as a measure of damages resulting from a

17   violation of an injunction. The Ninth Circuit rejected the argument, stating:

18   "[D]isgorgement of profits is a traditional trademark remedy and the district court's use

19   of profits as a measure for the contempt sanction is hardly a novel proposition," citing

20   to <u>Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.</u>, 772 F.2d 505, 514 (9th Cir.

21   1985).[35/]

22   ///

23

---

24   [35/]    The fact that this is a false advertising case brought under § 43(a) of the
25   Lanham Act rather than a trademark infringement case does not vitiate the soundness
     of a sanction based on a disgorgement of Defendants' profits. This is because the exact
26   same remedies for trademark infringement are available for false advertising under §
     43(a) of the Lanham Act, including disgorgement of profits under the Lanham Act, 15
27   U.S.C. § 1117(a). <u>Trademark Law Revision Act of 1988</u>, Pub. L. 100-667, 102 Stat.
     3935 (effective Nov. 16, 1989)(adding to the introductory clause of § 35 a reference
28   to § 43(a)).

4826-1039-7955.1                                              -20-

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION
AND FOR SANCTIONS; MEMORANDUM IN SUPPORT

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

## B. A Large Coercive Sanctions Is Warranted

In determining how large of a coercive sanction to order, courts consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." General Signal Corp., 787 F.2d at 1380. Here, both considerations favor a large monetary coercive sanction, namely a proposed $10,000 per day fine.

### 1. The Harm Of Continued Violations Is Great

First, the harm threatened by Defendants' continued non-compliance is severe and great. This Court determined that Defendants were engaged in *willful* false advertising after almost two years of litigation during which time Defendants were allowed to continue and profit from their deceptive practices. This Court also found that an Injunction was necessary both to "level the playing field" with Plaintiffs and to remedy ongoing public confusion. As shown above, possibly millions of visitors to DMV.ORG are not being presented with the splash screen before viewing the DMV.ORG website content, and in the future, as mobile devices become more and more prevalent, millions of more viewers will likewise not see the splash screen.[36] Defendants will therefore continue to benefit from the false advertising "good will" associated with the domain name without consequence because they have not been ordered by the Court to change their search engine practices or to add any disclaimers to the DMV.ORG website itself.[37]

---

[36] See, Hamilton Decl., ¶¶ 13 and 14, Exs. K and L (news articles discussing the increasing prevalence of consumers using mobile devices to access the Internet and the high volume of sales of non-Java Script enabled BlackBerry and Palm mobile devices).

[37] The Court's intention was for the splash screen to remedy confusion despite any misleading search engine and website content. Defendants may delete any disclaimers from their website or they may add other misleading content to the DMV.ORG website without violating the Injunction. Accordingly, the Injunction and imposition of a splash screen is all that protects the public now *and* in the future from being misled.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1    **2.    A Large Monetary Amount Is Necessary To Compel**

2    **Compliance**

3    Second, as to the probable effectiveness of the suggested sanction, Defendants

4    have to comply, and this monetary threat has to make it less worthwhile for Defendants

5    to continue to defy the Court's Injunction. Presently, Defendants appear to be of the

6    view that the risk of potential sanctions is worth their continued violations. As it was

7    determined that Defendants were making profits of above 5 million per year and have

8    plenty of financial resources,[38/] a $10,000 per day fine, while not crippling, would

9    probably be effective to compel compliance. Other courts have used a $10,000 per day

10   model as well. <u>See</u>, e.g., <u>King v. Allied Vision</u>, 65 F.3d 1051 (2d Cir. 1995)($10,000 per

11   day coercive sanction); <u>Whittaker Corp. v. Execuair Corp.</u>, 953 F.2d 510, 516-518 (9th

12   Cir. 1992)($1 million bond required and $10,000 per day coercive fine).

13   **VI.    CONCLUSION**

14   Based on the foregoing and the clear and convincing evidence submitted, it is

15   respectfully requested that the Court find Defendants in contempt for violating the

16   Injunction and award Plaintiffs their attorneys' fees and costs incurred to bring this

17   Motion as well as a portion of the profits derived from the DMV.ORG website during

18   the period of non-compliance.[39/]

19   Plaintiffs also request appropriate coercive sanctions of $10,000 per day to

20   compel Defendants to comply within 10 days of the Court's favorable ruling on this

21   Motion; or, if Defendants continue to assert that they are incapable of complying

22   because they do not have the technical expertise, it is requested that this Court order

23   that an expert be employed – at Defendants' expense – to design a compliant splash

---

24

25   [38/]    <u>See</u>, *Plaintiffs' Post-Trial [Proposed] Findings of Facts and Conclusions of Law (Citations to Evidence and Legal Authorities)*, Docket # 190, pg. 25.

26   [39/]    Plaintiffs propose that within 10 days of a contempt finding, Plaintiffs
27   submit to the Court an accounting of their attorney's fees and costs associated with this Motion and Defendants submit documentation of their profits and any off-sets claimed,
28   so that the Court may make a final award of compensatory sanctions to be awarded to Plaintiffs.

1 screen pursuant to Fed. R. Civ. P. 70(a).

2

3 DATED: January 5, 2009     Respectfully submitted,

4             LEWIS BRISBOIS BISGAARD & SMITH LLP

5

6             By:  /s/ Mina Hamilton
              David N. Makous

7               Daniel C. DeCarlo
              Mina I. Hamilton

8               Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

PLAINTIFFS' NOTICE AND MOTION FOR CONTEMPT FOR VIOLATION OF PERMANENT INJUNCTION
AND FOR SANCTIONS; MEMORANDUM IN SUPPORT