1  DAVID N. MAKOUS (State Bar # 082409)
　　makous@lbbslaw.com
2  DANIEL C. DECARLO (State Bar # 160307)
　　decarlo@lbbslaw.com
3  MINA I. HAMILTON (State Bar # 213917)
　　hamilton@lbbslaw.com
4  LEWIS BRISBOIS BISGAARD & SMITH LLP
　　221 North Figueroa Street, Suite 1200
5  Los Angeles, California 90012-2601
　　Telephone: (213) 250-1800
6  Facsimile:　(213) 250-7900

7  Attorneys for Plaintiffs
　　TRAFFICSCHOOL.COM, INC. and
8  DRIVERS ED DIRECT, LLC, California companies.

9  　　　　　　　　UNITED STATES DISTRICT COURT

10 　　　　　　　　CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; DOES 1 through 10,<br><br>　　　　　　Defendants. | Case No. CV 06-7561 PA (Cwx)<br><br>The Honorable Percy Anderson<br><br>DECLARATION OF THOMAS BENTON GREENHAW V IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT AGAINST DEFENDANTS FOR VIOLATION OF THE COURT'S INJUNCTION AND FOR SANCTIONS<br><br>Date:　　　January 26, 2009<br>Time:　　　1:30 p.m.<br>Courtroom: 15 |

4848-9544-3459.1

DECLARATION OF THOMAS BENTON GREENHAW V IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT

## DECLARATION OF THOMAS GREENHAW V

I, Thomas Benton Greenhaw V, do hereby declare as follows:

1. I have personal knowledge of the contents contained in this Declaration and if called to trial or hearing, I can competently testify thereto.

### A. BACKGROUND AND EXPERIENCE WITH WEBSITE DESIGN

2. I have been a professional software developer since 1981 and have developed software for many Internet applications since 1995.

3. Currently, I own and act as Vice President of Technology for Nova Libra, Inc., a longstanding Microsoft certified software developer company founded in 1998 which specializes in analyzing clients' existing processes and recommending and implementing appropriate technology to improve capabilities. For example, Nova Libra, Inc. rebuilt Drugstore, Inc.'s online store to comply with certain IRS regulations for pharmacies. Other examples of our web software expertise include designing and programming The Specialized Marketing Group, Inc.'s corporate website at www.tsmgi.com and creating shopping software used by Gerber, the Cheerios Racing Team, USG, and Valvoline (e.g., see www.valvolineproducts.com). Our technology uses industry standard systems and platforms and our capabilities include application development on Windows, UNIX, Macintosh and Mainframes, web enabled application development, internet and collaborative application hosting, and more. Our clients include Fortune 500 companies. Attached hereto as Exhibit "A" is a copy of a print-out of the home page of the Nova Libra, Inc. website located at www.novalibra.com.

4. As such, I have substantial experience over these past 25 years in a wide variety of custom software development services, including creating user interfaces on websites, website design and layout, website construction and architecture, flash design and programming, navigation, and other services, and therefore feel I am qualified to make the statements herein.

## B. REVIEW OF THE DMV.ORG SITE AND THE COURT'S INJUNCTION

5. I have been asked by Lewis Brisbois Bisgaard & Smith LLP to assist in evaluation of the operability, navigability and compliance of a website identified as www.dmv.org ("Site"). I have been informed that the Court in the case of *TrafficSchool.com v. Edriver* has issued an injunction against the defendants ("Injunction"). I have been provided with a copy of the Injunction and reviewed its terms. Essentially, the Injunction requires the presentation of a splash screen to "every visitor" to the Site. After my review of the Injunction and the Site, it is my opinion that the defendants are not in compliance with paragraph 1(a) of the Injunction which requires that "every visitor" to the Site be presented with the splash screen.

6. In my experience, splash screens of the type that the Court has ordered are frequently used for compliance with legal requirements such as a website's "terms of use" or other types of gate keeping which require a user to take affirmative action before being granted access to the general material of a given website which is guarded by the splash screen.

7. During the month of September, 2008, I examined the architecture and technology employed in the Site, including the splash screen in detail. Because of the nature of websites, it is possible in many cases for third parties such as myself to examine the architecture and technology of the websites of others. While I do not have access to the server of the Site, I am able to study its operation and design as it is largely set forth in the Site's source code and meta data and the client side Java Script programming which is available for viewing by me and others through various means using the Internet.

8. I have concluded that there are two particular problems that are being encountered in the display of the splash screen to visitors of the Site resulting in the failure of the splash screen to be displayed to every visitor as required by the Injunction. These are particularly caused by the utilization of what is called "Java Script" and the utilization of "cookies" by the Site. I will explain each in detail.

1. **JAVA SCRIPT DISABLING**

9. The Site employs "Java Script" in the rendering of the splash screen. Java Script is a programming technology that operates on the end user's web browser. The Java Script application on the computer user's browser recognizes content written using the Java Script application. As a consequence of this, in order for the splash screen to be visible to computer users, the end user of the computer (or visitor to the website) must enable the Java Script function on their web browser. In many cases, this is disabled automatically and the user does not make any selection or decision. Said in a different way – the disablement of the Java Script on a computer user's computer – whether knowing or unknowing – will ensure that the splash screen is NOT SEEN by the visitor. This is because the splash screen is rendered or deemed invisible to the user if the Java Script functionality is disabled.

10. Also, many mobile devices such as Blackberries and Palm Treos are not Java Script enabled and the user makes no such selection at all one way or another. As a consequence, the users of Blackberries and Palm Treos, as with any other non-enabled Java Script mobile devices, will not see the Site's splash page. In other cases, there are mobile devices which are Java Script enabled such as the Apple iPhone. However, if the user of an Apple iPhone disables his or her Java Script, the splash screen will not be seen on his or her iPhone either.

11. In my experience, a significant number of users will disable the Java Script functionality (sometimes known as active scripting in the Microsoft Internet Explorer browser) on their web browser. Usually this is done for a variety of security reasons as some people feel that data transmitted via Java Scripting can potentially pose a variety of computer threats to their computer integrity. Such people will not be aware of the splash screen at all.

2. **COOKIES DISABLING**

12. The Site utilizes cookies to track computer users as they navigate through the Site. Cookies are small text files which are stored on a computer user's web

3

browser. Cookies are placed in a computer user's browser by the website, in this case the Site, upon a computer (visitor) entering a particular website such as the Site, which employs cookies technology.

13. As with Java Script technology, many computer users for a variety of reasons, some related to security and some related to privacy, set their web browser to "reject cookies." In fact, according to a recent Internet Advertising Bureau published report on this point, 12% of computer users reject cookies. Attached to my declaration as Exhibit B is a true and correct copy of a June 2007 article published by comScore, Inc. on cookies and on page 15 of that article is a specific reference to the 12% figure cited above. The 12% cited by the Internet Advertising Bureau is consistent with my experience that a significant number of computer users set their computers to reject cookies.

14. If a computer user rejects cookies such as that used by the Site, then that user will not see the Site's splash screen at all. Again, this is because the Site employs cookies to track computer users who access the Site. *If the cookies are not permitted to be placed in the visitor's computer, then the Site will not display the splash screen.*

C. **COMPLIANCE IS FEASIBLE**

15. Many popular websites such as Amazon.com recognize the above shortcomings and limitations inherent within cookies technology and Java Script. Therefore, Amazon.com as well as many other active multi-visitor websites, do not rely upon cookies or Java Script, *but rather attach a specific tracking number as part of the website URL when a visitor is linked to or visits their site.* When using this procedure, the website server can identify each unique computer user as they gain access to the website and navigate within it. This highly utilized approach of assigning a specific tracking number to each visitor upon linking to a given site shifts the functionality of identifying a computer user away from the computer user's Java Script enabled web browser (as the Site now performs this function) and directly to the web server such as the Site. In employing this type of methodology – namely attaching a

tracking number to each visitor – a standard html web page could be used as a splash screen and such a screen would then effectively be visible to ALL COMPUTER USERS AND VISITORS TO THE SITE – including users of non-Java Script enabled mobile devices, users of Java Script enabled devices, users of Java Script enabled devices that have been disabled, and users who have de-activated cookies functionality.

16. I have been provided with an e-mail exchange between Mr. Brian Daucher and Ms. Mina Hamilton where Mr. Mr. Daucher states:

> "The fact is that the imposition of the splash page is a complicated undertaking that will require refinement and adjustment over time. Our clients are not experts in splash page mechanics and there are technological limitations to splash page functionality."

(A true and correct copy of this e-mail exchange as I understand it is attached hereto as Exhibit C.)

17. I do not have any knowledge of the ability of Mr. Daucher's clients to design a splash page to conform with the Court's Injunction, but I disagree with Mr. Daucher's conclusion that the imposition of a splash page which would be in conformance with the Court's Injunction is a complicated undertaking. In fact, the Site already makes use of the type of technology needed to comply with the Injunction but for reasons which are not known to me, is not using the tracking number method discussed above to render the Site's splash screen. Designing an appropriate splash screen is not a complicated project for those skilled in the art of website design and software development. Indeed, as I mentioned above, splash pages are frequently used as a gate keeping function by many websites to prevent access to restricted material on websites.

18. The Site could with the assistance of a capable splash screen designer, display a splash page which conforms entirely with the Court's requirements as set forth in the Injunction, and such a designer could effectively ensure that every visitor to

5

the Site, including mobile device users, computer users who disable their Java Script or cookie functionality and all others, will be presented with the splash page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 29th day of December, 2008, at Chicago, Illinois.

*[signature]*
Thomas Benton Greenhaw V