DAVID N. MAKOUS (State Bar # 082409)
makous@lbbslaw.com
DANIEL C. DECARLO (State Bar # 160307)
decarlo@lbbslaw.com
MINA I. HAMILTON (State Bar # 213917)
hamilton@lbbslaw.com
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012-2601
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

Attorneys for Plaintiffs
TRAFFICSCHOOL.COM, INC. and DRIVERS ED DIRECT, LLC,
California companies.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>    Plaintiffs,<br><br>vs.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, an individual; RAJ LAHOTI, an individual; DOES 1 through 10,<br><br>    Defendants. | Case No. CV 06-7561 PA (Cwx)<br><br>The Honorable Percy Anderson<br><br>REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CONTEMPT AGAINST DEFENDANTS FOR VIOLATIONS OF THE COURT'S INJUNCTION AND FOR SANCTIONS<br><br>Date:    February 2, 2009<br>Time:    1:30 p.m.<br>Crtm.:    15 |

Plaintiffs TRAFFICSCHOOL.COM, INC. and DRIVERS ED DIRECT, LLC respectfully submit their reply to Defendants' Opposition to Motion for Contempt; Memorandum of Points and Authorities.

/ / /

/ / /

/ / /

4812-6200-0387.1

REPLY MEMORANDUM BY PLAINTIFFS IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

# TABLE OF CONTENTS

|      |                                                                                              | Page |
|------|----------------------------------------------------------------------------------------------|------|
| I.   | SUMMARY OF REPLY ARGUMENT                                                                    | 1    |
| II.  | REPLY TO BACKGROUND                                                                          | 3    |
| III. | DEFENDANTS ADMIT NONCOMPLIANCE AND FAIL TO DEMONSTRATE THAT THEY WERE UNABLE TO COMPLY       | 5    |
|      | A.   Logo and Title Tag Issues                                                               | 5    |
|      | B.   Visibility of Splash Screen                                                             | 7    |
| IV.  | DEFENDANTS' WILLFUL NONCOMPLIANCE IS NOT REASONABLE, JUSTIFIED, OR IN GOOD FAITH             | 8    |
| V.   | VOLUNTARY DISCLAIMERS ARE IRRELEVANT                                                         | 9    |
| VI.  | PAY-PER-CLICK ADVERTISING                                                                    | 10   |
| VII. | DEFENDANTS IGNORE LEGAL CONTEMPT STANDARDS                                                   | 10   |
| VIII.| PROPOSED ALTERNATE SANCTIONS ARE NOT COMPELLING                                              | 11   |
| IX.  | ALL DEFENDANTS ARE PROPER                                                                    | 12   |
| X.   | CONCLUSION                                                                                   | 12   |

# TABLE OF AUTHORITIES

**Federal Cases**

*In re Dual-Deck Video Cassette Antitrust Lit.*, 10 F.3d 693 .................. 5

*Go-Video, Inc. v. Motion Picture Association of America*, 10 F.3d 693 .......... 5

*FTC v. Affordable Media*, 179 F.3d 1228 ................................. 5

*GTE Sylvania, Inc. v. Consumers Union of United States*, 445 U.S. 375 ........ 11

*International Union v. Bagwell*, 512 U.S. 821 ............................. 7

*Internet Specialties West, Inc. v. ISPWEST*, 2007 U.S.Dist. LEXIS 44818 ....... 9

*Interstate Commerce Commision v. Rio Grande Growers Cooperative*, 564 F.2d 848 ............................................................. 12

*Jim Walter Resources, Inc. v. International Union, United Mine Workers of America*, 609 F.2d 165 .................................................. 6

*Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368 .... 4

*Peterson v. Highland Music*, 140 F.3d 1313 .............................. 7

*Plough, Inc. v. Kreis Laboratoriess*, 314 F.2d 635 ........................ 7

*Stone v. San Francisco*, 968 F.2d 850 ................................... 7

*Stone v. City and County of San Francisco*, 968 F.2d 850 (9th Cir. 1992), cert. denied, 506 U.S. 1081 ............................................. 9

*Transgro, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363 ............. 10

*United States v. Lowe's Inc.*, 371 U.S. 38 ............................... 11

*Vertex Distributing v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 ............ 6

**Federal Statutes**

Fed. R. Civ. P. 60(b) .................................................. 10

Fed. R. Civ. P. 65 .................................................... 12

**Other Authorities**

4 McCarthy on Trademarks and Unfair Competition
§30:4-30:9 .................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF REPLY ARGUMENT

Defendants have failed to rebut Plaintiffs' clear and convincing evidence of noncompliance with the Injunction or to meet their burden on any valid defense. Defendants do not ever claim in their opposition *that they have an inability to comply with the Injunction* on the logo, title tag, or visibility issues.[1] Rather, Defendants' opposition focuses on why they made very deliberate *choices* not to comply based on self-serving considerations of profit losses tied to organic search engine optimization considerations, and based on an arrogant belief that this Court should accept Defendants' "voluntary disclaimers" as sufficient rather than require Defendants to actually comply with the Court's Injunction.

Indeed, Defendants concede *willful* noncompliance of all three of the clear and specific orders of this Court's Injunction addressed by Plaintiffs' motion and concede that 100% compliance is both feasible and within their control. Defendants' defense, as audacious as it sounds, is simple: full compliance would impact their organic search ranking and diminish their business. Defendants ask this Court to ignore well-established contempt legal standards and to instead adopt an unprecedented standard of contempt based on the conclusory claim that Defendants "have worked hard to comply."[2]

---

[1] Defendants web statistics are questionable and subject to cross-examination given Defendants' past impeachment of its web stats. [See, Findings, Docket #210, pg. 20:1-16 regarding web conversion data submitted by Defendants at trial found not to support Defendants' argument.] However, even assuming that 97% of the actual visitors to the dmv.org domain can view the splash screen consistently on a monthly basis, while 3% cannot, that is still *1.95 million viewers a year or 180,000 viewers each month* that do not see the splash page while the Injunction requires "every" visitor to do so prior to viewing the site's content. [1.95 million represents 3% of the total yearly visitors -65 million- and 180,000 represents 3% of the monthly unique visitors -6 million- as reported by Defendants on their own website. See, Hamilton Decl. in Support of Motion, Ex. J (Defendants' stats).]

[2] Specifically, without any citation to legal authority, Defendants state that if the "Court is concerned about how the splash page has been implemented, Defendants should be provided with an opportunity to correct any fixable issue if a reasonable method that conforms with the First Amendment can be fashioned." [Opp. at pg. 2:3-5.] Instead, Defendants should rightly be held in contempt and sanctions should be imposed and an expert appointed if necessary.

Defendants have embarked on a post-trial and post-injunction game designed to avoid enforcement of the Injunction and test its boundaries. Defendants would have this Court believe that they were simply acting in good faith by spending 400 hours thinking of these issues.[3/] When Defendants concluded that full compliance with the Injunction was not feasible without impacting organic search capabilities [Docket, #282, David Gray Declaration, ¶ 30], Defendants took it upon themselves to simply ignore the Injunction. In short, Defendants rolled the dice and hoped that Plaintiffs would not notice or would not care.

Defendants do not refute Plaintiffs' evidence that it took declarant Benjamin Watson less than one hour to create two sample splash screens that complied with the Injunction with regard to the logo size and non-visibility of title tags. Moreover, and *significantly*, Defendants have no answer to why they simply did not create a notification message that would alert visitors to the dmv.org domain who were unable to view the splash screen (e.g., because they were using a mobile device that did not support Java, did not have cookies enabled, etc.) that the visitor could not access the website, rather than allowing visitors to see the website content immediately without viewing the splash screen at all.[4/] These facts indicate that Defendants' choices about the splash screen were *not* designed to try to come as close as possible to compliance, but rather were intended to avoid the consequences of having been found willful false advertisers. Moreover, Defendants' request for a "lifting" or "narrowing" of the Injunction [Opp. at pg. 2:6-8.] is simply a disguised request for modification of the Injunction, and should be rejected outright.[5/]

---

[3/] The 400 hours were not, however, spent designing a splash page that complies with the Injunction. As was set forth in Thomas Greenhaw's declaration, the design of a splash page is not complex. Rather, the 400 hours were spent trying to design a splash page that would save Defendants' full organic search capabilities.

[4/] Ironically, Defendants point out in their opposition how such a notification page is possible and exists on Plaintiffs' website and other third party websites. [Opp. at pg. 8:6-22.]

[5/] Defendants' complain that Plaintiffs did not agree to submit the dispute to the Court for "clarification" of the Court's Injunction. This is an insulting red herring argument as there is no

4812-6200-0387.1
-2-
REPLY MEMORANDUM BY PLAINTIFFS IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

## II. REPLY TO BACKGROUND

In their recitation of the history of this matter, Defendants conveniently leave out several key facts which are relevant to the arguments now being made by Defendants. First, Defendants' deception related to liability under the Lanham Act for false advertising was found by this Court to be *willful*.[6/] Accordingly, the Court stated it would require "Defendants to employ an acknowledgment page communicating to all visitors to all entry pages of DMV.ORG that the website is privately owned, and is not the website of any government agency." [Id at pg. 29:5-22.]

Second, the Court afforded Defendants an opportunity to object to the proposed injunction after entering its Findings on June 4, 2008. Defendants took the opportunity and subsequently made numerous arguments against the imposition of a splash screen, including the same argument regarding search engine optimization that it asks the Court to reconsider now as justification for noncompliance on the visibility issue, but which was already considered and rejected by the Court when the Court without any qualms or qualifications issued its Injunction mandating a splash screen.[7/]

These two historical facts are significant because they address Defendants' arguments related to why they should not be required to comply with the Injunction regarding the title tag or the visibility issue. Plaintiffs submitted evidence that

---

confusion about the meaning of the Injunction and nothing to clarify.

[6/] See, Findings, Docket, #210, pg. 20:17-21:28. Indeed, the Court found troubling Defendant Raj Lahoti's trial statement that he did not view the rampant confusion as a problem, as well as the fact that despite being aware of the consumer confusion, Defendants "did nothing to rectify the problem until the filing of this lawsuit." [Id.] Moreover, the Court specifically found that "none of the steps that Defendants had taken since the filing of [the] action," which included the voluntary disclaimers, altered the Court's conclusion of willful deception. [Id.]

[7/] Specifically, in "Defendants' Objections to and Proposed Changes to Proposed Judgment and Permanent Injunction" [Docket # 212, at pg. 4:3-10], Defendants asked this Court not to issue a splash screen because, *inter alia*, "splash pages can significantly decrease or eliminate the ability of search engines to index the contents of the website for purposes of search result listings...the proposed splash page puts the large majority of the internet traffic arriving to DMV.ORG (which comes through search engine result listings) at risk and therefore DMV.ORG's entire business at risk.... the splash page may lead search engines to conclude that the DMV.ORG website has no information relevant to motor vehicles; and, instead, that the website only offers an acknowledgment."

Defendants could make the splash screen in a standard html page as suggested by Plaintiffs' witness Thomas Greenhaw, namely without the use of cookies or Java Script, which would ensure 100% compliance and visibility to all users, including those of mobile devices. Essentially, Defendants conceded that they "considered and rejected this solution *because it could significantly diminish the usability of the Website and mask it from search engines.*"[8] Search engine optimization concerns are not a valid defense to contempt or a consideration that should be at issue any more since the Court already considered it but issued the final Injunction requiring the splash screen anyway.

Defendants cannot continue to enjoy the same benefits of search engine optimization after they have been found to be willful false advertisers. In affirming an injunction in the context of the defendant's misleading representations, one court described the policy behind why once caught, a willful false advertiser must expect some fencing in, stating:

> Even if [defendant] originally would have been entitled to use the marks, we hold that the unqualified injunction against their use is justified by [defendant's] history of improper behavior. An injunction can be therapeutic as well as protective. In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable.[9]

Accordingly, this Court appropriately fashioned the Injunction to require things from Defendants who were guilty of false advertising, including enjoining acts legal in and of themselves (i.e., operating a web site without a splash page). This was and is no different from other courts that routinely require affirmative conduct to avoid future

---

[8] As noted earlier, Defendants do not contend that 100% compliance is not feasible, but only that 100% compliance harms their business. Moreover, Defendants' are using smoke and mirrors when they argue that the usability of the site would have been diminished if they did not use Java Script and cookies for the *splash screen*. Only the splash screen is at issue and therefore Defendants could have used Java Script and cookies throughout the website so that people could continue to access information and purchase things on the site or on the sites of their partner providers. The splash screen itself is not a "revenue stream", nor was it intended to be by the Court.

[9] Kentucky Fried Chicken Corp. v. Diversified Packaging Corp., 549 F.2d 368, 390 (5th Cir. 1977).

confusion or deception (e.g., advertising disclaimers affirmatively, corrective advertising campaigns, telephone intercepts, product recalls and customer refunds, destruction orders, etc.). See, 4 McCarthy on Trademarks and Unfair Competition § 30:4-30:9 (2008). While Defendants refuse to acknowledge the obvious, it bears emphasizing: that Defendants cannot comply with the Injunction without possibly harming their business is not a defense to contempt.

### III. DEFENDANTS ADMIT NONCOMPLIANCE AND FAIL TO DEMONSTRATE THAT THEY WERE UNABLE TO COMPLY

Defendants misstate the standards of civil contempt and fail to acknowledge that once Plaintiffs have shown by clear and convincing evidence that a specific and definite order of the court has been violated, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999). Defendants concede they could have complied, they just did not want to because of the pain such compliance would inflict.

Moreover, Defendants cite In re Dual-Deck Video Cassette Antitrust Lit., 10 F.3d 693, 695 (9th Cir. 1993) as standing for the proposition that "technical or inadvertent violations" are not grounds for contempt. They have conveniently, however, misquoted the court's holding which actually states that "[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations *where every reasonable effort has been made to comply*." (Emphasis added). It is well-settled and undeniable that a district court properly holds a party in civil contempt when the party disobeys a specific and definite court order by failing to take all reasonable steps *within the party's power to comply*. Id.; Go-Video, Inc. v. Motion Picture Ass'n of America, 10 F.3d 693, 695 (9th Cir. 1993). There is no factual dispute here. Defendants could have fully complied with the Injunction but chose not to because of business considerations.

#### A. Logo and Title Tag Issues

Defendants do not rebut Plaintiffs' evidence of noncompliance on the logo or title

tag issues, nor do they argue that they do not have an ability to comply on these points (i.e., to create a smaller logo or to delete the title tags from the splash screen). Rather, they claim that *their own subjective* interpretation of the Injunction does not require the DMV.ORG logo text to be smaller than the 14 point font required in the disclaimer text. [Opp. at pg. 14:14-27.] The Injunction is clear on this point, despite Defendants' contorted efforts to confuse the simplicity of the following statement: "The statement . . . shall appear in larger font size than that *used in* the DMV.ORG logo...." Moreover, with regard to the pixel issue, Defendants do not rebut Benjamin Watson's declaration and exhibits where he created the disclaimer using 14 point "font," not 14 "pixel". The Injunction says what is says: font; not pixel. Again, it was Defendants' obligation to seek clarification of the Injunction if it wished to do so.

Defendants also claim that the "Injunction does not touch upon how Defendants were to handle the title tags." [Opp. at pg. 15:19.] This is a stretch and unpersuasive. The Injunction specifically addresses what Defendants can allow to be visible to a visitor when viewing the splash screen when it states: "*Nothing other than* the content in paragraph (c) and the DMV.ORG logo shall be visible to the visitor *when viewing the acknowledgment splash page*". Since Defendants do not deny controlling the title tags, they concede that they are placing title tags in their code which are visible to a visitor when viewing the splash screen.

In order to have a defense based on an interpretation of a court's injunction, there first must be a "good faith and *reasonable* interpretation of the court's order." Vertex Distrib. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)(emphasis added). As one court has stated, "the focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue." Jim Walter Resources, Inc. v. Int'l Union, United Mine Workers of America, 609 F.2d 165, 168 (5th Cir. 1980).

Defendants' claim that they understood this Court's clear order to allow it to

make the text of DMV.ORG in the logo larger than the disclaimer text as long as the "unofficial guide" was smaller is a mystery. Why would they think that? Also, it is not clear why title tags, which appear when viewing the splash screen, are not to be considered.[10/] Again, that a title tag may be used to serve as some kind of search engine purpose is certainly not a defense to contempt.

Moreover, Defendants entirely ignore the law that those enjoined must "keep a safe distance" from violations and "must show they took every reasonable step to comply." Stone v. San Francisco, 968 F.2d 850, 856, ftn. 9 (9th Cir. 1992); Plough, Inc. v. Kreis Labs., 314 F.2d 635, 639 (9th Cir. 1963). If Defendants' wanted a clarification from the Court, they should have sought it, but until they did, Defendants were required to keep a safe distance and take the reasonable (and quick) steps to comply, which would have taken less than one hour to do.[11/] This is sufficient to support a clear and convincing standard of a contempt finding.[12/]

**B.    Visibility of Splash Screen**

Defendants concede that the Injunction is clear that every visitor must see the splash screen before being able to view the website content. Moreover, their own evidence purports to show that in the month of December, 2008, about 3% of their visitors did not view the splash screen. While Plaintiffs do not necessarily accept these numbers or statistics as true,[13/] according to their website, the DMV.ORG website receives approximately 65 million visitors a year and 6 million unique visitors monthly.

---

[10/]    Defendants falsely make the claim that the term "unofficial guide..." is included in every title tag so the violation of the Injunction should not matter anyway. [Opp. at pg. 16:6-9.] This is untrue; the term is not included in every title tag. See, Second Hamilton Decl., Ex. A.

[11/]    See, uncontroverted Declaration of Benjamin Watson in Support of Motion.

[12/]    Peterson v. Highland Music, 140 F.3d 1313, 1324 (9th Cir. 1998)(where "the affidavits offered in support of a finding of contempt are uncontroverted, we have held that a district court's decision not to hold a full-blown evidentiary hearing does not violate due process."); Int'l Union v. Bagwell, 512 U.S. 821, 827 (1994)(for civil contempt sanctions, neither "a jury trial nor proof beyond a reasonable doubt is required").

[13/]    While Defendants compare their site to two others sites in terms of JavaScript percentages, they do not compare their site or use these other sites to compare the cookie rejection rate, which is likely higher and according to the IAB up to 12%.

4812-6200-0387.1                            -7-

This means that according to its own statistics, approximately 1.95 million visitors will not see the splash screen in a year, or about 180,000 unique visitors a month will not see it. Defendants' declarant David Gray concedes that Defendants could have made the splash screen 100% compliant but made a conscious decision to violate the clear mandate of the order because it "was the best solution available that would allow DMV.ORG to still be accessible to search engines." [Declaration of David Gray, ¶ 22, et seq.][14/]

Moreover, 100% compliance on the visibility issue is entirely possible. Without apparently even realizing the irony, Defendants noted in their opposition that Plaintiffs' site does not permit non-Java Script and cookies disabled visitors to access content and that such visitors are presented with a notification of same. Why in the world did Defendants not employ the same strategy if they concluded that Java Script and cookies enablement were critical to their business model? At least then, "all" of the visitors would see the splash page before seeing content. Instead, Defendants show such visitors the content in complete violation of the Injunction. Defendants decided to violate the Injunction rather than forego the dollars those 1.9 million annual visitors represent. Defendants have thus readily conceded that all reasonable efforts were not taken. The contempt issue boils down to a simple choice: Defendants chose profit over compliance.

## IV. DEFENDANTS' WILLFUL NONCOMPLIANCE IS NOT REASONABLE, JUSTIFIED, OR IN GOOD FAITH

Defendants' defense to contempt appears to be only that they have "made substantial efforts to comply." [Opp. at 9:19-20.] Defendants cite to no authority for the proposition that making a "substantial effort" to comply with an injunction is a defense to contempt. In fact, the reverse is true: the disobedient party's good faith or intent to

---

[14/] Also, in Exhibit 18 to David Gray's declaration (the article from eWebArchitechure), the author on page 22 provides ideas for how to improve splash pages and on page 23 under the topic "Use a One Page Frameset," the author contradicts what Mr. Gray says about not being able to utilize a splash page while at the same time preserving search engine indexing.

4812-6200-0387.1 -8-
REPLY MEMORANDUM BY PLAINTIFFS IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

attempt to comply has been specifically held not to be a defense and does not bar a contempt finding. Stone v. City and County of San Francisco, 968 F.2d 850, 856-857 (9th Cir. 1992), cert. denied, 506 U.S. 1081 (1993). In Stone, at 856, the Ninth Circuit stated:

> The City argues that its good faith efforts to comply with the provisions of the consent decree should excuse its noncompliance. . . Intent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense.

## V. VOLUNTARY DISCLAIMERS ARE IRRELEVANT

Defendants' repeated argument that their voluntary disclaimers somehow absolve them from a contempt finding is nothing short of arrogance. In Internet Specialties West, Inc. v. ISPWEST, 2007 U.S. Dist. LEXIS 44818, Central District Judge Florence-Marie Cooper rejected a somewhat analogous argument made by the defendant. The defendant had argued that even though the injunction was being technically violated, it would "not result in any likelihood of confusion because the customers themselves know the true identity of their internet services provider (i.e., "ISPWest"). After setting forth the standard of law that civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps with the party's power to comply" but that "a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order," Judge Cooper stated:

> Conversely, Defendant's continuing to allow its customers to maintain and use their "ispwest.com" email address constitutes nothing more than a deliberate and flagrant attempt to flout the Court's injunction. The language of the injunction is exceedingly clear–Defendant is strictly prohibited from using the name "ispwest" in connection with any products or services, in any medium.

Id. at *6. Judge Cooper went on to state that the defendant's "failure to require customers to change their addresses cannot, under any circumstances, constitute anything but a bad faith attempt to avoid the financial impact of the Court's ordered relief." Id. Likewise, here, Defendants failure here to adhere to the Injunction is merely a bad faith attempt to avoid the financial impact of the Injunction by keeping their

search engine optimization business model entirely unaffected.

## VI. PAY-PER-CLICK ADVERTISING

While irrelevant, Defendants are not being truthful about the impact that a splash screen has on all search engine marketing. Defendants have 100% control over their ability to continue to be included in all search engines including both Yahoo & Google through pay-per-click marketing, and nothing in the Injunction limits this activity.[15] Moreover, pay-per-click advertising search results is similarly unaffected by any degradation visited on Defendants' organic search capabilities.

## VII. DEFENDANTS IGNORE LEGAL CONTEMPT STANDARDS

Defendants fail to mention several of the legal standards set forth in Plaintiffs' brief. They fail to mention the burden that they have to prove an *inability to comply* and that *all reasonable steps* were taken to comply. They fail to mention that there is no willful requirement or good faith exception to a contempt finding. They fail to argue how they did or why they did not keep a "safe distance" from violations of the Injunction as they were required to do. And, they fail to acknowledge that policing action was required by them. Rather, it was Plaintiffs that brought many past violations to their attention after the Injunction was entered and at great expense brought these issue to the Court's attention.

Instead, Defendants spend numerous pages of their Opposition discussing First Amendment concerns unrelated to the issue of contempt and ask that the Court to clarify the Injunction or modify it. [Opp. at pgs. 16-19.] To seek modification of the Injunction, Defendants were obligated to file a *motion* under Fed. R. Civ. P. 60(b)(5).[16] However,

---

[15] See, "Findings of Fact and Conclusions of Law..." [Docket #210, pg. 11:4-17.]

[16] As the Rule states, "on motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding . . . if it is no longer equitable that the judgment should have prospective application." Id. In the Ninth Circuit, the party seeking modification of a permanent injunction must show (1) a substantial change in circumstances or law since the order was entered; (2) extreme and unexpected hardship in compliance; and (3) a good reason why the injunction should be modified. Transgro, Inc. v. Ajac Transmission Parts Corp., 911 F.2d 363 (9th Cir. 1990). In Transgro, Inc., the Ninth Circuit stated that modification of a permanent injunction is "extraordinary

4812-6200-0387.1                               -10-

REPLY MEMORANDUM BY PLAINTIFFS IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

knowing that they likely could not meet their burden on such a motion, Defendants are now improperly attempting to sneak a modification request in this proceeding.[17]

Also, Defendants already had an opportunity to object, and did object to the splash screen when the Court first issued its proposed injunction. It is not appropriate to inject validity arguments about splash pages in a contempt proceeding.[18] Finally, Defendants' First Amendment arguments are without merit and not acceptable to raise at this time. This is not political speech, but pure commercial "speech" that may be enjoined.[19]

## VIII. PROPOSED ALTERNATE SANCTIONS ARE NOT COMPELLING

It is not a defense to the issuance of coercive sanctions to claim that one has "tried to comply in good faith with the Court's Injunction." [Opp. at pg. 21:8-13.] To be blunt, there can hardly be a clearer case of coercive sanctions being appropriate. Defendants boldly acknowledge that while compliance with the Court's injunction is feasible, they do not want to comply because to do so would impact 3% of their potential visitors. These Defendants have proven to be wilful wrongdoers on multiple levels. $500 a day, when compared with their profits, will clearly not coerce Defendants to do anything.

Second, Defendants' statement that no meet and confer took place prior to filing

---

relief' requiring proof of "extraordinary circumstances," keeping in mind that a Rule 60(b)(5) motion to modify "does not allow relitigation" of issues already resolved in the underlying trial. The court affirmed a denial of defendant's motion to modify an injunctive order to permit wider use of a descriptive term.

[17] Indeed, there is demonstrably no extreme hardship being visited on Defendants. They can comply with 100% of the Injunction *and* according to their own evidence, retain 97% of the visitors directed from organic searches. In addition, the Injunction has zero impact on a significant driver of their business: sponsored advertising.

[18] See, GTE Sylvania, Inc. v. Consumers Union of United States, 445 U.S. 375, 386 (1980)(it is the "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed; even if they do have proper grounds to object to the order.").

[19] Despite Defendants' characterization of DMV.ORG as some kind of public service, it is admittedly a for profit business run by willful false advertisers. Courts have long held the power to enjoin acts when, done alone could be legal, but when performed in the context of a totality of acts constitute unfair competition. The U.S. Supreme Court stated: "To ensure, however, that relief is effectual, otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined." United States v. Lowe's Inc., 371 U.S. 38, 53 (1962).

4812-6200-0387.1 -11-
REPLY MEMORANDUM BY PLAINTIFFS IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS

this Motion and thus attorneys' fees should not be awarded is ridiculous as numerous meet and confer sessions took place as stated in the Notice of Motion.[20/] Finally, profits should be awarded and Defendants fail to articulate why the policy in Plaintiffs' cited trademark cases is not equally applicable here.

## IX. ALL DEFENDANTS ARE PROPER

Defendants request that only Online Guru, Inc. be found in contempt and not "the individuals and other entities." [Opp. at pg. 2, ftn. 1.] Plaintiffs have asked for contempt against all Defendants because they are all named in the Injunction and subject to it.[21/] Since the Injunction extended to all Defendants, they cannot, either individually or as corporate entities affiliated with DMV.ORG, violate its terms.[22/]

## X. CONCLUSION

For the foregoing reasons and all those stated it its moving papers and submitted as evidence, Plaintiffs request that the Court find Defendants in contempt and order sanctions as requested by Plaintiffs.

DATED: January 27, 2009          Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: ___/s/Mina Hamilton___
David N. Makous
Daniel D. DeCarlo
Mina I. Hamilton
Attorneys for Plaintiffs

---

[20/] The Notice provides the dates of "September 2, 2008 and thereafter" as meet and confer dates, and the Declaration of Mina Hamilton attaches various meet and confer letters. Clearly, "the conference pursuant to L.R. 7-3" did take place. Moreover, Mr. Daucher's declaration is strange in that it says he heard nothing further from Plaintiffs' counsel after September 25, 2008. However, the meet and confer process did continue through Mr. Daucher's co-counsel Mr. Serwin. See, Declaration of Mina Hamilton In Support of Opposition to Ex Parte Application for Continuance of contempt hearing date. That Mr. Serwin and Mr. Daucher did not communicate with each other on this point is not Plaintiffs' fault.

[21/] Fed. R. Civ. P. 65(d) makes it clear that an injunction is binding on all "the parties to an action, their officers, agents, servants, employees and attorneys and upon those persons in active concert or participation with them." See also, Interstate Commerce Commision v. Rio Grande Growers Cooperative, 564 F.2d 848 (9th Cir. 1977).

[22/] Defendant Raj Lahoti has acknowledged in his declaration that he directed the compliance efforts. See, Docket, #279.