1   DAVID N. MAKOUS, SB# 082409
      E-Mail: makous@lbbslaw.com
2   DANIEL C. DECARLO, SB# 160307
      E-Mail: decarlo@lbbslaw.com
3   MINA I. HAMILTON, SB# 213917
      E-Mail: hamilton@lbbslaw.com
4   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
    221 North Figueroa Street, Suite 1200
5   Los Angeles, California  90012
    Telephone: 213.250.1800
6   Facsimile:  213.250.7900

7   *Attorneys for Plaintiffs*
    TRAFFICSCHOOL.COM, INC. and
8   DRIVERS ED DIRECT, LLC

9   ANDREW B. SERWIN CA Bar No. 179493
      aserwin@foley.com
10  TAMMY H. BOGGS CA Bar No. 252538
      tboggs@foley.com
11  **FOLEY & LARDNER LLP**
    ATTORNEYS AT LAW
12  3579 VALLEY CENTER DR., SUITE 300
    SAN DIEGO, CA  92130
13  TELEPHONE:     858.847.6700
    FACSIMILE: 858.792.6773

14
15  *Attorneys for Defendants* EDRIVER, INC., ONLINE
    GURU INC., FIND MY SPECIALIST, INC.,
    SERIOUSNET, INC., RAVI K. LAHOTI, RAJ LAHOTI
16

17              **UNITED STATES DISTRICT COURT**

18            **CENTRAL DISTRICT OF CALIFORNIA**

19  TRAFFICSCHOOL.COM, INC., a          CASE NO. CV 06-7561 PA (CWx)
    California corporation; DRIVERS ED
20  DIRECT, LLC, a California limited
    liability company,                  The Honorable Percy Anderson
21
              Plaintiffs,               **JOINT STATUS REPORT**
22
          v.
23
    EDRIVER, INC., ONLINE GURU,
24  INC., FIND MY SPECIALIST, INC.,
    and SERIOUSNET, INC., California
25  corporations; RAVI K. LAHOTI, RAJ
    LAHOTI, individuals,
26
              Defendants.
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

1

**PLAINTIFFS' PORTION OF JOINT STATUS REPORT**

2

**I.      SUMMARY OF PLAINTIFFS' POSITION**

3        The Ninth Circuit's July 28, 2011 Opinion ("Mandate") comes *over three years*

4   *after* the Court issued its June 4, 2008 Findings of Fact and Conclusions of Law and

5   Order Finding Defendants Liable for False Adverting ("Findings", Docket # 210).

6   Much has taken place since those Findings and the August 26, 2008 Judgment and

7   Permanent Injunction ("Injunction"). An accurate and fair reading of the Mandate

8   dictates that on remand, this Court must now *first* consider relevant *new* evidence

9   before it decides how to modify the Injunction – evidence that is mostly, but not

10  entirely, currently in Defendants' sole possession. That new evidence includes:

11       (1)      all relevant changes to DMV.org's website content and Defendants'

12                marketing practices (and when they occurred); and

13       (2)      the dissipation (or lack thereof) of public confusion.

14       Not surprisingly, Defendants refused to voluntarily disclose this evidence to

15  Defendants, hoping instead that this Court will capriciously eliminate the splash screen

16  remedy based solely on Defendants' most recent changes to the DMV.org website (i.e.,

17  changes made *after* the Mandate issued).[1] This Court should reject any proposal to

18  eliminate the splash screen based solely on Defendants' self-serving (and unchallenged)

19  pronouncements of "no continuing deception". Such a proposal is inconsistent with

20  both the letter and spirit of the Mandate. [See, Section II., *infra*.]

21       Indeed, Plaintiffs are aware of not only continuing *lingering public confusion* –

22  which Defendants also recently admitted– but of *continuing deception* by Defendants in

23  their DMV.org – related marketing practices.[2]  As explained herein, this evidence of

24  _____

25  [1] In the meet and confer process, Defendants suggested that they would be proposing
    the elimination of the splash screen in light of their recent design of disclaimers as
26  currently displayed on DMV.org. *See*, Hamilton Decl., ¶ 4, Ex. D.

27  [2] See Hamilton Decl., Exhs. C1, N –R.

28



**LEWIS
BRISBOIS
BISGAARD
& SMITH LLP**
ATTORNEYS AT LAW

4836-1685-8378.1

1  continued deception and confusion is itself sufficient, according to the Mandate, to
2  justify the continued requirement of the splash screen. [See, Section III., *infra*.]

3      However, Plaintiffs welcome modification of the current Injunction to clarify and
4  rectify Defendants' continued deliberate efforts to hide the disclaimer and to confuse
5  consumers, while still providing a narrowly tailored injunction that does not prohibit
6  future truthful advertising, and otherwise addresses all of the Ninth Circuit's First
7  Amendment concerns. Plaintiffs' suggestions for such a modified Injunction are
8  discussed herein. [See, Section IV., *infra*.]

9      Plaintiffs are cognizant of the Mandate that the Court must specify the conditions
10  that Defendants should satisfy in order to remove the splash screen in the future, but
11  those conditions are best determined after further factual findings are made based on
12  the new evidence. Alternatively, Plaintiffs herein propose that the Court borrow from
13  the Federal Trade Commission (FTC), which has developed laws and disclosure
14  guidelines that are directly analogous to the First Amendment rule of the "least
15  restrictive alternative" remedy for commercial speech, and thus would satisfy the Ninth
16  Circuit's First Amendment concerns. In addition, Plaintiffs suggest that the Court
17  appoint a Special Master at Defendants' expense to oversee and independently evaluate
18  the continued need for the splash screen on a periodic basis. [See, Section V., *infra*.]

19      Plaintiffs are emphatic that no modified permanent injunction should be issued
20  based solely on self-serving and unchallenged declarations or other evidence submitted
21  by Defendants, who have already been found to be willful false advertisers, and as we
22  will illustrate below, continue to be willful false advertisers. However, Plaintiffs
23  welcome a status conference with the Court, including setting the scope and procedures
24  for evidence evaluation, and/or the issuance of an order for additional briefing.
25  Plaintiffs would also be amenable to participating in a Court ordered settlement
26  conference to potentially resolve the issues on remand and then present a post-
27  settlement proposal for resolution of the injunction and attorney's fees issue to the
28  Court. [See, Section VI., *infra*.]

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

## II.   THE *CORRECT* INTERPRETATION OF THE MANDATE AND NEED FOR ADDITIONAL FACT FINDINGS

It is axiomatic that on remand the Court must be guided by the Mandate and follow it as closely as possible. The Ninth Circuit *affirmed* that this Court did not abuse its discretion "when it concluded that the splash screen was the optimal means of correcting defendants' false advertising" (*Opinion* at 9749) and remanded only because it believed that this Court may not "have considered that its injunction would permanently and unnecessarily burden access to DMV.org's First Amendment-protected content." (*Opinion* at 9750). It is critical for this Court to reject any incorrect interpretation of the Mandate, which Defendants appear to be intent on advancing.[3] Indeed, Defendants suggest that the Court need only look at the most recent version of the DMV.org website and simply enjoin any deceptive marketing or misleading statements on DMV.org, without any further fact finding. This position squarely violates the Mandate, which requires the Court to specifically consider the relevant new evidence which concerns ongoing confusion and deception since the Injunction.

Beginning with the end in mind, the Ninth Circuit's *specific remand instructions* to the Court are as follows:

> "On remand, the district court <u>shall</u>:
>
> [1.]   "[R]econsider the *duration* of the splash  screen *in light of any* intervening *changes in the website's content and marketing practices*";
>
> [2.]   "Reconsider the *duration* of the splash screen *in light*

---

[3] Defendants hope that this Court will erroneously interpret the Mandate as, in essence, a reversal of the splash screen and not allow Plaintiffs a chance to challenge Defendants' purported evidence. This approach would render meaningless the Ninth Circuit's pronouncement that "the injunction confers substantial benefits on the public" and "conferred significant benefits on third parties and also vindicated plaintiffs' right *to a 'market free of false advertising.'* [citation omitted.]" *Opinion* at 9754

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1      *of* …the *dissipation of the deception* resulting from

2      past practices." *Opinion* at 9751. (Emphasis added).

3      In other words, to resolve the "duration" issue, the Court must first consider new

4  evidence [i.e., (1) any intervening changes in the (a) website's content and (b)

5  marketing practices and (2) the dissipation, if any, of consumer confusion.].

6      Next, the Court instructs as follows:

7        "<u>If</u> the district court continues to require the splash screen, it

8        <u>shall</u>:

9          [1.]  Explain the continuing justification for

10          burdening the website's protected content and

11          [2.]  [W]hat conditions defendants must satisfy in

12          order to remove the splash screen in the future."

13        "In the *alternative*, or in addition, the court <u>may</u>:

14          [1.]  [P]ermanently enjoin defendants from engaging

15          in deceptive marketing or placing misleading

16          statements on DMV.org. See *U-Haul II*, 793 F.2d at

17          1043 (modifying injunction to prohibit only false and

18          misleading advertising)."

19      Thus, the Mandate advises that this Court, after considering the new evidence,

20  has the option of continuing to require the splash screen (with explained justifications

21  and guidance to Defendants on when it would no longer be necessary), *and/or* to

22  permanently enjoin any deceptive marketing or misleading statements.

23      These instructions should be considered in the overall context and construct of

24  the Ninth Circuit's entire discussion of the injunction and specifically, the splash screen

25  remedy.  In first upholding this Court's issuance the splash screen, the Ninth Circuit

26  noted "that the splash screen was necessary to:

27      (1)  'remedy any confusion that consumers have already developed before

28        visiting DMV.ORG for the first time,'

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

(2)     'remedy the public interest concerns associated with [confused visitors'] transfer of sensitive information to Defendants,' and

(3)     prevent confusion among DMV.ORG's consumers.'" *Opinion* at 9748-9749.

The Ninth Circuit then specifically *rejected* Defendants' argument on appeal that "the splash screen doesn't effectuate these stated goals," stating that the "self-serving" declaration submitted by Defendants "doesn't prove that the splash screen is ineffective in this respect, and says nothing about whether the alternative disclaimers serve the other two interests identified by the district court." *Id*. In affirming the remedy, the Ninth Circuit stated: "Defendants haven't carried their "heavy burden" of showing that their alternative disclaimers reduce DMV.org's likelihood of confusing consumers. [citations omitted.]" *Id*.

Turning next to First Amendment concerns, the Ninth Circuit stated that because DMV.org's "informational content is commingled with truthful commercial speech, which is entitled to significant First Amendment protection", the Court was "required to tailor the injunction so as to burden no more protected speech than necessary [citations omitted.]" *Opinion* at 9750.  While reversing nothing related to the issuance of the Injunction, the Ninth Circuit merely communicated a concern that the Court *may* not have fully considered First Amendment implications. Thus, the Ninth Circuit is inviting the Court to further evaluate two considerations.

First, the Ninth Circuit raised the issue of intervening changes to website content, stating that the "district court premised its injunction on its findings that defendants' "search engine marketing" and "non-sponsored natural listings, *including the DMV.ORG domain name*," caused consumers to be confused even before they viewed DMV.org's content" and "identified specific misleading statements on the website". It noted that the "splash screen is justified to remedy the harm caused by such practices <u>so long as they continue</u>." *Opinion* at 9751 (emphasis added).

Second, the Ninth Circuit raised the issue of lingering confusion: "The splash

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1
6
JOINT STATUS REPORT

1  screen is also <u>justified so long as it helps to remedy lingering confusion</u> caused by

2  defendants' past deception." "But the splash screen will continue to burden DMV.org's

3  protected content, even if all remaining harm has dissipated. At that point, the

4  injunction will burden protected speech without justification, thus burdening more

5  speech than necessary.[citations omitted.]

6      In sum, the requirement that the Court on remand reconsider the "duration" of

7  the splash screen *in light of* intervening changes in the (a) website's content and (b)

8  marketing practices", and (c) ongoing confusion is tied to the expressed First

9  Amendment concerns about the permanency of the injunction. *Opinion* at 9751.

10  Accordingly, it is inescapable that the Court must first examine the intervening factual

11  record before it decides to make any changes to the Injunction, including eliminating

12  the splash screen.

13      Moreover, the efficacy and functionality of Defendants' splash screen should

14  also be revaluated in light of the Mandate. Citing to two factual predicates that impose

15  "burdens on protected speech [that] are, under the current injunction, permanent" the

16  Ninth Circuit voiced concern that the "splash screen forces potential visitors to take an

17  additional navigational step, deterring some visitors from entering the website

18  altogether" and "precludes defendants from tailoring DMV.org's landing page to make

19  it welcoming to visitors, and interferes with the operation of search engines, making it

20  more difficult for consumers to find the website and its protected content." The Ninth

21  Circuit's footnotes 5 and 6 reference certain evidence that was unrebutted.[4]

22      First, addressing Footnote 5 of the Opinion related to the splash screen driving

23  away up to 25% of potential visitors, the Ninth Circuit stated: "Defendants' website

---

[4] All of this evidence, however, was submitted after the trial record closed in this case on January 24, 2008, and after this Court issued its Findings on June 4, 2008. T Plaintiffs objected to this evidence. [Docket #s 212-214.] However, a close examination of that evidence actually supports Plaintiffs' position on remand.


**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

usability expert submitted a declaration stating that splash screens typically drive away up to a quarter of potential site visitors.  Plaintiffs cite nothing to rebut this evidence." This "usability expert" is Bruce Tognazzini, whose declaration was submitted in support of Defendants' objection to the proposed Injunction. [Hamilton Decl., Ex. BB.] In paragraph 11 of his declaration he states: "Websites with initial splash pages typically lose 25% of their visitors at the splash page."  In making these statements he relies on a "guilt by association" theory (i.e., splash page associated w/ porno, alcohol and gambling) and on third party studies conducted in 1994 and a study he conducted in 1998. (see para. 13-17). Again, Plaintiffs never had the opportunity to rebut this evidence because this evidence was never part of the trial record.  Mr. Tognazzini was never identified as a witness, and Plaintiffs never had the opportunity to take his deposition or cross-examine him. Moreover, the splash screen at issue here is unrelated to any pornography, alcohol, or gambling website, and there has been no evidence presented that the splash screen as implemented actually drives away 25% of visitors from the DMV.org website.

Second, addressing Footnote 6 of the Opinion related to the splash screen's searchability and ranking, the Ninth Circuit stated: "Defendants introduced unrebutted evidence that splash screens commonly interfere with the automated 'spiders' that search engines deploy to 'crawl' the Internet and compile the indexes of web pages they use to determine every page's search ranking.  And splash screens themselves don't have high search rankings: Search engines commonly base these rankings on the web page's content and the number of other pages linking to it, and splash screens lack both content and links." This "unrebutted evidence" is the Declaration of David Gray, which was submitted by Defendants in support of their Opposition to the Motion for Contempt.  [Hamilton Decl., Ex. CC.] According to Gray, "a splash page, if not implemented properly will prevent users from finding DMV.ORG's content through the use of search engines". He cites to various web articles (hearsay) about this "well recognized" problem with splash pages in general. Plaintiffs never had the opportunity

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  to rebut this evidence and/or cross-examine Gray because, this evidence was not part of
2  the trial record, and Gray was never identified as a witness at trial.

3  However, David Gray's declaration also explains that Defendants have already
4  implemented a program so that DMV.ORG's splash page does *not* adversely affect the
5  website's searchability and resulting search ranking. This addresses the Ninth Circuit's
6  concern about interference with searchability, and confirms that the splash screen does
7  *not* interfere with the operation of search engines. According to Gray:

8      •   "Online Guru had to deploy the splash page in a manner that would still
9          allow users to search for and find DMV.ORG's information through search
10         engines." [Para. 11]

11     •   "To cope with these issues, Online Guru employed widely used and
12         accepted technologies including JavaScript and Cookies." [Para. 13]

13     •   "JavaScript was chosen as a solution because it assures that the splash
14         page is not displayed to search engines."  [Para. 14]

15     •   "To assure the continued existence of DMV.ORG it was imperative for us
16         to be able to do the following: display the splash page to users, while not
17         displaying the splash page to search engines." [Para. 14]

18     •   "Based on our internal discussions and planning as set forth above, it is my
19         belief that the implementation of a splash page through the use of JavaScript and
20         cookies was the best solution available that would allow DMV.ORG to still be
21         accessible to search engines. Furthermore, this was determined to be the best
22         solution to reach the largest spectrum of users given the widespread use and
23         acceptance of these technologies as set forth above." [Para. 22]

24     •   "[W]e spent hundreds of hours analyzing our options, seeking an option
25         which would both meet the mandate of this Court but not also destroy the
26         accessibility of the content of the site."

27  These statements support Plaintiffs' position that the splash screen does not (and
28  would not) unnecessarily burden access to any First Amendment protected content.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

9

1  Despite the splash screen, the website's content is still accessible to search engines,

2  allowing users to search and find the website and read its content.  In fact, a simple

3  Google search for "dmv approved traffic schools" shows that DMV.ORG (with the

4  highlighted content displayed) is in the SECOND NATURAL search result, right after

5  the government website (dmv.ca.gov).



21  See, Hamilton Decl., at Ex. L; See also results from searches of "DMV", "DMV

22  traffic ticket information.", Exhs. K and M.

23  **III.   JUSTIFICATIONS FOR THE CONTINUED IMPOSITION OF A**

24  **SPLASH SCREEN INJUNCTION**

25  Plaintiffs are aware of continuing *lingering public confusion* – which Defendants

26  have admitted – and *continuing deception* by Defendants in their DMV.org related

27  marketing practices.  As explained herein, this evidence of continued deception and

28  confusion is itself sufficient, according to the Mandate, to justify the continued



1  requirement of the splash screen.

2      **A.      Ongoing Confusion**

3      Defendants have recently admitted that confusion is still ongoing. [Hamilton

4  Decl., Exhs. D and C-1]

5

6  Defendants are aware of their document preservation obligations, and have preserved all relevant electronic data. However, on dmv.org's Facebook page, Defendants have removed from public view approximately 40 postings which they believed were inappropriate for a variety of reasons, including comments that are harmful, offensive, or perpetuate consumer confusion. For example, complaints that were apparently addressed to a Department of Motor Vehicles were removed by Defendants to **prevent further** confusion and to discourage other users from posting in these inappropriate manners.

7

8

9

10

11  I don't think our position is accurately stated in the letter. We believe there is still some consumer confusion, but at this time we do not agree that it results from past or current deception, and we believe there is no evidence of continuing deception. As such, we do not believe discovery in the method and manner that is proposed would be appropriate or necessary.

12

13

14      Thus, the splash screen is justified to continue to help remedy this continued

15  confusion caused by Defendants' past and ongoing deception.

16      **B.      Continued Deceptive Practices**

17      Since the Injunction, Defendants have engaged in additional marketing practices

18  that are intentionally deceptive.  Specifically, screen shots from the current DMV.org

19  website, attached to the Hamilton Decl, Exhs. S – X1] detail the following deceptive

20  practice:  In using a disclaimer before consumers email the site, Defendants purport to

21  direct the consumer to their local DMV and "Online Services" for that local DMV.

22  However, the consumer is actually being directed to DMV.org's own affiliated services.

23  This practice has resulted in consumer deception, which has caused at least one (but

24  likely thousands of other consumers) to pay fees to DMV.org (and its affiliates) under

25  the mistaken belief that these were *required fees* by their local DMV office.  [*Id.*, Ex.

26  O].  Indeed, since the Injunction, Defendants have created new marketing for DMV.org

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   through its Facebook page. Consumer comments to the DMV.org Facebook page

2   evidence confusion, as admitted by Defendants (see *supra*)[5] :

3
4
5
6
7



**Tom Pniewski** Please explain to me why my car registration arrived in the mail TODAY (July 7th) when my car tags are DUE TOMORROW (July 8th)??? It was POSTMARKED JULY 5TH!! MEANING IT WAS SENT JULY 5TH AND MY TAGS ARE DUE JULY 8TH! WITH A SMOG CHECK REQUIRED!!!!!!!!!!!!! TODAY IS THE 7TH PEOPLE! PLEASE CONTACT ME (somehow) AND EXPLAIN!!!!!!!!! BTW - I live in CA if that makes any difference or is it the problem?
July 7 at 7:33pm

8
9
10
11
12



**Tom Pniewski** One more thing. I'm was trying to pay my tags ONLINE, even though I didn't get anything from the DMV and got DINGED with FEES; - Here take and look:
DMV Fees:$114.00
Cartagz Service Fee:$29.00
Convenience Fee:$2.85
Shipping:$2.00
E-Copy:$5.00
Total Paid:$152.85
July 7 at 7:48pm

13
14
15



**Tom Pniewski** BTW - this was how I found out that needed a SMOG CHECK!!!! Someone explain away why I need to pay an Email Fee, Convenience Fee and the CarTagz Fee is RIDICULOUS!
July 7 at 7:50pm

16
17
18



**Jacquelyn Owusu** I HATE THE DMV. YOU GUYS WASTE PEOPLE'S LIFE
July 19 at 1:31pm · 👍1 person

19
20
21
22
23
24
25



**Rashid Rashiid** As the Facebook world as my witness and evidence PLEASE GRANT ME MY RIGHT TO AN ADMINISTRATIVE HEARING. WHY DO YOUR EMPLOYEES DENY ME A LEGAL PROCEDURAL DUE PROCESS ! Train your employees to know the law!

I certify by law that this is my fifth attempt to ask for a hearing at the DMV

Thank you Facebook
February 21 at 10:53pm · 👍2 people

26   [5]As noted in the Hamilton Decl. at ¶¶ 15 - 20, Defendants recently deleted certain
27   evidence showing consumer confusion related to this practice.  Luckily, Plaintiffs
     saved screen shots of this evidence.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Additional deceptive practices continue and there are likely others that Plaintiffs will find after additional investigation and discovery. See, Hamilton Decl., Exhs. P-1 and X2 (marketing of DMV.ORG at the website www.UnitedStates.org listing it alongside other government websites).

**C.  New Visitors to DMV.org**

In addition to the above, the continued imposition of the splash screen is justified because there are brand new visitors to DMV.org every year, including new teenager drivers that visit the site every year.  Consider the following:

•  According to a 2003 DMV study, there are approximately 20,000 new provisional licenses issues monthly.  This includes all drivers under the age of 18. See,http://dmv.ca.gov/about/profile/rd/r_d_report/Section%201/205-GDL%20Report.pdf. [Hamilton Decl., ¶ 37.]

•  According to the US DOT, FHA (United States Department of Transportation, Federal Highway Administration) report for 2009, there were 236,358 licensed drivers aged 16 & 17 in CA.  The average age according to the CA DMV study noted above for a provisional license being issued is 16 ½.  The same report showed there were 3,836,929 licensed drivers aged <16, 16, 17 in the entire United States. See, http://www.fhwa.dot.gov/policyinformation/statistics/2009/dl22.cfm . *Id*. at ¶ 38.

These numbers are annual numbers that likely stay very consistent so the universe of new teen drivers looking to get licenses in California and the United States is likely consistent with these figures.

**D.  Defendants' Proposed Disclaimers and the Inherent Deception of the DMV.org Domain Name**

A review of this Court's prior relevant Findings defeats Defendants anticipated argument that their current "disclaimers are sufficient":

1.  "Despite being aware of consumer confusion, Defendants did nothing to rectify the problem until the filing of this lawsuit. Indeed, Defendant Raj Lahoti testified

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

13

JOINT STATUS REPORT

1    that he does not view the confusion as a problem. [evidence citation omitted.]"

2    Docket #210 at 21.

3    2.  "The Court finds that Defendants' deception was willful." *Id*.

4    3.  "The Court further finds that none of the steps Defendants have taken since the

5        filing of this action alter this conclusion." *Id*.

6        The third finding relates to the Court's previous recitation of "Post-Lawsuit

7    Changes to DMV.ORG" at page 16 of the Findings, in which the various changes made

8    by Defendants were discussed, including that "Defendants added a description in large

9    font stating "<u>The Unofficial Online Guide to the DMV</u>" to some, but not all, webpages

10   on DMV.ORG. [evidence citation omitted; emphasis added]."

11       Why are these prior findings relevant? Because Defendants now seek to

12   persuade the Court that their most recently modified website which includes

13   disclaimers using the "Unofficial" phrase are sufficient to warrant abandonment of the

14   splash screen. However, this ignores that "Unofficial" disclaimers were previously used

15   by Defendants and per Defendants' own admission, were ineffective to prevent

16   confusion. This Court specifically found the following: "However, as the many

17   examples listed above that post-date the filing of this lawsuit show, and as Defendants

18   admit, members of the public continue to be confused in spite of these changes."  *Id*.

19       Indeed, Plaintiffs believe that the DMV.org domain name is inherently

20   misleading and Defendants' proposed disclaimers (as proposed as part of the meet and

21   confer process) are insufficient to cure this, thus further justifying the continued need

22   for the splash screen.  Professor McCarthy's treatise is worth quoting as he addresses

23   the exact issue:

24       "Defendant's disclaimer stating that it is not connected with
         plaintiff may or may not prevent a finding of likely
25       confusion, depending upon the facts.[citations in footnote
         omitted.] However, many courts have held that a disclaimer
26       does not serve to cure an otherwise clear case of likely
         confusion. [citations in footnote omitted.] Consumer studies
27       indicate that disclaimers are ineffective in curing customer

28



confusion over similar marks. [citations in footnote omitted]. In fact, in some instances, the use of a disclaimer can serve to aggravate, not alleviate, confusion over brands.[⁶]

* * *

Clearly, use of a relatively inconspicuous disclaimer will not prevent  likely confusion.[citing to University of Georgia Athletic Ass'n v. Laite, 756 F.2d 1535, 225 U.S.P.Q. 1122 (11th Cir. 1985); Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F. Supp. 1259, 19 U.S.P.Q.2d 1321, 1334 (S.D.N.Y. 1990) ("Because of its location and size, the disclaimer does not effectively eliminate the misleading impression conveyed in the ad's large headline.").

* * *

In the author's view, the problem with a disclaimer in a case of clear infringement is that the consumer is then faced with two contradictory messages: the infringing trademark says that this product comes from source Alpha - the disclaimer says we have no connection with Alpha. Imagine the infringing product greeting the potential purchaser with a smile and saying: "Hello! I'm from KODAK, but of course I have no connection with KODAK!" Such conflicting messages put together can sometimes create a label or

---

⁶ Citing to cases, See, e.g., *E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1989 WL 159628 (E.D. Cal. 1989), modified, aff'd, 955 F.2d 1327, 21 U.S.P.Q.2d 1824 (9th Cir. 1992), amended, 967 F.2d 1280 (9th Cir. 1992) (Survey results with and without a prominent disclaimer of connection showed that a disclaimer had very little impact in reducing the level of confusion. In one market survey, the confusion level was even slightly higher with a disclaimer than without. The court granted a near absolute injunction against use of a personal name.); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1551 (S.D. Tex. 1996), aff'd on point, 155 F.3d 526, 48 U.S.P.Q.2d 1065 (5th Cir. 1998) ("inconspicuous disclaimers" were not sufficient to eliminate golfers' confusion that defendant golf course look-alike holes were sponsored or approved by plaintiff golf courses); *Cartier, Inc. v. Deziner Wholesale, L.L.C.,* 55 U.S.P.Q.2d 1131, 2000 WL 347171 (S.D. N.Y. 2000) (disclaimer in print that is 16 times smaller than defendant's use of plaintiff's trademark is not effective to offset likely confusion).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1
15
JOINT STATUS REPORT

<u>advertisement that is just as or even more confusing and</u> <u>deceptive than the infringing mark alone.</u> [citing to See Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 62 U.S.P.Q.2d 1757, 1770 (3d Cir. 2002) ("We do not believe that a disclaimer can rectify a product name that necessarily conveys a false message to the consumer.")

4 McCarthy on Trademarks and Unfair Competition § 23:51 (4th ed.) (Emphasis added).

"Moreover, the academic research on disclosures and disclaimers reveals that they are rarely effective when the main message of an ad is confusing or misleading. See, Rebecca Tushnet, *Trademark Law as Commercial Speech Regulations*, 58S.C.L.Rev. 737-756, 742 (2007)(citing to multiple sources, including certain FTC comments that "[T]est results suggest that consumers may misconstrue some qualifying disclosures as part of the seller's promotional message, thereby reinforcing rather than limiting the claim.").

Even Judge Kozinski agrees that some domain names have the inherent ability to mislead. In *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177-1178 (9th Cir. Cal. 2010), another Lanham act case dealing with domain names, the Ninth Circuit in an opinion written by Judge Kozinki remanded an injunction that ordered the alleged infringers to cease using the domain names buy-a-lexus.com or buyorleaselexus.com or to use the trademark Lexus trademark in any other domain name. Judge Kozinski found the injunction too broad, but of note, distinguished the domains from domains like DMV.org, stating:

The district court reasoned that the fact that an internet domain contains a trademark will "generally" suggest sponsorship or endorsement by the trademark holder. When a domain name consists only of the trademark followed by .com, or some other suffix like .org or .net, it will typically suggest sponsorship or endorsement by the trademark holder. [citations omitted] n4 This is because "[a] customer who is unsure about a company's domain name will often guess that

the domain name is also the company's name." Id. [citations omitted]. If customers type in trademark.com and find the site occupied by someone other than the trademark holder, they may well believe it is the trademark holder, despite contrary evidence on the website itself. Alternatively, they may become discouraged and give up looking for the trademark holder's official site, believing perhaps that such a website doesn't exist. [citation omitted]

n4 Of course, not every trademark.com domain name is likely to cause consumer confusion. [citation omitted] For instance, we observed in Interstellar Starship that an apple orchard could operate at the website apple.com without risking confusion with Apple Computers, in light of the vast difference between their products. [citation omitted] "If, however, the apple grower . . . competed directly with Apple Computer by selling computers, initial interest confusion probably would result," as the apple grower would be using the apple.com domain to appropriate the goodwill Apple Computer had developed in its trademark. [citation omitted]

When a website deals in goods or services related to a trademarked brand, as in this case, it is much closer to the second example, where apple.com competes with Apple Computers. If a company that repaired iPods, iPads and iPhones were to set up at apple.com, for instance, consumers would naturally assume that the company was sponsored or endorsed by Apple (or, more likely, that it was Apple). Where a site is used to sell goods or services related to the trademarked brand, a trademark.com domain will therefore suggest sponsorship or endorsement and will not generally be nominative fair use.

Like the examples cited by Judge Kozinski, DMV.org is an inherently misleading domain name and thus the splash screen is justified so long as Defendants continue to use that name.

/ / /



4836-1685-8378.1

## IV. THE PLAINTIFF'S PROPOSED SUGGESTIONS FOR A MODIFIED PERMANENT INJUNCTION THAT IS FULLY CONSISTENT WITH THE MANDATE AND FIRST AMENDMENT JURISPRUDENCE

First, Plaintiffs propose that the Injunction be modified to clarify that the wording in the disclaimer must be truly prominent. Since the Injunction issued, Defendants have failed to comply with it. Plaintiffs are not the only ones that think so. Two independent bloggers have commented that Defendants appear to be hiding the disclaimer:

> combat false advertising, but with conditions.) [You can look at the splash screen the district court imposed either in the Appendix to the opinion or here. I will say that the "Disclaimer" seems deliberately hidden, at the top of the page (where it's easily ignored given the placement of the click-through. I might well not have even seen it if I wasn't actively looking for it.)]



> There is a potential bright spot, I suppose: the current splash screen is pretty bad (I would infer deliberately so). Defendants have removed "Unoffi cial Guide to the DMV" from their license plate logo. The disclaimer runs at the very top, a couple of pixels away from the top of the browser window, in grey rather than black text (a nearly transparent tactic, pun intended!), not near the action invitation to click to continue, and not near the dmv.org logo, both of which are far more prominent to the eye. This placement clearly flunks the FTC's guidelines for online disclosures, and defendants who already managed to mis-implement disclosures (of which more below) should not get the benefit of the doubt in this area. On remand, I sincerely hope that the revised remedy, whether splash

(Hamilton Decl., Exhs. Y and Z).



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Moreover, Defendants have repeatedly changed the DMV.org logo on the splash
2   screen and the look of the splash screen, including: (i) delaying the disclaimer text, (ii)
3   presenting the delayed disclaimer text in faint grey font that blends with the toolbar
4   browser, (iii) using font that is smaller than the logo, and (iv) making changes to the
5   logo, going from "unofficial guide" to "dmv made simple" and now back again to
6   "unofficial." (Hamilton Decl., ¶¶ 7-11).  Even the Court recognized that the Injunction
7   should be modified to clarify the requirements about the disclaimer text. The Court
8   previously stated: "Ordinarily, the Court might modify paragraph (f) of the injunction
9   to require that the lettering in paragraph (c) appear larger than any lettering used in the
10  DMV.ORG logo, without specifying the size of the language in paragraph (c).
11  However, the injunction is currently on appeal, and therefore the Court declines to
12  modify the injunction in the absence of a stipulation from the parties." Docket # 290,
13  Ex. DD to Hamilton Decl.

14  Second, to address the Ninth Circuit's comment that the splash screen "precludes
15  defendants from tailoring DMV.org's landing page to make it welcoming to visitors,
16  and interferes with the operation of search engine,[7]" Plaintiffs propose that the
17  Injunction be modified so that the splash screen appear after the user first views the
18  landing page but before the user is able to navigate in the site,[8] and to clarify that the
19  splash screen may be designed to not interfere with the operation of search engines (as
20  is the case already, see *supra*).

---

22  [7] Again, while Plaintiffs do not challenge the evidence submitted by Defendants that
23  some splash screen do interfere with search engines, Plaintiffs submit that here,
24  Defendants have admittedly designed the splash screen so as not to interfere with
    the search engines.

25  [8] While the following link displays neither a disclaimer nor splash screen, it models
26  the type of functionality that Plaintiffs are suggesting:
    http://www.aaafoundation.org/home/ .

27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   Third, Plaintiffs propose that the Court permanently enjoin Defendants from

2   engaging in deceptive marketing or placing misleading statements on DMV.org to

3   address the *specific* currently deceptive practices taking place, as discussed *supra* and

4   *infra*.

5   **B.   Why, as Suggested by the Ninth Circuit, The Court Should *Also***

    **Permanently Enjoin Defendants From Engaging in Deceptive**

6   **Marketing or Placing Misleading Statements on DMV.org. And Not,**

7   ***Alternatively* Do So**

8   Contrary to Defendants' contention, the Ninth Circuit's Mandate did not invite

9   the Court to simply draft an injunction that states that defendants are permanently

10  enjoined from "engaging in deceptive marketing or placing misleading statements on

11  DMV.org."  This incorrect interpretation of the Mandate would lead to a broad and

12  almost meaningless remedy; one that fails to be narrowly tailored and which would

13  open the door to further contempt motions every six months, possibly new lawsuits, and

14  a waste of judicial resources. Indeed, the Ninth Circuit specifically instructed to "*See*

15  *U-Haul II*, 793 F.2d at 1043 (modifying injunction to prohibit only false or misleading

16  advertising)."

17  The reference to *U-Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034,

18  1042-1043 (9th 1986), clarifies the Ninth's intent, which was not to instruct the Court

19  to issue a one line vague and overbroad injunction. The revised *U-Haul II* injunction

20  was anything but that. In line with the First Amendment concern that a false advertising

21  remedy should go no further in imposing a restraint on commercial speech than is

22  reasonably necessary to accomplish the remedial objective of preventing false

23  advertising, the Ninth Circuit held in *U-Haul II* that an injunction against false

24  comparative advertising which seemed also to prohibit potential truthful comparative

25  advertising raised commercial free speech problems and must be narrowed in scope.

26  The Ninth Circuit stated:

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

"As currently written, the injunction seems to prohibit future comparative advertising even if it is truthful. We are mindful of our obligation to prevent Jartran from misleading the public in the future with its deceptive ads. But we can fulfill that obligation while protecting Jartran's First Amendment rights -- and simultaneously increase the "informed and reliable decision making" that honest advertising can provide. [citations omitted.] We therefore modify the injunction as follows: [[9]]

IT IS ORDERED that defendant JARTRAN, INC., its officers, agents, servants, employees, consultants and all those persons in active concern or participation with them, be and they are hereby permanently enjoined and restrained from publishing or otherwise disseminating any advertisement or media press release, that:

(1)   [Purports to state] *Falsely or deceptively states* both the prices charged by U-Haul and those charged by Jartran and/or *falsely or deceptively* states that Jartran saves consumers money by reason of the prices charged by Jartran while mentioning, displaying, or otherwise directly referring to U-Haul or any of its equipment;

(2)   *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks or trailers are safer than all U-Haul trucks or trailers;

(3)   *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks or trailers are more stable than all U-Haul trucks or trailers;

(4)   *Falsely or deceptively* represents, either expressly or impliedly, that Jartran trucks are more fuel efficient than all U-Haul trucks; or

---

[9] "n7 Additions are italicized, deletions are bracketed."



(5)     *Falsely or deceptively* represents, either expressly or
impliedly, that Jartran equipment is in any manner
better designed than all U-Haul equipment."

*U-Haul II,* 793 F.2d at 1042-43.

Accordingly, the proper interpretation of the Mandate is not as Defendants suggest—a broad unworkable injunction— but a narrowly tailored one in the format of *U-Haul II.*

## V.   THE SPECIFIC CONDITIONS THAT THE COURT SHOULD ORDER DEFENDANTS TO SATISFY IN ORDER TO REMOVE THE SPLASH SCREEN IN THE FUTURE THAT ARE IN LINE WITH THE NINTH CIRCUIT OPINION

Plaintiffs acknowledge that the Ninth Circuit has stated that the Court must specify the conditions that Defendants should satisfy in order to remove the splash screen in the future. However, Plaintiffs submit that those conditions are best determined after the Court evaluates all of the relevant new evidence and allows the parties to respectively brief the issue based on the new evidence.

Alternatively, Plaintiffs first propose that in order to justify any removal of the splash screen in the future, Defendants would need to change their inherently misleading domain name and redirect all visitors to DMV.Org to a newly non-deceptive domain (e.g., UnofficialGuideToDMV.com). A legal scholar following this case has also made this argument. See, Hamilton Decl., Ex. Y).

Plaintiffs' also propose that the Court borrow from the Federal Trade Commission (FTC), which has developed laws and disclosure guidelines that are directly analogous to the First Amendment rule of the "lease restrictive alternative" remedy for commercial speech, and thus would satisfy the Ninth Circuit's First Amendment concerns. As Professor McCarthy states:

"It is the in the remedy phase that First Amendment concerns
appear to have their greatest impact in the false advertising

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

22

JOINT STATUS REPORT

context. That is, in determining the terms and scope of an injunction, free speech policies must be considered. The traditional First Amendment rule of the "least restrictive alternative" is that court orders must be written in the narrowest possible terms which focus upon the exact remedial objective to be accomplished.[ ] <u>There is also a direct analogy in Federal Trade Commission (FTC) proceedings.</u> For almost fifty years, the Supreme Court followed a rule of interpretation that less restrictive alternatives must be investigated and rejected before the FTC could adopt a remedy against false advertising that required the excision of a trademark. [citations omitted.] Whether this rule of FTC procedure has now become one of Constitutional statute is not clear from Supreme Court interpretations.[citations omitted.] However, the Court had indicated that the least restrictive alternative rule does to some extent apply to the commercial speech context, the Court observing that the First Amendment mandates that speech restrictions be "narrowly drawn" and not "completely suppress information when narrower restrictions on expression would serve a legitimate interest as well." 4 McCarthy on Trademarks and Unfair Competition § 27:69 (4th ed.)

Accordingly, Plaintiffs attach as Exhibit AA to the Hamilton Decl. the FTC guidelines; See also, Tushnet, Ex. Y.

In addition, or alternatively, Plaintiffs propose that the Court appoint a Special Master to oversee and independently evaluate the continued need for the splash screen on a periodic basis.

## VI.  THE COURT'S PROPOSED NEXT STEP(S): SETTING A STATUS CONFERENCE, ISSUING AN ORDER REQUESTING ADDITIONAL BRIEFING, OR ISSUING A MODIFIED PERMANENT INJUNCTION

In light of the all of the above considerations, Plaintiffs welcome a status conference with the Court, including setting the scope and procedures for evidence gathering and evaluation. Plaintiffs also are prepared to provide the Court with additional briefing as to the First Amendment, FTC procedures, or any other issues. Plaintiffs are also open to participating in a Court ordered settlement conference. However, Plaintiffs' are emphatic that no modified permanent injunction should be issued based solely on self-serving and unchallenged declarations or other evidence submitted by Defendants who have already been found to be willful false advertisers and as illustrated above, are continuing to engage in deceptive practices.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4836-1685-8378.1

**DEFENDANTS' PORTION OF JOINT STATUS REPORT**

**I.   INTRODUCTION**

The permanent injunction entered by this Court over three years ago is operating as an impermissible prior restraint on free speech and must be dissolved or modified in light of significantly changed circumstances.  Critically, any and all past deceptive conduct for which the Court entered its permanent injunction has been cured by Defendants.  The permanent injunction's requirement for a splash screen barrier is unjustified and unnecessarily burdensome for at least three reasons:

•   A restraint is being imposed on informational content that is fully protected under the First Amendment;

•   A restraint is being imposed on truthful commercial speech, which is entitled to significant First Amendment protection; and

•   Defendants no longer engage in any marketing practices that the Court found deceptive nor does the site contain any false or misleading statements.

Defendants own or manage[1] the website http://www.dmv.org/ ("dmv.org") an internet publishing platform that provides Constitutionally-protected information regarding driver-related tasks and vehicle services.[2]  Visitors to the site can perform research and read articles on a number of subjects as identified by the Ninth Circuit, as well as highly popular "How-To" Guides, how to easily register as a voter, how to apply for and obtain a passport, and otherwise gain invaluable information.[3]  Defendants earn revenues through receiving referral fees from third parties, and selling sponsored links.

---

[1] For the precise relationships between Defendants and in relation to dmv.org, *see* Doc. No. 210 at 2:25-3:10.

[2] *See* http://www.dmv.org/ (last visited September 6, 2011) and Declaration of Raj Lahoti ("Lahoti Decl.") ¶ 2, Exhibit A (screen shot of dmv.org's current home page).

[3] *Id.*

DLMR_929435.6

Following this Court's issuance of a permanent injunction, Defendants discontinued all the marketing practices that the Court found problematic. Moreover, the content of dmv.org has evolved, and the site design has been dramatically overhauled, such that the Court's initial concerns have been entirely alleviated. There are now numerous embedded design elements to the site that explicitly and implicitly disclaim any government affiliation, including the very first line of each and every web page on dmv.org – at the top – which states unambiguously: **"DMV.org is a privately owned website that is not owned or operated by any government agency."** These design changes are discussed and shown in further detail below. Furthermore, the "splash screen" ordered by the Court has been in place for over three years – more than sufficient amount of time to dissipate any public and consumer confusion caused by Defendants' formerly deceptive conduct. Finally, in multiple ways, Defendants have voluntarily warned consumers not to transmit sensitive information to dmv.org, including in three spots on dmv.org's contact form.[4]

Accordingly, Defendants respectfully request that the Court dissolve or modify the previously entered permanent injunction as follows:

- The requirement for an "acknowledgment splash screen" be removed;

- Dmv.org shall utilize visible design elements on the website that disclaim its affiliation with any government agency;

- Defendants should be permanently enjoined from engaging in deceptive marketing or placing misleading statements on dmv.org,[5] and

- Any alleged violations of the Court's permanent injunction shall be subject to a 30-day notification-and-cure period.

A redlined and clean copy of Defendants' [Proposed] Permanent Injunction has

---

[4] Lahoti Decl. ¶ 6, Exhibit E (screen shot of dmv.org's current contact form).

[5] This last point is an approach suggested by the Ninth Circuit. *See* Declaration of Andrew Serwin ("Serwin Decl."), Ex. A at *7.

3

been submitted by Defendants.[6]  Should the Court continue to require a splash screen, Defendants request: (1) an explanation for the splash screen's continued justification for burdening the website's protected content and what conditions Defendants may satisfy in order to remove the splash screen in the future, and (2) an opportunity to present new evidence and/or satisfy the Court's conditions for removing the splash screen.[7]

## II.    PROCEDURAL STATUS

On August 26, 2008, the District Court for the Central District of California entered its judgment and permanent injunction in the above captioned matter.[8] Cross-appeals to the Ninth Circuit Court of Appeals ensued and resulted in a Ninth Circuit published opinion issued on July 28, 2011.[9]

On August 23, 2011, the Ninth Circuit filed its mandate with instructions for the District Court to reconsider the scope and terms of the permanent injunction.

On August 24, 2011, this Court ordered the parties to meet and confer regarding the modification of the permanent injunction, and also, to file a joint status report by September 6, 2011, setting forth the parties' respective positions concerning their proposals for how, consistent with the Ninth Circuit's Opinion, the Court should modify the permanent injunction and what, if any, additional factual findings the Court should rely on in modifying the permanent injunction.

## III.    SUMMARY OF PARTIES' MEET AND CONFER[10]

On September 1, 2011, counsel for the parties met and conferred telephonically, with their respective clients in attendance telephonically.  Counsel

---

[6] Serwin Decl. ¶ 3, Exhibits B and C.
[7] *See TrafficSchool.com, Inc.,* 2011 WL 3198226, at *7.
[8] Exhibit D to Serwin Decl.
[9] *TrafficSchool.com, Inc. v. Edriver Inc.*, --- F.3d ----, 2011 WL 3198226 (9th Cir. July 28, 2011), attached as Exhibit A to Serwin Decl.
[10] Serwin Decl. ¶ 5.

JOINT STATUS REPORT
CASE NO. CV 06-7561 PA (CWx)

for Defendants, Andrew Serwin, presented Defendants' proposal for how the permanent injunction should be modified, in substantially the same form as is being requested from this Court.  Plaintiffs' position was that the permanent injunction should not be modified in any form until Plaintiffs were provided with evidence that the permanent injunction was not needed.  Counsel for Plaintiffs suggested setting a schedule for conducting written discovery and taking depositions, relating to any lingering "confusion" in the marketplace.

Counsel for Defendants responded that (1) any formerly problematic practices had been discontinued; (2) evidence of "confusion" stemming from the website could not be viewed in a vacuum apart from allegedly deceptive conduct; and (3) existing consumer confusion is not a result of deceptive conduct.  Counsel for Defendants further expressed that Plaintiffs appeared to be completely ignoring the restrictive effects that the splash screen imposes on First Amendment protected speech, and that the Ninth Circuit's suggested injunction to enjoin Defendants from engaging in deceptive marketing or placing misleading statements on dmv.org would fully resolve any of Plaintiffs' and the District Court's concerns – without additional fact finding and discovery.  However, counsel for Defendants agreed to review a written proposal for a discovery schedule and respond as quickly as possible.

Between September 2-6, 2011, Plaintiffs and Defendants exchanged meet and confer correspondence relating to permanent injunction and discovery issues.[11] Plaintiffs' arguments, which are nothing more than a distraction from the real issues, can be boiled down as follows: (1) that Defendants' implementation and optimization efforts of the splash screen is deceptive; and (2) that Defendants are improperly deleting comments from dmv.org's Facebook page.  On the first point, Defendants responded that the splash screen fully complies with the Court's order

---

[11] Serwin Decl. ¶¶ 6-9, Exs. E-H.

and the issue has already been adjudicated.  On the second point, Defendants responded that dmv.org remove inappropriate comments from its Facebook page for a variety of reasons, including that the comments are disparaging or offensive, or that leaving the comments up would actually *perpetuate* consumer confusion.[12]

## IV.   STATEMENT OF NINTH CIRCUIT'S DECISION

Relevant to the permanent injunction issued by this Court, the Ninth Circuit Court of Appeals discussed as follows:

- Information provided by Defendants on the website dmv.org "seems . . . legitimate and useful . . . , except that some visitors mistakenly believe the site is run by their state's department of motor vehicles (DMV)." *TrafficSchool.com, Inc.,* 2011 WL 3198226, at *1.

- The district court reasoned that the splash screen was necessary to: (1) 'remedy any confusion that consumers have already developed before visiting DMV.ORG for the first time," (2) "remedy the public interest concerns associated with [confused visitors'] transfer of sensitive information to Defendants," and (3) "prevent confusion among DMV.ORG's consumers.'" *Id.* at *6.  As will be discussed in detail below, all of these concerns have been remedied by Defendants.

- "Some of the website's content is informational and thus fully protected, such as guides to applying for a driver's license, buying insurance and beating traffic tickets." *Id.*

- "The district court does not appear to have considered that its injunction would permanently and unnecessarily burden access to DMV.org's First Amendment-protected content.  The splash screen forces potential visitors to take an additional navigational step, deterring some consumers from entering the website altogether.  It also precludes defendants from tailoring Dmv.org's landing page to make it welcoming to visitors, and interferes with the operation of search

---

[12] Lahoti Decl. ¶¶ 8-9.

engines, making it more difficult for consumers to find the website and its protected content.  All of these burdens on protected speech are, under the current injunction, permanent." *Id.* at *7 (internal footnotes omitted).

- "[W]ebsite content and advertising practices can and do change over time.  Indeed, the court found that defendants had already 'made some changes to DMV.ORG and how they marketed it.'" *Id.*

- "On remand, the district court shall reconsider the duration of the splash screen in light of any intervening changes in the website's content and marketing practices, as well as the dissipation of the deception resulting from past practices. If the district court continues to require the splash screen, it shall explain the continuing justification for burdening the website's protected content and what conditions defendants must satisfy in order to remove the splash screen in the future." *Id.*

## V.   THE PERMANENT INJUNCTION MUST BE MODIFIED

### A.   <u>Legal Standards</u>

A district court is authorized to relieve a party from final judgment where it is no longer equitable that the judgment have a prospective operation.  Fed. R. Civ. P. 60(b)(5); *Rufo v. inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992) (discussing changed circumstance as basis to modify a judgment); *Lapin v. Shulton, Inc.*, 333 F.2d 169, 170 (9th Cir. 1964) ("It is clear that the issuing court has continuing jurisdiction to modify or revoke an injunction as changed circumstances may dictate.").

An injunction must burden no more protected speech than necessary. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994); *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1016-14 (9th Cir. 2004).  An injunction operates as an unconstitutional prior restraint when individuals are enjoined from engaging in lawful speech that they have conducted in a lawful manner in the past. *See Lawson v. Murray*, 515 U.S. 1110, 1111 (1995) (Scalia, J., concurring); *see*

1   *also New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1071, 1083-84 (C.D. Cal. 2003)

2   (analyzing and summarizing different forms of "speech" and finding that requested

3   injunction would be an impermissible prior restraint).  Prior restraints are the most

4   serious and least tolerable infringements on First Amendment rights.  *Nebraska*

5   *Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976).  Such restraints bear a "heavy

6   presumption" against their constitutionality.  *Forsyth County v. Nationalist*

7   *Movement,* 505 U.S. 123, 130 (1992).

8         Informational articles that "serve a commercial purpose" but yet contain

9   "expressive elements" are afforded full First Amendment protection.  *Mattel Inc. v.*

10   *MCA Records, Inc.*, 296 F.3d 894, 906-07 (9th Cir. 2002) ("If speech is not 'purely

11   commercial'—that is, if it does more than propose a commercial transaction—then

12   it is entitled to full First Amendment protection."); *Hoffman v. Capital Cities/ABC,*

13   *Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001).  Truthful commercial speech is entitled

14   to significant First Amendment protection.  *See Cent. Hudson Gas & Elec. Corp. v.*

15   *Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980).  In the event that lingering

16   confusion from past deception has dissipated, or a less burdensome alternative

17   method is available as a remedy, then a splash screen's burden on protected

18   content is unjustified.  *TrafficSchool.com, Inc.,* 2011 WL 3198226, at *6-7.

19         **B.**    **The Court Should Consider The Significant Interim Changes**

20                **Made to Dmv.org and Narrowly Tailor the Injunction to Enjoin**

21                **Only False or Deceptive Statements**

22         The currently imposed injunction for a splash screen "barrier" is

23   undoubtedly burdening "more protected speech than necessary."  As the

24   undisputed evidence in the record indicates, splash screens drive away up to 25%

25   of potential site visitors.[13]  Moreover, the splash screen barrier interferes with

26

27   _____

28   [13] It should be noted that the lost site visits and referrals have slashed Defendants'
operating revenues by an equal or greater magnitude.

Defendants' ability to engage in free speech as well as the public's ability to receive information on dmv.org.[14]  A less burdensome remedy – one that does not operate as a prior restraint on speech – will allow for a free exchange of information, solve the Court's concerns regarding deception, and permit more consumers to find and access a host of valuable services.

This Court should consider the overhauled marketing strategy and design element changes in dissolving and/or modifying the permanent injunction.  In 2008, Defendants discontinued the search engine marketing practices that the Court found problematic.  For example, a user who  inputs "California DMV" into a Google search sees dmv.org as the third natural listing, with the text – "California DMV Guides and How-To's – DMV.org: The Unofficial DMV Guide."[15]  Moreover, the content, design and "look and feel" of dmv.org are completely different.

///
///
///
///
///
///
///
///
///
///
///

---

[14] It is unrebutted in the record that splash screens interfere with search engines' functionalities and therefore, the ability for both Defendants and the public to exchange information.
[15] Lahoti Decl. ¶ 4, Exhibit C (Google screenshot as of Sept. 1, 2011).

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25   ///
26   ///
27   ///
28



"Before" screen shot – dmv.org's previous home page design

Clearly visible disclaimer

Added to site

New logo

"After" screen shot – Dmv.org's current home page design, after clicking through splash screen

DLMR_929435.6

The following table sets forth potential concerns the Court had in entering its injunction, and subsequent changes in Defendants' practices to remedy each concern.

| | POTENTIAL CONCERNS REGARDING DECEPTION | CHANGES ALREADY IMPLEMENTED BY DEFENDANTS |
|---|---|---|
| 1. | Visitors to DMV.ORG may mistakenly think that the website was their state's Department of Motor Vehicle's official site.[16] | **At least five (5) major design changes:** <br><br> 1. Disclaimer is the very first line of each and every web page on dmv.org – at the top: **"DMV.org is a privately owned website that is not owned or operated by any government agency."** <br><br> 2. Website features new design colors, layout, cartoon logo, and slogans <br><br> 3. Added to Site: "The Unofficial DMV Guide, Since 1999" <br><br> 4. Displayed in header: section entitled "About Our Company" <br><br> 5. Ran a 99designs.com redesign contest with specific instructions that the website should not look anything like a government site.[17] |
| 2. | Sponsored Listings were potentially deceptive | 1. Practices identified by Court were **discontinued** <br><br> 2. See design changes above |
| 3. | DMV.ORG's use of official slogans and state symbols were potentially deceptive | 1. Website no longer uses any state symbols or slogans <br><br> 2. Prominent disclaimer on top of pages |

[16] Only 22 states actually have an agency termed "DMV" or "Department of Motor Vehicles." Thus, confusion could only exist for visitors to the site residing in these 22 states, whereas DMV.ORG provides content covering all 50 states.

[17] See Lahoti Decl. ¶ 5, Exhibit D (screen shot of redesign contest with instructions).

DLMR_929435.6

| | POTENTIAL CONCERNS REGARDING DECEPTION | CHANGES ALREADY IMPLEMENTED BY DEFENDANTS |
|---|---|---|
| | | 3. Added: "The Unofficial Guide to DMV since 1999" |
| | | 4. See other design changes above |
| 4. | Disclaimer was easy to miss because of location at bottom of the site | 1. Disclaimer is the very first line of each and every web page on dmv.org – at the top: **"DMV.org is a privately owned website that is not owned or operated by any government agency."** |
| | | 2. See other design changes above |
| 5. | Potentially deceptive site was causing visitors to transmit personal information to dmv.org | 1. Disclaimer is the very first line of each and every web page on dmv.org – at the top: **"DMV.org is a privately owned website that is not owned or operated by any government agency."** |
| | | 2. There is only one avenue for visitors to contact dmv.org, and right above the text box where visitors are advised to "Please provide details," it is stated in bold caps: "DO NOT PROVIDE ANY SENSITIVE INFORMATION" |
| | | 3. *See* Lahoti Decl. ¶ 6, Exhibit E (screen shot of current contact form). |
| | | 4. See other design changes above |
| 6. | Cities, law firms, and newspapers were mistakenly linking to dmv.org | 1. Disclaimer is the very first line of each and every web page on dmv.org – at the top: **"DMV.org is a privately owned website that is not owned or operated by any government agency."** |
| | | 2. See other design changes above |

DLMR_929435.6

| | POTENTIAL CONCERNS REGARDING DECEPTION | CHANGES ALREADY IMPLEMENTED BY DEFENDANTS |
|---|---|---|
| 7. | Combination of dmv.org URL, design, and Search Engine Marketing ("SEM") strategy was potentially deceptive | 1. Defendants have changed the SEM strategy and overhauled website design<br>2. See design changes above and screen shots |
| 8. | Referrals to third party vendors contained "Recommended" language with official DMV look was potentially deceptive | 1. Practices identified by Court were **discontinued**<br>2. See other design changes above |
| 9. | Metatags, title tags, and descriptions were potentially deceptive | 1. All metatags and title tags have been updated and resolved – see "after" screen shot and current website design<br>2. SEM Strategy has been changed |

The Court's permanent injunction can and should be more narrowly tailored to prevent deceptive statements, but not impose an unnecessary burden on protected speech.  To reiterate, first, the splash screen and changed marketing practices have been in place for over three years, dissipating any lingering confusion that may have existed in the marketplace caused by deceptive conduct.  Second, all visitors to the site are now immediately and repeatedly confronted with at least five major re-design elements, not the least of which is an explicit disclaimer that "**DMV.org is a privately owned website that is not owned or operated by any government agency.**"  Third, visitors are warned in at least three different ways not to transmit sensitive information to dmv.org.  In light of the changed circumstances, the full First Amendment protection afforded to the site's informational content, and the goodwill demonstrated by Defendants in complying with the Court's orders and instructions, the previously imposed requirement for a splash screen should be lifted.

In response to Plaintiffs' claimed concerns regarding lingering public "confusion" regarding dmv.org's affiliations, Defendants respond that "confusion" devoid of a connection to any ongoing deceptive conduct cannot and does not merit the imposition of a prior restraint on fully protected informational content and truthful commercial speech.  Plaintiffs have not come forward with any evidence that Defendants have and are continuing with deceptive marketing or misleading statements.  Indeed, they make two distracting arguments regarding (1) the implementation of the splash screen as evidence of deception and (2) alleged improper deletions of Facebook comments.  For the reasons discussed above under "Summary of Parties' Meet and Confer," these arguments have no merit. Consequently, Defendants' calls for further discovery are wasteful and unnecessary.

In the event the Court determines that further discovery is necessary, Defendants reserve the right to seek reciprocal discovery, as well as discovery relating to the relative level of "consumer confusion" with respect to other commercial websites, including but not limited to, websites operated by Plaintiffs, and their use of certain terms that may imply "official" status.

## C.   <u>Conclusion</u>

The marketing and content of dmv.org has significantly changed and all of the Court's concerns have been remedied.  As such, the previously entered permanent injunction is unnecessarily burdening and restricting protected free speech.  Defendants' [Proposed] Permanent Injunction should be entered as follows:

- The requirement for an "acknowledgment splash screen" is removed;

- Dmv.org shall utilize visible design elements on the website that disclaim its affiliation with any government agency;

- Defendants should be permanently enjoined from engaging in deceptive marketing or placing misleading statements on dmv.org, and

14

1    • Any alleged violations of the Court's permanent injunction shall be
2       subject to a 30-day notification-and-cure period.

3
4    Dated:  September 6, 2011          **FOLEY & LARDNER LLP**
                                        ANDREW B. SERWIN
5                                       TAMMY H. BOGGS

6

7                                       By:  /s/ Andrew B. Serwin
8                                            ANDREW B. SERWIN
                                             Attorneys for Defendants
9                                            EDRIVER, INC., ONLINE GURU
                                             INC., FIND MY SPECIALIST, INC.,
10                                           SERIOUSNET, INC., RAVI K.
                                             LAHOTI, RAJ LAHOTI
11
12   Dated:  September    , 2011         **LEWIS BRISBOIS BISGAARD &
                                         SMITH LLP**
13                                       DAVID N. MAKOUS
                                         MINA L. HAMILTON
14

15
16                                      By:  /s/
                                             DAVID N. MAKOUS
17                                           Attorneys for Plaintiffs
                                             TRAFFICSCHOOL.COM, INC.,
18                                           DRIVERS ED DIRECT, LLC

19
20
21
22
23
24
25
26
27
28
                                        15