# EXHIBIT A

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRAFFICSCHOOL.COM, INC., a
California corporation; DRIVERS ED
DIRECT, LLC, a California limited
liability company,

        *Plaintiffs-Appellees,*

        v.

EDRIVER INC., a California
corporation; ONLINE GURU, INC., a
California corporation; FIND MY
SPECIALIST, INC., a California
corporation; SERIOUSNET, INC., a
California corporation; RAVI K.
LAHOTI, an individual; RAJ LAHOTI,
an individual,

        *Defendants-Appellants.*

No. 08-56518

D.C. No.
2:06-cv-07561-PA-
CW

9733

9734        TRAFFICSCHOOL.COM, INC. v. EDRIVER INC.

TRAFFICSCHOOL.COM, INC., a
California corporation; DRIVERS ED
DIRECT, LLC, a California limited
liability company,
                    *Plaintiffs-Appellants,*

                    v.                          No. 08-56588

EDRIVER INC., a California                      D.C. No.
corporation; ONLINE GURU, INC., a               2:06-cv-07561-PA-
California corporation; FIND MY                  CW
SPECIALIST, INC., a California
corporation; SERIOUSNET, INC., a
California corporation; RAVI K.
LAHOTI, an individual; RAJ LAHOTI,
an individual,
                    *Defendants-Appellees.*

TRAFFICSCHOOL.COM, INC., a
California corporation; DRIVERS ED
DIRECT, LLC, a California limited
liability company,
                    *Plaintiffs-Appellants,*

                    v.                          No. 09-55333

EDRIVER INC., a California                      D.C. No.
corporation; ONLINE GURU, INC., a               2:06-cv-07561-PA-
California corporation; FIND MY                  CW
SPECIALIST, INC., a California                  OPINION
corporation; SERIOUSNET, INC., a
California corporation; RAVI K.
LAHOTI, an individual; RAJ LAHOTI,
an individual,
                    *Defendants-Appellees.*

TRAFFICSCHOOL.COM, INC. v. EDRIVER INC.          9735

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
March 3, 2010—Pasadena, California

Filed July 28, 2011

Before: Alex Kozinski, Chief Judge, William A. Fletcher,
Circuit Judge, and Robert W. Gettleman,, District Judge.*

Opinion by Chief Judge Kozinski

---

*The Honorable Robert W. Gettleman, Senior United States District
Judge for the Northern District of Illinois, sitting by designation.

---

## COUNSEL

Eileen R. Ridley (argued), Andrew B. Serwin and Chad R. Fuller, Foley & Lardner LLP, San Diego, California, for the defendant-appellants-cross-appellees.

David N. Makous (argued), Daniel C. DeCarlo and Mina I. Hamilton, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for the plaintiffs-appellees-cross-appellants.

---

## OPINION

KOZINSKI, Chief Judge:

Defendants own and manage DMV.org, a for-profit website with a mission to save you "time, money and even a trip to the DMV!" DMV.org, Home Page, http://www.dmv.org (last visited Feb. 28, 2011). Consumers visit DMV.org for help renewing driver's licenses, buying car insurance, viewing driving records, beating traffic tickets, registering vehicles, even finding DUI/DWI attorneys. The more eyeballs DMV.org attracts, the more money defendants earn from selling sponsored links and collecting fees for referring site visitors to vendors of traffic school courses, driver's ed lessons and other driver-related services. This seems like a legitimate

and useful business, except that some visitors mistakenly believe the site is run by their state's department of motor vehicles (DMV).

Plaintiffs TrafficSchool.com, Inc. and Drivers Ed Direct, LLC market and sell traffic school and driver's ed courses directly to consumers. They also compete with DMV.org for referral revenue. Plaintiffs claim that defendants violated federal and state unfair competition and false advertising laws by actively fostering the belief that DMV.org is an official state DMV website, or is affiliated or endorsed by a state DMV.

After a trial, the district court held that defendants violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), but rejected plaintiffs' claim under California's unfair competition statute, Cal. Bus. & Prof. Code § 17200. The court issued an injunction ordering DMV.org to present every site visitor with a splash screen bearing a disclaimer. Unhappily for plaintiffs, the court denied monetary relief and declined to award attorney's fees. Both sides appeal.

## Standing

The district court found that plaintiffs "failed to prove . . . that they have suffered an injury in fact and lost money or property as a result of Defendants' actions," and that they "provided no evidence showing a causal connection between Defendants' actions and any harm Plaintiffs incurred." Defendants argue that this finding divested the district court of jurisdiction, and also that plaintiffs lacked standing under the Lanham Act. The latter contention is wrong because a false advertising plaintiff need only believe that he is *likely* to be injured in order to bring a Lanham Act claim. 15 U.S.C. § 1125(a). Moreover, the district court made its findings of no injury when it analyzed plaintiffs' state-law unfair competition claim. These findings conclusively establish that plaintiffs didn't have standing to bring their state-law claim; but, because California's unfair competition law defines "injury in

fact" more narrowly than does Article III, the findings don't necessarily preclude Article III standing. *See* Cal. Bus. & Prof. Code § 17204.[1]

The district court, however, failed to analyze Article III standing, which "is required to establish a justiciable case or controversy within the jurisdiction of the federal courts." *Gerlinger* v. *Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008). We have held that the absence of standing under the antitrust laws "affects a plaintiff's ability to recover, but does not implicate the subject matter jurisdiction of the court," as the absence of Article III standing would. *Id.* This is equally true for false advertising claims, so the district court should have undertaken an independent analysis of Article III standing before determining standing under the Lanham Act. *See Ford* v. *NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 n.1 (5th Cir. 2002).

**A.** Constitutional standing calls for the familiar trio of injury in fact, causation and redressability. *See Allen* v. *Wright*, 468 U.S. 737, 751 (1984); *Levine* v. *Vilsack*, 587 F.3d 986, 991-92 (9th Cir. 2009). Defendants contend that plaintiffs lack all three, but their arguments regarding causation and redressability are derivative of the district court's no-injury finding. We therefore construe defendants' challenge to be limited to the injury-in-fact requirement.

**[1]** In a false advertising suit, a plaintiff establishes Article III injury if "some consumers who bought the defendant['s] product under [a] mistaken belief" fostered by the defendant "would have otherwise bought the plaintiff['s] product." *Joint Stock Soc'y* v. *UDV N. Am., Inc.*, 266 F.3d 164, 177 (3d Cir. 2001). The plaintiff can prove his injury using "actual market

---

[1]Plaintiffs filing an unfair competition suit must prove a pecuniary injury, *Hall* v. *Time Inc.*, 70 Cal. Rptr. 3d 466, 470-71 (Cal. Ct. App. 2008), and "immediate" causation, *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009). Neither is required for Article III standing.

experience and *probable* market behavior." *Adams* v. *Watson*, 10 F.3d 915, 923 (1st Cir. 1993). This makes sense, because proving a counterfactual is never easy, and is especially difficult when the injury consists of lost sales that are "predicated on the independent decisions of third parties; *i.e.*, customers." *Am. Soc'y of Travel Agents, Inc.* v. *Blumenthal*, 566 F.2d 145, 157 (D.C. Cir. 1977) (Bazelon, C.J., dissenting). A plaintiff who can't produce lost sales data may therefore establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.

[2] Plaintiffs introduced ample evidence that they compete with defendants for referral revenue—sometimes partnering with the same third-party traffic school or driver's ed course providers. Sales gained by one are thus likely to come at the other's expense. Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't "conjectural" or "hypothetical." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs also presented testimonial and survey evidence that a "recommended by DMV" endorsement is an important factor in consumers' choice of traffic schools and driver's ed classes. It stands to reason that defendants will capture a larger share of the referral market—to plaintiffs' detriment—if they mislead consumers into believing that DMV.org's referrals are recommended by their state's DMV. Plaintiffs have therefore established sufficient injury for Article III standing.

[3] **B.** We set out the test for Lanham Act standing in *Jack Russell Terrier Network of Northern California* v. *American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005), where we held that "a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant."[2] Defendants first

---

[2] A plaintiff may meet both prongs of *Jack Russell* and still lack standing if the purpose of his false advertising suit is to enforce someone else's

argue that plaintiffs fail the competitive prong of *Jack Russell* because DMV.org is "the Internet incarnation of the basic publishing [business] that has existed for decades if not centuries," while plaintiffs' websites are self-promotional tools. But plaintiffs introduced evidence that they compete with DMV.org in the traffic school and driver's ed referral markets in a number of states. Based on this evidence, the district court found that "Plaintiffs and Defendants are competitors, with at least a portion of Plaintiffs' business." This finding isn't clearly erroneous. *See Polykoff* v. *Collins*, 816 F.2d 1326, 1331 (9th Cir. 1987).

**[4]** Defendants also argue that plaintiffs fail the *Jack Russell* test because the only injury the district court identified was to the public. We agree that plaintiffs have not proven an identifiable injury to themselves, but proof of such injury isn't the same as proof of "commercial injury," which is what *Jack Russell* requires. 407 F.3d at 1037 & n.19. Defendants' confusion is understandable, however, because *Jack Russell* never explained how a plaintiff should go about proving commercial injury, *id.*, nor did *Barrus* v. *Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995), the case *Jack Russell* cited in support of the commercial injury test.

**[5]** The Lanham Act permits "any person" to sue if he "believes that he . . . is *likely* to be damaged." 15 U.S.C. § 1125(a) (emphasis added). Because a likely injury is far less certain than an actual injury, plaintiffs need not prove the latter to establish the commercial injury necessary for Lanham Act standing. *See Johnson & Johnson* v. *Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980); *see also Harper House, Inc.* v. *Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)

---

statutory rights. *See Sybersound Records, Inc.* v. *UAV Corp.*, 517 F.3d 1137, 1143-44 (9th Cir. 2008) (Copyright Act). For example, plaintiffs couldn't sue to vindicate the California DMV's trademark rights. But *Sybersound* isn't implicated here because plaintiffs sued to enforce their own right to be free of unfair competition.

(holding that "a competitor need not prove [past] injury when
suing to enjoin conduct that violates section 43(a)," in part
because the "competitor may suffer future injury").

**[6]** We have generally presumed commercial injury when
defendant and plaintiff are direct competitors and defendant's
misrepresentation has a tendency to mislead consumers. In
*Waits* v. *Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992), we
held that a plaintiff bringing a false advertising suit had to
show a "discernibly competitive injury," and gave the follow-
ing example:

> If a film's distributor wrongfully indicates that a film
> is "PG"-rated when in reality it should be "R"-rated,
> a competitor with a PG-rated film would have stand-
> ing: the misrated film theoretically draws young
> audiences away from the competitor's film because
> of the misrepresentation concerning the suitability of
> its content.

*Id.* at 1109. Thus, when plaintiff competes directly with
defendant, a misrepresentation will give rise to a presumed
commercial injury that is sufficient to establish standing.

There are good reasons to presume that a competitor bring-
ing a false advertising claim has suffered a commercial injury.
Competitors "vie for the same dollars from the same con-
sumer group," and a misleading ad can upset their relative
competitive positions. *Kournikova* v. *Gen. Media Commc'ns,
Inc.*, 278 F. Supp. 2d 1111, 1117 (C.D. Cal. 2003). Moreover,
the Lanham Act is at heart a consumer protection statute. U-
Haul Int'l, Inc. v. *Jartran, Inc.*, 681 F.2d 1159, 1162 (9th Cir.
1982) ("*U-Haul I*"); *see* 5 J. Thomas McCarthy, *McCarthy on
Trademarks & Unfair Competition* § 27:25 (4th ed. 2010)
[hereinafter *McCarthy*]; *see also* Alex Kozinski, *Trademarks
Unplugged*, 68 N.Y.U. L. Rev. 960, 964 (1993) ("The great
evil the Lanham Act seeks to prevent is that of consumers
being duped into buying a watch they later discover was made

by someone other than Rolex." (footnote omitted)). Requiring proof that defendant's ads caused plaintiff to lose sales as a prerequisite to bringing suit would frustrate its ability to act as the fabled vicarious avenger of the consuming public. 5 *McCarthy* § 27:31; *see Johnson & Johnson*, 631 F.2d at 191. *But see B. Sanfield, Inc.* v. *Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580-81 (7th Cir. 2001) (competitor "is not a public prosecutor" and must therefore "prove past or potential injury").

**[7]** We need not decide today whether our presumption of commercial injury is conclusive or rebuttable because defendants didn't point to any evidence—such as an increase in plaintiffs' sales—that might tend to rebut the presumption. *See B. Sanfield, Inc.*, 258 F.3d at 581 (finding no past or future injury in part because plaintiff 's "sales rose during the months covered by its claims"). We therefore presume that plaintiffs suffered a commercial injury.

**C.** Plaintiffs' Lanham Act standing thus turns on the second half of *Jack Russell*'s commercial injury prong: whether DMV.org's ads are misleading. *See Jack Russell*, 407 F.3d at 1037. After extensively reviewing the evidence, the district court found that DMV.org's entire site had a "tendency to deceive a substantial segment of its audience." *See Southland Sod Farms* v. *Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

**[8]** The court discussed several facets of the website that were likely to mislead consumers into thinking DMV.org was affiliated with a government agency. At the time plaintiffs filed their suit, anyone in California who googled "dmv" or "drivers ed" would see sponsored listings for "ca.dmv.org" or "california.dmv.org," respectively; clicking those listings would take the googler to DMV.org. While there's nothing inherently misleading about sponsored search results, they *can* mislead if they are named so as to give a false impression as to the likely sponsorship of the website to which they refer.

*See Toyota Motor Sales, U.S.A., Inc.* v. *Tabari*, 610 F.3d 1171, 1177-78 (9th Cir. 2010). Defendants' use of the "ca." and "california." prefixes obviously was designed to suggest an affiliation with the State of California. DMV.org's site design also mimicked an actual DMV site by copying slogans and state symbols, and by linking to web pages elsewhere on the site that helped consumers complete DMV-related transactions like applying for a license, registering a car and signing up for traffic school. DMV.org did disclaim connection with state DMVs, but this disclaimer was easy to miss because it was displayed in small font at the bottom of each page, where many consumers would never scroll.

[9]  Plaintiffs also introduced evidence of actual consumer confusion. They provided two declarations from individuals who confused DMV.org with an official DMV site and hundreds of emails sent by consumers who contacted DMV.org thinking it was their state's DMV. Some of these emails contained sensitive personal information that the typical consumer wouldn't share with a commercial website. Here's an example, with redactions:

> My boyfriend George [redacted] . . . got a ticket in South Carolina in 2006. . . . Mr. [redacted] driver's license number is [redacted]. His date of birth is [redacted]. I have his social security number if needed, but I don't want to put all of his personal information on this e-mail if possible. . . . I was told by Central Court for Lexington County in South Carolina that if we contacted the Arkansas DMV that y'all would be able to tell us what court this is in and where to pay the ticket.

Other emails were sent by law enforcement officials and state DMV employees who were similarly confused by DMV.org. For example, a Washington state trooper emailed DMV.org asking:

> Dear Oregon DMV, I am currently involved in a DUI case in which a driver used his friends [sic] ID but I remember it having his picture. It is an Oregon ID in the name of [redacted]. I would like to see if I can get a copy of the picture/ID e-mailed to me for identification purposes. The DUI arrest occurred on September 16, 2006 in Snohomish County, WA.

Plaintiffs also produced evidence that two California cities, a private law firm in Texas and a number of newspapers mistakenly linked their websites to DMV.org instead of a state DMV website.

**[10]** In addition to this anecdotal evidence, the district court examined Internet surveys submitted by the parties. Plaintiffs' survey showed that a majority of California residents searching online for traffic schools believed that (1) DMV.org's website was actually the California DMV's and (2) a search engine listing for DMV.org was endorsed or sponsored by the California DMV. The court pointed out significant flaws in the survey—including plaintiffs' failure to use a control—but found it more credible than defendants' survey and gave it some weight. We share the district court's concerns with plaintiffs' survey, but can't find that the court erred by considering it along with the other evidence.

**[11]** Plaintiffs introduced volumes of evidence showing that they compete with defendants and that DMV.org probably misleads consumers. Because we presume commercial injury in this case, plaintiffs have met both prongs of *Jack Russell*'s test for Lanham Act standing.

### False Advertising

**[12] A.** To succeed on an Internet false advertising claim, a plaintiff must show that a statement made in a commercial advertisement or promotion is false or misleading, that it actually deceives or has the tendency to deceive a substantial seg-

ment of its audience, that it's likely to influence purchasing decisions and that the plaintiff has been or is likely to be injured by the false advertisement. *See Southland Sod Farms*, 108 F.3d at 1139.[3] As we explained, *see* pp. 9745-47 *supra*, the district court made extensive findings in support of its conclusion that the DMV.org URL, defendants' search engine marketing strategy and the design of DMV.org were likely to, and did, confuse consumers. None of these findings was clearly erroneous, and they establish that the DMV.org site deceives a substantial segment of its audience. Plaintiffs' evidence also shows that a "recommended by DMV" endorsement will affect purchase decisions, and that plaintiffs are likely to suffer injury when consumers visit DMV.org instead of their competing sites. The district court committed no error in holding that defendants violated the Lanham Act.

**B.** By way of a remedy, the district court ordered DMV.org to present every site visitor with a splash screen stating, "YOU ARE ABOUT TO ENTER A *PRIVATELY OWNED* WEBSITE THAT IS *NOT* OWNED OR OPERATED BY ANY STATE GOVERNMENT AGENCY." Visitors can't access DMV.org's content without clicking a "CONTINUE" button on the splash screen.[4] Defendants argue that the district court abused its discretion by fashioning a "blanket injunction" that's overbroad—i.e., restrains conduct not at issue in plaintiffs' complaint—and violates the First Amendment.

**[13]** *Overbreadth.* The district court reasoned that the splash screen was necessary to: (1) "remedy any confusion that consumers have already developed before visiting DMV.ORG for the first time," (2) "remedy the public interest concerns associated with [confused visitors'] transfer of sensi-

---

[3]A plaintiff bringing a false advertising claim must also show that defendant caused its false or misleading statement to enter interstate commerce, *see Southland Sod Farms*, 108 F.3d at 1139, but this is virtually automatic for websites.

[4]We have reproduced the splash screen at Appendix A.

tive information to Defendants," and (3) "prevent confusion among DMV.ORG's consumers." Defendants argue that the splash screen doesn't effectuate these stated goals. But their only evidence is a declaration from DMV.org's CEO stating that defendants tested several alternative disclaimers and found them to be more effective than the splash screen in preventing consumers from emailing DMV.org with sensitive personal information. To the extent we credit a self-serving declaration, *see SEC* v. *Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007), defendants' evidence doesn't prove that the splash screen is ineffective in this respect, and says nothing about whether the alternative disclaimers serve the other two interests identified by the district court. Defendants haven't carried their "heavy burden" of showing that their alternative disclaimers reduce DMV.org's likelihood of confusing consumers. *Austl. Gold, Inc.* v. *Hatfield*, 436 F.3d 1228, 1243 (10th Cir. 2006) (citing *Home Box Office, Inc.* v. *Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1316 (2d Cir. 1987)). The scope of an injunction is within the broad discretion of the district court, *Interstellar Starship Servs., Ltd.* v. *Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002), and the district court here didn't abuse that discretion when it concluded that the splash screen was the optimal means of correcting defendants' false advertising.

   **[14]** *First Amendment.* Courts routinely grant permanent injunctions prohibiting deceptive advertising. *See* 1 Charles E. McKenney & George F. Long III, *Federal Unfair Competition: Lanham Act § 43(a)* § 10:5 (17th ed. 2010). Because false or misleading commercial statements aren't constitutionally protected, *see Cent. Hudson Gas & Elec. Corp.* v. *Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980); *Dr. Seuss Enters., L.P.* v. *Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 n.11 (9th Cir. 1997), such injunctions rarely raise First Amendment concerns.

   **[15]** The permanent injunction here does raise such concerns because it erects a barrier to *all* content on the DMV.org

website, not merely that which is deceptive. Some of the web-
site's content is informational and thus fully protected, such
as guides to applying for a driver's license, buying insurance
and beating traffic tickets. *See Mattel, Inc.* v. *MCA Records,
Inc.*, 296 F.3d 894, 906 (9th Cir. 2002). The informational
content is commingled with truthful commercial speech,
which is entitled to significant First Amendment protection.
*See Cent. Hudson*, 447 U.S. at 564. The district court was
required to tailor the injunction so as to burden no more pro-
tected speech than necessary. *Madsen* v. *Women's Health
Ctr., Inc.*, 512 U.S. 753, 765 (1994); *Nissan Motor Co.* v. *Nis-
san Computer Corp.*, 378 F.3d 1002, 1016-17 (9th Cir. 2004).

**[16]** The district court does not appear to have considered
that its injunction would permanently and unnecessarily bur-
den access to DMV.org's First Amendment-protected content.
The splash screen forces potential visitors to take an addi-
tional navigational step, deterring some consumers from
entering the website altogether.[5] It also precludes defendants
from tailoring DMV.org's landing page to make it welcoming
to visitors, and interferes with the operation of search engines,
making it more difficult for consumers to find the website and
its protected content.[6] All of these burdens on protected
speech are, under the current injunction, permanent.

The district court premised its injunction on its findings
that defendants' "search engine marketing" and "non-
sponsored natural listings, including the DMV.ORG domain

---

[5]Defendants' website usability expert submitted a declaration stating
that splash screens typically drive away up to a quarter of potential site
visitors. Plaintiffs cite nothing to rebut this evidence.

[6]Defendants introduced unrebutted evidence that splash screens com-
monly interfere with the automated "spiders" that search engines deploy
to "crawl" the Internet and compile the indexes of web pages they use to
determine every page's search ranking. And splash screens themselves
don't have high search rankings: Search engines commonly base these
rankings on the web page's content and the number of other pages linking
to it, and splash screens lack both content and links.

name," caused consumers to be confused even before they viewed DMV.org's content. The court also identified specific misleading statements on the website. The splash screen is justified to remedy the harm caused by such practices so long as they continue. But website content and advertising practices can and do change over time. Indeed, the court found that defendants had already "made some changes to DMV.ORG and how they marketed it."

The splash screen is also justified so long as it helps to remedy lingering confusion caused by defendants' past deception. But the splash screen will continue to burden DMV.org's protected content, even if all remaining harm has dissipated. At that point, the injunction will burden protected speech without justification, thus burdening more speech than necessary. *See Madsen*, 512 U.S. at 765; *Nissan Motor Co.*, 378 F.3d at 1016-17; *see also E. & J. Gallo Winery* v. *Gallo Cattle Co.*, 967 F.2d 1280, 1298 (9th Cir. 1992) (permanent injunction can't burden future non-misleading business practices); *U-Haul Int'l, Inc.* v. *Jartran, Inc.*, 793 F.2d 1034, 1042-43 (9th Cir. 1986) ("*U-Haul II*") (permanent injunction can't burden future truthful advertising).

**[17]** On remand, the district court shall reconsider the duration of the splash screen in light of any intervening changes in the website's content and marketing practices, as well as the dissipation of the deception resulting from past practices. If the district court continues to require the splash screen, it shall explain the continuing justification for burdening the website's protected content and what conditions defendants must satisfy in order to remove the splash screen in the future. In the alternative, or in addition, the court may permanently enjoin defendants from engaging in deceptive marketing or placing misleading statements on DMV.org. *See U-Haul II*, 793 F.2d at 1043 (modifying injunction to prohibit only false or misleading advertising).

**C.** The district court denied plaintiffs' request for an award of profits because they provided "no evidence [of causation or

evidence] quantifying the extent of any . . . harm" they suffered as a result of DMV.org's actions. Nothing in the Lanham Act conditions an award of profits on plaintiff's proof of harm, and we've held that profits may be awarded in the absence of such proof. *See Southland Sod Farms*, 108 F.3d at 1146; *U-Haul II*, 793 F.2d at 1040-42. But an award of profits with no proof of harm is an uncommon remedy in a false advertising suit. It's appropriate in false *comparative* advertising cases, where it's reasonable to presume that every dollar defendant makes has come directly out of plaintiff's pocket. *See, e.g.*, *U-Haul II*, 793 F.3d at 1041; *U-Haul I*, 681 F.2d at 1159 (newspaper ad falsely stated that defendant's rental trucks were bigger, newer and more fuel-efficient than trucks in plaintiff's fleet). It's also appropriate where ordinary damages won't deter unlawful conduct: for example, when defendant associates its product with plaintiff's noncompetitive product to appropriate good will or brand value. *See, e.g.*, *Maier Brewing Co.* v. *Fleischmann Distilling Corp.*, 390 F.2d 117, 120, 123-24 (9th Cir. 1968) (brewer of Black & White beer forced to pay profits to distiller of Black & White scotch). The reason there is that plaintiff is unlikely to have lost any sales or sale contracts to defendant, and the damages must be measured by defendant's gains from the illicit use.

[18] But neither the comparative advertising nor good will cases are relevant here, where plaintiffs claim that "defendant[s] advertised a different (and allegedly better) product than they delivered." *Harper House, Inc.*, 889 F.2d at 209 n.8. The Lanham Act allows an award of profits only to the extent the award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). But "when advertising does not directly compare defendant's and plaintiff's products," the injury to plaintiff "may be a small fraction of the defendant's sales, profits, or advertising expenses." *Harper House, Inc.*, 889 F.2d at 209 n.8. Plaintiffs didn't produce *any* proof of past injury or causation, so the district court had no way to determine with any degree of certainty what award would be compensatory. *See ALPO Petfoods, Inc.* v. *Ralston Purina Co.*,

913 F.2d 958, 969 (D.C. Cir. 1990) ("[T]he court must ensure that the record adequately supports all items of damages . . . lest the award become speculative or violate [the Lanham Act's] prohibition against punishment."); *see also* 5 McCarthy § 27:42 (explaining that "some quantum of lost sales must be proven"). The district court didn't err in denying damages.

### Attorney's Fees

Section 35 of the Lanham Act permits an award of attorney's fees to a "prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). The district court denied plaintiffs attorney's fees and gave the following justification:

> While Plaintiffs have obtained injunctive relief, they have been awarded no damages. Accordingly, and in light of Plaintiffs' unclean hands, the Court does not find that this case is exceptional and declines to award attorney's fees for the Lanham Act claim.

We review the denial of attorney's fees for abuse of discretion, *see Polo Fashions, Inc.* v. *Dick Bruhn, Inc.*, 793 F.2d 1132, 1133 (9th Cir. 1986), and must affirm unless the district court applied the wrong legal standard or its findings were illogical, implausible or without support in the record, *see United States* v. *Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).[7]

[19] **A.** Lanham Act cases generally consider whether *defendants*' conduct was "fraudulent, deliberate, or willful." *Horphag Research Ltd.* v. *Garcia*, 475 F.3d 1029, 1039 (9th

---

[7]In *Gracie* v. *Gracie*, 217 F.3d 1060 (9th Cir. 2000), we stated that a "party alleging that the district court erred by failing to award attorneys' fees under [section] 1117 faces an uphill battle." *Id.* at 1071; *see* 5 *McCarthy* § 30:105. Of course, *every* party alleging an abuse of discretion faces an "uphill battle," because *Hinkson* requires us to give significant deference to a district court's findings.

Cir. 2007); *see Earthquake Sound Corp.* v. *Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003) (summarizing case law on exceptionality); *see also Lindy Pen Co.* v. *Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993) ("[G]enerally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."). By examining only the relief awarded to *plaintiffs*, and failing to consider defendants' conduct, the district court applied the wrong legal standard. *See Lahoti* v. *Vericheck, Inc.*, 636 F.3d 501, 511 (9th Cir. 2011).

[20] No doubt, the court may take plaintiffs' failure to recover damages into account when exercising its discretion to award fees, but it must also consider that plaintiffs obtained a judgment and an injunction that ameliorate a serious public harm. In addition, the court must weigh the unlawfulness of defendants' conduct. It would be inequitable to force plaintiffs to bear the entire cost of enjoining defendants' willful deception when the injunction confers substantial benefits on the public. *See Comm. for Idaho's High Desert, Inc.* v. *Yost*, 92 F.3d 814, 818-19, 825 (9th Cir. 1996) (plaintiff was entitled to attorney's fees when district court awarded injunction but not damages); *Audi AG* v. *D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006) (same). Plaintiffs put an end to the confusion created by DMV.org and stopped consumers from mistakenly transferring sensitive personal information to a commercial website. This conferred significant benefits on third parties and also vindicated plaintiffs' right *to a "market free of false advertising." Johnson & Johnson*, 631 F.2d at 192. The district court abused its discretion by failing to consider these substantial benefits or defendants' bad acts in determining whether to award attorney's fees.

**B.** Defendants challenge the district court's finding that their deception was willful—and thus "exceptional" under *Horphag* and *Lindy Pen*. But the district court's willfulness finding is supported by evidence that defendants planned to mislead site visitors and knew that their conduct confused

consumers. *See Playboy Enters., Inc.* v. *Baccarat Clothing Co.*, 692 F.2d 1272, 1276 (9th Cir. 1982) (agreeing with claim that defendants who hired a manufacturer to produce counterfeit goods were "flagrant and willful" infringers); *Earthquake Sound Corp.*, 352 F.3d at 1218 (holding that "ample evidence of actual confusion" was the most important support for district court's finding of willfulness). Defendants associated their website with URLs and search terms that falsely implied DMV.org was a government site. They had in their possession hundreds of emails sent by consumers who contacted DMV.org thinking it was a state agency. And DMV.org's director of customer service testified that he voiced concerns about these emails to senior management.

Defendants claim that they reacted by "explain[ing] away any confusion" and adding disclaimers to the bottom of each web page.[8] But defendants knew that the disclaimers were ineffective, because adding them didn't end the stream of emails sent by consumers who thought they'd contacted their state DMV. There was overwhelming proof that defendants knew their statements confused consumers and did little or nothing to remedy it. The district court could reasonably infer that they willfully deceived the public. *See Audi AG*, 469 F.3d at 551.

Nor can defendants prevail by claiming that their deception wasn't "egregious." We rejected a similar theory in *Earthquake Sound*, where we held that exceptionality doesn't require egregious conduct. 352 F.3d at 1217. The two cases defendants cite, *Johnson & Johnson-Merck Consumer Pharm. Co.* v. *Smithkline Beecham Corp.*, 960 F.2d 294, 298-99 (2d Cir. 1992), and *Johnson & Johnson-Merck Consumer Pharm. Co.* v. *Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125,

---

[8]Defendants argue that the district court shouldn't have considered one defendant's "pattern of registering misleading domain names," but this evidence is in fact relevant to defendants' intent to deceive consumers. *See Polo Fashions, Inc.*, 793 F.2d at 1134.

9756    TrafficSchool.com, Inc. v. Edriver Inc.

131-32 (3d Cir. 1994), suggested only that egregious conduct
could be probative of willfulness, not that it's a prerequisite.

**C.** Defendants point to the district court's finding that
plaintiffs had unclean hands as an independent basis for deny-
ing attorney's fees. But that finding is clearly erroneous.[9] The
district court gave two reasons why it thought plaintiffs had
unclean hands: (1) they registered domain names the court
deemed similar to DMV.org, such as Online-DMV.org,
Internet-DMV.org and cadmvtrafficschool.com; and (2) they
attempted to advertise their products on DMV.org despite
being aware that the site deceived the public. Neither amounts
to "clear, convincing evidence," *Citizens Fin. Grp., Inc.* v.
*Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir.
2004), that "plaintiff[s'] conduct [wa]s inequitable" and "re-
late[d] to the subject matter of" their false advertising claims,
*Japan Telecom, Inc.* v. *Japan Telecom Am. Inc.*, 287 F.3d
866, 870 (9th Cir. 2002).

Merely registering a domain name isn't proof of unclean
hands. *See* 5 *McCarthy* § 25:76; *see also Brookfield
Commc'ns, Inc.* v. *West Coast Entm't Corp.*, 174 F.3d 1036,
1052 (9th Cir. 1999). Until a domain name is associated with
a server that hosts a website, it's not visible to consumers and
thus can't possibly confuse them. And plaintiffs' ads on

---

[9]It's not clear that the award of attorney's fees is subject to equitable
doctrines such as unclean hands. The provision of the Lanham Act autho-
rizing attorney's fees doesn't use the word "equity." *Compare* 15 U.S.C.
§ 1117(a) ("The court in exceptional cases may award reasonable attorney
fees to the prevailing party."), with *id.* ("[T]he plaintiff shall be entitled,
subject to . . . the principles of equity, to recover (1) defendant's profits,
(2) any damages sustained by the plaintiff, and (3) the costs of the
action."), *and* 15 U.S.C. § 1116(a) ("[C]ourts . . . shall have power to grant
injunctions according to the principles of equity . . . ."). Arguably, Con-
gress displaced courts' "general equity power" when it "meticulously
detailed the remedies available" under the Lanham Act. *Fleischmann Dis-
tilling Corp.* v. *Maier Brewing Co.*, 386 U.S. 714, 719-20 (1967). Never-
theless, we need not reach this issue because we reverse the unclean hands
finding.

DMV.org ran for just six *hours*, a de minimis period of time. Our review of the record reveals no evidence of actual deception caused by plaintiffs' advertising. *See Japan Telecom, Inc.*, 287 F.3d at 870.

Defendants argue that the district court's unclean hands finding can be sustained based on plaintiffs' bad intentions, pointing to an email from plaintiffs' co-founder that recommended taking an "[i]f you can't join 'em, shut 'em down approach" to DMV.org. But the doctrine is unclean hands, not impure thoughts. It's doubtful that bad intentions that are never put into effect could support a finding of unclean hands. *See Perfumebay.com, Inc.* v. *eBay, Inc.*, 506 F.3d 1165, 1178 (9th Cir. 2007) (holding that the record must "affirmatively demonstrate" consumer deception). And the email here actually undermines the rationale for finding unclean hands. Plaintiffs acquired information showing that defendants confused the public; using *litigation* to shut down a competitor who uses unfair trade practices is precisely what the Lanham Act seeks to encourage. *See* 5 *McCarthy* § 27:25.

**[21]**  Because the district court erred in finding that defendants' conduct wasn't exceptional and that plaintiffs had unclean hands, its denial of attorney's fees was an abuse of discretion. We remand for the district court to consider the award of attorney's fees anew in light of the considerations discussed above.

## Joint Liability

**[22]**  After plaintiffs presented their case at trial, defendants filed a Rule 52(c) motion arguing that the evidence was insufficient to hold liable any defendant other than Online Guru. The district court delayed ruling on the motion until the close of trial, when it held that all defendants were jointly and severally liable. In its ruling, the district court explained in great detail each defendant's role in creating, developing or disseminating DMV.org's misleading advertising. These find-

ings aren't clearly erroneous, and we agree with the district court that they're sufficient to hold defendants liable as joint tortfeasors. *See* 4 *McCarthy* § 25:23.

## Contempt

**[23]** Plaintiffs also appeal the district court's refusal to hold DMV.org in contempt for several technical violations of the injunction. We review this ruling for abuse of discretion. *See Hallett* v. *Morgan*, 296 F.3d 732, 749 (9th Cir. 2002). The district court found that defendants "substantially complied" with the injunction and any deviations appeared to be based on "a good faith and reasonable interpretation of the [court's order]." (Alteration in original.) Plaintiffs argue that the district court erred when it credited defendants' explanation for the technical violations. But the district court applied the correct legal standard, *see In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993), so we cannot overturn its ruling unless its factual findings are illogical, implausible or without support in the record. *See Hinkson*, 585 F.3d at 1262. We cannot say that the district court's decision to accept defendants' explanations for what turned out to be technical breaches of the injunction come anywhere near satisfying the *Hinkson* standard for abuse.

**AFFIRMED in part and REVERSED in part. REMANDED with instructions. No costs.**

TRAFFICSCHOOL.COM, INC. V. EDRIVER INC. 9759

# Appendix A



**EXHIBIT** B

**From:** Mina Hamilton
**To:** Serwin, Andrew B.
**CC:** Brosas, Josephine;  DeCarlo, Dan;  Makous, David
**Date:** 8/31/2011 1:02 PM
**Subject:** RE: Meet and Confer

Okay. We will call in at 10:30 am tomorrow. We have seen the changes recently made to the splash screen and site. On a related note, and as we are sure you know, because your clients are in litigation, we expect that all present and prior versions of the splash screen and all webpages are being preserved, including but not limited to, all consumer and other emails, facebook pages/comments, etc. They may come into play.


Thanks,
Mina


**Mina I. Hamilton | Partner | Intellectual Property**
**Lewis Brisbois Bisgaard & Smith LLP**
**t** 213.580.7926 | **f** 213.250.7900 | **e** hamilton@lbbslaw.com
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
************************************************************************
This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
************************************************************************

>>>


**From:** "Serwin, Andrew B." <ASerwin@foley.com>
**To:** "Mina Hamilton" <HAMILTON@lbbslaw.com>
**Date:** 8/31/2011 7:47 AM
**Subject:** RE: Meet and Confer
(866)234-4460, meeting number *1610141* and you must dial the "*".

You have probably looked at the site recently, but in case you haven't it would be helpful if your team could review it before the call.

-----Original Message-----
From: Mina Hamilton [mailto:HAMILTON@lbbslaw.com]
Sent: Monday, August 29, 2011 3:14 PM
To: Serwin, Andrew B.
Subject: Re: Meet and Confer

Yes please. That would be best. Thanks.
-----Original Message-----
From: "Serwin, Andrew B." <ASerwin@foley.com>

To: Mina Hamilton <HAMILTON@lbbslaw.com>

Sent: 8/29/2011 3:04:31 PM
Subject: RE: Meet and Confer

That works.  Do you want me to send a call-in number?

-----Original Message-----
From: Mina Hamilton [mailto:HAMILTON@lbbslaw.com]
Sent: Monday, August 29, 2011 3:03 PM
To: Serwin, Andrew B.
Subject: Re: Meet and Confer

OK. 10:30 Thursday? Please Just let us know today so we can block it off
before schedules fill up. Thanks.
-----Original Message-----
From: "Serwin, Andrew B." <ASerwin@foley.com>
To: Mina Hamilton <HAMILTON@lbbslaw.com>

Sent: 8/29/2011 2:06:06 PM
Subject: RE: Meet and Confer

That doesn't work.  What can we do Thursday?

_____

From: Mina Hamilton [mailto:HAMILTON@lbbslaw.com]
Sent: Monday, August 29, 2011 11:14 AM
To: Serwin, Andrew B.
Cc: Dan DeCarlo; David Makous
Subject: RE: Meet and Confer


How is 1:00 pm tomorrow?

>>>
From: "Serwin, Andrew B." <ASerwin@foley.com>
To: "Mina Hamilton" <HAMILTON@lbbslaw.com>
CC: "Dan DeCarlo" <DECARLO@lbbslaw.com>, "David Makous"
<MAKOUS@lbbslaw.com>
Date: 8/29/2011 8:39 AM
Subject: RE: Meet and Confer
I think it would be useful, but not required.


_____

From: Mina Hamilton [mailto:HAMILTON@lbbslaw.com]
Sent: Monday, August 29, 2011 8:38 AM
To: Serwin, Andrew B.
Cc: Dan DeCarlo; David Makous
Subject: RE: Meet and Confer


Andrew:

Our client is traveling Wed. morning and so had requested a 3 p.m. start

time. If a 1:00 p.m. start time does not work on our side, what are some
other options? Also, just to clarify, since the Court's order does not
require the clients to be present, we are assuming you feel it necessary
or useful to have them participate. If we are mistaken please advise.
-Mina

Mina I. Hamilton | Partner | Intellectual Property

Lewis Brisbois Bisgaard & Smith LLP
t 213.580.7926 | f 213.250.7900 | e hamilton@lbbslaw.com

221 N. Figueroa Street, Suite 1200

Los Angeles, CA 90012

*********************************************************************
This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
*********************************************************************

>>>
From: "Serwin, Andrew B." <ASerwin@foley.com>
To: "Dan DeCarlo" <decarlo@lbbslaw.com>
CC: "Mina Hamilton" <HAMILTON@lbbslaw.com>, "David Makous"
<MAKOUS@lbbslaw.com>
Date: 8/29/2011 7:31 AM
Subject: RE: Meet and Confer
I am booked from 2-6 that day.

_____

From: Dan DeCarlo [mailto:decarlo@lbbslaw.com]
Sent: Sunday, August 28, 2011 6:50 PM
To: Serwin, Andrew B.
Cc: Mina Hamilton; David Makous
Subject: Re: Meet and Confer

Andy, Wednesday will work.  But we will need to get back to you on a
specific time.

Daniel C. DeCarlo

Lewis Brisbois Bisgaard & Smith
221 N. Figueroa St. Suite 1200
Los Angeles, Ca. 90012
213-680-5066
213-250-7900 (facsimile)
decarlo@lbbslaw.com (email)

>>>
From: "Serwin, Andrew B." <ASerwin@foley.com>
To: "Serwin, Andrew B." <ASerwin@foley.com>
CC: <makous@lbbslaw.com>, <decarlo@lbbslaw.com>
Date: 8/28/2011 3:57 PM
Subject: Re: Meet and Confer
I have still not heard back from you. We need to schedule this soon in
order to comply with the court's order.

Sent from my iPhone

On Aug 25, 2011, at 2:39 PM, "Serwin, Andrew B." <ASerwin@foley.com>
wrote:


I wanted to follow up on my voice message to David regarding the
meet and confer set by the Court.  Given the timing and the upcoming
holiday, I would like to try schedule this for next Wednesday if
possible.  Let me know if that timing works.  We will have our clients
on the line, and I wanted to make sure that the time we scheduled would
work for your client as well.

Thanks and let me know what your availability is.

Andrew B. Serwin
Chair: Privacy Security and Information Management Practice
Foley & Lardner LLP
San Diego/Del Mar
<http://www.foley.com/about/office_detail.aspx?locationid=53>
(858)847-6728
Washington, D.C.
<http://www.foley.com/about/office_detail.aspx?locationid=32>
(202)295-4132



The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not
be relied upon by any other party.

Internal Revenue Service regulations require that certain types of

written advice include a disclaimer. To the extent the preceding message
contains advice relating to a Federal tax issue, unless expressly stated
otherwise the advice is not intended or written to be used, and it
cannot be used by the recipient or any other taxpayer, for the purpose
of avoiding Federal tax penalties, and was not written to support the
promotion or marketing of any transaction or matter discussed herein.


The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not
be relied upon by any other party.

Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding message
contains advice relating to a Federal tax issue, unless expressly stated
otherwise the advice is not intended or written to be used, and it
cannot be used by the recipient or any other taxpayer, for the purpose
of avoiding Federal tax penalties, and was not written to support the
promotion or marketing of any transaction or matter discussed herein.


The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not
be relied upon by any other party.

Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding message
contains advice relating to a Federal tax issue, unless expressly stated
otherwise the advice is not intended or written to be used, and it
cannot be used by the recipient or any other taxpayer, for the purpose
of avoiding Federal tax penalties, and was not written to support the
promotion or marketing of any transaction or matter discussed herein.


The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons.  If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not

be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

# EXHIBIT C

# LEWIS
## BRISBOIS
## BISGAARD
## & SMITH LLP
### ATTORNEYS AT LAW

221 North Figueroa Street, Suite 1200
Los Angeles, CA  90012
Telephone: 213.250.1800
Fax: 213.250.7900
www.lbbslaw.com

**MINA I. HAMILTON**
DIRECT DIAL: 213.580.7926
E-MAIL: hamilton@lbbslaw.com

September 2, 2011

File No.
25162-14

<u>VIA E-MAIL ONLY</u>

Andrew B. Serwin, Esq.
Foley & Lardner LLP
3579 Valley Centre Drive
Suite 300
San Diego, CA 92130-3302

Re:    <u>Follow-Up Meet and Confer Communication Per Court Order</u>

Dear Mr. Serwin:

This letter is to follow-up on certain items discussed yesterday morning.

## I.    Meet and Confer on Attorney's Fees Motion

First, for the meet and confer on the attorney's fees motion, we suggest September 12 at 10:00 a.m. Please advise if this is acceptable.

## II.    Injunction Issues

Second, as to the injunction, Judge Anderson's August 24, 2011 Order requires us to submit Plaintiffs' position "for how, consistent with the Ninth Circuit's Opinion, [the] Court should modify the permanent injunction and what, if any, additional factual findings the Court should rely on in modifying the permanent injunction." Clearly, Judge Anderson contemplates that on remand, additional factual findings may be necessary. Indeed, we believe it is vital. The Ninth Circuit Opinion contemplates that Judge Anderson will consider the level of "dissipation of the deception resulting from past practices" and the "intervening changes in the website's content and marketing practices." (*Opinion* at 9751).

As to the dissipation of confusion, you were unwilling to make any representations regarding whether consumer confusion has dissipated since the splash screen was implemented on the DMV.org site.  However, Defendants are in possession of most of the evidence showing whether there has been continuing consumer confusion.  Moreover,

ATLANTA • BEAUMONT • CHARLESTON • CHICAGO • DALLAS • FORT LAUDERDALE • HOUSTON • LAFAYETTE • LAS VEGAS • LOS ANGELES • NEW ORLEANS

NEW YORK • NEWARK • ORANGE COUNTY • PHOENIX • SACRAMENTO • SAN BERNARDINO • SAN DIEGO • SAN FRANCISCO • TAMPA • TUCSON

4852-1239-6554.1

Andrew B. Serwin
September 1, 2011
Page 2

while we are aware of some changes in Defendants' marketing practices, Defendants are in a better position to describe the changes and how they have lessened or increased the level of confusion. To that end, you did agree to work toward a discovery plan and invited a list of proposed discovery from Plaintiffs. Accordingly, the following is Plaintiffs' good faith effort to continue the meet and confer efforts from yesterday.

A.     <u>Written Discovery</u>

   •    *Consumer Confusion*

In order to address the Ninth Circuit's concerns regarding the "dissipation of the deception resulting from past practices" (*Opinion* at 9751), Plaintiffs believe the Court will need the following:

1.   Consumer emails or communications sent to DMV.org (or any Defendant) in six (6) month time increments sufficient to show the levels of consumer confusion:

   -   6 months before implementation of the splash screen;

   -   6 months immediately after implementation of the splash screen;

   -   6 months prior to the issuance of the Ninth Circuit Opinion;

   -   Since the Ninth Circuit Opinion issued and the most recent version of the splash screen and DMV.org's site changes were implemented.

2.   Consumer emails, communications or comments received from visitors to DMV.org's Facebook page, which promotes, markets, and/or links back to DMV.org, to the extent such communications are not currently publicly viewable as "comments" on the DMV.org Facebook page.

3.   Consumer emails, communications or comments received from visitors to DMV.org's "Answers Section," to the extent such communications are not currently publicly viewable.

   •    *Marketing Practices*

In order to address the Ninth Circuit's concerns regarding the "intervening changes in the website's content and marketing practices" (Opinion at 9751), Plaintiffs believe the Court will need the following:

Andrew B. Serwin
September 1, 2011
Page 3

1.      A list of key changes to the splash screen, disclaimers on DMV.org, design features of DMV.org, and DMV.org logos (and representative samples for each) for the time periods stated under Section A. 1 above.

2.      A listing of key changes to the marketing practices of DMV.org including via search engines, i.e., whether and why DMV.org no longer engages in pay-per-click advertising and its marketing strategy regarding search engine optimization for organic search results, and other media such as Facebook.

3.      Email and other electronic data destruction policies and implementation of any such policies from the start of this litigation to the present.

B.      **Depositions**

1.      A FRCP 30(b)(6) deposition on the items listed above.

2.      Deposition of Declarant Bruce Tognazzini.  Plaintiffs did not have a chance to depose Mr. Tognazzini in the underlying case since the witness was first identified by Defendants post-trial and after the close of discovery.

3.      Deposition of Declarant David Gray. Plaintiffs did not have a chance to depose Mr. Gray in the underlying case since the witness was first identified by Defendants post-trial and after the close of discovery.

Let us know which of these discovery items you are willing to voluntarily provide to Plaintiffs. Please note that while we are asking for voluntarily cooperation in a discovery plan, Defendants have been – and still are – under a non-voluntary obligation to preserve all electronic data related to DMV.org.  Our clients are prepared to hire forensic experts to scrutinize Defendants' compliance with this obligation, and they reserve all their rights and remedies related to evidence spoliation.  Indeed, since our meet and confer conference, it appear that your clients have deleted consumer comments from their DMV.org Facebook page. This will force us to seek sanctions for destruction of evidence and depose Facebook and take other actions for which we will seek additional grounds of reimbursement.

Finally, if you agree to cooperate with the above discovery, we would likewise be willing to provide you with the evidence we now have of Defendants' current marketing practices (and related consumer confusion) that we believe evidences ongoing and/or new (willful and egregious) deceptive practices.  We may also agree to allow discovery related to any declarations or evidence we may submit to the Court in this remanded remedies stage.

Andrew B. Serwin
September 1, 2011
Page 4


Since we must file our joint report by Tuesday, we would appreciate a reply to this letter as soon as possible.

Very truly yours,

*Mina Hamilton*

Mina I. Hamilton of
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     David N. Makous
        Daniel C. DeCarlo
        Josephine A. Brosas
        Clients

# EXHIBIT C1

**From:**    "Serwin, Andrew B." <ASerwin@foley.com>
**To:**    "Mina Hamilton" <HAMILTON@lbbslaw.com>
**CC:**    "Josephine Brosas" <brosas@lbbslaw.com>, "Dan DeCarlo" <DECARLO@lbbslaw....
**Date:**    9/5/2011 6:49 AM
**Subject:**    Re: TS v. Edriver

Mina,

I'm sorry for the timing and brevity of this response, but I was out of the office when you sent this and my 8 year old broke 3 bones in his foot this weekend.

I don't think our position is accurately stated in the letter. We believe there is still some consumer confusion, but at this time we do not agree that it results from past or current deception, and we believe there is no evidence of continuing deception. As such, we do not believe discovery in the method and manner that is proposed would be appropriate or necessary.

Andy.

Sent from my iPhone

On Sep 2, 2011, at 12:21 PM, "Mina Hamilton" <HAMILTON@lbbslaw.com> wrote:

> Andrew,
>
> Please see attached letter.
>
> Regards,
>
>
>
> Mina I. Hamilton | Partner | Intellectual Property
> Lewis Brisbois Bisgaard & Smith LLP
> t 213.580.7926 | f 213.250.7900 | e hamilton@lbbslaw.com
> 221 N. Figueroa Street, Suite 1200
> Los Angeles, CA 90012
> ********************************************************************
> This message may contain information that is
> privileged, confidential and exempt from disclosure
> under applicable law. If you are not the intended
> recipient (or authorized to act on behalf of the
> intended recipient) of this message, you may not
> disclose, forward, distribute, copy, or use this
> message or its contents. If you have received this
> communication in error, please notify us immediately
> by return e-mail and delete the original message from
> your e-mail system. Thank you.
> ********************************************************************
> <Sept.2SerwinLetter.pdf>

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**EXHIBIT** D

# FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

3579 VALLEY CENTRE DRIVE, SUITE 300
SAN DIEGO, CA  92130-3302
858.847.6700 TEL
858.792.6773 FAX
foley.com

WRITER'S DIRECT LINE
858.847.6728
aserwin@foley.com EMAIL

CLIENT/MATTER NUMBER
094205-0101

September 6, 2011

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Mina I. Hamilton, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012

  Re: Trafficschool.com, et al. vs. EDriver, Inc., et al.
    USDC, Central District Court Case No.: CV 06-7561 PA (CWx)

Dear Ms. Hamilton:

   Thank you for your letter dated September 2, 2011. The date and time of September 12, 2011, at 10:00 a.m., for a meet and confer on attorney's fees is acceptable.

## **Permanent Injunction**

   Your representation of Defendants' Position on the permanent injunction issues is, however, inaccurate.

   As I expressed during our meet and confer, certain levels of consumer "confusion" regarding dmv.org's non-affiliation with government agencies exist, but the existence of confusion cannot be viewed separately and apart from ongoing deceptive conduct. Plaintiffs could not point to *any* evidence of ongoing deceptive conduct by the Defendants and/or misleading statements on dmv.org. Moreover, the splash screen has been in place for over three years. Consequently, existing "confusion" does not result from Defendants engaging in deceptive conduct.

   Since the entry of judgment, Defendants discontinued the practices that the Court previously found problematic, and the site has been dramatically redesigned. The evidence of Defendants' redesigned site is available for you and the public to see.

   It is unfortunate that Plaintiffs were unwilling to further discuss the contours of a modified injunction, in light of the severe First Amendment restraints that the splash screen imposes on Defendants' free speech rights. Plaintiffs cannot deny that most, if not all, of the content on dmv.org is fully protected under the First Amendment and is being impermissibly burdened under the Court's current injunction.

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SHANGHAI

SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.



**FOLEY**

FOLEY & LARDNER LLP

Ms. Mina Hamilton
September 6, 2011
Page 2

## Discovery and Depositions

Given Defendants' proposal for how the permanent injunction may be modified *consistent with the Ninth Circuit's opinion*, the need for additional electronic discovery and depositions as Plaintiffs propose is wasteful and pointless.

If dmv.org utilizes visible design elements on the website that disclaim its affiliation with any government agency (as has been done), and Defendants are permanently enjoined from engaging in deceptive marketing or placing misleading statements on dmv.org (as the Ninth Circuit suggested), then there is no need for additional discovery. The conduct that the Court was concerned with will be enjoined, and yet fully protected informational content and truthful commercial speech will not be impermissibly restrained.

We view your extensive discovery requests as nothing more than an improper attempt to relitigate a case that already went to trial. In addition, given your client's established status as a competitor of Defendants, the discovery requests inappropriately seek sensitive, confidential information. The requests impose an undue burden on Defendants and we will vigorously oppose any attempts to seek "reimbursement" for the needless and avoidable incurrence of fees and costs.

Should the Court determine that further discovery is needed, Defendants reserve the right to seek discovery relating to the relative level of "consumer confusion" with respect to other commercial websites, including but not limited to, websites operated by Plaintiffs.

## Document Preservation

Defendants are aware of their document preservation obligations, and have preserved all relevant electronic data. However, on dmv.org's Facebook page, Defendants have removed from public view approximately 40 postings which they believed were inappropriate for a variety of reasons, including comments that are harmful, offensive, or perpetuate consumer confusion. For example, complaints that were apparently addressed to a Department of Motor Vehicles were removed by Defendants to *prevent further* confusion and to discourage other users from posting in these inappropriate manners.

DLMR_930445.2



**FOLEY & LARDNER LLP**

Ms. Mina Hamilton
September 6, 2011
Page 3


       Please feel free to contact me with any questions or comments.  We remain open to discussions regarding a modified injunction.

                        Very truly yours,

                        Andrew B. Serwin

cc: Tammy Boggs

DLMR_930445.2

# EXHIBIT E

**From:**     Mina Hamilton
**To:**       Serwin, Andrew B.
**CC:**       Boggs, Tammy H.;  Brosas, Josephine;  DeCarlo, Dan;  Makous, David;  Sol...
**Date:**     9/6/2011 2:36 PM
**Subject:**  Re: Trafficschool.com, et al. vs. Edriver, Inc., et al - Letter from Andrew Serwin to Mina Hamilton dated 9/6/11

Andrew,

Thank you for your letter. In the interest of time, I am responding via email.

First, you have misstated the meet and confer conversation. It is not true that Plaintiff's "could not point to any evidence of ongoing deceptive conduct" by your clients --- we certainly did, can and will -- however your refusal to provide us with even Defendants' position and level of ongoing confusion set the tone of the conversation, and Plaintiffs did state that we believe that both confusion and deception is indeed occurring.  Moreover, Plaintiffs were never "unwilling to further discuss the contours of a modified injunction"; we simply took your invitation to send you a list of proposed discovery. The fact that your clients subsequently changed their mind about discovery, and subsequently admitted that there is ongoing confusion is your clients' choice, but is not a reason to suggest that Plaintiff has no evidence of deceptive conduct by your client. Indeed, we even specifically pointed out how your clients have deceptively implemented the splash screen over these past three years.

Second, while we disagree with most everything else in your letter, we will rely on the confirmation that your clients have preserved all relevant electronic data. We find it more than interesting that the "complaints that were apparently addressed to a Department of Motor Vehicles" were only recently removed after we informed your clients of our knowledge of their Facebook page and asked them to preserve the comments. Our clients reserve all rights and remedies.

Regards,

**Mina I. Hamilton | Partner | Intellectual Property**
**Lewis Brisbois Bisgaard & Smith LLP**
**t** 213.580.7926 | **f** 213.250.7900 | **e** hamilton@lbbslaw.com
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
********************************************************************

This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
********************************************************************

>>>

**From:** "Solis, Theresa" <TSolis@foley.com>

**To:**<hamilton@lbbslaw.com>
**CC:**<brosas@lbbslaw.com>, <decarlo@lbbslaw.com>, <makous@lbbslaw.com>, "Serwin, Andrew B." <ASerwin@foley.com>, "Boggs, Tammy H." <TBoggs@foley.com>
**Date:** 9/6/2011 1:59 PM
**Subject:** Trafficschool.com, et al. vs. Edriver, Inc., et al - Letter from Andrew Serwin to Mina Hamilton dated 9/6/11


<<ONLINE GURU TRAFFIC SCHOOL Letter to Mina Hamilton from Andy Serwin re responding to their meet & co.PDF>>
Please attached a letter sent on behalf of Andrew Serwin to Mina Hamilton, dated September 6, 2011, in the above-entitled matter.
**Terry Solis** | Litigation Assistant to Debra Nye and Tammy Boggs | **FOLEY & LARDNER LLP** | 3579 Valley Centre Drive, Suite 300 | San Diego, CA 92130
tel: +1.858.847.6843 (direct) | tel : +1.858.847.6700 (general) | fax: +1.858.792.6773 | email: tsolis@foley.com | web: www.foley.com ( file://www.foley.com )


The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

# EXHIBIT E

| | |
|---|---|
| **From:** | Mina Hamilton |
| **To:** | Serwin, Andrew B. |
| **CC:** | Boggs, Tammy H.;  Brosas, Josephine;  DeCarlo, Dan;  Makous, David;  Sol... |
| **Date:** | 9/6/2011 2:36 PM |
| **Subject:** | Re: Trafficschool.com, et al. vs. Edriver, Inc., et al - Letter from Andrew Serwin to Mina Hamilton dated 9/6/11 |

Andrew,

Thank you for your letter. In the interest of time, I am responding via email.

First, you have misstated the meet and confer conversation. It is not true that Plaintiff's "could not point to any evidence of ongoing deceptive conduct" by your clients --- we certainly did, can and will -- however your refusal to provide us with even Defendants' position and level of ongoing confusion set the tone of the conversation, and Plaintiffs did state that we believe that both confusion and deception is indeed occurring.  Moreover, Plaintiffs were never "unwilling to further discuss the contours of a modified injunction"; we simply took your invitation to send you a list of proposed discovery. The fact that your clients subsequently changed their mind about discovery, and subsequently admitted that there is ongoing confusion is your clients' choice, but is not a reason to suggest that Plaintiff has no evidence of deceptive conduct by your client. Indeed, we even specifically pointed out how your clients have deceptively implemented the splash screen over these past three years.

Second, while we disagree with most everything else in your letter, we will rely on the confirmation that your clients have preserved all relevant electronic data. We find it more than interesting that the "complaints that were apparently addressed to a Department of Motor Vehicles" were only recently removed after we informed your clients of our knowledge of their Facebook page and asked them to preserve the comments. Our clients reserve all rights and remedies.

Regards,

**Mina I. Hamilton | Partner | Intellectual Property**
**Lewis Brisbois Bisgaard & Smith LLP**
**t** 213.580.7926 | **f** 213.250.7900 | **e** hamilton@lbbslaw.com
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
********************************************************************

This message may contain information that is
privileged, confidential and exempt from disclosure
under applicable law. If you are not the intended
recipient (or authorized to act on behalf of the
intended recipient) of this message, you may not
disclose, forward, distribute, copy, or use this
message or its contents. If you have received this
communication in error, please notify us immediately
by return e-mail and delete the original message from
your e-mail system. Thank you.
********************************************************************

>>>

**From:** "Solis, Theresa" <TSolis@foley.com>

**To:**<hamilton@lbbslaw.com>
**CC:**<brosas@lbbslaw.com>, <decarlo@lbbslaw.com>, <makous@lbbslaw.com>, "Serwin, Andrew B." <ASerwin@foley.com>, "Boggs, Tammy H." <TBoggs@foley.com>
**Date:** 9/6/2011 1:59 PM
**Subject:** Trafficschool.com, et al. vs. Edriver, Inc., et al - Letter from Andrew Serwin to Mina Hamilton dated 9/6/11

<<ONLINE GURU TRAFFIC SCHOOL Letter to Mina Hamilton from Andy Serwin re responding to their meet & co.PDF>>
Please attached a letter sent on behalf of Andrew Serwin to Mina Hamilton, dated September 6, 2011, in the above-entitled matter.
**Terry Solis** | Litigation Assistant to Debra Nye and Tammy Boggs | **FOLEY & LARDNER LLP** | 3579 Valley Centre Drive, Suite 300 | San Diego, CA 92130
tel: +1.858.847.6843 (direct) | tel: +1.858.847.6700 (general) | fax: +1.858.792.6773 | email: tsolis@foley.com | web: www.foley.com ( file://www.foley.com )

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

# EXHIBIT G

