**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DAVID N. MAKOUS, SB# 082409
  E-Mail: makous@lbbslaw.com
DANIEL C. DECARLO, SB# 160307
  E-Mail: decarlo@lbbslaw.com
MINA I. HAMILTON, SB# 213917
  E-Mail: hamilton@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California  90012
Telephone: 213.250.1800
Facsimile:  213.250.7900

*Attorneys for Plaintiffs*
TRAFFICSCHOOL.COM, INC. and
DRIVERS ED DIRECT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>            Plaintiffs,<br><br>      v.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, RAJ LAHOTI, individuals,<br><br>            Defendants. | CASE NO. CV 06-7561 PA (CWx)<br><br>*The Honorable Percy Anderson*<br><br>[AMENDED] PLAINTIFFS' NOTICE OF MOTION AND <u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date:  December 5, 2011<br>Time:  1:30 p.m.<br>Courtroom No. 15<br><br>*[Filed concurrently with Declarations of Mina I. Hamilton and Josephine Brosas in support of Motion; [Proposed] Order; and Joint Statements on Attorney's Fees  and Costs per Court Order (Docket Entry #2356)]* |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that on December 5, 2011, at 1:30 p.m., or as soon

3  thereafter as the matter may be heard by the above-entitled Court, located at 312 N.

4  Spring Street, Los Angeles, California 90012, Plaintiffs Trafficschool.com, Inc. and

5  Drivers Ed Direct, LLC ("Plaintiffs") will and hereby do move this Court for an award

6  of attorney's fees and related costs.

7      This Motion is based on this Court's Order of August 24, 2011 [Docket Entry

8  ("D.E.") # 302] and based on the Ninth Circuit's August 23, 2011 Mandate. Plaintiffs

9  are entitled to an award of their attorney's fees and costs under 15 U.S.C. § 1117(a).

10     Plaintiffs seek $2,867,616 in attorney's fees, which is the "presumptively

11 reasonable" lodestar amount adjusted by a 2.0 multiplier, as set forth in Tables 3-4.

12 Plaintiffs also seek $65,001.44 in non-taxable recoverable costs, as set forth in Table 3,

13 plus post-judgment interest upon entry as provided by law, as accrued, until paid in full.

14     This Motion is based upon this Notice and Motion, the attached Memorandum of

15 Points and Authorities, the Joint Statements on Attorney's Fees and Costs, the

16 Declarations of Mina I. Hamilton and Josephine A. Brosas and all exhibits thereto, all

17 pleadings and papers on file in this action, and upon such other matters as may be

18 presented to this Court at or before the time of the hearing.

19     This Motion is made following the exchange of documents and conference of

20 counsel pursuant to Local Rule 7-3 and this Court's Order (D.E. # 302) which took

21 place on September 6th and 12th, 2011, and continuing thereafter.

22

23 DATED: November 3, 2011          LEWIS BRISBOIS BISGAARD & SMITH LLP

24

25                                 By: /s/_____

26                                     David N. Makous
                                       Daniel C. DeCarlo
27                                     Mina I. Hamilton

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                          2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF NINTH CIRCUIT MANDATE................................................ 1

II.     DEFENDANTS' FAILURE TO FOLLOW THIS COURT'S ORDER........... 3

III.    PLAINTIFFS ARE ENTITLED TO THEIR ATTORNEY'S FEES .............. 4

   A.    Legal Standard ..................................................................................... 4

   B.    Plaintiffs Are Entitled To Fees According To The Ninth Circuit ......... 4

   C.    Plaintiffs Are The "Prevailing Party" ................................................. 6

IV.    THE FEES REQUESTED ARE REASONABLE AND WARRANTED ....... 7

   A.    Summary Of The Lodestar Method, The Attorney's Fees
         Requested, And Supporting Evidence .................................................. 7

   B.    The Hourly Rates Requested In This Motion Are The "Prevailing
         Market Rates"...................................................................................... 9

   C.    The Hours Claimed Were Reasonable and Necessary........................ 11

         1.    Initial And Amended Pleadings.................................................. 12

         2.    Discovery ................................................................................... 13

         3.    Cross-Motions for Summary Judgment...................................... 14

         4.    Bench Trial And Disposition ...................................................... 15

         5.    Post-Trial Proceedings and Plaintiffs' Motion for
               Contempt..................................................................................... 15

   D.    Plaintiffs Are Entitled To All Time Claimed....................................... 16

   E.    Defendants' Contempt Is Still Very Much An Issue As
         Evidenced By Its Continued Failure To Comply With The
         Injunction ............................................................................................ 18

   F.    *Kerr* Factors Warrant An Upward Adjustment Of The
         "Presumptively Reasonable" Lodestar Amount .................................. 19

         1.    The Time And Labor Required .................................................. 20

         2.    The Novelty And Difficulty Of The Questions.......................... 21

         3.    The Customary Fee..................................................................... 22

         4.    The Results Obtained.................................................................. 22

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

V.      PLAINTIFFS ARE ALSO ENTITLED TO THEIR COSTS ......................... 24

VI.     CONCLUSION .............................................................................. 25

***

TABLE 1 (List of Issues that Plaintiffs have Prevailed On)............................i

TABLE 2 (Actual Rates Compared to the "Prevailing Market Rate").....…………ii

TABLE 3 (Summary of Actual Fees and Costs Incurred)……..……....…………iii

TABLE 4 (Summary of Actual, Lodestar and Enhanced Fees)……………………xi

TABLE 5

(Step-by-Step Illustration of Defendants' Continued Deceptive Marketing
Practices)…………………………………… ..………………………………………xii

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Audi AG v. D'Amato,*
    469 F.3d 534 (6th Cir. 2006)..................................................................7

*Blum v. Stenson,*
    465 U.S. 886 (1984) ............................................................................9

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.,*
    2009 U.S. Dist. LEXIS 4005 (S.D. Cal. Jan. 20, 2009) .................................11

*Camacho v. Bridgeport Fin., Inc.,*
    523 F.3d 973 (9th Cir. 2008)............................................................8, 12

*Caplan v. CNA Financial Corp.,*
    2008 WL 3970864 (N.D. Cal. Aug. 20, 2008)............................................10

*Carson v. Billings Police Dep't,*
    470 F.3d 889 (9th Cir. 2006)..................................................................9

*EchoStar Satellite Corp. v. NDS Group PLC,*
    390 Fed. Appx. 764 (9th Cir. 2010) ........................................................6

*Eldorado Stone LLC v. Renaissance Stone,*
    2007 WL 3308099 (S.D. Cal. Oct. 24, 2007) ...........................................11

*Ferland v. Conrad Credit Corp.,*
    244 F.3d 1145 (9th Cir. 2001)................................................................7

*Hawkins-Dean v. Metropolitan Life Ins. Co,*
    2007 WL 2735684 (CD. Cal. Sep. 18, 2007)............................................10

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................................6

*In re Nucorp Energy, Inc.,*
    764 F.2d 655 (9th Cir. 1985)............................................................8, 12

*Intel Corp. v. Terabyte Intern., Inc.,*
    6 F.3d 614 (9th Cir. 1993)....................................................................7

*Jordan v. Multnomah County,*
    815 F.2d 1258 (9th Cir. 1987)................................................................9

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976)..............7, 8, 9

*Mitchell v. Metropolitan Life Ins. Co.,*
    2008 WL 1749473 (CD. Cal. April 7, 2008) ...........................................10

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1

iii

*Montgomery v. Noga,*
   168 F.3d 1282 (11th Cir. 1999)..................................................6, 7

*Moore v. Bank of America, N.A.,*
   (USA), 2008 WL 68851 ............................................................10

*Pande v. ChevronTexaco Corp.,*
   2008 WL 906507 (N.P. Cal. Apr. 1, 2008)…………………………………10

*Petroleum Sales, Inc. v. Valero Refining Co.-California,*
   2007 WL 2694207 (N.D. Cal. Sep. 11, 2007)…………………………………..11

*Sapper v. Lenco Blade, Inc.,*
   704 F.2d 1069 (9th Cir. 1983)...................................................8

*Sorenson v. Mink,*
   239 F.3d 1140 (9th Cir. 2001) ...................................................9

*Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.,*
   151 F. Supp. 2d 1192 (C.D. Cal. 2001)..........................................9

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   896 F.2d 403 (9th Cir. 1990).....................................................10

*View Engineering v. Robotic Vision,*
   208 F.3d 981 (Fed. Cir. 2000) ...................................................9

## FEDERAL STATUTES

15 U.S.C. §1117(a) .........................................................2, 4, 6

4851-0492-0845.1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     SUMMARY OF NINTH CIRCUIT MANDATE

This case is exceptional pursuant to 15 USC § 1117(a) because the Ninth Circuit *said* it was exceptional and remanded it to this Court for consideration of an award of Plaintiffs' attorney's fees.  In June of 2008 this Court judged that brothers Raj and Ravi Lahoti and their companies Online Guru, Inc., eDriver, Inc. Find My Specialist, Inc., and Seriousnet, Inc. ("Defendants") engaged in willful deceptive acts.  [D.E. #210 at 20.] The well-funded Defendants[1] had chosen to vigorously yet unreasonably oppose at every step Plaintiff's legal quest to operate in a marketplace free of unfair competition. Now they must account and pay for that opposition.

The Ninth Circuit articulated that the correct legal standard "in determining whether to award attorney's fees" in this case was the consideration of (1) the "[the] substantial benefits" conferred by the "judgment and an injunction that ameliorated a serious public harm", *and*  (2) the "defendants' bad acts." *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 2011 (9th Cir. 2011)("Opinion"), citing to cases, including *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 511 (9th Cir. 2011) for the correct legal standard (i.e., focusing on David Lahoti's  willful violation of the Lanham Act, his "pattern and practice" of such violations, and his "practice of abusive litigation practices" as bad faith factors justifying the award of fees).[2]

The Ninth Circuit's mandate disposes of Defendants' argument that $ 0 should be awarded in fees to Plaintiffs because "Plaintiffs are not 'prevailing parties' in an 'exceptional case' and the "injunction that Plaintiffs obtained caused as much harm if

---

[1]     Defendants are operators of the DMV.Org website which generated in excess of $16 million in revenue in 2007 alone and which sees, according to Defendants, "more than 60 million users per year and ranks among the top 1,000 Web sites in the United States." See, http://www.onlineguru.com/news/news_2011_07_09.html, last visited on November 3, 2011. See, Hamilton Decl., ¶34, Ex. P.

[2]     Plaintiffs are uncertain of the relationship, if any, between the David Lahoti found liable as a willful violator in the case cited by the Ninth Circuit and Raj and Ravi Lahoti found to be willful false advertisers in this case.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  not greater harm than the benefit conferred."[3]

2      *Compare the Ninth Circuit's Opinion at p. 9757 . . .*

**[21]** Because the district court erred in finding that defendants' conduct <u>wasn't exceptional</u> and that plaintiffs had unclean hands, its denial of attorney's fees was an abuse of discretion. We remand for the district court to consider the award of attorney's fees anew in light of the considerations discussed above.

8      and at p. 9754:

defendants' conduct. It would be inequitable to force plaintiffs to bear the entire cost of enjoining defendants' willful deception <u>when the injunction confers substantial benefits on the public.</u> *See Comm. for Idaho's High Desert, Inc.* v. *Yost,* 92 F.3d 814, 818-19, 825 (9th Cir. 1996) (plaintiff was enti-

13      *. . . with Defendants' positions to this Motion at Comments pg. 4:*

Plaintiffs are not entitled to a discretionary award of attorney's fees under the Lanham Act. Plaintiffs are <u>not</u> "prevailing parties" <u>in an "exceptional case."</u> 35 U.S.C. § 1117(a).

On balance, <u>the injunction that Plaintiffs obtained caused as much if not</u> <u>greater harm than the benefit conferred.</u> Defendants' free speech rights have been

19  True to form, Plaintiffs insist on pursuing untenable arguments, forcing Plaintiffs to

20  respond to even the threshold and indisputable position that this an exceptional case

21  entitling Plaintiffs to their attorneys fees as the prevailing party that conferred

22  significant benefits to the public in the relief obtained.  Based on the Ninth Circuit's

23  Opinion alone, an award of attorney's fees has been mandated.

24      In further consideration of the amount of fees to be awarded is Defendants'

25  conduct during litigation.  As explained *infra*, despite clear evidence of false

---

[3]      See, Defendants' Comments to Joint Statement on Plaintiffs' Motion for Attorneys' Fees ("Comments") at p. 4:16-22.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   advertising, Defendants forced Plaintiffs to expend ever increasing legal fees to try to

2   keep the "moving target" of Defendants' websites, and marketing practices, free from

3   false and deceptive acts. Defendants also withheld documents until they were forced to

4   turn them over by Court order, and repeatedly deny there is consumer confusion.

5        The relief that Plaintiffs seek is just and will encourage others to pursue claims

6   against false advertisers, while deterring Defendants from willful misconduct.

7   **II.**   **<u>DEFENDANTS' FAILURE TO FOLLOW THIS COURT'S ORDER</u>**

8        On August 24, 2011, this Court issued an Order in response to the Mandate

9   issued by the Ninth Circuit with respect to the scope and terms of the permanent

10  injunction and the award of attorney's fees to Plaintiffs. (D.E. #302).  This Order set

11  forth very specific procedures for the parties to follow in connection with Plaintiffs'

12  Motion for Attorney's Fees and Costs.  For instance, at least seven (7) days prior to a

13  required meet and confer conference, Plaintiffs were required to provide to Defendants'

14  counsel certain documents comprised of: (1) billing records[4]; (2) information regarding

15  the hourly rates that will be claimed; (3) evidence to support the "related nontaxable

16  expenses" to be sought by the motion; and a (4) joint statement formatted as a

17  spreadsheet containing several columns specified by this Court.  Following the

18  conference of counsel, and no more than fourteen (14) days prior to the filing of the

19  Motion, Plaintiffs were required to provide to Defendants the final version of its portion

20  of the Joint Statement, with Defendants to return their portion at least seven (7) days

21  prior to the filing of the Motion. (*Id.*)  Significantly, <u>Defendants were required to</u>

22  _____

23  [4]     Plaintiffs only redacted invoices to the extent necessary to prevent disclosure

24  of information protected by the attorney-client privilege or work product doctrine, as
    provided for by this Court's Order (D.E. # 302, p. 1)("These records may be

25  redacted to prevent disclosure of material protected by the attorney-client privilege
    or work product doctrine.") The invoices are not heavily redacted. (See Exhs. E and

26  F to Hamilton Decl., ¶¶12-14)  They show that Plaintiffs redacted only portions that
    would have disclosed the substance of client communications and/or strategy—See

27  e.g. 11/17/06 entry: "Telephone conference with client re: [redacted]; and
    "discussion with D. Makous re: strategy [redacted]".

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

3

1   provide a "brief summary" of *its position as to each* disputed "time entry" in this

2   spreadsheet. (*Id.* at p. 2).  They however, did not do so.

3        Rather than provide their position as to each time entry as required, Defendants

4   incorporated by reference into *every single* entry an omnibus and identical catchall

5   objection. See, Defendants' Comments and Serwin Decl. in support thereof".[5] (See ¶ 9

6   to Hamilton Decl.)  This is not helpful to the Court and defeats the purpose of the

7   Court's Order that *each* disputed entry must be separately addressed so that Plaintiffs

8   can respond when they file their Motion and so that the Court can assess which fees are

9   disputed.  Instead, Defendants merely state that they dispute *all fees*.

10       In an attempt to distract from the fact that they have no real argument in dispute,

11  Defendants devote *4 out of its 6-page* "comments" submission to its skewed "version"

12  of the parties' meet and confer efforts (which is inaccurate as Plaintiffs have fully

13  complied with the Order, see Hamilton and Brosas Declarations).

14  **III.    PLAINTIFFS ARE ENTITLED TO THEIR ATTORNEY'S FEES**

15       A.    Legal Standard

16       Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases

17  may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

18  Here, there can be no serious dispute that Plaintiffs are entitled to their fees because

19  they are the "prevailing party" in this "exceptional" case, as confirmed by the Ninth

20  Circuit's Mandate.

21       B.    Plaintiffs Are Entitled To Fees According To The Ninth Circuit

22       The Ninth Circuit unequivocally ruled that Plaintiffs are entitled to their

23  attorney's fees by reversing the denial of fees and remanded to this Court for

24  _____

25  [5]    There are approximately 3,000 entries in the Joint Statement spreadsheet
26  painstakingly prepared by Plaintiffs and separated by Plaintiffs into tabbed
    categories (e.g. "pleadings", "discovery", "summary judgment", "pre-trial" and
27  "trial").  All that Defendants did was copy and paste an omnibus and useless
    statement into each of these entries, and nothing more. (See ¶13; 15 to Hamilton
28  Decl.)


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

reconsideration. (Opinion at p. 9757).

The "considerations" that the Ninth Circuit looked at in reaching the above conclusion were two-fold: (1) "plaintiffs obtained a judgment and an injunction that ameliorate a serious public harm"; and (2) "the unlawfulness of defendants' conduct." (*Id.* at p. 9754). The Ninth Circuit recognizing that:

- "[U]sing litigation to shut down a competitor who uses unfair trade practices is precisely what the Lanham Act seeks to encourage."

- "It would be inequitable to force plaintiffs to bear the entire cost of enjoining defendants' willful deception when the injunction confers substantial benefits on the public."

- Plaintiffs furthered the purpose of the Lanham Act "by obtaining a judgment and an injunction that ameliorate[d] a serious public harm" and by putting to "an end the confusion created by DMV.org"; and

- "Plaintiffs put an end to the confusion created by DMV.ORG and stopped consumers from mistakenly transferring sensitive personal information to a commercial website. This conferred significant benefits on third parties and also vindicated plaintiffs' right *to a 'market free of false advertising.'*" Opinion, at pp. 9754-9757. (Emphasis in original)

Further identified were the following plethora of Defendants' bad acts:

- "[D]efendants planned to mislead site visitors and knew that their conduct confused consumers."

- "Defendants associated their website with URLs and search terms that falsely implied DMV.org was a government site."

- They had in their possession hundreds of emails sent by customers who contacted DMV.org thinking it was a state agency. And DMV.org's director of customer service testified that he voiced concerns about these emails to senior management."

- "[D]efendants knew that the disclaimers were ineffective, because adding them didn't end the stream of emails sent by consumers who thought they'd contacted their state DMV."


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

- "There was overwhelming proof that defendants knew their statements confused customers and did little or nothing to remedy it."

- "The district court could reasonably infer that [Defendants] willfully deceived the public." (Opinion at pp. 9754 - 9755).

Defendants seem intent on advancing a remarkable theory in opposing Plaintiffs' motion for fees—one that is <u>squarely irrelevant</u> in view of the Ninth Circuit's Mandate and this Court's Order. (August 24, 2011 Order, D.E. # 302) Defendants proclaim that "Plaintiffs are not entitled to a discretionary award of attorney's under the Lanham Act" and that "Plaintiffs are not 'prevailing parties' in an exceptional case." (See "Comments", p. 4, lns. 20-22). This flouts the Ninth Circuit's Mandate and this Court's Order and is plainly untenable.

C.   Plaintiffs Are The "Prevailing Party"

The Supreme Court and the Ninth Circuit have stated that a "prevailing party" is "the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit." *Montgomery v. Noga*, 168 F.3d 1282, 1304 (11th Cir. 1999); *EchoStar Satellite Corp. v. NDS Group PLC*, 390 Fed. Appx. 764, 766-767 (9th Cir. 2010), citing to *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Nothing more is required. Plaintiffs are the prevailing party.[6] Most significantly, the Ninth Circuit's ruling that this Court's denial of attorney's fees to Plaintiffs was an abuse of discretion confirms that Plaintiffs are indeed the "prevailing party" based on the simple fact that only a "prevailing party" is entitled to attorney's fees under 15 U.S.C. § 1117(a). Not only did Plaintiffs prevail on almost all of the issues, but they prevailed on the <u>*key*</u> substantive issues relevant to their claim for fees: <u>*liability for*</u>

---

[6]    Defendants' strangely ignored the plethora of victories by Plaintiffs before this Court and on appeal. The Ninth Circuit's remand for this Court to ***consider*** for the first time First Amendment issues related to the present injunction is not a finding by the Ninth Circuit that "Defendants' free speech rights have been unnecessarily infringed upon," as Defendants suggest in their Comments. See e.g., Table 1 hereto.


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *willful false advertising under the Lanham Act and imposition of a permanent*

2   *injunction against Defendants.*   On appeal, the Ninth Circuit affirmed that that

3   injunction was the "*optimal* means of correcting defendants' false advertising." *Opinion*

4   at 9749 (emphasis added).  Obtaining a permanent injunction (regardless of its form) in

5   a Lanham Act case has been found to be a "significant benefit" that renders a plaintiff a

6   "prevailing party" entitled to fees. *See Montgomery*, 168 F.3d at 1304 (award of

7   permanent injunctive relief was a "significant benefit" sought in initiating the suit and

8   supported a grant of attorney's fees).  *See also Audi AG v. D'Amato*, 469 F.3d 534, 550-

9   51 (6th Cir. 2006) (holding that a plaintiff who successfully obtained injunctive relief

10  for a violation of the Lanham Act was a "prevailing party" within the meaning of

11  section 1117(a)). No doubt, Plaintiffs succeeded on the primary litigated issue by

12  proving their false advertising case, not once, *but twice* – both before this Court and the

13  Ninth Circuit.  Plaintiffs are the prevailing party.

14  **IV.    THE FEES REQUESTED ARE REASONABLE AND WARRANTED**

15          A.    Summary Of The Lodestar Method, The Attorney's Fees Requested, And

16                Supporting Evidence

17          In determining reasonable fees in Lanham Act cases, courts have employed the

18  "lodestar" method. *See e.g., Intel Corp. v. Terabyte Intern., Inc.,* 6 F.3d 614 (9th Cir.

19  1993). "When it sets a fee, the [court] must first determine the presumptive lodestar

20  figure by multiplying the number of hours reasonably expended on the litigation by the

21  reasonable hourly rate." *Id.* at 622.

22          "Although in most cases, the lodestar figure is presumptively a reasonable fee

23  award, the district court may, if circumstances warrant, adjust the lodestar to account

24  for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp.,*

25  244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Specifically, the "presumptively reasonable"

26  lodestar figure may be adjusted based upon the factors listed in *Kerr v. Screen Extras*

27  *Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975) (*Kerr*), *cert. denied*, 425 U.S. 951

28  (1976). These factors are as follows:

**LEWIS**
**BRISBOIS**
**BISGAARD**
**& SMITH LLP**
ATTORNEYS AT LAW

4851-0492-0845.1                                            7

(1) **the time and labor required**; (2) **the novelty and difficulty of the questions presented**; (3) **the necessary skill required**; (4) the preclusion of other employment by the attorney; (5) **the customary fee**; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and **the results obtained**; (9) **the experience, reputation and ability of the attorneys on the case**; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) **awards in similar cases**. *Kerr*, 526 F.2d at 70 (Emphasis added.)[7]

The court need only consider those factors that are relevant to the case. *Sapper v. Lenco Blade, Inc.,* 704 F.2d 1069, 1073 (9th Cir. 1983).

Moreover, "time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.,* 764 F.2d 655, 659-60 (9th Cir. 1985); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 981 (9th Cir. 2008); *United States v. $60,201.00 United States Currency*, 291 F. Supp. 2d 1126, 1131 (C.D. Cal. 2003) (where the district court found that the claimant was entitled to compensation for the time spent in connection with the motion for fees).

Plaintiffs seek a "presumptively reasonable" lodestar figure of $1,433,808, adjusted upward by a 2.0 multiplier, totaling $2,867,616 (based on certain *Kerr* factors not already taken into account when determining the lodestar).  The $1,433,808 lodestar figure is calculated by multiplying the number of hours reasonably expended on proceedings before the district court prior to the appellate proceedings (i.e., 2,679.7 hours), including this Motion (about 210 hours, incorporating time estimated for the Reply and any hearing) and the preparation of the Joint Status Report which the parties filed on September 6, 2011 (D.E. #306) (about 115 hours) by the reasonable hourly rates (i.e., $503 for partners and $349 for associates, which is based upon the prevailing market rates; see Hamilton Decl., ¶¶ 16-17, Table 2).  The upward adjustment of the

---

[7]     The bolded *Kerr* factors are relevant to this case and are either subsumed within the reasonableness of the lodestar figure requested or are factors in favor of an *upward* adjustment to the lodestar figure, as discussed *infra*,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1

8

1   lodestar by a relatively modest 2.0 multiplier[8] is warranted based on application of

2   certain *Kerr* factors as discussed *infra*.

3       B.      The Hourly Rates Requested In This Motion Are The "Prevailing

4              Market Rates"

5       A reasonable hourly rate is the "prevailing market rate of the relevant

6   community," not necessarily the hourly rate charged to the client. See, *Carson v.*

7   *Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006)("[T]there is such a thing as a

8   high charger and low charger, <u>and the district judge is supposed to use the prevailing</u>

9   <u>market rate</u> for attorneys of comparable experience, skill and reputation, *which may or*

10  *may not be the rate charged by the individual attorney in question*.")(emphasis added);

11  see also, *Blum v. Stenson,* 465 U.S. 886, 895 (1984); *Jordan v. Multnomah County,* 815

12  F.2d 1258 (9th Cir. 1987)(the prevailing market rate in the community is indicative of

13  the reasonable hourly rate); *Sorenson v. Mink,* 239 F.3d 1140, 1145 (9th Cir. 2001)(a

14  reasonable hourly rate is calculated according to the prevailing market rates in the

15  community in which the court sits). In this case, the relevant community is Los

16  Angeles.

17      Reports based on surveys periodically conducted and prepared by the American

18  Intellectual Property Law Association ("AIPLA Survey"), and published every other

19  year to determine the billing rates in intellectual property cases are frequently referred

20  to and used by courts to determine prevailing market rates in fee applications. See e.g.,

21  *View Engineering v. Robotic Vision,* 208 F.3d 981, 987 (Fed. Cir. 2000)(court looked to

22  the AIPLA Survey to determine the reasonable lodestar rate); *see also Ulead Sys., Inc.*

23  *v. Lex Computer & Mgmt. Corp.*, 151 F. Supp. 2d 1192, 1211-1212 (C.D. Cal. 2001).

24      Here, based on relevant AIPLA Surveys (Hamilton Decl., ¶16, Ex. G) the

25  _____

26  [8]     As discussed *infra*, a 2.0 multiplier, which is higher than that claimed by

27  Plaintiffs on appeal, is appropriate here because of Defendants' scorched-earth litigation tactics and refusal to capitulate *throughout this case* at every step of the

28  way, from inception to post-trial and post-appeal.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                        9

prevailing hourly market rate in the Los Angeles area is $503 for partners and $349 for associates— those are the rates that should be applied, not the rates actually charged which are below those rates.  Moreover, the attorneys who have worked on this case have substantial experience in the field of false advertising and Lanham Act cases. *See* Hamilton Decl., ¶¶21-25, Ex. I. Despite this level of experience, expertise and ability, the rates actually charged to Plaintiffs was over <u>30% lower</u> on average with respect to the prevailing market rate for partners, and at least <u>40% lower</u> on average with respect to the prevailing market rate for associates. See Table 3, *infra*. Also, as can also be seen in The National Law Journal's 2010 Billing Survey Report, the rates actually charged were also <u>well below</u> most of the those charged by the nation's 250 largest law firms.[9]

"[R]ate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts have routinely concluded that rates in excess of $500 per hour are reasonable for experienced counsel handling complex litigation. *See, e.g., Moore v. Bank of America, N.A.* (USA), 2008 WL 68851, at *3 (S.D. Cal. Jan. 7, 2008)(concluding that $ 550 per hour is a reasonable hourly rate); *Eldorado Stone,* 2007 WL 3308099, at *4 (finding hourly rates up to $ 520 per hour reasonable); *See, e.g., Mitchell v. Metropolitan Life Ins. Co.*, 2008 WL 1749473, at *2 (CD. Cal. April 7, 2008), at *2 (finding that "the 2008 prevailing market rate for plaintiff-side partner-level ERISA attorneys is $ 400-575/hour"); *Hawkins-Dean v. Metropolitan Life Ins. Co,* 2007 WL 2735684, at *3 (CD. Cal. Sep. 18, 2007)(awarding attorney's fees for a partner with 20 years experience at the rate of $ 575 per hour); *Caplan v. CNA Financial Corp.*, 2008 WL 3970864, at *3-4 (N.D. Cal. Aug. 20, 2008)(awarding

---

[9]     At Foley & Lardner (defense counsel's firm), it is reported that—**firm wide** and not just intellectual property attorneys who generally bill at *higher* rates—**partners** bill at an average rate of **$654** an hour, and **associates** at **$426** an hour.  It is also reported that at Sheppard Mullin Richter and Hampton (former defense counsel who handled the district court proceedings), partners bill at a high-end firm wide rate of **$820** and associates at a firm wide high-end rate of **$620** (average rates were not reported).See, Hamilton Decl., ¶ 17, Ex. H.



1  attorney's fees for a partner with 20 years experience at the rate of $ 575 per hour);

2  *Pande v. ChevronTexaco Corp.*, 2008 WL 906507, at *4 (N.P. Cal. Apr. 1, 2008)

3  (awarding partner with 20 years experience in complex business litigation an hourly

4  rate of $ 575); *Petroleum Sales, Inc. v. Valero Refining Co.-California*, 2007 WL

5  2694207, at *5-6 (N.D. Cal. Sep. 11, 2007) (awarding attorney's fees for a partner with

6  20 years experience at the rate of between $ 515 and $ 575 per hour; awarding

7  attorney's fees for a partner with 30 years experience at the rate of $ 616 per hour).

8      Accordingly, the rates actually charged should not be applied to determine the

9  lodestar figure; rather, the reasonable prevailing market rates of $503 for partners, and

10  $349 for associates should be used.

11      C.    The Hours Claimed Were Reasonable and Necessary

12      The hours billed on this complex matter were reasonable in that they span four

13  years of litigation, including a bench trial, and reflect time exacerbated by the

14  unreasonable positions and tactics of Defendants' litigation conduct. These total hours

15  expended are in line with similar cases. See, e.g., *Eldorado Stone LLC v. Renaissance*

16  *Stone*, 2007 WL 3308099, at *2 (S.D. Cal. Oct. 24, 2007) (awarding plaintiff fees

17  totaling $ 1,925,230 following jury verdict finding defendant intentionally infringed

18  plaintiff's trademark, copyright and misappropriated plaintiff's trade secret).

19      In *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 U.S. Dist. LEXIS

20  4005, 11-14 (S.D. Cal. Jan. 20, 2009), the Court granted the Plaintiff's motion for

21  attorneys' fees, awarding $ 1,235,404 (the full amount requested by Plaintiff) for 3,366

22  hours of work performed in a Lanham Act case spanning just over two years, "in light

23  of the experience and skill of counsel, the quality of representation provided by

24  counsel, and the excellent results obtained for the client." *Id.* at *12-13.

25      Indeed, the approximately 2,679.7 hours of attorney time spent in proceedings

26  before the district court were incurred, necessary and reasonable in order to complete

27  the multiple and varied tasks related to the following general categories: (1) *pleadings*

28  and amendments thereto, including successfully opposing Defendants' motions to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                    11

dismiss (about 241.20 hours); (2) *fact and expert discovery*, including written discovery, depositions, preparation of expert initial and rebuttal reports, surveys, and motions to compel (about 773.30 hours); (3) *cross-motions for summary judgment*; (4) *pre-trial submissions,* including witness lists, exhibit lists, jury instructions, memorandum of contentions of fact and law, motions in limine, and additional specific filings dictated by this Court's order (trial declarations, deposition designation, stipulation regarding trial exhibits (about 463.10 hours); (5) *bench trial and Court-ordered post-trial filings*, such as post-trial briefs and findings of fact and conclusions of law, and Defendants' motion to stay the injunction (about 590.90 hours); (6) and Plaintiffs' contempt motion (about 143.70 hours). See Hamilton Decl., ¶18.   In addition, at least 115 hours have been incurred in connection with the Joint Status Report (D.E. # 306) (not including additional fees to be incurred later, on remand) and there are at least 210 hours that Plaintiffs anticipate have been and will be incurred in connection with this instant Application, which is allowed as part of the claimed fees. *See In re Nucorp Energy* and *Camacho, supra.*

Defendants fought Plaintiffs every step of the way— from the pleadings, discovery, summary judgment, throughout the bench trial and post-trial, and to this Court's judgment and imposition of a permanent injunction.  Defendants were well-funded and highly-motivated litigants with sophisticated (and multiple) counsel from the established Sheppard Mullin Richter and Hampton firm. At stake was the propriety of Defendants' marketing practices for DMV.org, which was "already a successful website" when Plaintiffs filed its suit in 2006, resulting in revenues of $11.6 million in 2006 and in excess of $16 million in 2007. Hamilton Decl., ¶ 34, Ex. P.

### 1.    Initial And Amended Pleadings

Defendants sought to slow down the judicial process at every opportunity and have forced Plaintiffs to expend significant resources even from the very beginning — by bringing a motion to dismiss the original complaint alleging that Plaintiffs were asserting a trademark infringement claim, even though it was *clear* that Plaintiffs claim



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                                      12

1   sounded in false advertising— then, by bringing a *second* motion to dismiss the FAC

2   even though there were numerous allegations in the FAC that the parties were indeed

3   competitors.[10]   Then, Defendants opposed <u>each</u> of Plaintiffs' requests for leave to

4   amend, and each time, leave was granted by the Court.[11]

5           2.   *Discovery*

6           Discovery in this case was extensive.   Defendants continuously rebuffed

7   _____

8   [10]    Specifically, On November 28, 2006 Plaintiffs filed their initial complaint for
    false advertising under § 43(a) of the Lanham Act and unfair competition under §
9   17200 *et seq.* of the California Business and Professions Code. (D.E. No. 1).
    Defendants filed a motion to dismiss on December 28, 2006, arguing  that Plaintiffs
10  did not have an commercial interest in the DMV trademark and therefore did not
    have standing for a false association Lanham Act claim under 15 U.S.C.
11  §1125(a)(1)(A). (D.E. # 9).   On January 22, 2007, this Court concluded that the
    complaint did not allege competition that was necessary for standing under a false
12  advertising claim under 15 U.S.C. §1125(a)(1)(B) and on this basis dismissed the
    complaint, with leave to amend. (D.E. # 12). On February 5, 2007, Plaintiffs filed a
13  First Amended Complaint, addressing the issues raised in the Court's January 22,
    2007 Order. (D.E. # 15).  Nevertheless, on February 22, 2007, Defendants filed
14  *another* motion to dismiss, challenging the amended complaint again based on
    standing. (D.E. # 18). On March 15, 2007, this Court denied Defendants' second
15  motion to dismiss the complaint based on standing. (D.E. # 24).  According to this
    Court: "Defendants challenge the FAC on the ground that Plaintiffs lack standing. . .
16  . <u>As previously explained by this Court,</u> Plaintiffs 'must allege commercial injury
    based upon a misrepresentation about a product, and also that the injury was
17  'competitive,' i.e., harmful to the plaintiff's ability to compete with the defendant.'
    [citations omitted] . . . The FAC <u>plainly satisfies</u> these requirements." (*Id.* at p. 1)
18  (emphasis added).

19  [11]    On May 14, 2007, Plaintiffs moved for leave to file a Second Amended
    Complaint to add certain defendants. (D.E. # 28).  Even though amendments are
20  often stipulated to between parties in light of the rules favoring amendments,
    Defendants refused to stipulate and vigorously opposed Plaintiffs' motion. (D.E.
21  #31).  On June 11, 2007, this Court granted Plaintiffs' motion. (D.E. # 32). On July
    10, 2007, Plaintiffs moved to file a Third Amended Complaint based on newly
22  discovered evidence (left undisclosed and unclarified by Defendants) that Raj and
    Ravi Lahoti are in fact, two distinct individuals, and based on deposition testimony
23  that Raj and Ravi Lahoti are each 50% co-owners of Defendants Online Guru, Inc.,
    EDriver, Inc. and Find My Specialist. (D.E. # 41).  Despite the clear justifications
24  for amendment, Defendants again, for the third time, opposed Plaintiffs'
    Application. (D.E. #42).  On July 17, 2007, this Court granted Plaintiffs'
25  Application. (D.E. # 43).  On July 17, 2007, Plaintiffs' Third Amended Complaint
    (the operative complaint) was filed and entered by this Court in its docket. (D.E. #
26  44).  Defendants filed an answer to the Third Amended Complaint on August 10,
    2007, in which they asserted twelve affirmative defenses, including unclean hands,
27  laches, and that Plaintiffs lack standing. (D.E. # 113).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                              13

1   Plaintiffs efforts to obtain documents and information fundamental to Plaintiffs' false

2   advertising case, culminating in Plaintiffs having to seek this Court's intervention.  On

3   August 3, 2007, Plaintiffs filed their motion to compel the production of documents,

4   which sought, *inter alia*, emails to DMV.org which evidence consumer confusion.

5   (D.E. # 46).  On August 14, 2007, the Court granted Plaintiffs' motion in part and

6   ordered further production of documents including unredacted versions of all third

7   party emails already produced by Defendants and additional third party emails showing

8   confusion.[12] (D.E. # 57).

9        Plaintiffs took and/or defended several depositions in this case (over eighteen

10  party, third party and expert depositions) and obtained evidence relied upon by this

11  Court and the Ninth Circuit is their holdings.   In addition to significant volumes of

12  anecdotal evidence[13], Plaintiffs also commissioned consumer surveys which compiled

13  persuasive evidence of consumer deception of California consumers.  Defendants

14  submitted their rebuttal report and testimony, and also commissioned their own

15  "rebuttal survey." (See D.E. # 210, pp. 10-19)[14].  Nonetheless, even on appeal,

16  Defendants characterized all this evidence of confusion "scant." Appeal Docket #26 at

17  12; #33 at 1 and 11.

18          *3.     Cross-Motions for Summary Judgment*

19       On August 10, 2007, Defendants filed their Motion for Summary Judgment on

20  _____

21  [12]    Several of these emails were cited by the Ninth Circuit as evidence of actual

22  consumer confusion. (Opinion, p. 9746).

23  [13]    As this Court noted in its Findings of Fact and Conclusions of Law:
    "Defendants have received myriad emails showing that many members of the public

24  [general public, law enforcement personnel, and even employees of actual official
    state motor vehicle departments] are confused into thinking that DMV.ORG is an

25  official state DMV website.  Indeed, hundreds of emails have been entered into
    evidence." (D.E. # 210, p. 13).

26  [14]    This Court noted that "Plaintiffs' survey is the more credible of the two.  The

27  anecdotal and survey evidence sufficiently establishes that Defendants' website has
    the tendency to deceive a substantial segment of its audience." (D.E. # 210, p. 19).

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                                    14

1  Plaintiffs' claims, again, arguing that Plaintiffs have failed to demonstrate Article III

2  standing, standing under § 17200 et seq., or standing under the Lanham Act.[15]

3  Defendants also sought summary judgment on their affirmative defenses of unclean

4  hands and laches. (D.E. # 50).  On August 20, 2007, Plaintiffs filed their Motion for

5  Summary Judgment on both of their claims. (D.E. # 59).

6        In their Opposition, Defendants defiantly and incessantly refused to acknowledge

7  that there was overwhelming public evidence of public deception and false advertising,

8  calling it "only a small number of instances [that] can be dismissed as inconsequential"]

9  (D.E. #65, p. 17).  Plaintiffs were forced to rebut this (and other erroneous factual and

10  legal contentions) and direct the Court to volumes of evidence showing otherwise.

11              *4.      Bench Trial And Disposition*

12        This Court held a bench trial from November 6-8, 2007. (D.E. #s 169, 191 and

13  192).   A significant volume of evidence by way of trial declarations, deposition

14  designations, examination of witnesses, exhibits, and oral testimony was taken on all

15  issues, including liability and remedy. (D.E. #s 139-168).

16        Several specific and extensive filings were asked for by this Court to complete

17  the trial record to be filed up to and until January 24, 2008, as follows: (1)  a stipulation

18  for the admission of trial exhibits on November 14, 2007 (D.E. # 184);  (2)  deposition

19  testimony of three expert witnesses on November 13, 2008 (D.E. # 178, 179, 181);  (3)

20  post-trial briefs on November 28, 2007 (D.E. #s 198, 202); and (4) final post-trial

21  findings of fact and conclusions of law by January 24, 2008 (D.E #s 208, 209).

22              *5.      Post-Trial Proceedings and Plaintiffs' Motion for Contempt*

23        On June 4, 2008, this Court issued its Findings of Fact and Conclusions of Law.

24  _____

25  [15]     Defendants vigorously argued in summary judgment that Plaintiffs lacked
26  standing, but as this Court recognized in its Order "Defendants's arguments were
    <u>previously rejected</u> by the Court when Defendants made them in a motion to
27  dismiss.[citations omitted]. Defendants now attempt to make the <u>same arguments</u> in
    a new way…" (Order re MSJs, D.E. # 106, p. 4)

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4851-0492-0845.1                              15

1   (D.E. #210).  A Proposed Judgment and Permanent Injunction was attached to the

2   Order with an invitation for both sides to object to its form. (*Id*.)  On June 18, 2008,

3   both parties filed their objections. (D.E. #s 212, 213). On August 26, 2008, after

4   considering the parties' objections, this Court entered the Judgment and Permanent

5   Injunction against Defendants. (D.E. # 215).  On September 16, 2008, Defendants

6   moved before the District Court for a stay of the Injunction pending appeal (D.E. #

7   235). Plaintiffs were forced to oppose this motion and it was denied on October 20,

8   2008 (D.E. #260).

9       On January 5, 2009, Plaintiffs filed their Motion for Contempt against

10  Defendants for Violation of the Court's Injunction and for Sanctions. (D.E. # 261).

11  While the Court denied the motion, the Court recognized that the injunction should be

12  modified to clarify certain requirements, as follows: "Ordinarily, the Court might

13  modify paragraph (f) of the injunction to require that the lettering in paragraph (c)

14  appear larger than any lettering used in the DMV.ORG logo, without specifying the

15  size of the language in paragraph (c). However, the injunction is currently on appeal,

16  and therefore the Court declines to modify the injunction in the absence of a stipulation

17  from the parties." (D.E. # 290).

18      D.      Plaintiffs Are Entitled To All Time Claimed

19      Plaintiffs provided more than adequate documentation in support of the amount

20  of fees requested.  Plaintiffs submitted all that was required by this Court's Order—all

21  billing invoices, documents showing the prevailing market rates that will be claimed,

22  and a Joint Statement itemizing the category of tasks and the hours that Plaintiffs are

23  claiming.  See Hamilton Decl., ¶¶ 4-6; 12-17, Exs. E-H.

24      In their "Comments to the Joint Statement" Defendants argue that Plaintiffs

25  "have not allocated their attorneys' time between Lanham Act claims and non-Lanham

26  Act claims, as well as on issues that they clearly lost." (Comments, p. 5).  The Court's

27  precedent disposes of this argument.  First, apportionment of the Lanham Act claims

28  and the non-Lanham Act unfair competition claims is not an issue here because the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   false advertising and unfair competition claims are inextricably intertwined[16] as both

2   arise out of the same allegations regarding Defendants' willful deceptive practices

3   using their DMV.ORG website.  At issue under 15 U.S.C. § 1125 was whether the

4   DMV.ORG website likely misled consumers to believe that DMV.ORG was a

5   government website, thus creating an unfair competitive advantage to Defendants that

6   was harmful to Plaintiffs. (D.E. #44).   This is the same issue as Business and

7   Professions Code, section 17200.

8        Indeed, in *Pom Wonderful, LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS

9   110460 (C.D. Cal. Sept. 22, 2008), Plaintiff tried to recover legal fees incurred in

10   litigation for violation of § 17200 et seq. claims and its Lanham Act claims.  This Court

11   concluded that plaintiff's claims are "so inextricably intertwined" that an attempted

12   adjustment would be "meaningless." . . . The same evidence was presented on all three

13   of plaintiff's claims and the gravamen of those claims was defendants' deceptive

14   advertising." *Id.* at 7-8 (Emphasis added.).  Similarly, *in Cyclone USA, Inc. v. LL&C*

15   *Dealer Servs.*, LLC, 2010 U.S. Dist. LEXIS 51193, 19-20 (C.D. Cal. May 24,

16   2010),where the Court awarded over $2 million in fees, this Court found that because

17   of "inherent interrelationship and factual overlap" between the Lanham Act and non-

18   Lanham Act claims (e.g., breach of contract, fraud and state unfair competition claims),

19   no meaningful apportionment would be possible. *Id.* at 18-20. The same applies here.

20        Second, it is immaterial that Plaintiff did not prevail on the motion for contempt

21   and the denial of an award of Defendants' profits.  *See Gates v. Deukmejian,* 987 F.2d

22   1392 (9th Cir. 1992)("[A] litigant need not prevail on every claim in order to receive a

23   full fee."); *See also Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)("Where a lawsuit

24   consists of related claims, a plaintiff who has won substantial relief should not have his

25   attorney's fees reduced simply because the district court did not adopt each contention

---

26

27   [16]  *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000) ("apportionment or an
      attempt at apportionment is required unless the court finds the claims are so
28   inextricably intertwined that even an estimated adjustment would be meaningless").



1   raised.")  Nevertheless, as discussed *infra*, Defendants' compliance with the injunction

2   is still at issue given Defendants' constantly-changing website and deceptive marketing

3   practices.

4       E.    Defendants' Contempt Is Still Very Much An Issue As Evidenced By Its

5             Continued Failure To Comply With The Injunction

6       Defendants have continued to defiantly repudiate this Court's permanent

7   injunction. Since the Injunction issued, Defendants have failed to comply with it, and

8   their litigation conduct in this regard should not be ignored.

9       Defendants' current splash page is not a splash page, but rather a "welcoming

10  screen" that effectively disguises the disclaimer in small font at the very top of the

11  screen, so that many users will not see it. Indeed, legal commentators discussing this

12  case have noted this issue. See, Joint Status Report, previously filed. Defendants have

13  decided to replace the DMV.org logo upon which the injunction was issued with a

14  happy-faced, flag-bearing mascot designed to appeal to and entice new and/or younger

15  drivers. Exh. N, ¶ 30 to Hamilton Decl.  It appears that Defendants have taken a page

16  from the cigarette manufacturers' play book—one that is analogous to their "Joe

17  Camel" mascot for Camel cigarettes from late 1987 to 1997.[17]

18      Moreover, Defendants' website, including the splash page, have consistently

19  been moving targets – forcing Plaintiffs to constantly monitor Defendants' compliance

20  with the injunction (and thus, more fees were and will be incurred in the process).

21  Since the injunction issued, Defendants have repeatedly changed the DMV.org logo on

22

_____

23  [17]    The importance of the youth market to cigarette manufacturers (much like to
24  Defendants here) was illustrated in their presentation explaining that the "young
    adult market . . . represent[s] tomorrow's cigarette business. As this 14-24 age group
25  matures, they will account for a key share of the total cigarette volume - for at least
    the next 25 years." Tucker, CA. Presentation to the Board of Directors of RJR
26  Industries (9/30/74). R. J. Reynolds. http://legacy.library.ucsf.edu/tid/pqd49d00.
    (Similarly appealing to Defendants,  the approximately 20,000 provisional
27  licenses issued each month to *new* drivers including those under the age of 18).
    Hamilton Decl.,¶¶ 32-33, see also Ex. P.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the splash screen and the look of the splash screen, including: (i) *delaying* the disclaimer text, (ii) presenting the delayed disclaimer text in *faint grey font* that blends with the toolbar browser, (iii) using font that is *smaller* than the logo, and (iv) making changes to the logo, going from "unofficial guide" to "dmv made simple" and now back again to "unofficial."  See. ¶¶ 26-31, Exh. J-O to Hamilton Decl.

Defendants have also embarked on multiple other schemes designed to confuse more consumers through its purported "disclaimers".  Specifically, screen shots from the DMV.org website, in Table 5, Hamilton Decl., Ex. O, ¶31, detail the following deceptive practice that Plaintiffs are forced to raise:  In using a disclaimer before consumers email the site, Defendants purport to direct the consumer to their local DMV and "*Online Services*" for that local DMV.[18] However, the consumer is <u>actually</u> being directed to DMV.org's <u>own</u> private services.  This practice has resulted in consumer deception, which has caused a number of consumers (and likely hundreds, if not, thousands of others as evidenced by the confused consumers on Facebook) <u>to pay</u> fees to DMV.org (and its affiliates) under the mistaken belief that these were *required fees* by their local DMV office.  [*Id.,* Ex. O].[19]

      F.    <u>*Kerr* Factors Warrant An Upward Adjustment Of The "Presumptively Reasonable" Lodestar Amount</u>

As discussed above, this Court can adjust the lodestar to account for other *Kerr*

---

[18]    After Plaintiffs' complained of this, yet again, Defendants removed this particular "feature" from their site, which supports the notion that their constantly-evolving site is a moving target which Defendants toy with at their every whim in an effort to perpetrate further consumer confusion that they can benefit from, and only remove after Plaintiffs "call them" on the deceptive practice.  As these new deceptive practices occurred post-trial in this case, Plaintiffs reserve all of their rights to bring a newly filed action on all claims and seek all damages and remedies caused by Defendants acts that were not adjudicated in this case at trial.

[19]    It is worth noting that Defendants have proceeded undeterred with all of these deceptive practices despite Plaintiffs taking issue with (and alerting this Court and Defendants themselves) about such practices in the September 6, 2011 Joint Status Report (D.E. # 306).  Defendants truly are willful false advertisers  (as the Ninth Circuit has found) who will stop at nothing, even after trial.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

factors which are not subsumed within it.[20]  At minimum— "time and labor required", "novelty and difficulty of the questions presented", "the customary fee" and the "results obtained"—are factors that militate in favor of an upward adjustment of the lodestar amount.

### 1.   The Time And Labor Required

As noted in Section IV.C., *supra*, Defendants fought Plaintiffs every step of the way.   Throughout the litigation, Defendants refused to acknowledge there was overwhelming evidence of public deception and false advertising.   Plaintiffs were forced to rebut this and other erroneous factual and legal contentions and direct this Court to volumes of relevant evidence.   Indeed, when the Ninth Circuit affirmed this Court's liability finding, it noted that "the district court made _extensive_ findings in support of its conclusion that the DMV.org URL, defendants' search engine marketing strategy and the design of DMV.org were likely to, and did, confuse consumers." Opinion at 9748 (emphasis added).  Of course, these *extensive* findings were based on the _extensive evidence_ produced by Plaintiffs before this Court which Plaintiffs presented on appeal.   As the Ninth Circuit found, Plaintiffs "introduced volumes of evidence" showing that DMV.org "misleads consumers" and that "[t]here was _overwhelming proof_ that defendants knew their statements confused consumers and did little or nothing to remedy it." *Id.* at 9747 and 9755.

Defendants also steadfastly argued throughout the case—incessantly, from

---

[20]   *See, Morales v. City of San Rafael*, 96 F.3d 359, 363-364, ftn.9 (9th Cir. 1996).  The *Kerr* factors of "novelty and difficulty of the questions presented" and the "results obtained" are *not* subsumed in the analysis of the presumptively reasonable lodestar calculation discussed above. However, as noted above, the hours expended were necessary to respond to Defendants' scorched-earth litigation tactics and refusal to capitulate at every turn. This refusal to capitulate is unrelated to complexity of the issues. Moreover, the results obtained included a strong public benefit component, which is separate from the benefit conferred on Plaintiffs as direct competitors of Defendants. Thus, the non-subsumed *Kerr* factors permit Plaintiffs  to recover an enhancement for the novelty, success and unprecedented injunction which conferred a substantial public need.



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   initial pleadings through this appeal-- that Plaintiffs lacked standing and that they were

2   not competitors.  These arguments were all rejected by both this Court on summary

3   judgment (*see* D.E. #106, p. 4) and, ultimately, by the Ninth Circuit when it affirmed

4   standing and found that "Plaintiffs introduced volumes of evidence showing that they

5   compete with Defendants." (Opinion at p. 9747).

6         The above are just some examples of how Defendants vociferously challenged

7   and argued against every issue in this case, forcing Plaintiffs to seek and present

8   volumes of evidence to respond to Defendants' aggressive (albeit unmeritorious)

9   positions.  These factors mandate an upward adjustment of the lodestar figure.

10              *2.      The Novelty And Difficulty Of The Questions*

11        This was a case of first impression involving the DMV.org website, a for-profit

12  website which many erroneously believed was run by their state's Department Of

13  Motor Vehicles.  No other reported false advertising case like it existed.  It culminated

14  in an opinion which the Ninth Circuit certified for publication[21].  This Court considered

15  several novel and difficult issues, ranging from Lanham Act standing (which resulted

16  to the Ninth Circuit clarifying the standard enunciated in *Jack Russell*), willful false

17  advertising injunctive relief (in the Internet context where the Court considered an

18  unprecedented injunction which required the display of a "splash screen"), the unclean

19  hands doctrine (based on highly unusual facts), the denial of attorney fees, and joint

20  liability (in the context of an Internet false advertising case).

21        These were not simple legal issues, as readily acknowledged by the Ninth

22  Circuit.  For example, the standard cited in *Jack Russell*, the Court stated that

23  "Defendants' *confusion is understandable*, however because *Jack Russell* never

24  explained how a plaintiff should go about proving commercial injury, *id*., nor did

25  _____

26  [21]     Certification for publication is only provided for very limited cases, such as
27  when the disposition "establishes, alters, modifies or clarifies a rule of law" or
    "involves a legal or factual issue of unique interest or substantial public
28  importance". *See* Ninth Circuit Rule 36-2.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995), the case *Jack Russell* cited in

support of the commercial injury test." *Opinion* at 9743; (Emphasis added.)  On the

issue of Plaintiffs' entitlement to fees and unclean hands, the Ninth Circuit stated: "*It's

not clear* that the award of attorney's fees is subject to equitable doctrines such as

unclean hands…Nevertheless, we need not reach this issue because we reverse the

unclean hands finding." *Opinion* at 9756; (Emphasis added.)  All of these issues and

others merited significant attention by the attorneys on both sides and by this Court.

Accordingly, this factor militates an upward adjustment of the lodestar figure.

### 3.	The Customary Fee

As discussed in Section IV.A, *supra*, the rates charged by Plaintiffs' counsel in

this case are were below the market rate which include those charged by Defendants'

counsel in this case.

Moreover, cases are legion where Courts have awarded significant fees in

Lanham Act cases such as this.  For example, *in Cyclone USA, Inc. v. LL&C Dealer

Servs.*, LLC, 2010 U.S. Dist. LEXIS 51193, 19-20 (C.D. Cal. May 24, 2010), a Lanham

Act case with state unfair competition claims, the district court awarded over $2 million

in fees. In another Lanham Act case, *Skydive Arizona v. Quattrocchi*, 2011 U.S.Dist.

LEXIS 34806 (March 21, 2011), the district court increased the reasonable hourly rate

by $100 per hour and awarded over $1 million in fees.  In *Love v. The Mail on Sunday*,

2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007), the district court disposed of

Plaintiffs' Lanham Act claims on summary judgment and awarded over $500,000 in

fees, with interest.  Finally, in *Oreck v. Dyson,* 2009 U.S. Dist. LEXIS 35530 (April 7,

2009), the district court awarded the defendants over $246,000 for a single summary

judgment motion which disposed of the plaintiff's false advertising claims.

Accordingly, this factor also favors an upward adjustment of the lodestar.

### 4.	The Results Obtained

The results or "degree of success" obtained is the most important consideration

when the court determines what is a reasonable fee award *and whether to adjust it*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   *upward*. *Hensley, supra,* 461 U.S. at 436; *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th

2   Cir. 1995). "Success is not measured only by the amount of recovery but also in terms

3   of the significance of the legal issue on which the plaintiff prevailed and the <u>public

4   purpose</u> the litigation served." *Morales v. City of San Rafael*, 96 F.3d 359, 365, as

5   amended on denial of rehearing and rehearing en banc, 108 F.3d 981 (9th Cir. 1997)

6   (Emphasis added). "Such a nonmonetary victory may constitute 'excellent results' for

7   the purpose of calculating attorney's fees". *McCown v. City of Fontana,*  565 F.3d

8   1097, 1105 (9th Cir. 2009).

9       Here, the results obtained were in no doubt significant and served a substantial

10  public interest.  Indeed, the public benefit in this case was expressly acknowledged by

11  the Ninth Circuit, strongly justifying an increased award. Other appellate courts have

12  endorsed the use of multipliers to increase the lodestar figure, observing that

13  enhancement with a multiplier "can serve as a means to account for the risk an attorney

14  assumes in undertaking a case, the quality of the attorney's work product, <u>and the public

15  benefit achieved</u>." *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516 (6th

16  Cir. 1993) (Emphasis added). See also, *In re Sulzer Hip Prosthesis & Knee Prosthesis

17  Liab. Litig*., 268 F. Supp. 2d 907 (N.D. Ohio 2003)(multipliers ranged as high as 19.8,

18  with "the effective overall lodestar multiplier [equaling] about 2.4.") *Id.* at 939.  While

19  these cited cases are not Lanham Act cases, one of the main justifications for the

20  enhancement is the <u>benefit</u> obtained for others, and thus these cases are analogous to

21  this case. Without question, Plaintiffs' efforts resulted in a substantial public benefit

22  which ameliorated a serious public harm, and which culminated in a decision which

23  affirmed the finding of *willful* false advertising and the imposition of a permanent

24  injunction.  Every step taken by Plaintiffs was a necessary step to their ultimate victory.

25      Accordingly, Plaintiffs respectfully submit that an enhancement of the fees

26  incurred is appropriate in this case, and that a 2.0 multiplier is reasonable for this

27  purpose given the factors discussed above.

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## V.  **PLAINTIFFS ARE ALSO ENTITLED TO THEIR COSTS**

In addition to fees, Plaintiffs should also be awarded their costs.  A district court may award not only those costs that are automatically taxable under 28 U.S.C. § 1920, but also otherwise non-taxable costs incurred by the prevailing party. *Twentieth Century Fox Film Corp. v. Entertainment Dist.,* 429 F.3d 869, 885 (9th Cir. 2005)("we hold that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920"); *see also Davis v. City and County of San Francisco,* 976 F.2d 1536, 1556 (9th Cir. 1992)(attorneys' fee awards can include reimbursement for out-of-pocket expenses such as travel, messenger, and copying costs), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).

Costs not taxed by the Clerk initially are recoverable as non-taxable costs. *See Agster v. Maricopa County,* 486 F. Supp. 2d 1005, 1021-1022 (D. Ariz. 2007)(Plaintiffs sought $ 11,462.35 of Billed Costs not taxed by the Clerk of the Court; the district court awarded these costs to Plaintiff); *See also Express LLC v. Forever 21*, Case 2:09-CV-04514, Dkt. # 4783 (C.D. Cal., Nov. 15, 2010) (holding that "properly included in an award of attorney's fees are costs and fees for paralegals, out-of-pocket expenses, including travel, telephone, mailing, copying and computerized legal research expenses"); *Ambriz v. Arrow Fin. Serv., LLC,* 2008 WL 2095617 (C.D. Cal., May 15, 2008). *See also Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992) ("we have continued to hold that attorneys' fees awards can include reimbursement for out-of-pocket expenses [not taxed by the Clerk] including the travel, courier and copying costs").

Plaintiffs are also entitled to their expert fees. *See Kourtis v. Cameron,* 358 Fed. Appx. 863, 885 (9th Cir. Cal. 2009)(The Ninth Circuit found it not to be an abuse of discretion to include an additional $37,850.00 to compensate plaintiff's expert witness because non-taxable costs may be included in the calculation of costs); *See also ClearoOne Communs., Inc. v. Chiang,* 2009 U.S. Dist. LEXIS 121061 (D. Utah Dec. 30, 2009)("The court agrees that given the expense of expert witnesses, recovery of

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  their fees would be fair. And such a recovery would remove one more barrier from the

2  path of aggrieved parties who have meritorious claims."); See also *Harris v. Marhoefer*,

3  24 F.3d 16, 20 (9th Cir. 1994)(expert witness fees "are recoverable expenses as part of

4  the reasonable 'attorney's fees' award".)

5      Here, Plaintiffs have identified in the accompanying Joint Statement for Costs,

6  costs that were necessarily incurred in this case which Plaintiffs are entitled to as a

7  matter of law.  As set forth therein, these include copying services, courier costs,

8  transcript costs, expert fees and expenses, other expenses reasonably and necessarily

9  incurred, as well as fees not taxed by the Clerk of Court, totaling to $65,001.44.

10  Hamilton Decl., ¶¶14-15, Exs. F and G.  Accordingly, Plaintiffs seek, as they are

11  entitled to, all of the costs as claimed.

12  **VI.   CONCLUSION**

13      For all the foregoing reasons, Plaintiffs' motion should be granted.

15                                Respectfully submitted,

16  DATED: November 3, 2011        LEWIS BRISBOIS BISGAARD & SMITH LLP

18                        By:  /s/_____
19                             David N. Makous
20                             Daniel C. DeCarlo
                             Mina I. Hamilton

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

28

**Table 1:  List of Issues that Plaintiffs have Prevailed On**

|  | Issues on Appeal | In Favor of Plaintiffs? | In Favor of Defendants? | Citation to Opinion |
|---|---|---|---|---|
| 1. | Article III standing | ✓ | | p. 9742 |
| 2. | Prudential standing under Section 43(a) of the Lanham Act | ✓ | | p. 9747 |
| 3. | Materiality of the false statements | ✓ | | p. 9748 |
| 4. | False advertising by Defendants | ✓ | | p. 9748 |
| 5. | Willfulness of Defendants' deceptive actions | ✓ | | p. 9755 |
| 6. | Imposition of a permanent injunction | ✓ | | p. 9751 |
| 7. | Justifications for the splash page imposed by the district court as the permanent injunction | ✓ | | p. 9749 |
| 8. | Potential modification of the permanent injunction[1] | ✓ | ✓ | p. 9751 |
| 9. | Finding that Defendants' conduct was not exceptional | ✓ | | p. 9757 |
| 10. | Finding that Plaintiffs had unclean hands | ✓ | | p. 9757 |
| 11. | Denial of attorney's fees | ✓ | | p. 9757 |
| 12. | Denial of an award of profits to Plaintiffs | | ✓ | p. 9753 |
| 13. | Defendants' liability as joint tortfeasors | ✓ | | p. 9758 |
| 14. | Whether denial of motion for contempt and sanctions was an abuse of discretion | | ✓ | p. 9758 |

---

[1] The modification issue goes both ways:  As presented in the Joint Report  filed by the parties before this Court on September 6, 2011, Plaintiffs seek a more stringent injunction, based on, *inter alia,* Defendants' continued deceptive marketing practices, deceptive implementation of the current injunction, and importantly, clear evidence of ongoing consumer confusion; on the other hand, Defendants seek the dissolution of the splash page based on its self-serving (and unsupported) claims regarding "changed" marketing practices and that there no longer is any consumer confusion.

## Table 2

## Actual Rates Compared to the "Prevailing Market Rate"

| Attorney | Title | Rates Charged | Prevailing Market Rate |
|---|---|---|---|
| David N. Makous | Partner | $450 | $503 |
| Daniel C. DeCarlo | Partner | $260 - $325 | |
| Mina I. Hamilton | Partner | $225 - $260[2] | |
| Paula C. Greenspan | Partner | $260 | |
| Josephine A. Brosas | Associate | $180 - $235 | $349 |
| Robert M. Collins | Associate | $190 | |
| Daniel R. Lewis | Associate | $110 - $180 | |

---

[2]Mina I. Hamilton became a partner during the course of this litigation and was a partner during the work performed on the appeal; however, as a courtesy to the client, her hourly rate previously applied as an associate was not adjusted. See, Hamilton Decl., ¶ 22.

# Table 3

## Summary of Actual Fees Incurred

| Description of Services Rendered | Billing Attorney | Time Spent | Rate | Total |
|---|---|---|---|---|
| **Pleadings** *(fact investigation; research; motion for leave; oppositions to defendants' motions to dismiss)* | David N. Makous | 22.60 | $450 | $10,170 |
| | Daniel C. DeCarlo | 15.50 | $260 | $4,030 |
| | Mina I. Hamilton | 159.80 | $225 | $35,842.50 |
| | Josephine A. Brosas | 9.0 | $180 | $1,620 |
| | Daniel R. Lewis | 7.20 | $110 | $792 |
| | Antonia Espinoza (Paralegal) | 25.0 | $160 | $4,000 |
| | Francine J. Biscardi (Paralegal/research librarian) | 2.10 | $90-110 | $219 |
| Total: | | **241.20** | | **$56,673.50** |
| **Discovery** *(Written discovery and depositions; expert reports; surveys; motions)* | David N. Makous | 182.00 | $450 | $ 81,900 |
| | Thomas S. Kidde | 1.4 | $450 | $630 |
| | Daniel C. DeCarlo | 149.40 | $260 | 38,844.00 |
| | Mina I. Hamilton | 385.10 | $225-260 | $ 86,772.5 |

| Description of Services Rendered | Billing Attorney | Time Spent | Rate | Total |
|---|---|---|---|---|
| | Paula C. Greenspan | 0.30 | $260 | $78.00 |
| | Josephine A. Brosas | 4.0 | $180 | $720 |
| | Robert M. Collins | 0.2 | $190 | $38 |
| | Daniel R. Lewis | 2.30 | $110 | $253 |
| | Cynthia A. Dixon | 0.50 | $170 | $85.00 |
| | Antonia Espinoza (Paralegal) | 37.20 | $160 | $5,952 |
| | Bhawna Prabhawati (Paralegal) | 6.50 | $110 | $715 |
| | Francine J. Biscardi (Paralegal/research librarian) | 4.60 | $110 | $506.00 |
| Total: | | **773.30** | | **$216,455.50** |
| **Cross-Motions for Summary Judgment** (*Research and preparation of moving and opposing papers*) | David N. Makous | 51.90 | $450 | $ 23,354 |
| | Daniel C. DeCarlo | 92.10 | $260 | $ 23,946 |
| | Mina I. Hamilton | 226.40 | $225-260 | $ 51,087 |
| | Paula C. Greenspan | 20.70 | $260 | $5,382.00 |
| | Isamu H. Lee | 11.30 | $195 | $2,203.50 |

iv

| Description of Services Rendered | Billing Attorney | Time Spent | Rate | Total |
|---|---|---|---|---|
| | Josephine A. Brosas | 20.20 | $180 | $ 3,636.00 |
| | Cynthia A. Dixon | 8.80 | $ 170 | $1,496 |
| | Daniel R. Lewis | 10.70 | $110 | $ 1,177 |
| | Hilary Matthews (Paralegal) | 5.20 | $110 | $572.00 |
| | Bhawna Prabhawati (Paralegal) | 15.40 | $110 | $ 1,694 |
| | Francine J. Biscardi (Paralegal/research librarian) | 0.40 | $110 | $44.00 |
| Total: | | **463.10** | | **$ 114,592.5** |
| **Pre-Trial Submissions** (*Witness and exhibit lists, pre-trial conference order; stipulated facts; jury instructions; special verdict forms; deposition designations; findings of fact*) | David N. Makous | 43.60 | $450 | $ 19,620.00 |
| | Daniel C. DeCarlo | 147 | $260 | $  38,220 |
| | Mina I. Hamilton | 349.60 | $260 | $ 90,896 |
| | Paula C. Greenspan | 19.20 | $260 | $ 4,992 |
| | Antonia Espinoza (Paralegal) | 3.90 | $160 | $ 624 |
| | Loretta D'Errico (Paralegal) | 23.90 | $110 | $ 2,629 |
| | Francine J. Biscardi (Paralegal/research librarian) | 3.70 | $110 | $407 |

| Description of Services Rendered | Billing Attorney | Time Spent | Rate | Total |
|---|---|---|---|---|
| Total: | | **590.9** | | **$ 157,388** |
| **Trial and Post-Judgment** (*Trial attendance; trial briefs to court; post-trial exhibit stipulations; findings of fact and conclusions of law; mandatory settlement conferences; cost bill*) | David N. Makous | 38.4 | $450 | $ 17,280 |
| | Daniel C. DeCarlo | 153.9 | $260-325 | $ 42,906.50 |
| | Mina I. Hamilton | 230.9 | $260 | $ 60,034 |
| | Paula C. Greenspan | 44.30 | $260 | $ 11,518 |
| Total: | | **467.50** | | **$ 131,738.5** |
| **Contempt** (*Fact investigation; research; preparation of motion*) | David N. Makous | 6.60 | $450 | $ 2,970 |
| | Daniel C. DeCarlo | 15.60 | $325 | $ 5,070 |
| | Mina I. Hamilton | 112.40 | $260 | $ 29,224 |
| | Daniel R. Lewis | 9.10 | $180 | $ 1,638 |
| Total: | | **143.70** | | **$ 38,902** |
| **Motion for Attorney's Fees** (*Preparation of motion papers and anticipated reply and hearing*) | David N. Makous | 35.0 | $450 | $15,750 |
| | Mina I. Hamilton | 80.0 | $260 | $20,800 |
| | Daniel C. DeCarlo | 25.0 | $325 | $8,125 |
| | Josephine A. Brosas | 70.0 | $235 | $16,450 |
| Total: | | **210** | | **$61,125** |

| Description of Services Rendered | Billing Attorney | Time Spent | Rate | Total |
|---|---|---|---|---|
| **Joint Status Report** (*Preparation of 9/6/11 Joint Status Report pursuant to Court Order*) | David N. Makous | 15.0 | $450 | $6,750 |
| | Mina I. Hamilton | 55.0 | $260 | $4,875 |
| | Daniel C. DeCarlo | 15.0 | $325 | $14,300 |
| | Josephine A. Brosas | 30.0 | $235 | $7,050 |
| Total: | | **115** | | **$32,975** |
| **TOTAL ACTUAL FEES:** | | **3,004.7 hours** | | **$809,850** |

## Summary of Actual Costs and Expenses Incurred:

| Date | Description | Amount |
|------|-------------|--------|
| 9/10/2008 | DUPLICATION [Bill of Costs - Exhibits] | $10.32 |
| 9/10/2008 | DUPLICATION [Bill of Costs - Exhibits] | $2.64 |
| 9/10/2008 | DUPLICATION [Bill of Costs - Exhibits] | $7.20 |
| 9/15/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 09/11/08 USDC-LOS ANGELES 4184279 | $33.55 |
| 9/24/2008 | DUPLICATION | $0.84 |
| 9/24/2008 | DUPLICATION | $14.64 |
| 9/24/2008 | DUPLICATION | $0.48 |
| 9/24/2008 | LEXIS RESEARCH:   DECARLO, DANIEL | $27.89 |
| 9/29/2008 | DUPLICATION [Opposition to Motion to Stay] | $1.20 |
| 9/29/2008 | DUPLICATION [Opposition to Motion to Stay] | $1.20 |
| 9/29/2008 | DUPLICATION [Opposition to Motion to Stay] | $1.20 |
| 9/30/2008 | DUPLICATION [Opposition to Motion to Stay] | $0.24 |
| 9/30/2008 | DUPLICATION [Opposition to Motion to Stay] | $0.12 |
| 9/30/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 09/23/08 USDC-LOS ANGELES 4192765 | $22.55 |
| 9/30/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 09/24/08 USDC-LOS ANGELES 4194400 | $25.94 |
| 9/30/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 09/25/08 USDC-LOS ANGELES 4195346 | $25.94 |
| 9/30/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 09/26/08 USDC-LOS ANGELES 4196554 | $22.55 |
| 10/1/2008 | LONG DISTANCE TELEPHONE | $0.97 |
| 10/1/2008 | DUPLICATION [Opposition to Motion to Stay] | $0.72 |
| 10/2/2008 | LONG DISTANCE TELEPHONE | $1.30 |
| 10/6/2008 | DUPLICATION [Opposition to Motion to Stay] | $1.08 |
| 10/6/2008 | DUPLICATION [Opposition to Motion to Stay] | $0.24 |
| 10/15/2008 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 10/06/08 USDC-LOS ANGELES 4203041 | $33.55 |

| 1/5/2009 | DUPLICATION [Motion for Contempt] | $9.72 |
| 1/5/2009 | DUPLICATION [Motion for Contempt] | $0.12 |
| 1/5/2009 | DUPLICATION [Motion for Contempt] | $3.48 |
| 1/5/2009 | DUPLICATION [Motion for Contempt] | $0.12 |
| 1/7/2009 | DUPLICATION [Opposition to Ex Parte re Hearing of Contempt] | $0.12 |
| 1/15/2009 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 01/05/09 USDC-LOS ANGELES 4266469 | $47.00 |
| 1/15/2009 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 01/07/09 USDC-LOS ANGELES 4268175 | $31.72 |
| 1/15/2009 | ATTORNEY SERVICE:   OSCAR GARCIA MESSENGER #1 1/6/09 US DISTRICT COURT DELIVER DOCUMENT 135887 | $22.50 |
| 1/22/2009 | LONG DISTANCE TELEPHONE | $4.87 |
| 1/22/2009 | DUPLICATION:   VTOWLES [Opposition to Contempt Motion] | $25.32 |
| 1/31/2009 | FILING SERVICES:   U.S. LEGAL MANAGEMENT SERVICES, INC. 01/27/09 USDC-LOS ANGELES 4283892 | $31.72 |
| 2/18/2009 | LONG DISTANCE TELEPHONE | $0.65 |
| 3/5/2009 | LONG DISTANCE TELEPHONE | $0.97 |
| 3/18/2009 | LONG DISTANCE TELEPHONE | $0.65 |
| 4/13/2009 | DUPLICATION:   SHARON HEFTE DPX | $143.40 |
| 4/14/2009 | DUPLICATION | $4.20 |
| 4/17/2009 | FEDERAL EXPRESS MAIL:   FEDERAL EXPRESS CORPORATION 04/13/09 RECIPIENT: ERIC CREDITOR SENDER: MINA I. HAMILTON 796515046070 | $28.70 |
| 6/19/2009 | LONG DISTANCE TELEPHONE | $1.30 |
| 6/19/2009 | DUPLICATION | $2.40 |
| 6/19/2009 | DUPLICATION | $15.00 |
| 6/25/2009 | DUPLICATION | $3.60 |
| 6/25/2009 | DUPLICATION | $65.76 |
| 6/25/2009 | DUPLICATION | $2.40 |
| 6/26/2009 | DUPLICATION | $22.68 |
| 6/26/2009 | DUPLICATION | $0.48 |
| 6/26/2009 | DUPLICATION | $0.36 |
| 6/26/2009 | DUPLICATION | $0.36 |
| 6/26/2009 | LEXIS RESEARCH | $4.54 |

ix

| | | |
|---|---|---|
| 6/27/2009 | LEXIS RESEARCH | $4.67 |
| 6/28/2009 | LEXIS RESEARCH | $5.96 |
| 6/29/2009 | DUPLICATION | $0.36 |
| 6/29/2009 | DUPLICATION | $0.12 |
| 6/29/2009 | DUPLICATION | $1.92 |
| 6/29/2009 | DUPLICATION | $1.32 |
| | | |
| | | |
| | **SUB-TOTAL:** | $724.85 |
| | | |
| | Deposition Transcripts (less costs awarded on 9/25/08) | $1,845.48 |
| | | |
| | Court Transcript Fee (Discovery Hearing Transcript - Required to Prepare Proposed Court Order) | $443.00 |
| | Court Transcript Fee (Pretrial Hearing Transcript - Required for Post-Trial Briefing) | $114.08 |
| | Trial Transcripts (Required by Court for Post-Trial Findings/Brifings-Bench Trial) | $2,670.28 |
| | | |
| | Fees and Disbursements for Printing (less costs awarded on 9/25/08) | $725.75 |
| | | |
| | <u>Surveys</u> (Local Rule 54-4.13) | |
| | Zoomerang.com (Survey Expenses) | $5,900.00 |
| | Professional Services (Dr. Maronick - Invoice 1) | $18,025.00 |
| | Professional Services (Dr. Maronick - Invoice 2) | $34,553.00 |
| | | |
| | **TOTAL:** | **$65,001.44** |

x

# Table 4

## (Summary of Actual, Lodestar and Enhanced Fees)

|  | Total Fees (Pre-trial to Post-trial, excluding Appeal) |
| --- | --- |
| **Hours Billed** | 3004.7 hours |
| **Actual Fees Charged (Applying Actual Rates)** | $ 809,850 |
| **Lodestar Figure (Applying Prevailing Market Rates)** | $ 1,433,808 |
| **Enhanced Figure (Applying 2.0 Multiplier Based on *Kerr* Factors)** | $ 2,867,616 |

**Table 5**

**Step-by-Step Illustration of Defendants' Continued Deceptive Marketing Practices**

1.    DMV.ORG's "Splash Page"



"Disclaimer" in very faint grey font which appears adjacent to the toolbar *after* a 2-3 second delay



xii

2.      DMV.ORG's "Landing Page" after the "Splash Page" "Continue" button is clicked (TOP-portion of Landing Page)



3.    DMV.ORG's "Landing Page" after the "Splash Page" "Continue" button is clicked (BOTTOM-portion of Landing Page)



"Contact DMV Website Support" Button

4.      After the "Contact DMV Website Support" Button is Clicked:



Purported "link" to "your State DMV Office"

5.      After the "Link" to "Your State DMV Office" is Clicked, the website prompts the consumer to enter his/her DMV Office ZIP code:



6.    After ZIP code is entered, the website "links" to a purported local DMV's "ONLINE SERVICES" with various links including to traffic schools and registration renewals.



Photograph of the local DMV office

"Main Hollywood DMV Office of Los Angeles, California" "Online Services"

7.     After "traffic school" is clicked, the website leads to a DMV.org affiliate traffic school, iDriveSafely.



8.      After the "register now" button is clicked, DMV.org links to its affiliate's website, www.idrivesafely.com:



8.   Going back to #6 above, after the "registration renewal" button is clicked, DMV.org links to its affiliate CARTAGZ's website.



9.      After the "calculate fees" button is clicked, DMV.org links to its affiliate's website, www.cartagz.com:



9.    Consumers, such as Mr. Tom Pniewski, gets confused and thinks that his DMV has now charged him additional fees (but actually, he was paying additional fees to Cartagz, not the DMV).  Mr. Pniewski's comments complaining to DMV.org's Facebook page, copied below:

 **Tom Pniewski** Please explain to me why my car registration arrived in the mail TODAY (July 7th) when my car tags are DUE TOMORROW (July 8th)??? It was POSTMARKED JULY 5TH!! MEANING IT WAS SENT JULY 5TH AND MY TAGS ARE DUE JULY 8TH! WITH A SMOG CHECK REQUIRED!!!!!!!!!!!!! TODAY IS THE 7TH PEOPLE! PLEASE CONTACT ME (somehow) AND EXPLAIN!!!!!!!!! BTW - I live in CA if that makes any difference or is it the problem?
July 7 at 7:33pm

 **Tom Pniewski** One more thing. I'm was trying to pay my tags ONLINE, even though I didn't get anything from the DMV and got DINGED with FEES; - Here take and look:
DMV Fees:$114.00
Cartagz Service Fee:$29.00
Convenience Fee:$2.85
Shipping:$2.00
E-Copy:$5.00
Total Paid:$152.85
July 7 at 7:48pm

 **Tom Pniewski** BTW - this was how I found out that needed a SMOG CHECK!!!! Someone explain away why I need to pay an Email Fee, Convenience Fee and the CarTagz Fee is RIDICULOUS!
July 7 at 7:50pm