ANDREW B. SERWIN CA Bar No. 179493
aserwin@foley.com
KATHRYN M.S. CATHERWOOD CA Bar No. 149170
kcatherwood@foley.com
TAMMY H. BOGGS CA Bar No. 252538
tboggs@foley.com
Foley & Lardner LLP
Attorneys at Law
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:   858.792.6773

Attorneys for Defendants
EDRIVER, INC., ONLINE GURU, INC.,
FIND MY SPECIALIST, INC.,
SERIOUSNET, INC., RAVI K. LAHOTI
and RAJ LAHOTI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., SERIOUSNET, INC., California corporations; RAVI K. LAHOTI and RAJ LAHOTI, individuals,<br><br>Defendants. | Case No:  CV 06-7561 PA (CWx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Date:          December 5, 2011<br>Time:         1:30 p.m.<br>Ctrm:         15<br>Judge:  Honorable Percy Anderson<br><br>Complaint Filed:  November 28, 2006 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL
        BACKGROUND .......................................................................................... 4

        A.     Relevant Pre-Appeal District Court Proceedings................................. 4

        B.     Findings From the Ninth Circuit ........................................................ 6

        C.     Plaintiffs Failed to Address Defendants' Valid Concerns and Filed Its
               Motion Without a Single Compromise or Discount ............................ 8

III.    THE SOUND EXERCISE OF DISCRETION BY THIS COURT
        WARRANTS DENIAL OF PLAINTIFFS' ATTORNEYS' FEES............. 10

IV.     PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF TO
        JUSTIFY AN AWARD OF OVER $2.8 MILLION DOLLARS,
        PARTICULARLY GIVEN THE LACK OF MONETARY DAMAGES... 13

        A.     If the Court is Considering Any Award, It Must First Determine
               Which Attorneys' Fees Relate to the Successful Lanham Act Claims
               and Then, Of Those Fees, A "Reasonable" Amount ......................... 13

        B.     Plaintiffs Fail to Prove Their Requested Fee Award for Prosecuting a
               Lanham Act Claim Is Reasonable In Light of the Success Achieved 16

        C.     Plaintiffs Fail to Prove Their Request is Reasonable Given Many of
               the Time Entries are Excessive, Redundant or Unnecessary ............ 17

        D.     The Court Should Exercise Discretion to Reduce The Lodestar and
               Decline to Award a Fee Multiplier.................................................... 20

        E.     Plaintiffs' Attempted Introduction of Evidence Relating to the Current
               Website is Not Only Irrelevant, But Is Misleading and Inaccurate ... 23

V.      PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF THAT
        THEY ARE ENTITLED TO COSTS ....................................................... 24

VI.     CONCLUSION............................................................................................ 24

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Cairns v. Franklin Mint Co.*,
   292 F.3d 1139 (9th Cir. 2002) ....................................................................2, 11, 20

*Camacho v. Bridgeport Financial, Inc.*,
   523 F.3rd 973 (9th Cir. 2008) ..................................................................................20

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (1987)...............20

*Eiden v. Thrifty Payless, Inc.*,
   407 F. Supp. 2d 1165 (E.D. Cal. 2005)...................................................................18

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
   122 F.3d 1211 (9th Cir. 1997) ..................................................................................12

*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ..................................................................15, 19, 22

*Gracie v. Gracie*,
   217 F.3d 1060 (9th Cir. 2000) ..............................2, 10, 11, 13, 15, 16, 20, 21

*Harris v. Harhoefer*,
   24 F.3d 16 (9th Cir. 1994) .......................................................................................14

*Hensley v. Eckerhart*,
   461 U.S. 424, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983).................................9, 13, 16-17

*Intel Corp. v. Terabyte Int'l*,
   6 F.3d 614 (9th Cir. 1983) .......................................................................................19

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ...............................................................................21, 23

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) .....................................................................................20

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986) ...........................................................................10-11

*Rolex Watch, U.S.A., Inc. v. Michel Co.*,
   179 F.3d 704 (9th Cir. 1999) ...................................................................................21

*Schwarz v. Sec'y of Health & Human Services*,
   73 F.3rd 895 (9th Cir. 1995) ...................................................................................14

*Sealy, Inc. v. Easy Living, Inc.,*
    743 F.2d 1378 (9th Cir. 1984) ...........................................................................11, 17, 19

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003) .......................................................................................17

*The Traditional Cat Association, Inc. v. Laura Gilbreath,*
    340 F.3d 829 (9th Cir. 2003) ................................................................................. 13-14

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) .........................................................................................7

*TrafficSchool.com, Inc. v. Edriver Inc.,*
    653 F.3d 820 (9th Cir. 2011) .......................................................................................12

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

15 U.S.C. § 1117(a) ....................................................................................................5, 11

15 U.S.C. § 1125(a) .........................................................................................................5

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

California Business and Professions Code § 17200 et seq. .......................................5, 15

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
CASE NO. CV 06-7561 PA (CWX)

4823-7209-5502.1

# I.    INTRODUCTION

Plaintiffs[1] filed a Motion that is not really a request for attorneys' fees at all. It is instead a second attempt by Plaintiffs to recover damages they could not prove at trial.  Rather than do what the law requires, including discounting time spent on unsuccessful, non-Lanham Act claims, and reducing time for inefficiencies, overstaffing and client lunches, Plaintiffs start out by asserting that every penny charged to their client (even time not charged to the client) of $809,850, should be considered without reduction.[2]  That is not enough for Plaintiffs because they then inflate their billing rates to $53 more than the fees actually charged by their highest billing partner ($243 more than their lowest billing partner), and increase their "fees" to $1,433,808.  A $600,000 windfall still is not enough for Plaintiffs.  They then double that already inflated number to a final request of $2,867,616, over three times what they actually incurred.  Plaintiffs try to justify this huge bonus by stating that they cannot allocate their fees and that they are entitled to receive a 2.0 multiplier on the already inflated $1,433,808 figure, notwithstanding their minimal success in the case.  While Defendants dispute that Plaintiffs are entitled to recover anything, once an allocation is done, the actual amount Plaintiffs would arguably be entitled to is $213,686.55 in fees and $29.85 in costs.[3]  Plaintiffs' request for a windfall must be denied for several reasons.[4]

First, Plaintiffs fail to meet their burden of establishing that they are even

---

[1] Trafficschool.com and Drivers Ed Direct, LLC ("Plaintiffs").

[2] The Declaration of Mina Hamilton at ¶ 11, states that Plaintiffs provided 191 hours without charge to their client.  However, this is not readily apparent in the application and in fact there are many "no charge" items that were actually included in the fee request.  See Doc. No. 315 at pp. 299 and 349.

[3] See Declaration of Kathryn M.S. Catherwood ("Catherwood Decl.") and Supplemental Joint Statement on Fees ("SJSF") and Supplemental Joint Statement on Costs ("SJSC") filed in support hereof.

[4] Defendants request this Court take judicial notice of all pleadings filed in this case.

1  entitled to fees. "The Lanham Act *permits*, but does not mandate, an award of
2  attorneys' fees…" Gracie v. Gracie, 217 F.3d 1060, 1071 (9th Cir. 2000). The
3  Court must make some effort to first determine if the Plaintiffs should get any fees
4  in light of the lack of any net benefit to the public even if this is an "exceptional"
5  case. Defendants believe the Court got it right the first time in finding that
6  Plaintiffs had selfish motives in filing the suit and thus, are not entitled to any fees,
7  particularly here, where Plaintiffs failed to recover damages. Discretion warrants
8  this same result on remand from the Ninth Circuit.

9       Second, even assuming the Court considers awarding attorneys' fees,
10  Plaintiffs have ignored both their burden as the moving parties, and Ninth Circuit
11  law in presenting their request to this Court. Plaintiffs repeatedly failed to make
12  any good faith effort to allocate as required for an award of attorneys' fees as a
13  prevailing party on a Lanham Act claim, particularly where, as here, Plaintiffs did
14  not prevail on their second cause of action and failed to prove damages on their
15  first cause of action. The failure to allocate is fatal since in a case in which a party
16  prevails on some, but not all of its claims, under the Lanham Act, that party may
17  only recover attorneys' fees incurred in prosecuting the prevailing claims. Cairns
18  v. Franklin Mint Co., 292 F.3d 1139, 1157-58 (9th Cir. 2002). Plaintiffs offer the
19  unsupported argument that allocation of time between the Lanham Act vs. Non-
20  Lanham Act claims is not possible because the claims are so inextricably
21  intertwined. Therefore, argue Plaintiffs, the Court should simply approve every
22  penny of time Plaintiffs' counsel spent in this case without consideration of
23  whether it relates to the limited successful portions of Lanham Act claims, or not.
24  This is improper as a court cannot simply rubber stamp a fee request. Moreover, it
25  is simply incredible for Plaintiffs to claim they could not allocate any time entries
26  as many clearly relate to non-Lanham Act claims, such as "Researched Request
27  for: Mina Hamilton Request: Search for model jury instructions regarding false
28  advertising in any Federal or CA State court under Business & Prof. Code. …"

4823-7209-5502.1

(Joint Statement on Fees, Doc. No. 315, p. 234).[5]  Here, even a lawyer who had not worked on the case before this motion was able to provide a complete analysis of the fee request.[6]  Careful scrutiny of the bills also reveals that Plaintiffs' time descriptions are too vague and contain redactions that can only invite guessing as to whether the fees relate to the Lanham Act claims and the Court should decide in Defendants' favor on this point. Defendants therefore propose a 50% reduction in fees on many of the line items that appear to be both Lanham Act and Non-Lanham Act related, given the two causes of action that Plaintiffs prosecuted and limited success on the Lanham Act claim.  The limited results obtained on the Lanham Act claim and the numerous entries that appear to relate to unsuccessful claims mandate a dramatic reduction in attorneys' fees, rather than a windfall.

Third, if the Court is inclined to make some award, it must, in addition to allocation, assess the request for other evidence of reasonableness.  Defendants' analysis of Plaintiffs' attorneys' fee request confirms that Plaintiffs refused to provide appropriate discounts for excessive and duplicative time expended on matters, as well as assigning tasks to overqualified, high billing partners rather than paralegals or associates, and seek to charge Defendants for time not charged to their clients.  Plaintiffs' failure to carry its burden of policing its billings in its opening brief should prevent any rebuttal of Defendants' analysis.

Fourth, the Court should be troubled by Plaintiffs' tactics of harassment since judgment was entered and not further burden Defendants who have more than paid the price under an Injunction the Ninth Circuit found is a barrier to helpful First Amendment content.  Given their inability to establish they are legally entitled to all their attorneys' fees, Plaintiffs instead seek to distract the Court by

---

[5] See also Doc. No. 315 at pp. 237, 239, 306, all specifically reference work related to the ill-fated second cause of action.  (Catherwood Decl. at ¶ 4.)

[6] Catherwood Decl. and Defendants' SJSF and SJSC filed concurrently herewith.

4823-7209-5502.1

1  devoting a section of their brief, declarations and exhibits[7] to attack Defendants[8]

2  rather than devoting time carrying their burden of proof on their request for

3  attorneys' fees and costs.

4       Plaintiffs' failure to provide any meaningful discount of hours that

5  necessarily were incurred to address non-Lanham Act claims and failed motions or

6  where there were inefficiencies or duplicative work is itself unreasonable.  But,

7  Plaintiffs request goes from unreasonable to outrageous when they then seek to

8  further increase their fees by an hourly rate not even close to the rates charged to

9  their client and some time not charged to their clients at all and then seek an

10  additional two times multiplier to increase the award of attorneys' fees that already

11  are overreaching.  The absence of a single compromise by Plaintiffs who had self

12  serving rather than public service motivations should result in denial of the request

13  in its entirety or at a minimum a substantial reduction as discussed below.

## II.    SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Relevant Pre-Appeal District Court Proceedings

17       On July 17, 2007, Plaintiffs filed their Third Amended Complaint ("TAC"),

18  the operative Complaint in this matter.  (Doc. No. 44.)  The TAC alleges two

---

[7] Plaintiff's declarations and exhibits are the subject of Defendants' evidentiary objections and motion to strike filed concurrently herewith and Defendants also submit the Declaration of Raj Lahoti filed in support hereof ("Lahoti Decl.") to rebut Plaintiffs' unfounded assertions that Defendants are violating the Injunction and invite the Court to review Defendants' response to the Joint Statement related to the Injunction filed on September 6, 2011, Doc. No. 306, 306-7, and 306-8. Plaintiffs cite no authority that any post-judgment Injunction violations are at all relevant to their Motion, but hopefully Mr. Lahoti's comments will be informative for the Court in connection with the reconsideration of the scope of the Injunction.

[8] Having already lost this effort in their contempt motion, Plaintiffs continue to put random, out of context, website shots and references to "Joe Camel" the mascot for Camel cigarettes in their effort to equate a helpful website to a nepharious scheme to entice our nation's youth into taking the wrong traffic course and thus ask this Court to conclude that Defendants are very bad actors.  This is only incorrect, but not relevant to this fee request.  (See Lahoti Decl.)

4823-7209-5502.1

causes of action: (1) Violation of 15 U.S.C. § 1125(a) (the "Lanham Act"), and (2) Violation of California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law"). <u>See also</u> Plaintiffs' [9/21/2007] Memorandum of Contentions of Fact and Law (describing how each element of each claim would be proved and requesting bifurcation on Plaintiffs' State Unfair Competition Claim and the injunctive phase of the case). (Doc No. 120.)

On June 4, 2008, following a three-day bench trial, the Court issued its Findings of Fact and Conclusions of Law. (Doc. No. 210.) The Court made several relevant findings to Plaintiffs' Motion for Attorney's Fees:

- Plaintiffs lacked standing to pursue their Second Cause of Action, which requires Plaintiffs to have "suffered an injury in fact and lost money or property as result of Defendants' actions." (Doc. No. 210 at 9:18-21.) The Court described Plaintiffs' extensive (but unsuccessful) efforts to prove any actual injury or damages as a result of Defendants' conduct. (Doc. No. 210 at 8-9.)

- The Court found that Defendants' deception under the Lanham Act was willful, but also cited evidence showing that Defendants had made changes to the content of dmv.org (the "Website") and their marketing practices after the lawsuit's filing, in an attempt to remedy consumer confusion. (<u>See</u> Doc. No. 210 at 16:2-21.)

- Plaintiffs were not entitled to an award of profits under the Lanham Act because Plaintiffs could not prove any causal connection between any harm suffered and Defendants' actions, nor could they quantify the extent of harm. (Doc No. 210 at 31:9-10.)

- Plaintiffs could not recover attorneys' fees under the Lanham Act, due, in part, to Plaintiffs failure to prove any damages. "Under the Lanham Act, [t]he Court in exceptional cases may award reasonable attorney fees to the prevailing party. 15 U.S.C. section 1117(a). While Plaintiffs have obtained injunctive relief, they have been awarded no damages. Accordingly, and in light of Plaintiffs'

5

unclean hands, the Court does not find that this case is exceptional and declines to award attorneys' fees for the Lanham Act claim." (Doc. No. 210 at 18-21.)

- Finally, the Court made important findings with respect to Plaintiffs' true motives in pursuing the litigation, which was clearly *not* for the public good.

> Plaintiffs compete with Defendants, and therefore have a large stake in this litigation. Moreover, Plaintiffs stand to indirectly gain from a judgment entered against Defendants because fewer consumers might be directed to traffic schools and driver's education courses advertised on DMV.ORG, and more of those consumers might use Plaintiffs' own traffic school and driver's education courses instead. There is evidence that Plaintiffs were motivated by a desire to shut down a competitor. Mr. Kramer stated in an email that "[t]his guy [Raj Lahoti] is a scam artist. . .I'd rather take the time to send letters to the legal departments of all the state's DMVs informing them that he is illegally representing a state agency and causing confusion. . .(sic) Sort of a 'if you can't join 'um, shut 'um down' approach." The Court finds that Plaintiffs were motivated to file this suit by their own interest, and that the financial burden of bringing this suit was not disproportionate to their interest in the matter. (Doc No. 210 at 32:24-33:7.) (internal citations omitted).

On August 26, 2008, the Court issued its Judgment and Permanent Injunction (the "Injunction"). (Doc. No. 215.) The Injunction requires that a splash screen be employed on the Website ("Splash Screen"). On January 5, 2009, Plaintiffs filed a Motion for Contempt against Defendants, contending that Defendants had failed to comply with the Injunction. (Doc. No. 261.) On February 2, 2009, this Court denied Plaintiff's Motion for Contempt, finding that Defendants had "substantially complied with the injunction," and any technical deviations appeared to be based on "a good faith and reasonable interpretation of the [court's order]." (Doc. No. 290.)

## B.  Findings From the Ninth Circuit

Plaintiffs and Defendants both filed appeals. After consolidating the cross-appeals, the Ninth Circuit issued its Opinion on July 28, 2011, affirming in part,

6

reversing in part, and remanding.  Critically, the Ninth Circuit found that (1) Plaintiffs <u>were still not entitled</u> to an award of profits on their false advertising claim under the Lanham Act,[9] and (2) that significant First Amendment concerns were raised by the permanent Injunction, and remanded for reconsideration of the duration of the Splash Screen in light of any intervening changes in the Website's content and marketing practices.[10]  Specifically, the Website contains First Amendment-protected content that was potentially being unnecessarily and permanently burdened by the Splash Screen barrier, which restrained and deterred consumers from accessing the Website and Defendants' ability to engage in free speech.[11]  The Ninth Circuit noted that expert testimony confirmed that a splash screen can eliminate up to 25% of a website's traffic.  (See Opinion at footnote 5, p. 9750.)  This impact alone evidences Defendants have paid the price these last three years for their past conduct and that any public benefit must be balanced against the harm the Injunction caused due to barriers to the First Amendment content.

The Ninth Circuit also reversed the finding that the case was not exceptional, opening the door for this Motion, but fully acknowledged the wide discretion left to the District Court in whether or not to actually award fees.[12]  The District Court is permitted to take into account "plaintiffs' failure to recover damages," but should also consider the extent of public benefit conferred by the Injunction.[13] Finally, the Ninth Circuit found that the District Court did not abuse its discretion in denying Plaintiff's Motion for Contempt.[14]

---

[9] TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 831 (9th Cir. 2011) ("[A]n award of profits with no proof of harm is an uncommon remedy in a false advertising suit . . . The district court didn't err in denying damages.")
[10] Id.
[11] Id.
[12] Id. at 832.
[13] Id.
[14] Id.

4823-7209-5502.1

**C.**   **Plaintiffs Failed to Address Defendants' Valid Concerns and Filed Its Motion Without a Single Compromise or Discount**

On August 24, 2011, this Court issued a Minute Order ("8/11 Order") setting forth detailed instructions on how any Motion for Attorney's Fees would be resolved.  (Doc. No. 302.)  Defendants believe that the 8/11 Order was intended to facilitate an informal resolution of the attorneys' fees dispute.  The 8/11 Order required Plaintiffs to initiate a meet and confer among counsel, and to provide Defendants with detailed billing records in a specific format as well as other evidence by a date certain.  Id.  Specifically, the 8/11 Order required the Plaintiffs to "specify the hours for which compensation will and will not be sought."  (Doc. No. 302 at 1.)

Plaintiffs' counsel sent Defendants an Excel spreadsheet of its attorneys' fees which appeared to include *all* of counsel's time spent from case inception through present, without any attempted allocation of claims/causes of actions/issues related to the successful Lanham Act versus unsuccessful and/or Non Lanham Act claims or without any apparent reductions to account for any inefficiencies, duplication of efforts, unsuccessful efforts or time not actually charged to the client.

Plaintiffs' counsels' Declarations and Exhibits thereto describe a "meet and confer" that occurred between counsel.  While Defendants disagree with the particulars of the Declarations' contents, it is undisputed that Defendants' counsel met and conferred and even followed up with requests for additional information relating to Plaintiffs' claimed fees.[15]  It is unfortunate that Plaintiffs filed their Motion and "Brief Summary of Position" without first providing it to Defendants and without notifying Defendants' counsel that they believed Defendants'

---

[15] See Supplemental Declaration of Andrew Serwin filed in support hereof disputing Plaintiffs' rendition of the meet and confer, as well as Defendants' Comments to Joint Statement and Serwin Decl. in support.  (Doc. No. 317.)

4823-7209-5502.1

1  Comments to the Joint Statement on Fees were "non-compliant" with the 8/11

2  Order. The Excel spreadsheet confirms that even after the meet and confer with

3  Defendants, Plaintiffs did not provide a single compromise on attorneys' fees or

4  costs. The Motion then attacked Defendants' for non-compliance with the 8/11

5  Order and asserted that Defendants have waived any objections because

6  Defendants did not fix Plaintiffs' application for them.

7      This Court's In Chambers Order dated November 7, 2011 (Doc. No. 320)

8  ("11/7 Order") has already confirmed that Defendants have not waived objections

9  and invited Defendants to provide a line by line response to Plaintiffs' Joint

10  Statement on Fees. The 11/7 Order correctly identifies that the parties

11  fundamentally dispute whether Plaintiffs are entitled to some amount of attorneys'

12  fees in the first place, and if so, whether Plaintiffs have properly *allocated* their

13  time entries between claims or, if not possible, whether Plaintiffs have made any

14  effort to provide a discount for non-Lanham Act claims asserted as well as the lack

15  of success on other claims, and some obvious inefficiencies.

16      The highly redacted nature of the time entries placed Defendants in a

17  difficult position of spending time and effort to guess what Plaintiffs' counsel did

18  to possibly warrant an award of fees under the Lanham Act. Nonetheless,

19  Defendants appreciate that this Court is in need of their input and have, despite

20  Plaintiffs' highly redacted time entries and "blacked out" invoices, attempted to

21  ascertain what claim or issue any single time entry purports to relate to and where

22  it cannot answer that question, seeks denial of the fees based upon Plaintiffs'

23  failure to meet their burden of proof in their opening brief. (See Catherwood Decl.

24  and SJSF.)

25      Plaintiffs failure to take their responsibility to critically reviews their fees

26  and costs for reasonableness seriously has turned what should have been a

27  straightforward request for fees into fodder for a mini-trial, contrary to applicable

28  law. See Hensley v. Eckerhart, 461 U.S. 424, 433, 76 L.Ed.2d 40, 103 S.Ct. 1933

1   (1983).  Defendants regret that the 11/7 Order was necessary in the first place.

2   Notwithstanding Plaintiffs' failure to comply with its burden, Defendants were

3   preparing (prior to this Court issuing its 11/7 Order), the line by line analysis

4   ultimately requested by the Court.  (See Catherwood Decl. at ¶ 3.)  Defendants

5   have filed concurrently herewith the Excel spreadsheet of fees as the "SJSF," with

6   letter coding that represents a particular ground for objection all as described in the

7   Catherwood Decl.  Defendants' counsel has utilized their best efforts to decipher

8   time entries that appear to be "Lanham Act-related," and the maximum possible

9   fee award in the event the Court believes its discretion warrants an award of any

10  attorneys' fees in light of the facts.

11         Pursuant to Defendants' best efforts, the total reasonable attorneys' fees and

12  costs that appear to relate directly to prosecuting and obtaining an injunction under

13  the Lanham Act is $213,685.55 in fees and $29.85 in costs.  (See Catherwood

14  Decl. at ¶¶ 8-9, SJSF, and SJSC.)  Defendants object to any award, including on

15  the grounds that Plaintiffs failed to meet their burden as evidenced by Plaintiffs'

16  very own submissions.  Plaintiffs' strategy of imposing the burden on Defendants

17  or this Court to figure out cryptic time descriptions and assess reasonableness

18  should prove fatal for all the reasons discussed below.

19  **III.    THE SOUND EXERCISE OF DISCRETION BY THIS COURT**

20  **         WARRANTS DENIAL OF PLAINTIFFS' ATTORNEYS' FEES**

21         The Ninth Circuit recognizes that the text of section 1117 places a heavy

22  burden of an attorney arguing that the district court abused its discretion in refusing

23  to award attorneys' fees.  Specifically, "[t]he Lanham Act *permits*, but does not

24  mandate, an award of attorneys' fees…"  Gracie v. Gracie, 217 F.3d 1060, 1071

25  (9th Cir. 2000).  As explained in Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d

26  1132, 1134 (9th Cir. 1986): "First, the remedy is available only in 'exceptional

27  cases.'  Second, the statute provides that the court 'may' award fees; it does not

28  require them.  Finally, the Senate Report expressly commends this decision to the

1  discretion of the [trial] court." Id. In an exceptional case pursuant to 15 U.S.C.

2  § 1117(a), attorney's fees are recoverable only for work performed by the

3  prevailing party in connection with litigating *successful* Lanham Act claims.

4  Gracie v. Gracie, 217 F.3d at 1069. In a case in which a party prevails on some but

5  not all of its Lanham Act claims, that party may only recover attorneys' fees

6  incurred in prosecuting prevailing claims. Cairns v. Franklin Mint Co., 292 F.3d at

7  1157-58. Accordingly, where a court decides to award fees, apportionment must

8  occur at two different levels: (1) separation between Lanham Act and non-Lanham

9  Act claims, and (2) separation between unsuccessful Lanham Act claims and

10  successful Lanham Act claims. Gracie v. Gracie, 217 F.3d at 1069, 1071.

11  Impossibility in making an exact apportionment does not relieve the court of its

12  duty to make some attempt to adjust a fee award to reflect an apportionment. Id.

13         Plaintiffs' Motion is the result of its successful arguments to the Ninth

14  Circuit with respect to the legal standard for an award of attorneys' fees and costs.

15  Plaintiffs' Motion, however, overreaches what the Ninth Circuit ruled by arguing

16  that the Ninth Circuit opinion mandated that this Court award all of Plaintiffs' fees

17  without question. This is not what the Ninth Circuit ruled nor is it consistent with

18  Ninth Circuit law. Specifically, the Ninth Circuit has reversed an award of

19  attorneys fees where the district court appeared "to have accepted uncritically

20  plaintiff's representations concerning the time expended on this case," awarding

21  the entire amount requested without question. Although plaintiff's counsel

22  provided extensive records to show how much time had been spent on the case,

23  "there [was] no showing that the time actually spent was reasonably necessary."

24  See Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984). District

25  Courts are given wide latitude to exercise "equitable discretion" in determining a

26  fee award. Some factors that can affect a district court's decision are: (1) the

27  degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective

28  unreasonableness of the losing party's factual and legal arguments and (5) the

11

4823-7209-5502.1

1   need, in particular circumstances, to advance considerations of compensation and

2   deterrence.  <u>Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.</u>,

3   122 F.3d 1211, 1229 (9th Cir. 1997).

4          The Ninth Circuit believes this Court erred in finding that this case is not

5   "exceptional."  However, this was only one of this Court's grounds to deny fees in

6   the first instance.  This Court also found that:  "Plaintiffs were motivated to file

7   this by their own interest, and that the financial burden of bringing this suit was not

8   disproportionate to their interest in the matter."  (<u>See</u> Findings of Facts and

9   Conclusions of Law at 33:57 (Doc. No. 210).)  Moreover, contrary to Plaintiffs'

10   hopes, the Ninth Circuit's finding that the case is "exceptional" does not relieve

11   this Court from carefully scrutinizing Plaintiffs' attorneys' fee request and

12   exercising its equitable discretion to consider countervailing circumstances and

13   ultimately find that equity requires denial of the request in full.

14          This Court's prior findings, which remain the law of this case, warrant this

15   result.  Specifically, Plaintiffs primarily sought to recover damages at trial for their

16   claimed lost profits – a claim that was denied in full due to a lack of proof.

17   Moreover, the Ninth Circuit's Opinion discusses the many beneficial uses of

18   Defendants' Website, including its informational and fully protected First

19   Amendment content;[16] which Plaintiffs' Injunction has served to bar access.[17]

20          Bottom line, this Court got the attorney's fees issue right the first time, albeit

21   for what the Ninth Circuit believed was partially for the wrong reason.  However,

22   the Court's surviving findings that "[t]he financial burden of bringing this suit was

23   not disproportionate to [Plaintiffs'] interest in the matter." (Doc. No. 210 at 33:7)

24   is sufficient grounds to deny the request at this juncture.  Consequently, and in

25   light of all equitable considerations, including that Defendants have paid the price,

26

27   [16] <u>TrafficSchool.com, Inc. v. Edriver Inc.</u>, 653 F.3d 820, 824, 830 (9th Cir. 2011).

28   [17] <u>Id.</u>

4823-7209-5502.1

1  and have more than complied with the Injunction, Plaintiffs' request should be

2  denied in its entirety.  If this Court believes that Plaintiffs should recover some fees

3  and costs, the award should be dramatically reduced as discussed below.

4  **IV.  PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF TO JUSTIFY AN AWARD OF OVER $2.8 MILLION DOLLARS, PARTICULARLY GIVEN THE LACK OF MONETARY DAMAGES**

5

6        The fee applicant bears the burden of documenting the hours expended in

7  litigation and must submit evidence in support of those hours. <u>Hensley v.</u>

8  <u>Eckerhart</u>, 461 U.S. at 433.  As discussed below, Plaintiffs have not met their

9  burden and the Court should award fees and costs of no more than $213,686.55 in

10  fees and $29.85 in costs, as set forth in the Catherwood Decl., SJSF, and SJSC.

11        **A.  <u>If the Court is Considering Any Award, It Must First Determine</u>**

12  **<u>Which Attorneys' Fees Relate to the Successful Lanham Act</u>**

13  **<u>Claims and Then, Of Those Fees, A "Reasonable" Amount</u>**

14        "In an award of 'reasonable attorney fees' pursuant to the Lanham Act, a

15  party cannot recover legal fees incurred in litigating non-Lanham Act claims unless

16  'the Lanham Act claims and non-Lanham Act claims are so intertwined that it is

17  impossible to differentiate between work done on claims.'"  <u>Gracie v. Gracie</u>, 217

18  F.3d at 1069.  In <u>Gracie</u>, the Ninth Circuit held "that the impossibility of making

19  an exact apportionment does not relieve the district court of its duty to make some

20  attempt to adjust the fee award in an effort to reflect an apportionment.  In other

21  words, allocation or an attempt at allocation is required unless the court finds the

22  claims are so inextricably intertwined that even an estimated adjustment would be

23  meaningless." <u>Gracie</u>, 217 F.3d at 1070.

24        Courts have addressed allocation.  <u>See The Traditional Cat Association, Inc.</u>

25  <u>v. Laura Gilbreath</u>, 340 F.3d 829, 833 (9th Cir. 2003) (involving copyright versus

26  non-copyright claims).  In <u>Traditional Cat</u>, the Ninth Circuit noted that the district

27  court had been provided with substantial information by the applicant, and the fact

28  that it was not a simple task to discern precisely what fees were attributable to the

1  copyright claims did not excuse a failure to make such an allocation. Id. at 834. In

2  addition to the evidence submitted by the applicant, the district court had other

3  knowledge at its disposal, particularly its personal knowledge of the case, the

4  substance of the pleadings, order and opinions, the course of the trial and a sense of

5  what the case was "about" and what part the copyright claims played in the overall

6  makeup of the case. Id. It could also supplement the record through live testimony

7  or other documentation. Id. A fee award thus determined and explained would be

8  a proper exercise of discretion. Id.

9      The Ninth Circuit further instructed in Traditional Cat that if elements of

10  claims are not related, then fees could not be recovered for the non-copyright

11  claims, but the district court must attempt to arrive at a fair allocation and then

12  calculate a reasonable attorneys' fee award. There was no precise rule or formula

13  for making these determinations. The district court may attempt to identify

14  specific hours that should be eliminated, or it may simply reduce the award to

15  account for the limited success. Id. A percentage or across-the-board approach to

16  reducing fees has been utilized in cases where smaller fee awards are at stake and

17  the district court provides a reasonable explanation for the cut. See Schwarz v.

18  Sec'y of Health & Human Services, 73 F.3rd 895, 906 (9th Cir. 1995) (upholding

19  across-the board reduction in fees of $300,000); Harris v. Harhoefer, 24 F.3d 16,

20  19 (9th Cir. 1994) (upholding 50% reduction for lack of success).

21      In this case, allocation is possible. The Court held a bench trial comprised

22  of two distinct causes of action, possessing different claim elements and proof. In

23  fact, following appeal, the Ninth Circuit affirmed that Plaintiffs lacked standing to

24  pursue their state unfair competition claim, and thus Counsels' time devoted to

25  pursuing that cause of action must be denied. While some evidentiary overlap may

26  exist, Plaintiffs made *zero* effort to allocate and simply stated in conclusory fashion

27  without any factual support that the claims were "inextricably intertwined." This

28  argument is without merit. As seen in the Catherwood Decl. and the SJSF, there

4823-7209-5502.1

are several entries that specifically reference § 17200, et seq. and thus are clearly not Lanham Act claims.  There is even an entry that simply states "client lunch"— no mention of any legal work.  Defendants have designated on its comments to the SJSF, "NL" for each entry that is not related to the Lanham Act claim and "NP" where it appears from the description that the Plaintiffs were not the prevailing party.  See Catherwood Decl. and SJSF.

Established precedent confirms Plaintiffs failed in their burden of proof and should be denied all fees.  However, if any are awarded, a logical and fair assessment is that at most 50% of Plaintiffs' time was spent on the Lanham Act and 50% on Plaintiffs' state cause of action for unfair competition under Bus. & Prof. Code § 17200.[18]  As noted above, an allocation by percentage is fully supported by the Ninth Circuit, and indeed, may be the most appropriate solution in cases like these.  See Gracie, 217 F.3d at 1070 ("While calculating an 'exact percentage' may be impossible, this does not relieve the district court of its duty to make some attempt to adjust the fee award to reflect, even if imprecisely, work performed on non-Lanham Act claims.")  In Gracie, plaintiff asserted nine state and federal causes of action and defendant counterclaimed with an infringement action.  The Court awarded defendant/counterclaimant $620,000 in fees without any effort to allocate over the 10 causes of action raised between the parties, requiring remand.  Gracie, 217 F.3d at 1063-64, 1070; see also Gates v. Deukmejian, 987 F.2d, 1392, 1399 (9th Cir 1992) ("[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure . . .").

---

[18] Defendants have made an effort, notwithstanding the massive time entry redactions, to confirm that this allocation would be reasonable, as noted on the R (redactions extensive) and NL (Non-Lanham Act) and H (50% reduction given the two causes of action) designations in the SJSF.  Defendants have done this to assist this Court because Plaintiffs failed to do so in their opening brief.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS
CASE NO. CV 06-7561 PA (CWX)

4823-7209-5502.1

1   Here, when compared to the unknown and unquantifiable benefit conferred

2   by their lawsuit, an award of even the claimed "charged" fees of $809,850 is

3   excessive and many entries are so highly redacted no determination of

4   reasonableness can be made, and thus should be denied in full and others reduced

5   by at least 50% base upon the face of the Third Amended Complaint that contained

6   two causes of action and the limited success obtained.  Defendants assert that an

7   even further discount is warranted given that the fee request contains entries for

8   services that are completely non-compensable, were not charged to the client, are

9   excessive, duplicative, or were performed by overqualified, high billing personnel

10  all as set forth in the Supplemental Joint Fee Statement, all as discussed below.

11  **B.**    **Plaintiffs Fail to Prove Their Requested Fee Award for**
12        **Prosecuting a Lanham Act Claim Is Reasonable In Light of the**
        **Success Achieved**
13

14  An overriding principle behind an attorneys' fee award is that it must be

15  "reasonable in relation to the success achieved."  Hensley v. Eckerhart, 461 U.S. at

16  436.  In cases where a prevailing party has not attained complete relief, the United

17  States Supreme Court has stated that the product of hours reasonably expended as a

18  whole times a reasonable hourly rate may be an excessive amount.  The most

19  critical factor in determining reasonable attorneys' fees is the degree of success

20  obtained.  Hensley v. Eckerhart, 461 U.S. at 436.  The district court may attempt to

21  identify specific hours that should be  eliminated or it may simply reduce the

22  award to account for the limited success.  The Court necessarily has discretion in

23  making this equitable judgment.  Id.  In Gracie, supra, the Ninth Circuit was

24  concerned about the district court's fee award on a number of levels, but first, that

25  the fee award eclipsed the damages awarded in the lawsuit.  See Gracie v. Gracie,

26  217 F. 3d at 1069 (the district court had granted the "entire fee award requested. . .

27  awarding him over $620,000 in attorneys' fees.  We note that this award is a

28  substantial one, almost six times the size of the damages awarded. . . .").

4823-7209-5502.1

1    Similarly here, Plaintiffs' $2.8 million attorneys' fee request (resulting from

2  imposing a 2.0 multiplier on their already upward adjusted "lodestar" fee figure[19])

3  bears no relationship to attorneys' fees incurred and is patently unreasonable when

4  Plaintiffs **could not prove** that they had suffered any harm at the hands of

5  Defendants, and the public likely received no net benefit by this litigation and

6  resulting Injunction and in fact the Ninth Circuit found that the public may have

7  been harmed by the suppressed access to positive content.  While Plaintiffs may

8  assert that the Injunction conferred a public benefit, this must be balanced against

9  the harm of the barrier to the First Amendment content.  Courts have widely

10  acknowledged that the "value" of injunctive relief is difficult to quantify.  E.g.,

11  Staton v. Boeing, 327 F.3d 938, 974 (9th Cir. 2003) (finding that if value of

12  injunctive relief cannot be readily ascertained in monetary terms, it should only be

13  a "relevant circumstance" for consideration).  In light of the limited success and

14  lack of damages, the Court should decline to apply a multiplier or an increased

15  hourly rate and reduce the fees as set forth in the SJSF and Catherwood Decl. as

16  justified below.

17    **C.    Plaintiffs Fail to Prove Their Request is Reasonable Given Many**
      **of the Time Entries are Excessive, Redundant or Unnecessary**

18

19    District courts must conduct a thorough review to determine if the time spent

20  was reasonably necessary.  "[C]ounsel for the prevailing party should make a good

21  faith effort to exclude from a fee request hours that are excessive, redundant, or

22  otherwise unnecessary."  Sealy, 732 F.2d at 1385 (citing Hensley v. Eckhart, 461

23  U.S. 424).  Hours that are not properly billed to one's client also are not properly

24  billed to one's adversary pursuant to statutory authority."  Hensley v. Eckhart, 461

25  U.S. at 434.  Entries for clerical work should be stricken, e.g., time spent

26

27  [19] Plaintiffs claim that their actual fees charged were $809,850, but that "lodestar"
      is $1,433,808.  Then they seek a two time multiplier on "lodestar," for a total fee
28  request of nearly $2.9 million dollars.

4823-7209-5502.1

performing clerical tasks such as filing documents, setting up a calendar, updating client phone information should not be billed at counsel rates and are not compensable as fees reasonably incurred in litigation.  See Eiden v. Thrifty Payless, Inc., 407 F. Supp. 2d 1165, 1171 (E.D. Cal. 2005) (salaries and benefits paid to support staff are a part of the usual and ordinary expenses of an attorney in his practice and are properly classified as overhead).

Here, Plaintiffs' counsel has categorically included in their fee request time spent on lost issues and those which were *completely unrelated* to prosecuting and prevailing upon a Lanham Act claim (designated with an NP).  For example, Plaintiffs request fees for (1) 143.70 hours, or nearly $39,000, for their lost Motion for Contempt; (2) estimated 210 hours, or $61,125 (equivalent to one attorney working full-time on nothing else for over a month) for the preparation of Plaintiffs' Motion for Attorney's Fees; and (3) 115 hours, or $32,975, for time spent preparing a Joint Status Report.  (Doc. No. 318-1 at Table 3.)  Consequently, Plaintiffs incurred a minimum of 469 hours, or $133,100, which were excessive, unnecessary, or unrelated to the Lanham Act, and should not be included in any fee award.  (See Catherwood Decl., and SJSF.)

Established precedent requires that this Court must deny many of the entries including for services unrelated to the Lanham Act claims ("NL"), services containing too many redactions ("R"), services with too vague a description ("V"), compensable services lumped together with non-compensable services ("L"), services related to unsuccessful motions ("NP"), excessive time spent by the biller ("E"), work done by partner when the work should be done by a lower billing rate person ("A"), services that are duplicative of other billers on the file ("D").  There are also a number of entries where the hours spent must be reduced by half where it is likely the services related to Non-Lanham Act as well as Lanham Act claims ("H") all as set forth in the SJSF and Catherwood Decl.  There were also time entries that included a "no charge" in the description but were sought in the

18

1   application, these included entries with descriptions such as "meeting with client at

2   lunch (no charge) and "client lunch." (See Catherwood Decl.)

3        In addition to the problems with the time entries noted above, the Court

4   should also deny the request to increase the billing rates and limit Plaintiffs to the

5   rates actually charged by its counsel.  The moving party has the burden to produce

6   evidence that the rates and hours worked are reasonable.  Intel Corp. v. Terabyte

7   Int'l, 6 F.3d 614, 623 (9th Cir. 1983).  The court must provide support for any

8   finding that the rates charged by counsel are reasonable, including by examining

9   the customary fee prevailing in the community.  Sealy, 743 F.2d at 1385 (citing

10  Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975)).

11       Here, Plaintiffs rely on fee surveys from 2010 when their time was incurred

12  in 2006-2008. (See Evidentiary Objections, and Motion to Strike filed

13  concurrently herewith.)  Although, Defendants recognize that in certain instances,

14  charging current rates rather than historic rates may be within a court's discretion,

15  typically that is when the applicant has waited years to be paid.  See Gates v.

16  Deukmajian, 987 F.2d at 1406.  Where an award of current rates will result in a

17  windfall to the prevailing attorneys may be grounds to deny use of current rates.

18  Id. at 1407.  Here, the only admissible and relevant evidence before the Court is

19  what Plaintiffs' counsel actually charged its client and have apparently already

20  been paid.  Additionally, there were many entries by partners for services more

21  appropriately assigned to lower-rate billers (designated "A" in SJSF).  There were

22  also many entries that were duplicative or had 3-4 partners doing the same work

23  (designation "D" in SJSF).

24       In light of the above, the Court, if considering an award at all, must carefully

25  consider Defendants' comments that a dramatic downward adjustment is

26  warranted.  Given the minimal, if any public benefit and the corresponding

27  personal benefits and Plaintiffs' admitted self motivation to put a competitor out of

28  business, the Court should decline to reward Plaintiffs with a windfall.

19

1   ///

2   **D.   The Court Should Exercise Discretion to Reduce The Lodestar**
3        **and Decline to Award a Fee Multiplier**

4   Courts use the lodestar method to establish reasonable attorney's fees when

5   fees are available by statute. <u>See</u> <u>Cairns</u>, 292 F.3d at 1157. The Court must first

6   set a presumptive lodestar figure by multiplying the hours <u>reasonably</u> expended in

7   the litigation by the <u>reasonable</u> hourly rate. <u>Gracie v. Gracie</u>, 217 F.3d at 1070

8   (citing <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614, 622 (9th Cir. 1993)). Those

9   hours may be reduced by the court where documentation is inadequate, if the case

10  was overstaffed and hours are duplicated, or if the hours expended are deemed

11  excessive or otherwise unnecessary. <u>Chalmers v. City of Los Angeles</u>, 796 F.2d

12  1205, 1210 (9th Cir. 1986), *amended on other grounds,* 808 F.2d 1373 (1987).

13  Defendants have done the analysis for the Court as requested in the 11/7

14  Order and have filed herewith the SJSF containing the proposed reduction of hours

15  and corresponding reduction in fees based upon heavy redactions, inefficiency,

16  partner- heavy staffing of assignments, and duplicative efforts, among other

17  unreasonable aspects of Plaintiffs' request. (<u>See</u> Catherwood Decl. and SJSF.)

18  Once the proper number of reasonable hours for reasonable necessary

19  services are determined (and Defendants have identified which entry should be

20  reduced by those time entries that are not reasonable on the SJSF), the reasonable

21  time is multiplied by a reasonable hourly rate (which, as noted above, should be no

22  more that the actual rates charged to the client). The product of these is the total

23  allowable lodestar fee, subject to further adjustment in the Court's discretion.

24  In most cases, the lodestar figure is presumptively a reasonable fee award,

25  but the district court may, if circumstances warrant, adjust the lodestar to account

26  for other factors which are not subsumed within it. <u>Morales v. City of San Rafael</u>,

27  96 F.3d 359, 364 (9th Cir. 1996), <u>Camacho v. Bridgeport Financial, Inc.</u>, 523 F.3rd

28  973, 978 (9th Cir. 2008). The district court may make upward or downward

CASE NO. CV 06-7561 PA (CWX)

1   adjustments to the presumptively reasonable lodestar based on the facts set out in
2   Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), Gracie v.
3   Gracie, 217 F.3d at 1070; Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704,
4   711 (9th Cir. 1999) (discussing that fee awards under the Lanham Act are "never
5   automatic and may be limited by equitable considerations").  These factors are as
6   follows:  (1) the time and labor required, (2) the novelty and difficulty of the
7   questions involved, (3) the skill requisite to perform the legal service properly,
8   (4) the preclusion of other employment by the attorney due to acceptance of the
9   case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
10  limitations imposed by the client or the circumstances, (8) the amount involved and
11  the results obtained, (9) the experience, reputation, and ability of the attorneys,
12  (10) the "undesirability" of the case, (11) the nature and length of the professional
13  relationship with the client, and (12) awards in similar cases.  See Kerr, supra.

14       The Court should further reduce the award as set forth in the Catherwood
15  Decl. and SJSF.  This is justified given the applicable factors for any adjustment
16  weigh in favor of reducing any award as discussed below.

17       The first factor (time and labor required) was at best, average, or wasted on
18  motions designed to provide Plaintiffs with a competitive advantage and/or that
19  were unsuccessful.  (NL, E, NP, D designation on SJSF)  Time spent on presenting
20  damages case should be entirely excluded as Plaintiffs did not prevail.  (NL
21  designation on SJSF)  This factor weighs in favor of reducing fees.

22       The second factor (novelty and difficulty) also weighs in favor of reducing
23  the fees.  This was a relatively straight forward case and Plaintiffs' excessive and
24  top-heavy staffing (A and E designation on SJSF) was simply not warranted.

25       The third factor (skill) weighs in Defendants favor as well given that much
26  of the work done by partners should have been done by associates or secretaries
27  (designation A in the SJSF).

28       The fourth factor (whether Plaintiffs' Counsel were precluded from other

4823-7209-5502.1

1   employment) there is no evidence on this point and given the excessive staffing

2   this factor does not warrant any upward adjustment.

3   The fifth factor (customary fee) weighs in favor of allowing the rates

4   actually billed to Plaintiffs. It appears that counsel was timely paid on a monthly

5   basis. Plaintiffs have not provided any evidence of their "customary" fee and rely

6   on a billing survey from 2010 (which Defendants move to strike) several years

7   after the fees in this case were billed.

8   The sixth factor (fixed or contingent fee) weights in favor of Defendants—

9   Plaintiffs admit they were billing monthly and being paid. <u>See</u> Declaration of

10  Mina Hamilton at ¶ 11. Moreover, enhancement for a contingency is not allowed.

11  <u>Gates v. Deukmejian</u>, 987 F.2d at 1403.

12  The seventh factor (exigent time constraints) does not appear applicable.

13  The eighth factor (amount involved and results obtained) weights in favor of

14  a decrease. Plaintiffs obtained no certain or proven public benefit. There is also

15  evidence of Defendants' compliance with the Injunction as determined when this

16  Court denied Plaintiffs' post-judgment Motion for Contempt, and Plaintiffs' self

17  serving presentation to the Court (p. 18-19 of its Motion and the Hamilton

18  Declaration and exhibits) to equate Defendants site to that of sellers of cigarettes is

19  simply not relevant to this Motion.[20] As the Ninth Circuit has already found,

20  Defendants' Website and marketing practices had already changed and public has

21  now been restricted for three years from accessing First Amendment protected

22  content (which may actually have harmed the public). Additionally, Plaintiffs

23  suffered no monetary damages and likely have benefitted from the Injunction.

24  The ninth factor (experience, reputation and ability of counsel) weighs in

25  favor of reduction given that it appears the case was over staffed with partners as

26  noted above.

27  

28  [20] <u>See</u> Declaration of Raj Lahoti filed in support hereof.

4823-7209-5502.1

1    The tenth factor is at best neutral as there is no undesirability or payment

2    risk claimed by Plaintiffs.

3    The eleventh factor (relationship with client) also weighs in Defendants'

4    favor Ms. Hamilton testified Plaintiffs were long-term clients.

5    Finally, as noted above, Plaintiffs' mudslinging that Defendants used

6    scorched earth tactics and have been bad actors since the judgment is not true and

7    not relevant.  This was an ordinary false advertising case.  Plaintiffs' discovery

8    tactics were designed to seek confidential/trade secret information, which

9    Defendants reasonably defended against this admitted direct competitor.

10   Defendants also had to protect their advertisers (other traffic school vendors) from

11   proprietary information being turned over to Plaintiffs under the guise of protecting

12   the public, but really motivated to get information to allow then to better compete

13   as evidenced by the "if you can't join 'um, shut 'um down' approach."  Moreover,

14   Defendants' conduct since the litigation is not relevant to the pending Motion.  The

15   comparison of Defendants' marketing to "Joe Camel" is not only ludicrous, but

16   irrelevant and false.  (See Lahoti Decl.)  Plaintiffs must realize their fee request is

17   overreaching and therefore attempt to re-litigate the case with post-litigation

18   allegations of the improper conduct that has no place in this Motion and was

19   already found to be untrue by this Court in denying Plaintiffs' post-judgment

20   contempt motion.

21   Based upon the *Kerr* factors, reducing the fees to $0 would not be an abuse

22   of discretion.  However, should the Court contemplate awarding any amount of

23   attorney's fees to Plaintiffs, those fees should reflect an appropriate allocation and

24   be reduced to exclude time spent on unnecessary or fee-related litigation all as

25   described in the Supplemental Joint Fee Statement and Catherwood Decl.

26   **E.   Plaintiffs' Attempted Introduction of Evidence Relating to the
       Current Website is Not Only Irrelevant, But Is Misleading and**

27   **Inaccurate**

28

4823-7209-5502.1

As discussed above, Defendants' *current* Website and activities are wholly irrelevant to Plaintiffs' Motion, and the purported introduction of such evidence as part of their attorney's fee application stems from improper motives since there is no other legitimate reason for Plaintiffs to do so.  However, Defendants are now forced to address the outright inaccurate and misleading representations of the Website's content and have done so through the Lahoti Decl.  Defendants believe this issue relates to the Injunction, but to the extent the Court believes it is at all relevant, Defendants request the opportunity to provide the Court any and all information the Court believes would be helpful.

## V.   PLAINTIFFS FAIL TO MEET THEIR BURDEN OF PROOF THAT THEY ARE ENTITLED TO COSTS

Plaintiffs have submitted a request for $65,001.44 in costs, most of which appear to be unrelated to Lanham Act claims, or related to the ill-fated contempt motion.  Therefore these costs cannot be awarded because Plaintiffs did not prevail.  Additionally, Plaintiffs submitted their cost bill after judgment and Defendants have paid that award.  Plaintiffs' request to reimburse for fees for expert witnesses must also be denied as Plaintiffs failed to include sufficient explanation as to the reasonableness of the hours spent, which appear excess we and much of which appear to relate to travel time, which at a minimum should be billed at a lower rate or not charged at all.  <u>See</u> Catherwood Dec. and SJSC.

## VI.   CONCLUSION

Plaintiffs have turned a simple fee application into an attempt to relitigate their case.  The declaration of Ms. Hamilton in which she goes into great detail about the amount of time she spends on her iPad logging on to Defendants' website evidences that this has become personal to Plaintiffs' counsel to the extreme and the harassment of Defendants has been relentless.  Plaintiffs are not interested in anything but shutting down Defendants' business and this is not the relief they obtained in this case.  This harassment will not stop until Plaintiffs are

24

1  sent a strong message by this Court, a message that will impact their pocket book

2  in the form of denying attorneys' fees and costs.  Defendants have been educated

3  by this Court and have rectified the Court's concerns.  The Ninth Circuit has

4  recognized that Defendants provide positive services to the public which have been

5  blocked by the overly intrusive Splash Screen.  In contrast, Plaintiffs have

6  benefitted by the Injunction and have failed to carry their burden of providing this

7  Court with a reasonable and thoughtful fee statement.  Plaintiffs' heavy handed

8  approach to the case warrants complete denial of their fees and costs, or at most an

9  award of no more than $213,686.55 in fees and $29.85 in costs for all of the

10  reasons set forth above.  Defendants also request such further and other relief as is

11  just and proper.

12  Dated:  November 14, 2011                **FOLEY & LARDNER LLP**

13

14

15  By: /s/ Kathryn M.S. Catherwood
    KATHRYN M.S. CATHERWOOD
16  Attorneys for Defendants
    Edriver, Inc., Online Guru, Inc., Find
17  My Specialist, Inc., Seriousnet, Inc.,
    Ravi K. Lahoti And Raj Lahoti

18

19

20

21

22

23

24

25

26

27

28

4823-7209-5502.1