**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DAVID N. MAKOUS, SB# 082409
  E-Mail: makous@lbbslaw.com
DANIEL C. DECARLO, SB# 160307
  E-Mail: decarlo@lbbslaw.com
MINA I. HAMILTON, SB# 213917
  E-Mail: hamilton@lbbslaw.com
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: 213.250.1800
Facsimile: 213.250.7900

*Attorneys for Plaintiffs*
TRAFFICSCHOOL.COM, INC. and
DRIVERS ED DIRECT, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAFFICSCHOOL.COM, INC., a California corporation; DRIVERS ED DIRECT, LLC, a California limited liability company,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>EDRIVER, INC., ONLINE GURU, INC., FIND MY SPECIALIST, INC., and SERIOUSNET, INC., California corporations; RAVI K. LAHOTI, RAJ LAHOTI, individuals,<br><br>　　　　　　Defendants. | CASE NO. CV 06-7561 PA (CWx)<br><br>*The Honorable Percy Anderson*<br><br>PLAINTIFFS' <u>REPLY</u> IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Date: December 5, 2011<br>Time: 1:30 p.m.<br>Courtroom No. 15<br><br>*[Filed concurrently with Plaintiffs' Response to Defendants' "Shorthand" Designations"; Supplemental Declarations of Mina I. Hamilton and Josephine Brosas in support of Motion; Supplemental Joint Statements on Attorney's Fees and Costs; Evidentiary Replies and Objections, Etc.]* |

4818-6269-6206.1                                           1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. THE "REDUCTION" ARGUMENTS ARE ERRONEOUS .......................... 2

    A. The Hours Claimed Are Supported By Adequate Documentation ......... 2

    B. The Fee Request *Only* Includes Hours *Reasonably* Billed .................... 2

    C. Defendants Have Not Met Their Burden Of Rebuttal ........................... 3

        1. Defendants Fail To Submit Any Evidence of Their Own Fees ................................................................................................. 3

        2. The Specific Objections to Time Entries Are Without Merit ................................................................................................ 4

        3. Defendants Ignore Analogous Cases Cited By Plaintiffs ............. 5

III. THE "ALLOCATION" ARGUMENTS ARE ERRONEOUS ........................ 5

    A. *Hensley* Disposes of Defendants' Allocation Arguments ..................... 5

        1. There Were Only Two Related Claims In This Case .................. 6

        2. The Hours Expended Resulted In Substantial Relief ................... 7

        3. No "Mathematical" Allocation or Reduction Is Allowed ............ 8

IV. THE "REASONABLE RATE" ARGUMENTS ARE ERRONEOUS ............ 9

    A. Plaintiffs Have Established the Appropriate Reasonable Rates ............. 9

    B. Defendants Have Not Met Their Burden Of Rebuttal ......................... 10

V. DEFENDANTS' "BACKGROUND" "SUMMARY" IS ERRONEOUS ..... 11

VI. CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

Page

## Federal Cases

*286 Dunkin' Donuts v. Mercantile Ventures*, 32 U.S.P.Q.2d 1460 ............................. 3

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 U.S.Dist. LEXIS 4005 .... 5

*Cabrales v. County of Los Angeles*, 935 F.2d 1051 ....................................................... 8

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139 ................................................................. 6

*Clairol, Inc. v. Save-Way Industrial*, 211 U.S.P.Q. 223 ............................................. 11

*Corder v. Brown*, 25 F.3d 833 ..................................................................................... 10

*Democratic Party of Washington State v. Reed*, 388 F.3d 1281 ................................. 4

*Eirhart v. Libbey-Ownes-For Co.*, 996 F.2d 846 .......................................................... 8

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115 (9th Cir. 2000).] ........................................... 5

*Gates v. Deukmejian*, 987 F.2d 1392 ....................................................................... 3, 8

*Gates v. Rowland*, 39 F.3d 1439 .................................................................................. 8

*General Signal Corp. v. Donallco*, 787 F.2d 1376 ...................................................... 9

*Gracie v. Gracie*, 217 F.3d 1060 .................................................................................. 6

*Hensley v. Eckerhart*, 461 U.S. 424 ................................................................. 1, 3, 5, 8

*International Order of Job's Daughters v. Lindeburg*, 633 F.2d 912 ........................ 7

*McCown v. City of Fontana*, 565 F.3d 1097 ................................................................. 7

*McDonald v. Armontrout*, 860 F.2d 1456 .................................................................... 8

*McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805 ....................................... 11

*McGrath v. County of Nevada*, 67 F.3d 248 ................................................................. 3

*Mendez v. County of San Bernardino*, 540 F.3d 1109 ................................................. 4

*Morales v. City of San Rafael*, 96 F.3d 359 ................................................................. 7

*Pom Wonderful, LLC v. Purely Juice, Inc.*, 2008 U.S.Dist. LEXIS 110460 .............. 7

*Prison Legal News v. Schwarzenegger*, 561 F.Supp.2d 1095 ..................................... 4

*Sorenson v. Mink*, 239 F.3d 1140 ................................................................................ 3

*Traditional Cat Association v. Gilbreath*, 340 F.3d 829 ............................................ 6

*Trustees of Construction Industrial and Laborers Health and Welfare Trust v. Redland*, 460 F.3d 1253 .................................................................................... 4

*Turner v. Orr*, 785 F.2d 1498 ................................................................................ 9

*United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403 ............. 10, 11

*United Steelworkers of America v. Retirement Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555 ..................................................... 2, 9

*In re Washington Public Power Supply System Sec. Litigation*, 19 F.3d 1291 ......... 10

### State Statutes

Cal. Bus. & Prof. Code § 17200 ........................................................................ 1, 6

## I. INTRODUCTION

This Court has the task of articulating what fee is "reasonable" to award Plaintiffs in this exceptional case.[1] How much should be awarded, and why? These are the questions that must be answered, yet Defendants offer *nothing* that this Court should rely on in making its determination. Consider some of the core arguments:

- "Reduction" Arguments : Contrary to Defendants' erroneous factual claim, Plaintiffs *have excluded* from their fee request hours that are "excessive, redundant, or otherwise unnecessary" *and* time not billed (e.g., client lunches). The $1,433,808 presumptively reasonable figure *already* reflects this reduction. Ex. A.[2] Also, Defendants' proposed 50% reductions are arbitrary and legally untenable. Exhs. A - L. Defendants fail to properly rebut the fee and cost request.

- "Allocation" Arguments: Contrary to Defendants' erroneous legal claim, the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) held that it is error to apply *any* reduction in fees based on an allocation of the related Lanham Act and Cal. Bus. & Prof. Code § 17200 claims, or because of "lost issues," in light of the excellent results obtained by Plaintiffs. Exhs. F - L.

- "Reasonable Rate" Arguments : Plaintiffs' proposed "reasonable rates" are the 2008 market rates, *not* the rates based on "fee surveys from 2010" as Defendants contend. Also, Defendants concede that market rates are the standard, but then improperly use actual rates in their fee proposal. Defendants also fail to submit any rebuttal evidence of prevailing market rates (as the Ninth Circuit requires).

In sum, Defendants seek to misguide this Court in fact and in law on multiple levels. Plaintiffs, on the other hand, invite the Court to scrutinize their well-documented fee request as presented in Plaintiffs' Motion and Reply papers.

---

[1] The argument that Plaintiffs are not entitled to $0 fees is disposed of in Plaintiffs' moving memorandum ("Mtn.") and not repeated herein except to note that Defendants' position contravenes the Ninth Circuit's instruction to consider "Defendants' bad acts" and the "substantial benefits" conferred by the injunction [Opinion at 9754-9757], and ignores that Plaintiffs are the "prevailing parties." Mtn. at 6-7; *Hensley v. Eckerhart*, 461 U.S. 424 (1983)("*Hensley*"). Under *Hensley*, Plaintiffs have already crossed the "statutory threshold" and all that "remains for the district court to determine is what fee is 'reasonable.'" *Id*. at 431.

[2] Unless otherwise noted, the exhibits referenced in this Reply are attached to Plaintiffs' Response To Defendants' "Shorthand" Designations in Supplemental Joint Statements.

4818-6269-6206.1                          1

## II. THE "REDUCTION" ARGUMENTS ARE ERRONEOUS

### A. The Hours Claimed Are Supported By Adequate Documentation

There is no dispute that Plaintiffs' fee and cost request is supported by adequate *documentation*, which includes invoices, excel spreadsheets of over 3,000 detailed time and cost entries, among other evidence [Mtn. at 3 and ftn. 5; Hamilton Dec. and exhibits]. Plaintiffs' Motion with detailed explanations, and the evidence and filings in this case, overwhelmingly support the 2,679.7 hours requested as necessarily incurred in this litigation. [Mtn. at 11-16.] See, *United Steelworkers of America v. Retirement Income Plan For Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)(counsel "need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed'").[3] Finally, the costs requested are fully recoverable, have not been taxed by the clerk, and thus have not been paid. [Mtn. at 24.]

### B. The Fee Request *Only* Includes Hours *Reasonably* Billed

Plaintiffs' counsel in good-faith excluded from the fee request all hours that were not "reasonably" expended, designating them as "W-Written Off" entries.[4] This disposes of Defendants' claim that Plaintiffs seek "every penny of time", "even time not charged to the client." Plaintiffs *have already excluded* <u>191</u> hours that were "excessive, redundant, or otherwise unnecessary" *and* not billed to the client (including

---

[3] Even Plaintiffs' redacted entries are sufficient to meet this standard. [Mtn. at ftn. 4.] Should this Court wish to review the *unredacted* invoices or time entries, Plaintiffs will provide them to the Court.

[4] While Plaintiffs included in the Joint Statement the number of hours actually expended for each "W" entry, they did so only to disclose to the Court the precise time being reduced, i.e., not charged to the client and not included in the total amount requested. Had Defendants' counsel ever raised the issue in the Court mandated meet and confer, then any confusion could have been remedied. However, Defendants' counsel instead took the position that Plaintiffs are not the prevailing party and thus not entitled to *any* fees. Even after the Court gave Defendants another chance to supplement their "0" across-the-board entries on 11/11, Defendants' counsel not *once* asked Plaintiffs' for clarification. Regardless, Defendants' Opposition inaccurately contends that the "W" entries are included in the fee request – <u>they are not</u>, as the Plaintiffs' submissions and mathematical calculations show. See, Ex. A.

client lunches). The $1,433,808 lodestar amount reflects this "billing judgment" reduction and compromise, as required by *Hensley*, *supra* at 433-444. See, Ex. A.

In fact, the entries identified and then *included* in the fee request (only those designed as "B=Billed") represent crucial tasks that arose in this complex Lanham Act case, which was not "straight forward" as Defendants' counsel (who specializes in *bankruptcy* and had no prior involvement in this litigation) now claims. [Catherwood ("CW") Dec. at 21:23.][5] See, e.g., *286 Dunkin' Donuts v. Mercantile Ventures*, 32 U.S.P.Q.2d 1460, 1464 (W.D. Tex. 1994)(Lanham Act cases "often warrant higher than average fees"). Indeed, someone that specializes in Lanham Act claims would have known that it would be improper for this Court to apply the *Fogerty* "factors" to this fee motion, as those are pertinent in copyright cases only. [See Opp. at 11:25-12:3.] In short, Plaintiffs' properly seek fees in this contentious *Lanham Act* case.

### C. Defendants Have Not Met Their Burden Of Rebuttal

Once a fee applicant submits evidence of the appropriate hours expended, "the party opposing the fee application has a burden of rebuttal that requires submission of <u>evidence</u> to the district court challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-1398 (9th Cir.1992). Significantly, an opposing party "may not rely on conclusory challenges to plaintiffs' evidence" of the reasonableness of the hours. *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995). This is important as the district court must explain any reductions in billed hours and rates. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). Defendants have not met their burden of rebuttal, as follows.

#### 1. *Defendants Fail To Submit Any Evidence of Their Own Fees*

Defendants submit absolutely no evidence in rebuttal regarding *their* expended

---

[5] The claims –with no record citations – that "[Plaintiffs'] discovery tactics were designed to seek confidential/trade secret information" and "Defendants also had to protect their advertisers (other traffic school vendors) from proprietary information being turned over to Plaintiffs"— are *all* factually inaccurate and underscore Ms. Catherwood's misapprehension of the issues and lack of knowledge of the underlying case.

4818-6269-6206.1     3

1  hours or fees. If Plaintiffs' hours were truly unreasonable, then Defendants' hours
2  would likely pale in comparison. See, e.g., *Democratic Party of Washington State v.*
3  *Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004)(a comparison of the parties' respective fees
4  is a "useful guide" in evaluating the appropriateness of hours claimed).

Defendants are also silent as to Defendants' attorney staffing, but make the unsupported claim that Plaintiffs' fees reflect improper staffing or duplicative work. There is nothing improper about attorneys collaborating and reviewing and revising each other's work, and participation of more than one attorney does not necessarily amount to unnecessary duplication of effort. *Id.* at 1286 (declining to reduce fee award based on alleged overstaffing where opposing party also used multiple lawyers); *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008)("Even duplicative work . . . is not [necessarily] a justification for cutting a fee"); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101 n.2 (N.D. Cal. 2008) (declining to reduce the hours because defendants provided no basis for a finding that a particular staffing decision was unreasonable); *Trustees of Constr. Indus. and Laborers Health and Welfare Trust v. Redland*, 460 F.3d 1253, 1257 (9th Cir. 2006)("the fee must take into account the work not only of attorneys, but also of secretaries, messengers, librarians, janitors, and others whose labor contributes to work product for which an attorney bills her client.").

In sum, Defendants' silence as to their own expended hours, fees, or staffing decisions in this case speaks volumes.

### 2.  The Specific Objections to Time Entries Are Without Merit

Defendants rely solely on the conclusory *arguments* – not evidence – set forth in the CW Dec.[6] and the "codes" in the Joint Statements. However, upon scrutiny, the "objections" asserted are arbitrary, redundant, frivolous, and have been interposed with

---

[6]  Defendants' brand new counsel (for the fee motion alone) is a self-appointed "expert witness" specializing in *bankruptcy* law, See, Plaintiffs' Evidentiary Objections and Motion to Strike Declaration of Kathryn Catherwood.

4818-6269-6206.1                               4

no meaningful relationship to the time entry descriptions. They are a pre-textual attempt by a lawyer "who had [admittedly] not worked on the case before" (Opp. at 3). to create issues of reasonableness where none exist. See, Exhs. A - L. Accordingly, this Court should disregard all of Defendants' objections.

### 3. *Defendants Ignore Analogous Cases Cited By Plaintiffs*

Tellingly, Defendants ignore the highly-analogous cases cited by Plaintiffs, including *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, 2009 U.S. Dist. LEXIS 4005, 11-14 (S.D. Cal. Jan. 20, 2009) in which the court awarded the full fee requested of $1,235,404, for 3,366 hours of work performed in a Lanham Act case spanning just over two years. There, the court rejected the defendants' arguments, stating:

> Coldwater objects to the hours requested by Brighton based on failure to apportion between claims, block billing, overstaffing, overlitigating, billing judgment, and clerical tasks. [citation] As part of its opposition, Coldwater has submitted two charts listing Brighton's billing entries to which Coldwater takes exception, with no other evidence challenging the accuracy or the reasonableness. [citation] After a review of the parties' submissions, the Court concludes that Brighton's requested hours are reasonable, as this litigation spans more than two years, includes a jury trial, and Brighton obtained excellent results. [citing to *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).]

Here, the 2,679.7 hours requested are eminently reasonable, particularly as Defendants failed to submit any true rebuttal evidence, and when taking into account that Plaintiffs won and Defendants lost.

### III. THE "ALLOCATION" ARGUMENTS ARE ERRONEOUS

#### A. *Hensley* Disposes of Defendants' Allocation Arguments

The Supreme Court's decision in *Hensley*, *supra*, disposes of Defendants' "non-Lanham Act related" and "lost issues" allocation arguments. *Hensley* establishes that: (1) where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have the fee award reduced simply because the plaintiff lost some issues; (2) any mathematical reduction based on issues prevailed upon should be rejected; (3) obtaining injunctive relief alone (with no monetary recovery) is enough to support a fee award for all hours reasonably expended to obtain that relief. The Court's holding is

4818-6269-6206.1                                    5

worth quoting and emphasizing:

> In other cases the plaintiff's claims for relief will involve a ***common core of facts or will be based on related legal theories***. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should ***focus on the significance of the overall relief obtained by the plaintiff*** in relation to the hours reasonably expended on the litigation.
>
> Where a plaintiff has obtained ***excellent results***, his attorney should recover a ***fully compensatory fee***. Normally this will encompass all hours reasonably expended ***on the litigation***, and indeed in some cases of ***exceptional success an enhanced award*** may be justified. In these circumstances the fee award should ***not*** be reduced simply because the plaintiff failed to prevail ***on every contention raised in the lawsuit***. [citation] Litigants in good faith may raise alternative legal grounds for a desired outcome, and the ***court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.*** The result is what matters. n11
>
> &ast;&ast;&ast;
>
> n11  We agree with the District Court's ***rejection of "a mathematical approach*** comparing the total number of issues in the case with those actually prevailed upon." …Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors. ***Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.*** [*Id.*]

### 1.    There Were Only Two Related Claims In This Case

Here, Plaintiffs only had *one* Lanham Act claim, and prevailed on it. The only additional claim was under California Business & Professions Code § 17200 ("17200 Claim"). Defendants' cited cases are therefore inapposite.[7]

There is no serious dispute that the Lanham Act claim and the 17200 Claim

---

[7]    In *Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002), there were three separate Lanham Act claims. In *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir. 2000) there were over ten causes of action and numerous non-Lanham Act and unrelated claims. In *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003), the Ninth Circuit *never* "instructed that "if *elements* of claims are not related, then fees could not be recovered for the non-copyright claims…." Rather, it actually held that "the district court should first decide whether the copyright and non-copyright *claims* are related. If they are, then the district court should proceed to calculate a "reasonable" fee award." *Id*. (emphasis added).

4818-6269-6206.1                                    6

"involve a common core of facts" and are "based on related legal theories". *Id.*; see, *Pom Wonderful, LLC v. Purely Juice, Inc.*, 2008 U.S. Dist. LEXIS 110460 (C.D. Cal. Sept. 22, 2008) [cited in Mtn. at 17 and left unrebutted by Defendants] and *International Order of Job's Daughters v. Lindeburg*, 633 F. 2d 912, 916 (9th Cir. 1980)("federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent."). Accordingly, no apportionment is necessary.

### 2. The Hours Expended Resulted In Substantial Relief

On remand, the Ninth Circuit has instructed this Court to review Plaintiffs' substantial and excellent results in this case, namely, "obtaining a judgment and an injunction that ameliorate[d] a serious public harm" and "confer[ing] significant benefits on third parties and also vindicat[ing] plaintiffs' right to a 'market free of false advertising.'" Opinion, at 9754-9757. "Such a nonmonetary victory may constitute 'excellent results' for the purpose of calculating attorney's fees." *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. Cal. 2009)("We have previously noted that results may not be measured solely in terms of damages, and 'in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society.'", citing *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996)). Indeed, as the Court stated in *Hensley*, and the Ninth Circuit confirmed, where there is "exceptional success [as here] an enhanced award may be justified."

The requested hours were expended in pursuit of those excellent results [Mtn. at 11-16 (summarizing stages of litigation, including pleadings, discovery, dispositive motions, trial, post-trial and injunction issues)], and therefore are *all* recoverable.[8]

---

[8] Notably, Defendants ignore Plaintiffs' summary of the district court proceedings showing how Defendants vociferously (and unreasonably) challenged and argued against every issue in this case, forcing Plaintiffs to seek and present volumes of evidence to respond to Defendants' aggressive (albeit unmeritorious) positions.

4818-6269-6206.1                              7

### 3. No "Mathematical" Allocation or Reduction Is Allowed

Per *Hensley*, Plaintiffs should recover a full fee to "encompass all hours reasonably expended **on the litigation**" (*Hensley, supra*), regardless of any alleged "lost issues" such as the 17200 Claim, or the motion for contempt. As the Ninth Circuit held in *Cabrales v. County of Los Angeles*, 935 F.2d 1051, 1053 (9th Cir. 1991):

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning…The rationale is clear: If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim – even though she may have suffered some adverse rulings.

See, also, *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992) ("[A] litigant need not prevail on every claim in order to receive a full fee."). Not only should there be no reduction in the fees, but any "mathematical approach" as Defendants advocate would be error per *Hensley*.[9]

Moreover, in many cases involving equitable relief, as here, the entry of judgment does not end the litigation; rather, it is the *enforcement* of the judgment that secures real relief. Accordingly, courts routinely permit post-judgment attorney's fees awards for necessary monitoring of compliance with such prospective injunctions. *Eirhart v. Libbey-Ownes-For Co.*, 996 F.2d 846, 851 (7th Cir. 1993); *McDonald v. Armontrout*, 860 F.2d 1456, 1461 (8th Cir. 1988); *Gates v. Rowland*, 39 F.3d 1439,

---

[9] Defendants' new counsel [Opp. at 3] has incorrectly claims – without any support– that the "the pleadings, such as Plaintiffs' Memorandum of Contentions of Fact and Law were devoted approximately 50-50 to each cause of action" [CW Dec. at 6], and that "Plaintiffs' sought monetary damages on both causes of action (not true in the slightest as damages are never recoverable under the 17200 Claim and Plaintiffs sought profits, not damages on the Lanham Act claim) [Id.]. Based on those erroneous assumptions, she proceeds to apply a "mathematical" reduction of 50% of disputed entries based on alleged "Non-Lanham Act related" claims, a clearly improper action. Defendants have also misrepresented *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895 (9th Cir. 1995). In fact, there was no "across-the-board reduction in fees of $300,000." Rather, the total fees being claimed were $300,000, but it was reduced because "several unsuccessful claims and the lone successful claim were based on different factual and legal theories." *Id*. at 900. Such is not the case here, where the claims are based on the same set of facts and legal theories.

1450-1451 (9th Cir. 1994); *Turner v. Orr*, 785 F.2d 1498, 1504 (11th Cir. 1986); *General Signal Corp. v. Donallco*, 787 F.2d 1376, 1380 (9th Cir. 1986). Evidence of Defendants' various changes to the website was necessary to show that it is a constant "moving target," forcing Plaintiffs to monitor compliance with the injunction and incur additional fees.[10] Finally, this litigation is still active, so all fees incurred for the Joint Status Report (Docket # 318), and this fee motion,[11] or otherwise, are fully recoverable, and Defendants cite no authority suggesting that they are not.

## IV.  THE "REASONABLE RATE" ARGUMENTS ARE ERRONEOUS

### A.  Plaintiffs Have Established the Appropriate Reasonable Rates

There is no dispute that the "reasonable hourly rate" is the prevailing market rate. Nor can there be dispute that courts may award a rate higher than counsel's actual rate if, like here, the actual rate is unrepresentative of the market value of the lawyer's services. Courts recognize that counsel sometimes deliberately charge particular clients less for various reasons, including to foster goodwill. Such rates do not reflect the prevailing market rate for the services, and the Ninth Circuit has held that a fee should not be so restricted. See, *United Steelworkers v. Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 55, 564-565 (9th Cir. 2008)(district court properly used a rate that was $190-$200 *more* than the actual rate charged).

Plaintiffs submitted adequate evidence for the requested rates of $503 for partners and $349 for associates. That evidence – largely ignored by Defendants – shows that the requested rates are in line with those in the community for similar

---

[10]  See, e.g., Docket #262 various emails between counsel regarding compliance in which Defendants repeatedly agree to make certain changes based on Plaintiffs' prompting.

[11]  As this Court can see by the parties' extensive filings, the fee motion as well as the Joint Status Report was (and is) no easy or small task. The fee request involved review and analysis of over 3,000 entries for attorney-client and work product issues, preparation of spreadsheets, legal research and drafting, evidence submissions, etc., etc., etc.). Plaintiffs' have properly requested fees to cover the hours expended in having to secure, preserve, and prosecute Plaintiffs' right to a "market free of false advertising", a motive that the Ninth Circuit *expressly* acknowledged and validated. Opinion at 9757.

services by similarly skilled lawyers, and includes (a) counsel's declaration specifying the hourly rate charged and counsels' specializations; (b) rates charged by Defendants' counsel of $654 - $820 for partners and $426 -$620 for associates (National Law Journal)]; (c) AIPLA rates survey; and (d) cases using the AIPLA rates; and (e) rate determinations from several other cases [Mtn. at 9-11 and Ex. H-G]  See, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)(using rate determinations from other cases).

Moreover, Plaintiffs have not applied *2010* rates and this Court is not required to apply "historic rates," as Defendants claim. Plaintiffs use prevailing market rates from the AIPLA 2009 survey which reviews 2008 rates, not "fee surveys from 2010".[12] The 2008 rates are appropriate because that is the time that Plaintiffs prevailed (i.e., obtained a judgment and injunction).Where market rates have changed over the course of the litigation, the court may award the market rate at the time the fee movant prevailed (here, 2008), and need not attempt to establish the market rate at the time the services were rendered. See, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)(one accepted method for compensating for delay is to award fees at current hourly rates); *Corder v. Brown*, 25 F.3d 833 (9th Cir. 1994)("current" means time movant prevailed; district court should not have used current rates after remand but rather, current rates at time movant prevailed; delay in payment at that point should be compensated with an award of interest).[13]

### B.  Defendants Have Not Met Their Burden Of Rebuttal

Defendants encourage this Court to apply the incorrect standard, i.e., the actual

---

[12]  See, Supplemental Dec. of Brosas.  Also, Plaintiffs only used the 2010 fee surveys to show that Defendants' firms (Sheppard Mullin and Foley Lardner) charge significantly higher rates—a point which Defendants tellingly left unrebutted.

[13]  The delay in Plaintiffs' fee award is requested to be accounted for by this Court by an interest award. Plaintiffs should not be penalized for the delay, as Defendants suggest, by having historic rates dating back to 2006 apply. It has been held an abuse of discretion for the district court *not* to account for the delay in some fashion. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994).

rates charged, and to commit further error by reducing Plaintiffs' requested rates when Defendants failed to provide *any* evidence of the prevailing market rate, as required by *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). When defendants did not support their opposition to plaintiffs' fee motion with any affidavits or evidence of the prevailing market rate, the Ninth Circuit found that the district court had erred in reducing the requested rates. The court stated:

> All the evidence produced by the plaintiffs supported a market rate between $125 and $160 per hour. Although the defendants disagreed with this evidence, they did not support their arguments with any affidavits or evidence of their own regarding legal rates in the community.

Tellingly, Defendants have also failed to submit any evidence regarding the rates that *Defendants' counsel* charged in this litigation. Presumably, this is because they are *higher* than what Plaintiffs seek, despite Defendants' significant losses in this litigation. *McGinnis v. Kentucky Fried Chicken of Cal.*, 51 F.3d 805, 809 (9th Cir. 1994)(defendant's argument that sought fee was excessive "might have more weight if it had not found it necessary to spend considerably more money losing than its adversary spent winning."); *Clairol, Inc. v. Save-Way Indus.*, 211 U.S.P.Q. 223, 225 (S.D. Fla. 1980) (Lanham Act litigation "is a particularly difficult field of specialization and is recognized as meriting greater than average rate of pay.").

## V. DEFENDANTS' "BACKGROUND" "SUMMARY" IS ERRONEOUS

True to form, Defendants continue to misquote, short-quote, and misrepresent in their Opposition what this Court and the Ninth Circuit have held and instructed in this case, requiring Plaintiffs to "set the record straight" and spend fees in doing so. Consider the following few examples (many more exist):

- Alleged "Relevant Pre-Appeal District Court Proceedings": (1) Defendants cite as "relevant" to this fee request finding related to this Court's prior denial of fees to Plaintiffs. The Ninth Circuit *reversed those findings*. Indeed, the Ninth Circuit stated: "[U]sing litigation to shut down a competitor who uses unfair trade practices is precisely what the Lanham Act seeks to encourage." (Opinion at p. 9757). (2) Defendants cite a portion from this Court's Findings that stated that Defendants made changes to their practices after being sued, but fail to cite this

4818-6269-6206.1                        11

Court's conclusion: "[M]embers of the public continue to be confused in spite of these changes." Docket 210 at 16.

- <u>Alleged "Findings From the Ninth Circuit"</u>: Defendants devote their "summary" to the irrelevant injunction issues, and ignore the Ninth Circuit's findings related to Defendants' "bad acts" and how those findings are relevant to the fee motion.

- <u>Alleged Meet and Confer Summary</u>: It is incredulous for Defendants to claim that they "were preparing (prior to this Court issuing its 11/7 Order), the line by line analysis ultimately requested by the Court." Defendants were to provide that analysis to Plaintiffs a week before Plaintiffs filed their fee motion so that it could be the subject of the parties' meet and confer efforts and filed motion. Plaintiffs are now tasked at the Reply stage with having to address *for the first time* Defendants' disputes. Defendants had in their possession *for weeks* the Excel spreadsheets specifying the hours for which compensation will and will not be sought (including write-offs). [See, Supplemental Hamilton Dec.] During meet and confers, when asked what entries they were disputing, Defendants' counsel simply responded: "everything", and that Plaintiffs are entitled to "$0" because Plaintiffs are not the prevailing party in an exceptional case (which is consistent with what Defendants argued in their omnibus and improper original "Comments" to the Joint Statements). Then after the 11/11 Order, Defendants still failed to meet and confer on the alleged disputed items which they set forth in the Supplemental Joint Statements. Finally, Plaintiffs were not required to first serve Defendants with their "Motion" before filing; nor to dispute their own fees (this is nonsensical); nor to make any allocations, other than accounting for "billing judgment" write-offs and not including them in the fee request.

## VI. <u>CONCLUSION</u>

Defendants' Opposition wanders aimlessly through issues of no concern to this Court and unrelated to Plaintiffs' fee motion,[14] while ignoring this Court's most likely pressing concerns and giving short-shrift to the legal tenets on which this Court's determinations will turn.

---

[14] For example, arguments regarding "tactics of harassment" and Defendants as having "more than paid the price" [Opp. at 3] are not part of the fee determination equation and are irrelevant.



4818-6269-6206.1                   12

| | | |
|---|---|---|
| 1 | | Respectfully, |
| 2 | DATED: November 21, 2011 | LEWIS BRISBOIS BISGAARD & SMITH LLP |
| 3 | | |
| 4 | | By:  /s/_____ |
| 5 | | David N. Makous |
| | | Daniel C. DeCarlo |
| 6 | | Mina I. Hamilton |

4818-6269-6206.1

13